1   BRENDAN DOLAN, State Bar No. 126732
    L. JULIUS M. TURMAN, State Bar No. 226126
2   STEVEN J. GARRETT, State Bar No. 221021
    MORGAN, LEWIS & BOCKIUS LLP
3   One Market, Spear Street Tower
    San Francisco, CA  94105-1126
4   Tel:  415.442.1000
    Fax:  415.442.1001
5   E-mail:  bdolan@morganlewis.com

6   Attorneys for Plaintiff
    POSDATA CO., LTD.

7

8               UNITED STATES DISTRICT COURT

9           NORTHERN DISTRICT OF CALIFORNIA -

10                  SAN JOSE DIVISION

11

12  POSDATA CO., LTD., a South Korean        Case No. C 07 2504 RMW
    corporation,
                                             **PLAINTIFF POSDATA CO. LTD'S *EX
13                                            PARTE* APPLICATION FOR:**
                    Plaintiff,
14                                           **(1) TEMPORARY RESTRAINING
            vs.                               ORDER;**
15
    SEYOUNG KIM, an individual and           **(2) ORDER TO SHOW CAUSE WHY
16  INQUADRON, INC., a California             PRELIMINARY INJUNCTION SHOULD
    corporation,                             NOT ISSUE; AND**
17
                    Defendants.              **(3) ORDER PERMITTING  EXPEDITED
18                                            DISCOVERY.**

19

20  TO ALL PARTIES AND THEIR ATTORNEYS:

21      **PLEASE TAKE NOTICE that on June 21, 2007,** or as soon thereafter as the matter

22  may be heard in Courtroom 6 of the above-entitled court, Plaintiff Posdata Co., Ltd. ("Plaintiff

23  or "Posdata") a corporation incorporated under the laws of the Republic of Korea and duly

24  authorized to conduct business within the State of California, with offices in San Jose, California,

25  will, and hereby does, apply *ex parte* for a temporary restraining order, order to show cause why a

26  preliminary injunction should not issue enjoining Defendants Seyoung Kim ("Kim") and

27  InQuadron, Inc. ("InQuadron") and any other person or entity participating with or acting for, on

28

MORGAN, LEWIS &
  BOCKIUS LLP
 ATTORNEYS AT LAW
 SAN FRANCISCO

1   behalf of, or in concert with Defendants, from engaging in or performing any of the acts as

2   hereinafter set forth, and for an order permitting expedited discovery.

3   <u>**Summary Of Application**</u>

4          This is a case about theft, deception and attempted cover-up by Defendants who have

5   sought to short-cut the time and expense of building a successful business by stealing the business

6   of their former employer, Posdata through the solicitation of Posdata employees and business

7   contacts and the blatant theft of detailed, confidential and proprietary information and trade

8   secrets.

9          Posdata has been a leader in the development of mobile Worldwide Interoperability for

10  Microwave Access ("WiMAX") technology since 2004 (Declaration of Ho Tae Han in Support of

11  *Ex Parte* Application ("Han Decl.") ¶ 3). Mobile WiMAX is a next-generation wireless

12  telecommunications technology which enables users to have broadband wireless Internet access

13  anytime and anywhere and also offers true mobility by allowing wireless users to travel at high

14  rates of speeds across large geographic areas while seamlessly receiving data and multimedia

15  services (*Id.*). Mobile WiMAX technology is a lucrative and competitive market for Posdata as

16  evidenced by the announcement of Sprint Nextel to build the first nationwide mobile WiMAX

17  network in U.S. by the end of 2008 (*Id.* at ¶ 4).

18         Defendant Kim and his associates, most of which were Posdata employees attempted to

19  jumpstart their own mobile WiMAX business, called InQuadron, by skipping several tedious and

20  expensive steps in the research and development process, by stealing Posdata's core technology

21  related to its MCCA file, MAC source code, PCB design and layout, test methods, comparison

22  data, compression data, results of the trial runs from NTT Dokomo, and interoperability test data

23  on the communication between Posdata's RAS and GCT mobile station chip (Han Decl. ¶¶ 6-9,

24  21-24, 31, 36, and 39-40). By utilizing Posdata's confidential and proprietary information, Kim

25  and his associates sought to completely avoid the expensive, time consuming and critical steps in

26  the creation, testing and improving of its won WiMAX technology product and simply copy

27  Posdata's invention (*Id.* at ¶ 39).

28         Although the factual record in this case continues to be uncovered on a daily basis, largely

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

through the examination of files and information found during the computer forensic examination of the Posdata laptop computers used by Defendant Kim and others, while they were employed by Posdata, this much is already known:

a)   Defendant Kim, who was employed by Posdata as the Director of the Lab 1 Research and Development team, was specifically charged by Plaintiff to concentrate on the enhancement of Posdata's core WiMAX (Han Decl. ¶¶ 12-14);

b)   Defendant Kim and other Posdata's employees, unbeknownst to Plaintiff and without authorization, used Posdata's resources and concentrated their efforts while on company time, to apply Posdata's core WiMAX technology to the development of components for their own small base stations, one of which they secretly labeled as a "Turtle Card." Another of Posdata's research teams was subsequently and specifically charged with the development of Posdata's own version of components for small base stations, which Plaintiff called Pico RAS, applying Posdata's core WiMAX technology (Han Decl. ¶¶ 14-15, 39);

c)   Starting in early 2006, Defendant Kim and his team refused to share their work with many Posdata employees in other organizational units, and would not save their data to the company's computer network, in violation of company policy (Han Decl. ¶ 13);

d)   In early 2006, Defendant Kim and other Posdata employees began plans to start their own business to compete in the WiMAX industry, while still employed by Posdata. Dr. Kim and other Posdata employees planned to use the Turtle Card as the foundation for the new business venture, which was to be called InQuadron (Han Decl. ¶ 18, Exh. 5);

e)   In October of 2006, Defendant Kim signed an Employment and Separation Agreement with the company, whereby among other things he would remain on the company's payroll as an employee through June 17, 2007, but would no longer work on any Posdata projects as of October 27, 2006, and would refrain from contact with Posdata's San Jose facility (Han Decl. ¶ 19, Exh. 6);

f)   On December 11, 2006, Posdata employee Jeffrey Choi emailed to Defendant Kim the GCT Mobile Station Chip IOT Reports ("testing results"), which contained measurement data on the GCT Terminal Chip and Posdata Systems. Choi also promised to obtain any future data from tests and reminded Defendant Kim to "distribute the data that I sent to the people you think they may need." Defendant Kim in turn forwarded Choi's email to Posdata employee Kangmin Lee, and reminded him to keep their communications "strictly confidential." Kim Choi and Lee intended to use these test results for purposes of their own product development in connection with their InQuandron venture. The IOT reports are critical, proprietary information to Posdata's product design process because they show areas of needed improvement and provide the engineers with ideas and data to aid in the future design of the system. As a significant step in the research and development process, Posdata made a substantial monetary and labor investment in its proprietary IOT testing methods and the tests results (Han Decl. ¶ 21, Exh. 9; Declaration of Song

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7558350.1                                    3                          C 07 2504 RMW
                                                                    EX PARTE APPLICATION

1    Ae Park in Support of *Ex Parte* Application ("Park Decl.") ¶ 10, Exh. 9;
     Declaration of Renee Yoon ("Yoon Decl.") ¶ 13, Exh. 9).

2

3    g)    On February 18, 2007, Kim and Posdata employee Choon Shin used their
           personal email accounts to send the Mobile 3 Plugfest Interim Report
           which is confidential and proprietary information, as Posdata entered into a

4          WiMAX Forum Multi-vendor Interoperability Testing Confidentiality
           Agreement (Han. Decl. ¶ 22, Exh. 11).

5

6    h)    On March 1, 2007, Shin emailed "MCCA PCB fab. Gerber data" file to
           Kim, even though both were Posdata employees, with regard to their Turtle
           Card. On March 2, Shin emailed the "MCCA REV.C GERBER DATA"

7          (MCCA-C-3-GBR-NOP.zip) file to Kim. *Id.* After the forensic
           examination recovered the file, Posdata engineer Seokhwan Choi attempted

8          to review the file, but could not open it. However, a copy of the file was
           uncovered by the Korean Prosecutor's office in connection with their

9          investigation of InQuadron and Kim and Choi's was then asked to review
           the materials. Choi's examination of the data showed that the file

10         contained Posdata's proprietary information regarding the PCB design and
           layout. Speicifically, the file showed that the MCCA was an acronym for a

11         new version of a channel card, which they had named the "Turtle Card."
           The MCCA /Turtle Card's PCB had a very similar design and layout to

12         Posdata's DCCU/Pico RAS. The MCCA/Turtle Card also used the same
           make and specifications of processors and components as used in Posdata's

13         DCCU. These files contained information regarding the design and layout
           for Posdata's PCB. Thus, Shin delivered Posdata's proprietary information

14         regarding the design and data for its PCB layout to Kim (Han Decl. ¶ 23,
           Exh. 11; Park Decl. ¶ 12, Exh. 11; Yoon Decl. ¶ 15, Exh. 11; Declaration

15         of Seolchwan Choi in Support of *Ex Parte* Application ("Choi Decl.") ¶ 6);

16   i)    In March/April 2007, following a forensic examination of Kim's Posdata
           computer, Choi's Posdata computer and the Posdata computers of other

17         current and former Posdata employees, InQuadron's 2007 Expense Plan
           was found on the hard drive of Defendant Kim's Posdata computer. The

18         Expense Plan contained the projected salaries of 24 individuals, including
           several current and former Posdata employees, for the time period of

19         March through December 2007. The Plan also outlined expenses for office
           rent, utilities and a variety of research and development tools. The Plan

20         further detailed an InQuadron organizational chart for U.S. and Korean
           Operations, identifying Defendant Kim as the CEO/CTO and Research and

21         Development lead. Kenneth Lee was cited as the CFO/CEO, and other
           systems, hardware/DSP, and software engineers from Posdata were

22         identified. The Plan further detailed that Posdata employee Joonsug Chung
           would head up Korean business development and Posdata employee

23         Hwayong Joung would be in charge of the Korean Research and
           Development Team. The Korean team would also consist of systems,

24         hardware, software and field test engineers from Posdata (Han Decl. ¶ 25,
           Exh. 14; Yoon Decl. ¶ 17, Exh. 14);

25

26   j)    From June 26, 2006 through March 12, 2007, Dr. Kim and others engaged
           in email solicitations of several current and former Posdata employees to

27         join their future business venture. The employees included Sukchan Lee,
           Jinyoung Park, Gwangseok Kim, Yongwoo Kim, Hojun Kim, Jeffrey Choi,
           Yoonki Hong, Yongkeun Pang, and former Posdata employee William Li.

28         Several of these Posdata employees resigned from the company between

1      October 2006 and March 2007 (Han Decl. ¶¶ 26-27, Exhs. 5, 16-20; Park
       Decl. ¶ 8, Exh. 5; Yoon Decl. ¶¶ 12, 19-22, Exhs. 5, 16-20);
2

3   k)     From February 2007 to March 14, 2007, under the name InQuadron, Inc.
           Defendant Kim and other employees of Posdata approached other
4          technology companies with regard to forming business partnerships for the
           purpose of developing the Turtle Card. Some of the entities and persons
5          that Defendant Kim and others approached were Dukyoung Kim, President
           of KMW; Yongchun Kim, President of NSC; and Kwangsun Kim,
6          President of D&T (Han Decl. ¶ 30, Exh. 22; Park Decl. ¶ 15, Exh. 22;
           Yoon Decl. ¶ 24, Exh. 24);
7

8   l)     Defendant Kim and other Posdata employees formed a business partnership
           with Axstone Technologies Company LTD to manufacture Printed Circuit
9          Boards for Turtle Cards. (Han. Dec. ¶ 31, Exh. 23; Park Decl. ¶ 16, Exh.
           23; Yoon Decl. ¶ 25, Exh. 23);

10  m)     Following a forensic review of the company computers of Defendant Kim
           and Jeffrey Choi, and other former Posdata employees the hard drives of
11         these computers revealed that numerous files had been downloaded to
           external storage devices. The forensic investigation also showed that in
12         just prior to turning in their Posdata computers when their employment
           terminated Defendant Kim and Jeffrey Choi destroyed and/or erased
13         company data in an apparent attempt to conceal their activities by using
           software designed to erase software and wipe hard drives (Han Decl. ¶ 34;
14         Yoon Decl. ¶¶ 7, 26-30);

15  n)     On May 10 and 11, 2007, Ho Tae Han, Senior Manager of the Business
           Support Team of Posdata in Korea, met with Choon Shin and other
16         business associates from the former Lab 1 Team who had previously
           worked with Defendant Kim. During these meetings, Shin admitted that
17         InQuadron's Turtle Card was the same product as Posdata Pico RAS card
           and that he and others had worked to unofficially develop the Turtle card
18         while employed at Posdata. He further admitted that he and others were
           working for Kim and InQuadron while employed at Posdata (Han Decl. ¶
19         35);

20  o)     In reviewing several documents recently produced by counsel for
           Defendants Kim and InQuadron it was discovered that a December 22,
21         2006 Technology Evaluation Report of InQuadron's Business Model
           references Posdata's technology accomplishments as that of InQuadron.
22         For example, the numerical values which represent the excellence of the
           channel cards, such as the 65msec ping delay and 60msec hand-off delay
23         are all Posdata's achievements (Han Decl. ¶ 36, Exh. 25; Park Decl. ¶ 18,
           Exh. 25);

24  p)     Defendants Kim and InQuadron's actions were willful effort to deprive
           Posdata of the fruits of their labor and investment, as demonstrated by a
25         June 29, 2006 email from Defendant Kim to several Posdata employees. In
           the email Defendant Kim states that Posdata "will come to know soon their
26         childish, shallow plan could not succeed" because he was "going to look
           for an opportunity for a team to work together again" (Han Decl. ¶ 18, Exh.
27         5);

28  q)     On May 14, 2007, Posdata discovered a file named "RAS-portable-

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

111306-12.doc" on Choen Shin's external storage device. The file contained a document entitled "Modular RAS Implementation" showing Posdata's proprietary PCB design (Han Decl. ¶ 24, Exh. 12; Choi Decl. ¶ 7, Exh. 12);

r)  On June 9, 2007, a November 30, 2006 backup of a file was discovered on Shin's external storage device. the file contained 64 pages of schematic drawings, which were identical to the schematic drawings of Posdata's DCCU, except the document had red-lined through the name "Rev. 0.4 DCCU Block Diagram" and changed it to "MCCA." (Han. Decl. ¶ 40, Exh. 26).

After discovering most of the above information, Plaintiff initiated the above-captioned matter on May 10, 2007, by filing and serving a Complaint for Monetary Damages and Injunctive Relief against Defendants Seyoung Kim and InQuadron, Inc. and filing and serving a subsequent First Amended Complaint on May 18, 2007 (Dolan Decl. ¶¶ 2 &7).

**Plaintiff's Request For A Temporary Restraining Order**

This Application is based upon the First Amended Complaint; the Declarations of Ho Tae Han, Seokhwan Choi, Renee Yoon, Song Ae Park and Brendan Dolan, and the exhibits thereto; the Memorandum of Points and Authorities; the Proposed Order [all filed concurrently] and such other evidence and argument as the Court may consider at the hearing of this Application.

This Application is made upon the following grounds:

1.    Defendants have engaged in unfair business practices in violation of California common law and California Business & Professions Code section 17200 *et seq.*, and thus Plaintiff is entitled to injunctive relief pursuant to common law and Business & Professions Code section 17203;

2.    Defendants have misappropriated Plaintiff's trade secrets in violation of the Uniform Trade Secrets Act (Cal. Civ. Code § 3426 *et seq.*), and thus Plaintiff is entitled to an injunction pursuant to California Civil Code section 3426.2(a);

3.    Defendant Kim has violated the terms and conditions of his Employment Agreement and Separation Agreement with Plaintiff, which agreements are specifically enforceable by means of injunctive relief;

4.    Defendants' conduct threatens to and has damaged not only Plaintiff's reputation

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7558350.1                                    6                          C 07 2504 RMW
                                                                            EX PARTE APPLICATION

1   and goodwill, but also the reputation and goodwill of Plaintiff's clients, and said conduct has

2   deprived Plaintiff of a unique set of services and contractual rights and Plaintiff is thus entitled to

3   an injunction; and

4        5.     Plaintiff is likely to succeed on the merits of its claims, is suffering (and absent

5   relief will continue to suffer) immediate and irreparable harm that cannot be adequately remedied

6   at law and the balance of hardships weighs in favor of Plaintiff.

7        In compliance with Northern District Local Rule 7.1 and 65, counsel for Posdata will

8   notify Defendants of the substance of the relief Posdata here seeks, and the date and time that

9   this application will be filed for hearing.  Posdata anticipates that the Defendants will oppose

10  this Application.

11       In order to stop Defendants' wrongful conduct, Plaintiff will, and hereby does, apply *ex*

12  *parte* for a temporary restraining order enjoining Defendants as follows:

13       That Defendants Kim and InQuadron and all those acting in concert or participation with

14  them and having knowledge of this order, including but not limited to their agents,

15  representatives, partners, employees and attorneys, are temporarily enjoined and restrained from

16  engaging in or performing any of the following acts:

17       1.     Using for any research or development purposes:  copies or versions of the Digital

18  Channel Card Unit ("DCCU") for the Pico RAS base station, the Modular Channel Card

19  Assembly ("MCCA") file for the Turtle Card base station, MAC and PHY source code, Printed

20  Circuit Board ("PCB") design and layout, prototypes of the DCCU, MCCA or Turtle Card and/or

21  Pico RAS base stations, the "Modular RAS Implementation" file, the "Rev. O.4 DCCU Block

22  Diagram" file, test methods, comparison data, Plugfest Reports, results of the trial runs from NTT

23  DoCoMo, and interoperability test data on the communication between Posdata's RAS, GCT

24  mobile station chip or any property related to WiMAX technology, notes files and diagrams that

25  depict, reveal, or demonstrate how the processors and components, Posdata's PCB design and

26  layout, and Posdata's software and source code create an architecture for interface between

27  hardware and software that was acquired as a result of Defendant Kim's or any other persons

28  employment or association with Posdata;

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7558350.1                                      7                    C 07 2504 RMW
                                                                        EX PARTE APPLICATION

2.      Using for any research or development purposes, or any commercial purposes, any and all notes, files, data, correspondence, reports, designs, diagrams, test results, materials, documents, prototypes of the DCCU, MCCA, Pico RAS or Turtle Card, and any promotional/ development/ marketing materials that comprise or pertain to the property identified in paragraph 1 above;

3.      Disclosing, copying or transmitting any property identified in paragraphs 1 and 2 above;

4.      Directly or indirectly soliciting, orally or in writing, or otherwise encouraging the departure, resignation or other termination of employment, of any of Plaintiff's employees, independent contractors or consultants to work for Defendants or any entity that Defendants may own, be involved in, or affiliated with, that is within the WiMAX technology industry and for the purpose of using/disclosing any of the property identified in paragraphs 1 and 2 above;

5.      Directly or indirectly soliciting, orally or in writing, any business of any kind from any of Plaintiff's clients, prospective clients or business contacts whose identity was obtained by Kim and other current and former employees of Posdata, and whose identity was contained, related to and or whose solicitation is for the purpose of using and/or disclosing the property identified in paragraphs 1 and 2.  Defendants are, in particular, restrained from soliciting, directly or indirectly, Dukyoung Kim and other employees of KMW, Yongchun Kim and other employees of NSC, Kwangsun Kim and other employees of D&T, and Axstone Technologies Company LTD, with regard to WiMAX technology and the property identified in paragraphs 1 and 2;

6.      Defendants and any other person or entity participating with or acting for, on behalf of, or in concert with Defendants, including but not limited to their officers, employees, agents, attorneys and representatives, to the extent they are not already doing so, shall immediately preserve all documents, data compilations, and tangible things, including all "writings" or "recordings," as those terms are defined in Rule 1001 of the Federal Rules of Evidence, and all such electronic information stored on any computer hard drive, back-up drive, disc drive, hard disc, floppy disc, compact disc, magnetic tape, zip file, personal digital assistant,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7558350.1                          8                          C 07 2504 RMW
EX PARTE APPLICATION

1    mobile phone, or in any other form or on any other medium (collectively, "Documents and

2    Things"), that are in their possession, custody, or control and that may be relevant to a claim or

3    defense of any party in the above-captioned action, including but not limited to the following

4    types of Documents and Things:

5           (a)    phone records;

6           (b)    electronic mail, including web-based electronic mail provided by

7                    commercial services such as Yahoo and Hotmail;

8           (c)    mobile phones;

9           (d)    fax machines;

10          (e)    personal digital assistants (PDA's);

11          (f)    personal computers;

12          (g)    servers;

13          (h)    magnetic tape, floppy discs and other data storage devices;

14          (i)    phone logs and notes from conversations with clients or potential clients;

15          (j)    spreadsheets; and

16          (k)    memoranda and correspondence.

17   ### Plaintiff's Request For A Preliminary Injunction

18       Plaintiff will also, and hereby does, apply *ex parte* for an order to show cause why a

19   preliminary injunction should not issue enjoining and imposing the same restrictions and

20   injunctions as set forth above, pending the trial of this action or further order of this Court.

21   ### This Application Is Timely And Will Help Prevent Irreparable Injury

22       Immediate relief from this Court is necessary in order to prevent irreparable harm to

23   Plaintiff, to preserve Plaintiff's trade secrets and proprietary and confidential information, and to

24   maintain the status quo pending hearing on a preliminary injunction.  Posdata has recently

25   confirmed that Defendants' have engaged in egregious theft of the software source code that is

26   critical to the Plaintiff.  (Han Decl. ¶ 34.)  The computer forensic examination of the Posdata's

27   laptop used by Defendant Kim while he worked for Posdata has also revealed that not only has

28   Kim solicited employees to breach their employment agreements with Plaintiff (Han Decl. ¶¶ 26-

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7558350.1                           9                         C 07 2504 RMW
EX PARTE APPLICATION

1   27, Exhs. 5, 16-20; Park Decl. ¶ 8, Exh. 5; Yoon Decl. ¶¶ 12, 19-22, Exhs. 5, 16-20), but that:

2   (1) several employees worked for Defendants prior to their resignation from Posdata (*Id.* at ¶ 31);

3   (2) deceived their employer (Han Decl. ¶¶ 6-9, 21-24, 31, 36 and 39-40); and (3) stole time,

4   resources and confidential information from Plaintiff, prior to their resignations (*Id.*).  Further,

5   just on June 9, 2007, Posdata discovered that Shin blatantly violated the company's security

6   policy by downloading its schematic drawings of the DCCU to an external storage device,

7   presumably to transport the DCCU design outside of Posdata (Han. Decl. ¶ 40, Exh. 26).

8   ### Plaintiff's Request For Expedited Discovery

9        Plaintiff will be severely prejudiced if it is prevented from conducting expedited discovery

10  prior to a Preliminary Injunction hearing.  Good cause, the standard at issue, exists to grant the

11  requested discovery so that Plaintiff can present the existence and extent of the Defendants'

12  wrongful conduct warranting injunctive relief.  Only with such expedited discovery will this

13  Court have a full factual record before it when the parties present their respective cases at the

14  hearing on the Preliminary Injunction.  Furthermore, as detailed in Plaintiff's supporting

15  documents, there has already been some attempt to cover-up the theft of Posdata's valuable trade

16  secrets and other confidential and proprietary information.  (Han Decl. ¶ 34; Yoon Decl. ¶¶ 7, 26-

17  30.)  An order granting expedited discovery is essential to minimize the risk of any further

18  transgressions by Defendants.

19  Dated: June 2 1, 2007                          MORGAN, LEWIS & BOCKIUS LLP

20

21

22       By _____

23       Brendan Dolan
         Attorneys for Plaintiff

24       POSDATA CO., LTD., a South Korean
         corporation

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7558350.1                          10                          C 07 2504 RMW
                                                                    EX PARTE APPLICATION