EXHIBIT 19

["1110bdcde125350c",0,0,"Feb 28","<span id\u003d\"_upro_kdlee@leekimlaw.com\">Kenneth D. Lee</span> (3)","<b>&rsaquo;</b> ","Offer Letter"," Dear Mr. Youn-Ki Hong: I am pleased to present you with the attached offer of employment with &hellip;",[]
,"Offer Letter - Employee - US - HojunKim.doc,Employee Proprietary Rights and Confidentiality Agreement.doc,Employee Proprietary Rights and Confidentiality Agreement.doc,Offer Letter - Employee - US - JongKwanChoi.doc,Offer Letter - Employee.doc,Offer Letter - Employee - US-H - YounkiHong.doc","1110bdcde125350c",0,"Wed Feb 28 2007_9:58 PM",0,"",0,0,1]

-------------------------------------------------------------------------------

,["1110be4b596c2ccb",0,0,"Feb 28","<span id\u003d\"_upro_kdlee@leekimlaw.com\">Kenneth D. Lee</span> (4)","<b>&rsaquo;</b> ","Offer of Employment","Dear Mr. Ki Young Kwak: I am the Chief Operating Officer and General Counsel of InQuadron, Inc &hellip;",[]
,"Employee Proprietary Rights and Confidentiality Agreement.doc,Offer Letter - Employee - Korea - KangMinLee.doc,Employee Proprietary Rights and Confidentiality Agreement.doc,Offer Letter - Employee - Korea - JinYoungPark.doc,Employee Proprietary Rights and Confidentiality Agreement.doc,Offer Letter - Employee - Korea - Jong-WookLee.doc,Employee Proprietary Rights and Confidentiality Agreement.doc,Offer Letter - Employee - Korea - KiYoungKwak.doc","1110be4b596c2ccb",0,"Wed Feb 28 2007_10:06 PM",0,"",0,0,1]

-------------------------------------------------------------------------------

,["11156dc9beb4b305",0,0,"Mar 15","\u003cspan id\u003d\"_upro_kdlee@leekimlaw.com\"\>Kenneth D. Lee\u003c/span\>","\u003cb\>&rsaquo;\u003c/b\> ","Three more offers","Dear Drs. Kim and Joung: Attached are three offer letters for Messrs. Woo-Jin Jeon, Se-Jin Lim &hellip;",[]
,"Offer Letter - Employee - Korea - Se-JinLim.doc,Offer Letter - Employee - Korea - Woo-JinJeon.doc,Offer Letter - Employee - Korea - Hun-SeungOh.doc","11156dc9beb4b305",0,"Thu Mar 15 2007_11:29 AM",0,"",0,0,1]

EXHIBIT 20

Sent: /b\> Monday, March 12, 2007 9:59 AM br\> b\>To: /b\> William  Li br\> b\>Subject: /b\>
From Seyoung Kim br\> /font\> br\> ",1]
,["mb","  div class\u003dea\> span id\u003de_11151610a71bcf74_1\>- Show quoted text -
span class\u003de id\u003dq_11151610a71bcf74_1\>      Hi William,        Now it is spring
time in SV while there is snow in my town in  NJ.    I have been in NJ for two weeks and
returned to CA last week and becoming   in love with SV weather slowly.
The plan is moving well and we are very near to open the office, probably  around March
18.  BD office is also contracted.     As we discussed a couple of weeks ago, I sincerely would
like to invite you   to the team as one of the starting members to share the dream and career.
I wish to see you to chat for the challenging future if you don't mind.
Thank you.
    br\>Best,      br\>Seyoung

EXHIBIT 21

,"Mar 14, 2007 5:09 PM","Re: Operation Update","Dr. Kim: I will prepare offer letters. The start date for the U.S. side team ...",[]
,1,,,"Wed Mar 14 2007_5:09 PM","On 3/14/07, Kenneth D. Lee <kdlee@leekimlaw.com> wrote:","On 3/14/07, <b class=\u003dgmail_sendername>Kenneth D. Lee</b> &lt;kdlee@leekimlaw.com; wrote:"
On 3/14/07, <b class=\u003d\"gmail_sendername\">Kenneth D. Lee</b> &lt;<a href\u003d\"mailto:kdlee@leekimlaw.com\" target\u003d\"_blank\" onclick\u003d\"return top.js.OpenExtLink(window,event,this)\">kdlee@leekimlaw.com</a>; wrote:</span>
<blockquote class\u003d\"gmail_quote\" style\u003d\"padding-left:1ex;margin:0px 0px 0px 0.8ex;border-left:#ccc 1px solid\"> <div bgcolor\u003d\"#ffffff\"> <div>Dr. Kim:</div> <div> </div>       I will prepare offer      letters. The start date for the U.S. side team will be March 1.        Since we will not have office, space before then, that seems appropriate. If you need to accelerate this schedule, I will look into        earlier occupancy of the office space. I will also prepare offer        letters for the Korean side team members. If the employees and        their start dates differ from the information previously provided by you, please inform me of those changes. Also, unless instructed otherwise,        I will inform each employee of the stock options that we plan to grant to        them. I will follow up their acceptance of the employment offers with        stock option agreements and employee confidentiality agreements (this should        be signed by everyone). </div>        <div> </div> <div>        In order for us to have health        insurance, we must first obtain workers' compensation insurance. I am        in the process of getting quotes for the various insurance coverage        that we will need. There will be a gap of some time (hopefully not        more than a few weeks) between the employees' start dates and the        effectiveness of insurance coverage. Please have the ",1]
,["mb","U.S. based        employees provide me with information about their current health insurance        coverage so that I can try to provide them with some comparable.</div> <div> </div>       <div>        The employee related issues on        the Korea side are, from prior experience, quite different than in the        U.S. I hope that Joonsug may be able to confirm what employee related        legal requirements are so that we can incorporate those requirements when        determining the steps we need to take and the costs related to such employees. Also, since we are now setting up IQI-Korea ahead of our        original schedule, Dr. Joung and Mr. Seongdong Park should try to become        IQI-Korea employees as soon as possible. They can continue to consult        with/assist KTD, but they should be IQI-Korea employees. </div>        <div> </div>        <div>        As for the H visa, the following        are the costs for filing the petition:</div><div> </div>        <p><font face\u003d\"Arial\" color\u003d\"#0000ff\"        size\u003d\"2\"><span style\u003d\"font-size:10pt;font-family:Arial\">Standard fee for the H-1B is        $1500 plus $500 for each derivative family member.</span></font></p>        <p><font face\u003d\"Arial\" color\u003d\"#0000ff\" size\u003d\"2\"><span        style\u003d\"font-size:10pt;font-family:Arial\">Please note that the USCIS        filing fees will increase in the near future. The USCIS has proposed significant increases – for some petitions/applications there may be subject        to as much as an 96% increase. The following ix a list of current        fees with proposed increases in ( ). </span></font></p>        <p><font face\u003d\"Arial\" color\u003d\"#0000ff\" size\u003d\"2\"><span style\u003d\"font-size:10pt;font-family:Arial\">        H-1B Form I-129:     $190        (320)</span></font></p>        <p><font face\u003d\"Arial\" color\u003d\"#0000ff\"        size\u003d\"2\"><span style\u003d\"font-size:10pt;font-family:Arial\">        H-1B Supplement Fee:  $750 for companies with        25 or less employees and $1500 with 26 or more (?)</span></font></p>        <p><font face\u003d\"Arial\" color\u003d\"#0000ff\" size\u003d\"2\"><span style\u003d\"font-size:10pt;font-family:Arial\">",1]
,["mb","        H-4 Form I-539:        $200 (300)</span></font></p>        <p><font face\u003d\"Arial\" color\u003d\"#0000ff\" size\u003d\"2\"><span style\u003d\"font-size:10pt;font-family:Arial\">Optional Premium        </span></font><font face\u003d\"Arial\" color\u003d\"#0000ff\" size\u003d\"2\"><span        style\u003d\"font-size:10pt;font-family:Arial\">Processing        Fee:        $1000</span></font></p>

&lt;div&gt;      The above fees      are very competitive.  A discount on attorney's fees, but not filing fees, is possible.  However, there is one other factor to      consider.  &lt;/div&gt; &lt;div&gt; &lt;/div&gt;      &lt;div&gt;      In order to qualify for an H, the      employer must offer the prospective employee a &amp;quot;Prevailing Wage&amp;quot;.  The      prevailing wage is the range (high/low) of salary paid in a particular      geographic area for employees of various levels.  Such salary levels      for engineers in Silicon Valley are relatively high, and are significantly      more than the wages paid in Korea.  Therefore, if the work they need to do in the U.S. can be handled through short term visits, then that would be      much more cost-effective for us.&lt;/div&gt;      &lt;div&gt;··&lt;/div&gt;      &lt;div&gt;      Another factor is that if the employee has worked for IQI for one year in Korea, they will be eligible for      the L (intra-company transfer) visa.  Under an L, prevailing wage      need not be offered, and, for management level L visas (L-1A), the employee      may be entitled to seek green card status without having to first obtain a      labor certification.  Therefore, it may be possible to obtain a      green card in as much as half the time usually required.  &lt;/div&gt;      &lt;div&gt; &lt;/div&gt; &lt;div&gt;      Because H visas are on a      quota, we will want to file for visas right away.  Once a petition is      approved, the employee need not come immediately to the U.S.&lt;/div&gt;      &lt;div&gt; &lt;/div&gt;      &lt;div&gt;Regards,&lt;/div&gt;      &lt;div&gt; &lt;/div&gt; &lt;div&gt;Ken&lt;/div&gt;&lt;span&gt;      &lt;div&gt;Kenneth D. Lee, Esq.&lt;br&gt;Lee &amp;amp; Kim&lt;br&gt;1871 The Alameda, Suite      331&lt;br&gt;San Jose, California 95126",1]

,["mb","&lt;br&gt;Tel:      (408)   248-4488&lt;br&gt;Fax:      (408)                      248-8181&lt;br&gt;&lt;a

href\u003d\"mailto:kdlee@leekimlaw.com\"      target\u003d\"_blank\"      onclick\u003d\"return

top.js.OpenExtLink(window,event,this)\"&gt;kdlee@leekimlaw.com&lt;/a&gt;&lt;/div&gt;&lt;/span&gt;

# EXHIBIT 22

- 

,["mi",10,1,"110e713ebfb3f284",0,"0","Seyoung Kim","Seyoung","mountainrun@gmail.com",[[]
,[["정화용","jounghwayong@gmail.com","110e713ebfb3f284"]

,"Feb 21",["정화용  jounghwayong@gmail.com\>"]

,"Feb 21, 2007 6:32 PM","Compensation","정박사님, 안녕하세요. 어제 말씀하셨던 해당
팀원들의 연봉및 Stock Option 에 대한 의견입니다. 이강민 : $68,000, 150...",[]
From:  /font\> /b/ font face\u003d\"Tahoma\" size\u003d\"2\"\> span lang\u003d\"EN-US\"
style\u003d\"font-size:10pt;font-family:Tahoma\"\>           Seyoung   Kim   [mailto:   a
href\u003d\"mailto:mountainrun@gmail.com\"   target\u003d\"_blank\"   onclick\u003d\"return
top.js.OpenExtLink(window,event,this)\"\>mountainrun@gmail.com  /a\>]   br\>  b\> span
style\u003d\"font-weight:bold\"\>Sent:  /b\> Thursday, February 22, 2007 10:32 AM  br\> b\>
span style\u003d\"font-weight:bold\"\>To:   /b\>     /font\> font size\u003d\"2\"\> span
style\u003d\"font-size:10pt\"\>정화용 font face\u003d\"Tahoma\" size\u003d\"2\"\> span
lang\u003d\"EN-US\"  style\u003d\"font-size:10pt;font-family:Tahoma\"\>    br\> b\>  span
style\u003d\"font-weight:bold\"\>Subject:  /b\> Compensation  /font\>  /p\>   ",1]
,["mb","  ",1]
,["mb"," span class\u003d\"   p\> font face\u003d\"굴림\" size\u003d\"3\"\> span
lang\u003d\"EN-US\"   style\u003d\"font-size:12pt\"\>    /font\> /p\>     p\> font
face\u003d\"굴림\" size\u003d\"3\"\> span style\u003d\"font-size:12pt\"\>정박사님 ,  /font\>
/p\>       p\> font face\u003d\"굴림\" size\u003d\"3\"\> span lang\u003d\"EN-US\"
style\u003d\"font-size:12pt\"\> /font\> /p\>    p\> font face\u003d\"굴림\" size\u003d\"3\"\>
span style\u003d\"font-size:12pt\"\>안녕하세요 . /font\> /p\>   p\> font face\u003d\"굴림\"
size\u003d\"3\"\> span style\u003d\"font-size:12pt\"\>어제 말씀하셨던 해당 팀원들의 연봉및
Stock Option 에 대한 의견입니다 . /font\> /p\>   p\> font face\u003d\"굴림\"
size\u003d\"3\"\> span lang\u003d\"EN-US\"  style\u003d\"font-size:12pt\"\>    /font\> /p\>
p\>  font  face\u003d\"굴림\"  size\u003d\"3\"\>    span   style\u003d\"font-size:12pt\"\>이
/font\>·민 :   $68,000,  150,000 Shares  /p\>     p\> font face\u003d\"굴림\"
size\u003d\"3\"\> span style\u003d\"font-size:12pt\"\>박진영  /font\> : $55,000, 150,000
Shares  /p\>      p\> font face\u003d\"굴·\" size\u003d\"3\"\> span style\u003d\"font-
size:12pt\"\>곽기영  /font\>   :  $40,000,  120,000 Shares  /p\>       p\> font
face\u003d\"굴림\"    size\u003d\"3\"\>   span   style\u003d\"font-size:12pt\"\>이종옥
/font\> : $65,000, 150,000 Shares  /p\>  p\> font face\u003d\"굴림\" size\u003d\"3\"\>
span lang\u003d\"EN-US\"  style\u003d\"font-size:12pt\"\>   /font\> /p\>    p\> font
face\u003d\"굴림\" size\u003d\"3\"\> span style\u003d\"font-size:12pt\"\>회사의 운영이 제대로
돌아가기 시작하면  Market Value 를 넘어가는 충분한     보수를 지급해 주고 싶지만
당분간은  현  직장 연봉  기준해서      평행이동에 약간의 알파를  ·하는 것으로
정했습니다 .   개인에 ·라서는    흡족하지   않을 수도 있으나 현재 회사 사정상 최대의
가능한 배려를 해 ··리려는 노력을 하고 있고    앞으로 크게 성장할 수 있는 가능성에
기대를   거는 것에 촛점이 맞추어져 있으면 하는 바램입니다 .   /font\> /p\>      p\>
font  face\u003d\"굴림\"  size\u003d\"3\"\>  span lang\u003d\"EN-US\"  style\u003d\"font-
size:12pt\"\>  /font\>",1]

,["mb"," /p>      p> font face\u003d\"굴림\" size\u003d\"3\"\> span style\u003d\"font-size:12pt\"\>위의 Stock Option 은 1 차에 해당되는 것이며 남겨놓은 Share 도 올해 안에 나누어져 개인당 평균 80,000 주의 Stock Option 을 추가로 지급할 계획입니·. 모든 것이 뜻대로만 되면 위의 숫자들의 차이는 큰 의미는 없겠지요. 아울러 의의 금액은 편의상 미화로 나타나져 있는데 정식 Job Offer 에는 한국화로 표시·려고 합니다. 본인들로 부터 다른 생각·· 있으시면 알려주시기 바랍니다. 그리·· Stock Option Price 는 여러가지 변수가 있··고 하는데 주당 15-20 센트 정도가 적당하다는 말을 지난 번에 들었던 것 같습니다. 이 차액은 차후 개인별로 충분히 보상 ··능한 것으로 알고 있습니다 . /font> /p>    p> font face\u003d\"굴림\" size\u003d\"3\"\> span lang\u003d\"EN-US\" style\u003d\"font-size:12pt\"\> /font> /p>  ",1]

,["mb","   p> font face\u003d\"굴림\" size\u003d\"3\"\> span style\u003d\"font-size:12pt\"\>현재로서 약간 중지상태에 있는 Funding 이 잘 풀렸으면 좋겠습니다. 저는 오늘 밤 뉴저지에 갔다가 3 월 7 일 돌아·니다. /font> /p> ",1]

,["mb"," span class\u003d\"dq\>    p> font face\u003d\"굴림\" size\u003d\"3\"\> span lang\u003d\"EN-US\" style\u003d\"font-size:12pt\"\> /font> /p>  p> font face\u003d\"굴림\" size\u003d\"3\"\> span style\u003d\"font-size:12pt\"\>오늘 오후 제가 잠시 산책나간 사이 N 사의 General Manager 겸 CTO 인 Mark Kelly 라는 분이 Salmasi 회장의 부탁을 ··아 통화를 하고 싶다는 메세지를 남겨 놓았다더군요. Return Call 을 했으나 연결이 되지 않아 기다리고 있습니다. 아니면 오늘 밤에 떠나니까 New Jersey 에 가서 통화· 해도 되겠지요. /font> /p>  p> font face\u003d\"굴림\" size\u003d\"3\"\> span lang\u003d\"EN-US\" style\u003d\"font-size:12pt\"\> /font> /p>  p> font face\u003d\"굴림\" size\u003d\"3\"\> span style\u003d\"font-size:12pt\"\>조금씩 이야기가 풀려가는 것 같은데 모든 일이 잘되어 갈 것으로 믿어집니다. 최근에 P 사가 N 사로 부터 당황스런 답을 받았다는 것과 연결이 되는 것 같습니다. 힘내시지요 ... 우선 저도 힘좀 내·겠습니다 . /font> /p>  p> font face\u003d\"굴림\" size\u003d\"3\"\> span lang\u003d\"EN-US\" style\u003d\"font-size:12pt\"\> /font> /p>  p> font face\u003d\"굴림\" size\u003d\"3\"\> span style\u003d\"font-size:12pt\"\>김세영

-----------------------------------------------------------------------------------------------------

,["mi",10,4,"11109d559b9f6ba2",0,"0","Kenneth D. Lee","Kenneth","kdlee@leekimlaw.com",[[]
,[["me","mountainrun@gmail.com","11109d559b9f6ba2"]
]
,0]
]
,"Feb 28",["Seyoung Kim \u003cmountainrun@gmail.com\>"]
,0
,0
,0
,"Feb 28, 2007 11:31 AM","Re: 투자 건","We should avoid any mention of Nextwave, especially to anyone in Korea, for t...",[]
,1,,,"Wed Feb 28 2007_11:31 AM","On 2/28/07, Kenneth D. Lee \u003ckdlee@leekimlaw.com\>

wrote:"

----------------------------------------------------------------------------------------------------

,["mi",10,1,"1114dc41d2fac0c9",0,"0","Joonsug Chung","Joonsug","joonsug@gmail.com",[[]
,[["me","mountainrun@gmail.com","1114dc41d2fac0c9"]
,["Kenneth","kdlee@leekimlaw.com","1114dc41d2fac0c9"]
,["Hwayong","jounghwayong@gmail.com","1114dc41d2fac0c9"]

,["박성동","seongdong.park@gmail.com","1114dc41d2fac0c9"]

,["박성동","seongdong.park@inquadron.com","1114dc41d2fac0c9"]
]
,[]
]
,"Mar      13",["Seyoung   Kim       mountainrun@gmail.com\>","\"Kenneth    D.    Lee\"
kdlee@leekimlaw.com\>","Hwayong    Joung      jounghwayong@gmail.com\>","박성동
seongdong.park@gmail.com\>","박성동   seongdong.park@inquadron.com\>"]

,[]
,[]
,[]
,"Mar 13, 2007 5:06 PM","NextWave material","Dear all, One ex-Nokia person, now with the
NextWave        Broadband,       visited       Seoul...",[["0.1","NW_Overview_Feb
07.pdf","application/pdf",659801,-1,"f_ez90injd"]
]
,1,,"Tue Mar 13 2007_5:06 PM","On 3/13/07, Joonsug Chung    joonsug@gmail.com\>
wrote:","On    3/13/07,      b   class\u003dgmail_sendername\>Joonsug    Chung    /b\>
&lt;joonsug@gmail.com; wrote:","gmail.com",,,"","",0,,"

----------------------------------------------------------------------------------------------------

,["mi",10,2,"1114def812b2d48e",0,"0","Seyoung Kim","Seyoung","mountainrun@gmail.com",[[]
,[["Joonsug","joonsug@gmail.com","1114def812b2d48e"]
,["Kenneth","kdlee@leekimlaw.com","1114def812b2d48e"]
,["Hwayong","jounghwayong@gmail.com","1114def812b2d48e"]

,["박성동","seongdong.park@gmail.com","1114def812b2d48e"]

,["박성동","seongdong.park@inquadron.com","1114def812b2d48e"]
]
,[]
]
,"Mar 13",["Joonsug Chung   joonsug@gmail.com\>"]
,["\"Kenneth    D.    Lee\"          kdlee@leekimlaw.com\>","Hwayong    Joung
jounghwayong@gmail.com\>","···성동            seongdong.park@gmail.com\>","박성동
seongdong.park@inquadron.com\>"]
,[]
,"Mar 13, 2007 5:53 PM","Re: NextWave material","That is very a challenging plan with such a
newly organized team. I wonder wh...",[]
,1,,"Tue Mar 13 2007_5:53 PM","On 3/13/07, Seyoung Kim    mountainrun@gmail.com\>
wrote:"

"gmail_sendername\"\>Seyoung Kim /b\> &lt; a href\u003d\"mailto:mountainrun@gmail.com\"
target\u003d\"_blank\"                                        onclick\u003d\"return
top.js.OpenExtLink(window,event,this)\"\>mountainrun@gmail.com /a\>; wrote:    blockquote
class\u003d\"gmail_quote\"  style\u003d\"padding-left:1ex;margin:0px  0px  0px  0.8ex;border-
left:#ccc 1px solid\"\>   That is very a challenging plan with such a newly organized team.    I
wonder who the audiences were for the presentation.  Is it for fund raising or introduction of

their future products to Korean WiMAX operators or manufacturers?  Thanks.          Seyoung
-------------------------------------------------------------------------------------------------------
,["mi",8,3,"11152a33759bee72",0,"0","Joonsug Chung","Joonsug","joonsug@gmail.com",[[]
,[["me","mountainrun@gmail.com","11152a33759bee72"]
,["Kenneth","kdlee@leekimlaw.com","11152a33759bee72"]
,["Hwayong","jounghwayong@gmail.com","11152a33759bee72"]
,["박성동","seongdong.park@gmail.com","11152a33759bee72"]
,["박성동","seongdong.park@inquadron.com","11152a33759bee72"]
]
,[]
]
,"3:48 pm",["Seyoung Kim    mountainrun@gmail.com\>"]
,["\"Kenneth    D.    Lee\"          kdlee@leekimlaw.com\>","Hwayong        Joung
jounghwayong@gmail.com\>","···성동              seongdong.park@gmail.com\>","박성동
seongdong.park@inquadron.com\>"]
,[]
,[]
,"Mar 14, 2007 3:48 PM","Re: NextWave material","",[]
,1,,,"Wed Mar 14 2007_3:48 PM","On 3/14/07, Joonsug Chung    joonsug@gmail.com\>
wrote:","On    3/14/07,      b  class\u003dgmail_sendername\>Joonsug    Chung    /b\>
&lt;joonsug@gmail.com;                          wrote:","gmail.com",,,"","",0,,"
824bee920703141548l5fb4e5deme7cbf76c2ff4475c@mail.gmail.com\>",1173912500000,,0,"In
reply to \"NextWave material\"",0]
,["mb"," Dear Dr. Kim,        I did not ask them specifics since there were other people together
where I was cautious about showing too much interest in the presence of other people at my
current work.      I will try to find some information about what they have been up to in Korea last
February.     BR br\>",1]
,["mb"," span class\u003dsg\>Joonsug br\> br\>   ",1]
-------------------------------------------------------------------------------------------------------

,["mi",9,19,"110f4731c834d444",0,"0","Joonsug Chung","Joonsug","joonsug@gmail.com",[[]
,[["정화용","jounghwayong@gmail.com","110f4731c834d444"]
,["me","mountainrun@gmail.com","110f4731c834d444"]
,["Kenneth","kdlee@leekimlaw.com","110f4731c834d444"]
]
,[]
]
,"Feb        24",["정화용        \u003cjounghwayong@gmail.com\>","Seyoung        Kim
\u003cmountainrun@gmail.com\>","\"Kenneth D. Lee\" \u003ckdlee@leekimlaw.com\>"]
,[]
,[]
,"Feb 24, 2007 8:51 AM","Re: Meeting Mr. Yongmin Kim on Thu for potential investment","Dear
gents, I talked with Duk-Yong Kim, President of KMW and my very close co...",[]
,1,,,"Sat Feb 24 2007_8:51 AM","On 2/24/07, Joonsug Chung \u003cjoonsug@gmail.com\>
wrote:"
-------------------------------------------------------------------------------------------------------

,["mi",10,24,"110fd6fa1dcae783",0,"0","Joonsug Chung","Joonsug","joonsug@gmail.com",[[]
,[["Kenneth","kdlee@leekimlaw.com","110fd6fa1dcae783"]
,["정화용","jounghwayong@gmail.com","110fd6fa1dcae783"]
,["me","mountainrun@gmail.com","110fd6fa1dcae783"]
]

,[]
]
,"Feb 26",["\"Kenneth D. Lee\" \u003ckdlee@leekimlaw.com\>"]
,["정화용                    \u003cjounghwayong@gmail.com\>","Seyoung        Kim
\u003cmountainrun@gmail.com\>"]
,[]
,[]
,"Feb 26, 2007 2:44 AM","Re: Meeting Mr. Yongmin Kim on Thu for potential investment","Dear
Dr. Kim, Ken, KMW meeting will happen only on 3/2 Fri due to no other av...",[]
,1,,,"Mon Feb 26 2007_2:44 AM","On 2/26/07, Joonsug Chung \u003cjoonsug@gmail.com\>
wrote:"
----------------------------------------------------------------------------------------------

,["mi",10,7,"1112c4b13540fa8a",0,"0","Seyoung Kim","Seyoung","mountainrun@gmail.com",[[]
,[["Joonsug","joonsug@gmail.com","1112c4b13540fa8a"]
]
,[]
]
,"Mar 7",["Joonsug Chung \u003cjoonsug@gmail.com\>"]
,[]
,[]
,[]
,"Mar 7, 2007 4:06 AM","Re: 투자 건","정준석씨, 김덕용사장께서 관심을 가지시면 KMW 의
장래 새로운 사업분야를 개척하는 데 응용할 수 있을텐데 좋은 결과가 있기를 기대합니다.
김세영",[]
,1,,,"Wed Mar 7 2007_4:06 AM","On 3/7/07, Seyoung Kim \u003cmountainrun@gmail.com\>
wrote:"
----------------------------------------------------------------------------------------------

,["110fbd8aa55e8922",0,0,"Feb                                          25","<span
id\u003d\"_upro_mountainrun@gmail.com\">me</span>,                    <span
id\u003d\"_upro_YC.Kim@nsc.com\">YC</span>      (3)","<b>&raquo;</b> ","김세영
입니다.", 김용‥씨, 소식 감사합니다. 한국시간으로 화요일 아침 10 시에 전화
,"","110fbc8a2449197a",0,"Sun Feb 25 2007_6:02 PM",0,"",0,0,1]
----------------------------------------------------------------------------------------------

,["1110318e11ceed28",0,0,"Feb                                          26","<span
id\u003d\"_upro_mountainrun@gmail.com\">me</span>,                    <span
id\u003d\"_upro_joonsug@gmail.com\">Joonsug</span>  (3)","<b>&raquo;</b> ","김용춘
NS 지사장","방금 연락이 되었고요, 내일 점심때 DNT 라는 회사의 김광선사장 이라는
,"","11101a678369ee2b",0,"Mon Feb 26 2007_9:22 PM",0,"",0,0,1]
----------------------------------------------------------------------------------------------

,["mi",10,2,"11108ab02dbe0e88",0,"0","Joonsug Chung","Joonsug","joonsug@gmail.com",[[]
,[["me","mountainrun@gmail.com","11108ab02dbe0e88"]
,["kdlee","kdlee@leekimlaw.com","11108ab02dbe0e88"]
,["정화용","jounghwayong@gmail.com","11108ab02dbe0e88"]
,["seongdong.park","seongdong.park@gmail.com","11108ab02dbe0e88"]
]
,[]
]
,"Feb 28",["Seyoung Kim \u003cmountainrun@gmail.com\>"]

,["kdlee@leekimlaw.com","정화용
\u003cjounghwayong@gmail.com\>","seongdong.park@gmail.com"]
,[]
,[]
,"Feb 28, 2007 6:04 AM","Re: 투자 건","김박사님, 김훈선배는 내일이라도 바로 연·드리고
최대한 빨리 찾아뵙겠습니다. 말씀하신대로 김용춘사장님을 여의· 사무실로 오늘 점심때
찾아뵈...",[]
,1,,,"Wed Feb 28 2007_6:04 AM","On 2/28/07, Joonsug Chung \u003cjoonsug@gmail.com\>
wrote:"

**ENGLISH
Translation**

,["mi",10,1,"110e713ebfb3f284",0,"0","Seyoung Kim","Seyoung","mountainrun@gmail.com",[[]

,[["Hwayong Joung","jounghwayong@gmail.com","110e713ebfb3f284"]
,"Feb 21",["Hwayong Joung  jounghwayong@gmail.com\>"]
,"Feb 21, 2007 6:32 PM","Compensation","Dear Dr. Joung, how are you.  Here's an opinion about aforementioned members' yearly salary and Stock Option you've told me yesterday. Kangmin Lee : $68,000, 150...",[]
From:  /font\>  /b\>  font face\u003d\"Tahoma\"  size\u003d\"2\"\>  span  lang\u003d\"EN-US\"  style\u003d\"font-size:10pt;font-family:Tahoma\"\>          Seyoung      Kim    [mailto:    a href\u003d\"mailto:mountainrun@gmail.com\"  target\u003d\"_blank\"  onclick\u003d\"return top.js.OpenExtLink(window,event,this)\"\>mountainrun@gmail.com  /a\>]   br\>  b\>  span style\u003d\"font-weight:bold\"\>Sent:  /b\>  Thursday, February 22, 2007 10:32 AM  br\>  b\>  span style\u003d\"font-weight:bold\"\>To:       /b\>        /font\>  font  size\u003d\"2\"\>  span style\u003d\"font-size:10pt\"\>Hwayong  Joung   /font\>  font  face\u003d\"Tahoma\"  size\u003d\"2\"\>  span lang\u003d\"EN-US\"  style\u003d\"font-size:10pt;font-family:Tahoma\"\>  br\>  b\>  span style\u003d\"font-weight:bold\"\>Subject:  /b\>  Compensation  /font\>        /p\>  ",1]
,["mb"," ",1]
,["mb","  span  class\u003d\q\>    p\>  font  face\u003d\"Gulim\"  size\u003d\"3\"\>  span lang\u003d\"EN-US\"    style\u003d\"font-size:12pt\"\>        /font\>  /p\>          p\>  font face\u003d\"Gulim\"  size\u003d\"3\"\>  span style\u003d\"font-size:12pt\"\>Dr.Joung ,   /font\>  /p\>        p\>  font  face\u003d\"Gulim\"  size\u003d\"3\"\>  span  lang\u003d\"EN-US\"  style\u003d\"font-size:12pt\"\>    /font\>  /p\>        p\>  font face\u003d\"Gulim\"  size\u003d\"3\"\>  span style\u003d\"font-size:12pt\"\>Hi  .   /font\>  /p\>        p\>  font face\u003d\"Gulim\"  size\u003d\"3\"\>  span style\u003d\"font-size:12pt\"\>  Here's an opinion about aforementioned members' salary and Stock Option you've told me yesterday.    /font\>  /p\>  p\>  font face\u003d\"Gulim\"    size\u003d\"3\"\>  span  lang\u003d\"EN-US\"  style\u003d\"font-size:12pt\"\>    /font\>  /p\>  p\>  font face\u003d\"Gulim\"  size\u003d\"3\"\>  span style\u003d\"font-size:12pt\"\>Lee  /font\>·Min  :  $68,000,  150,000 Shares  /p\>        p\>  font  face\u003d\"Gulim\"  size\u003d\"3\"\>  span  style\u003d\"font-size:12pt\"\>Jinyoung Park  /font\>   :  $55,000,  150,000 Shares  /p\>         p\>  font face\u003d\"Gu-\"  size\u003d\"3\"\>  span style\u003d\"font-size:12pt\"\>Kiyoung Kwak  /font\>  :  $40,000, 120,000 Shares  /p\>   p\>  font face\u003d\"Gulim\"  size\u003d\"3\"\>  span style\u003d\"font-size:12pt\"\>Jongok Lee  /font\>  :  $65,000,  150,000 Shares  /p\>     p\>  font face\u003d\"Gulim\"  size\u003d\"3\"\>  span  lang\u003d\"EN-US\"  style\u003d\"font-size:12pt\"\>    /font\>  /p\>      p\>  font face\u003d\"Gulim\"  size\u003d\"3\"\>  span  style\u003d\"font-size:12pt\"\>.   If the company starts to run smoothly, we want to compensate well above the Market Value, but for now, we have determined to pay the same based on current company's yearly salary, and pay the same when you move plus some Alpha in parallel translation.   Depending on individuals, this might not be sufficient, but we're trying to do best according to company's situations.   I wish you would focus on our company future growth potential.   /font\>  /p\>        p\>  font face\u003d\"Gulim\"   size\u003d\"3\"\>  span  lang\u003d\"EN-US\"   style\u003d\"font-size:12pt\"\>    /font\>",1]
,["mb","  /p\>        p\>  font face\u003d\"Gulim\"  size\u003d\"3\"\>  span  style\u003d\"font-size:12pt\"\>  above mentioned Stock Option applies to the first one.   Residual Shares will be distributed within this year, and there will be an average of additional 80,000 shares of Stock Option per person.   If everything follows according to plan, differences and above figures won't have much meaning.   Furthermore, above currency is in $ for the convenience, but in actual (proper) Job Offer, we will use □.   If you have different opinions, please let me know.   And.. Stock Option Price has many variables.   I heard last time that it's proper at 15-20 cents per share.   I believe, in my knowledge, that this difference in price possibly can be repaid individually to you later...</font\>  /p\>        p\>  font face\u003d\"Gulim\"  size\u003d\"3\"\>  span lang\u003d\"EN-US\" style\u003d\"font-size:12pt\"\>    /font\>  /p\>       ",1]
,["mb","      p\>  font  face\u003d\"Gulim\"  size\u003d\"3\"\>  span  style\u003d\"font-size:12pt\"\>hope a little problem with stopped Funding situation as of now gets resolved well. I will be leaving to New Jersey tonight and I will be back in March 7.    /font\>  /p\>  ",1]

,["mb"," span class\u003dq\>        p\> font face\u003d\"Gulim\" size\u003d\"3\"\> span lang\u003d\"EN-US\"  style\u003d\"font-size:12pt\"\>       /font\> /p\>        p\> font face\u003d\"Gulim\" size\u003d\"3\"\> span style\u003d\"font-size:12pt\"\>   When I was out for a brief walk this afternoon, N company's General Manager and CTO, Mark Kelly left a message at the President, Salami's request, that he wants to have a talk with us.   I did give him a return call, but couldn't get hold of him, and still waiting for his call.   anyway, since I leave tonight, I'll call from New Jersey.      /font\> /p\>       p\> font face\u003d\"Gulim\" size\u003d\"3\"\> span lang\u003d\"EN-US\"  style\u003d\"font-size:12pt\"\>       /font\> /p\>        p\> font face\u003d\"Gulim\" size\u003d\"3\"\> span style\u003d\"font-size:12pt\"\>Little by little, things are making sense, and I believe everything will be all right.   In my guess, these might have some connections to recent happening that P company received an upsetting answer from N company.   Cheers.   First of all, let me cheer up first,   /font\> /p\>       p\> font face\u003d\"Gulim\"  size\u003d\"3\"\> span lang\u003d\"EN-US\"   style\u003d\"font-size:12pt\"\>       /font\> /p\>       p\> font face\u003d\"Gulim\" size\u003d\"3\"\> span style\u003d\"font-size:12pt\"\>Seyoung Kim

-------------------------------------------------------------------------------------------------------------

,["mi",10,4,"11109d559b9f6ba2",0,"0","Kenneth D. Lee","Kenneth","kdlee@leekimlaw.com",[[]
,[["me","mountainrun@gmail.com","11109d559b9f6ba2"]




]
,[]
]
,"Feb 28",["Seyoung Kim \u003cmountainrun@gmail.com\>"]
,[]
,[]
,[]
,"Feb 28, 2007 11:31 AM","Re: Investment Case", "We should avoid any mention of Nextwave, especially to anyone in Korea, for t...",[]
,1,,,"Wed Feb 28 2007_11:31 AM","On 2/28/07, Kenneth D. Lee \u003ckdlee@leekimlaw.com\> wrote:"

-------------------------------------------------------------------------------------------------------------

,["mi",10,1,"1114dc41d2fac0c9",0,"0","Joonsug Chung","Joonsug","joonsug@gmail.com",[[]
,[["me","mountainrun@gmail.com","1114dc41d2fac0c9"]
,["Kenneth","kdlee@leekimlaw.com","1114dc41d2fac0c9"]
,["Hwayong","jounghwayong@gmail.com","1114dc41d2fac0c9"]
,["Seongdong Park","seongdong.park@gmail.com","1114dc41d2fac0c9"]
,["Seongdong Park","seongdong.park@inquadron.com","1114dc41d2fac0c9"]
]
,[]
]
,"Mar    13",["Seyoung    Kim    mountainrun@gmail.com\>","\"Kenneth    D.    Lee\"  kdlee@leekimlaw.com\>","Hwayong Joung   jounghwayong@gmail.com\>"," Seongdong Park  seongdong.park@gmail.com\>"," Seongdong Park    seongdong.park@inquadron.com\>"]
,[]
,[]
,[]
,"Mar 13, 2007 5:06 PM","Next\Wave material","Dear all, One ex-Nokia person, now with the NextWave    Broadband,    visited    Seoul...",[["0.1","NW_Overview_Feb 07.pdf","application/pdf",659801,-1,"f_ez90injd"]

]
,1,,,"Tue Mar 13 2007_5:06 PM","On 3/13/07, Joonsug Chung   joonsug@gmail.com\>
wrote:","On   3/13/07,    b   class\u003dgmail_sendername\>Joonsug    Chung   /b\>
&lt;joonsug@gmail.com; wrote:","gmail.com",,,"","",0,,"

-------------------------------------------------------------------------------------------------------------------

,["mi",10,2,"1114def812b2d48e",0,"0","Seyoung Kim","Seyoung","mountainrun@gmail.com",[[]
,[["Joonsug","joonsug@gmail.com","1114def812b2d48e"]
,["Kenneth","kdlee@leekimlaw.com","1114def812b2d48e"]
,["Hwayong","jounghwayong@gmail.com","1114def812b2d48e"]
,[" Seongdong Park ","seongdong.park@gmail.com","1114def812b2d48e"]
,[" Seongdong Park ","seongdong.park@inquadron.com","1114def812b2d48e"]
]
,[]
]
,"Mar 13",["Joonsug Chung   joonsug@gmail.com\>"]
,["\"Kenneth     D.    Lee\"      kdlee@leekimlaw.com\>","Hwayong    Joung
jounghwayong@gmail.com\>","··Seongdong    seongdong.park@gmail.com\>","  Seongdong
Park   seongdong.park@inquadron.com\>"]
,[]
,[]
,"Mar 13, 2007 5:53 PM","Re: NextWave material","That is very a challenging plan with such a
newly organized team. I wonder wh...",[]
,1,,,"Tue Mar 13 2007_5:53 PM","On 3/13/07, Seyoung Kim   mountainrun@gmail.com\>
wrote:"

"gmail_sendername\"\>Seyoung Kim /b\> &lt; a href\u003d\"mailto:mountainrun@gmail.com\"
target\u003d\"_blank\"                                            onclick\u003d\"return
top.js.OpenExtLink(window,event,this)\"\>mountainrun@gmail.com /a\>; wrote:   blockquote
class\u003d\"gmail_quote\"  style\u003d\"padding-left:1ex;margin:0px  0px  0px  0.8ex;border-
left:#ccc 1px solid\"\>   That is very a challenging plan with such a newly organized team.   I
wonder who the audiences were for the presentation.  Is it for fund raising or introduction of
their future products to Korean WiMAX operators or manufacturers?  Thanks.       Seyoung

-------------------------------------------------------------------------------------------------------------------

,["mi",8,3,"11152a33759bee72",0,"0","Joonsug Chung","Joonsug","joonsug@gmail.com",[[]
,[["me","mountainrun@gmail.com","11152a33759bee72"]
,["Kenneth","kdlee@leekimlaw.com","11152a33759bee72"]
,["Hwayong","jounghwayong@gmail.com","11152a33759bee72"]
,[" Seongdong Park ","seongdong.park@gmail.com","11152a33759bee72"]
,[" Seongdong Park ","seongdong.park@inquadron.com","11152a33759bee72"]
]
,[]
]
,"3:48 pm",["Seyoung Kim   mountainrun@gmail.com\>"]
,["\"Kenneth     D.    Lee\"      kdlee@leekimlaw.com\>","Hwayong    Joung
jounghwayong@gmail.com\>","··Seongdong    seongdong.park@gmail.com\>","  Seongdong
Park   seongdong.park@inquadron.com\>"]
,[]
,[]
,"Mar 14, 2007 3:48 PM","Re: NextWave material","",[]
,1,,,"Wed Mar 14 2007_3:48 PM","On 3/14/07, Joonsug Chung   joonsug@gmail.com\>
wrote:","On    3/14/07,     b   class\u003dgmail_sendername\>Joonsug    Chung   /b\>
&lt;joonsug@gmail.com;                              wrote:","gmail.com",,,"","",0,,"
824bee92070314154815fb4e5deme7cbf76c2ff4475c@mail.gmail.com\>",1173912500000,,0,"In
reply to \"NextWave material\"",0]
,["mb"," Dear Dr. Kim,      I did not ask them specifics since there were other people together

where I was cautious about showing too much interest in the presence of other people at my
current work.    I will try to find some information about what they have been up to in Korea last
February.    BR br\>",1]
,["mb"," span class\u003dsg\>Joonsug br\> br\>    ",1]
-------------------------------------------------------------------------------------------------------------

,["mi",9,19,"110f4731c834d444",0,"0","Joonsug Chung","Joonsug","joonsug@gmail.com",[[]
,[["Hwayong Joung","jounghwayong@gmail.com","110f4731c834d444"]
,["me","mountainrun@gmail.com","110f4731c834d444"]
,["Kenneth","kdlee@leekimlaw.com","110f4731c834d444"]
]
,[]
]
,"Feb      24",["Hwayong      Joung\u003cjounghwayong@gmail.com\>","Seyoung      Kim
\u003cmountainrun@gmail.com\>","\"Kenneth D. Lee\" \u003ckdlee@leekimlaw.com\>"]
,[]
,[]
,[]
,"Feb 24, 2007 8:51 AM","Re: Meeting Mr. Yongmin Kim on Thu for potential investment", "Dear
gents, I talked with Duk-Yong Kim, President of KMW and my very close co...",[]
,1,,,"Sat Feb 24 2007_8:51 AM","On 2/24/07, Joonsug Chung \u003cjoonsug@gmail.com\>
wrote:"
-------------------------------------------------------------------------------------------------------------

,["mi",10,24,"110fd6fa1dcae783",0,"0","Joonsug Chung","Joonsug","joonsug@gmail.com",[[]
,[["Kenneth","kdlee@leekimlaw.com","110fd6fa1dcae783"]
,[" Hwayong Joung ","jounghwayong@gmail.com","110fd6fa1dcae783"]
,["me","mountainrun@gmail.com","110fd6fa1dcae783"]
]
,[]
]
,"Feb 26",["\"Kenneth D. Lee\" \u003ckdlee@leekimlaw.com\>"]
,["Hwayong      Joung      \u003cjounghwayong@gmail.com\>","Seyoung      Kim
\u003cmountainrun@gmail.com\>"]
,[]
,[]
,"Feb 26, 2007 2:44 AM","Re: Meeting Mr. Yongmin Kim on Thu for potential investment", "Dear
Dr. Kim, Ken, KMW meeting will happen only on 3/2 Fri due to no other av...",[]
,1,,,"Mon Feb 26 2007_2:44 AM","On 2/26/07, Joonsug Chung \u003cjoonsug@gmail.com\>
wrote:"
-------------------------------------------------------------------------------------------------------------

,["mi",10,7,"1112c4b13540fa8a",0,"0","Seyoung Kim","Seyoung","mountainrun@gmail.com",[[]
,[["Joonsug","joonsug@gmail.com","1112c4b13540fa8a"]
,[]]
,"Mar 7",["Joonsug Chung \u003cjoonsug@gmail.com\>"]
,[]
,[]
,[]
,"Mar 7, 2007 4:06 AM","Re: Investment Case", "Dear Joonsug Chung, if president Deukyong
Kim becomes interested, it will open the door for us to develop the future business dealings with
KMW.    Hope you get a good result.    Seyoung Kim ",[]
,1,,,"Wed Mar 7 2007_4:06 AM","On 3/7/07, Seyoung Kim \u003cmountainrun@gmail.com\>
wrote:"
-------------------------------------------------------------------------------------------------------------

,["110fbd8aa55e8922",0,0,"Feb                                                  25","<span
id\u003d\"_upro_mountainrun@gmail.com\">me</span>,                    <span
id\u003d\"_upro_YC.Kim@nsc.com\">YC</span>        (3)","<b>&raquo;</b> ","This    is
Seyoung Kim.","Yong.. Kim, thank you for your message.   Tuesday at 10 AM in Korean time,
phone
,"","110fbc8a2449197a",0,"Sun Feb 25 2007_6:02 PM",0,"",0,0,1]
--------------------------------------------------------------------------------------------------------------------------

,["1110318e11ceed28",0,0,"Feb                                                  26","<span
id\u003d\"_upro_mountainrun@gmail.com\">me</span>,                    <span
id\u003d\"_upro_joonsug@gmail.com\">Joonsug</span>
(3)","<b>&raquo;</b> ","Yongchoon Kim, NS Resident Chief"," I just had reached him,
tomorrow at lunch, the president, Kwangsun Kim for a company named DNT
,"","11101a678369ee2b",0,"Mon Feb 26 2007_9:22 PM",0,"",0,0,1]
--------------------------------------------------------------------------------------------------------------------------

,["mi",10,2,"11108ab02dbe0e88",0,"0","Joonsug Chung","Joonsug","joonsug@gmail.com",[[]
,[["me","mountainrun@gmail.com","11108ab02dbe0e88"]
,["kdlee","kdlee@leekimlaw.com","11108ab02dbe0e88"]
,["Hwayong Joung","jounghwayong@gmail.com","11108ab02dbe0e88"]
,["seongdong.park","seongdong.park@gmail.com","11108ab02dbe0e88"]
,]
,[]


]
,"Feb 28",["Seyoung Kim \u003cmountainrun@gmail.com\>"]
,["kdlee@leekimlaw.com","HwayongJoung
\u003cjounghwayong@gmail.com\>","seongdong.park@gmail.com"]
,[]
,[]
,"Feb 28, 2007 6:04 AM", "Re: Investment case","Dear Dr.Kim, I will contact the elder, Hoon Kim
right away fast as tomorrow and visit him as soon as I can.   As you have told me, going to visit
the president, YongChoon Kim, at Yeoui office today at lunch time...",[]
,1,,,"Wed Feb 28 2007_6:04 AM","On 2/28/07, Joonsug Chung \u003cjoonsug@gmail.com\>
wrote:"

EXHIBIT 23

,["mi",10,1,"110fe1197996b84c",0,"0","Seyoung Kim","Seyoung","mountainrun@gmail.com",[[]

,[["정화용","jounghwayong@gmail.com","110fe1197996b84c"]

,["신춘","choonshin72@sbcglobal.net","110fe1197996b84c"]

,"Feb 26",["정화용  jounghwayong@gmail.com>"]

,["신춘  choonshin72@sbcglobal.net\>"]

,"Feb 26, 2007 5:41 AM","PCB 제작","안녕하세요. 지난 토요일 A 사 방 사장님과 만난다고 들었는데 어떻게 되었는지요? PCB Gerber File 이 준비되어 이제는 시간이 급...",[]

,1,,,"Mon Feb 26 2007_5:41 AM","On 2/26/07, Seyoung Kim  mountainrun@gmail.com\> wrote:"

Subject:        PCB               font-size:10pt\ >제작  \    >    >  \  \  \  >

face\ "굴림\"        "  font-size:12pt  >      \    >  face\ "·림\"      font-

size:12pt  >안녕하세요      >.      >  \  \  >  face\ "굴림\"      font-

size:12pt  >지난 토요일\        >  A  사  방  사장님과  만난다고  들었는데  어떻게

되었는지요      >?      >  \  \  >  face\ "굴림\"        "  font-size:12pt  >PCB

Gerber File   이 준비되어 이제는 시간이 급합니다\      >.  . Update      부탁합니다\      >.

>  \  \  >  face\"굴림\"        font-size:12pt  >·    세영\      >    >        ",1]

,["mb",      br\ ",0]

,["ce"]],"0"]·································

────────────────────────────────────────────────────────

["mi",10,2,"1110079bdc3cbaf3",0,"0","정화용","정화용","jounghwayong@gmail.com",[[]

,[["me","mountainrun@gmail.com","1110079bdc3cbaf3"]

,"Feb 26",["Seyoung Kim  mountainrun@gmail.com¥>"]

,"Feb 26, 2007 4:54 PM","RE: PCB 제작","안녕하세요? 지난 토요일 방사장님과 만나 ·· 2 시간 정도 이야기를 나누었습니다. 지금부터는 이전의 관계를 좀더 clear··게 가져가는 방향...",[]

,1,,,"Mon Feb 26 2007_4:54 PM","On 2/26/07, 정화용  jounghwayong@gmail.com¥> wrote:"

,["mb",        class\u003dq\        class\  "gmail_quote\  >On  2/26/07,    b

class\  "gmail_sendername\  >정화용      &lt; a href\  "mailto:jounghwayong@gmail.com\"

target\        "_blank\"                  onclick\        "return

top.js.OpenExtLink(window,event,this)\ >jounghwayong@gmail.com a\>&gt; wrote:   ",1]

,["mb", blockquote class\ "gmail_quote\"              1px solid\        vlink\ purple\"

link\ "blue\    \>",1]

,["mb",      class\u003dq\                  >

안녕하세요? 지난 토요· 방사장님과 만나 약 2   시간 정도 이야기· 나누었습니다.
지금부터는 이전의 관계를 좀더 clear  하게 가져가는 방향으로 이야기 되었고 다음과 같은
사항을 계··관계로서 진행하자는데 합의를 하였습니다

4   가지 조건은 Axstone   에서 요구하는 사항이라 우리 쪽에서 수락하는지의 여부는알려
주면 될 것 같습니다. 방사장의 말씀은 이 4    가지 조건을 계약서 작성하기 이전에
구두로라도 즉 이메일을 통해서라도 알려주면 거북선은 바로 진행 하겠다는 것입니다.
그리고 거··선에 대한 비용도 산출하여 알려 주겠다고 합니다. 계약서상에 명시되어야 하는

4 가지 큰 툴은 다음과 같습니다.

확실한 개발 범위

즉 Axstone 은 system   개발 업체로서 system 을 개발하고 IQI 는 baseband modem 개발 업체로서 Modem color 만을 개·· 하고 서로의 개발 범위를 넘지 않는다.

Business Model

예를 들면 Nextwave··같은 회사에 system 을 공급할 때 IQI (modem) 와 Axstone(system) 이 같이 개발하여 공급한다

Profit Sharing

IQI 가 타 system    업체에 modem chip  을 공급할 때, reference board, RF module  등을 여러 부분을 제공하게 되면 이때 Axstone   의 제품이나 know-how  가 들어 갔을 경우 Profit  을 share  한다.

IQI M&A

만약 추후에 IQI  가 타회사와 M&A 가 진행 될 경 Axstone  과의 관계를 어떻게 정리 할 것인··에 대한 고민이 필요 하고 이런 내용도 계약관계에 포함 시켰으면 함. 따라서 방사장은 아직도 염려하고 있는 것이 IQI  가 초··에 같이 개발을 진행하다 추후 system 개발 자체도 IQI  가 직접 개발을 하지 않을까에 대한 의문을 많이 가지고 있는 것 같··니다. 즉 자기들을 나중에 왕따시키지 ·겠냐는 것이지요.

그 외 현재 Axstone  이 진행하고 ··는 일들에 대해 이야기를 나누었습니다.   방사장이 회사를 유지 진행 시키기 위해 열심히 뛰어 다니는 것 같습니다.   이·· 저곳 많은 곳을 다니고 있고 system business  뿐만 아니라 PCMCIA, USB Type 의 단말 형태 제공을 위해 ODM    형태의 회사도 알아 놓고 있는 듯 합니다. 그리고 Sequance   와의 관계도 현행대로  유지 시키고 있으면 6  월~8  월 사이 In-Building solution   을 가지고 KT BMT 에 ··드시 참여 할 것이라고 합니다.

다른 이야기도 있지만 메일에 다 쓰기가 그래서 전화로 연락 드리겠습니다. 그·· 오늘도 좋은 하루 되세요 정화용

--------------------------------------------------------------------------------

,["mi",8,3,"11101240df24b486",0,"0","Seyoung Kim","Seyoung","mountainrun@gmail.com",[[]
],[["정화용","jounghwayong@gmail.com","11101240df24b486"]

,"Feb 26",["정화용  jounghwayong@gmail.com¥>"]

,"Feb 26, 2007 8:00 PM","Re: PCB 제작","",[]
,1,,"Mon Feb 26 2007_8:00 PM","On 2/26/07, Seyoung Kim   mountainrun@gmail.com¥> wrote:","On    2/26/07,    b    class¥u003dgmail_sendername¥>Seyoung   Kim &lt;mountainrun@gmail.com&gt;                 wrote:","gmail.com",,"","",0,, 9d68294f0702261900m666cf4bfwb244a4b71ff2a45f@mail.gmail.com¥>",1172545211000,,0,"In reply to ¥"PCB 제작¥"",0]
,["mb",  ¥>  정화용 박사님, 방사장님과 많은 이야기 하시느라 수고 하셨고 조금 전 전화 통화한 대로 원만하· 합의되어 거북선 PCB 조립이 시급히 진행되기를 기대합니다. 4-5 월 사이 N 사 혹은 다른 Potential Customer 에게 우리의 가능성을 보여주는 것이 아주 중·합니다 (물론 제한된 장소에서 보여주는 것이지만). 이를 성공시키면 A 사··게도 아주 좋은 기회가 될 것입니다. 현재로서는 방사장께서 우리를 이해하고 믿으시는데 쉽지는

않겠지만 시간이 해결해 주리라 믿습니다.  그리고 KTD 로 부터도 좋은 소식이 있기를
·대합니다.  소식 나오는대로 연락 부탁드립니다. 김세영

**ENGLISH
Translation**

,["mi",10,1,"110fe1197996b84c",0,"0","Seyoung Kim","Seyoung","mountainrun@gmail.com",[[]
,[["Hwayong Joung","jounghwayong@gmail.com","110fe1197996b84c"]
,["choonshin" choonshin72@sbcglobal.net","110fe1197996b84c"]
"Feb 26", [ Hwayong Joung   jounghwayong@@gmail.com>"]
"Choonshin" choonshin 72@sbcglobal.net>"],
"Feb 26",[" 7 5:41 AM","PCB development","Hi. I thought I heard you're meeting A company's
president Mr. Bang.   How did it go?   PCB Gerber File is ready so now time's running out...",[]
,1,,,"Mon Feb 26 2007_5:41 AM","On 2/26/07, Seyoung Kim   mountainrun@gmail.com\>
wrote:"
Subject:         PCB           font-size:10pt\ >Development   \   >   \   \   \   >
face\ "Gulim\"        "  font-size:12pt\ >         \   >   face\ "·lim\"     font-
size:12pt\ >Hi\     >.       >   \   \   >   face\ "Gulim\"        font-size:12pt\ >last
Saturday\     > I heard you were meeting with A company president Mr. Band.   How did it
go?\     >?     >   \   \   >   face\ "Gulim\"     "  font-size:12pt\ >PCB Gerber File
is ready.   And now we're in a hurry      >.   Update   please\     >.     >   \   \   >
face\ "Gulim\"        font-size:12pt\ >··   Seyoung\     >     >        ",1]
,["mb",    br\ ",0]
,["ce"]],"0"]·································

--------------------------------------------------------------------------------

["mi",10,2,"1110079bdc3cbaf3",0,"0","    Hwayong     Joung     ","    Hwayong
Joung","jounghwayong@gmail.com",[[]
,[["me","mountainrun@gmail.com","1110079bdc3cbaf3"]
,"Feb 26",["Seyoung Kim   mountainrun@gmail.com¥>"]
,"Feb 26, 2007 4:54 PM","RE: PCB Development","Hi? I met President Bang last Saturday ..
we talked for about 2 hours.   Now on, past relationship need more clear ...",[]
,1,,,"Mon Feb 26 2007_4:54 PM","On 2/26/07, Hwayong Joung   jounghwayong@gmail.com¥>
wrote:"
,["mb",    class\u003dq\    class\ "gmail_quote\ >On 2/26/07,   b class\ "gmail_sendername\ >
Hwayong   Joung     &lt; a href\ "mailto:jounghwayong@gmail.com\"   target\ "_blank\"
onclick\ "return   top.js.OpenExtLink(window,event,this)\  >jounghwayong@gmail.com  a>&gt;
wrote:   ",1]
,["mb",   blockquote class\ "gmail_quote\"            1px solid\            vlink\ "purple\"
link\ "blue\     \>",1]
,["mb",    class\u003dq\                  >
Hi? I met President Bang last Saturday ..  we talked for about 2 hours.   Now on, past
relationship need more clear direction, and we agree on following terms
4 conditions are Axstone's request.   We just need to give them answer whether or not we
would accept.   President Bang's saying, before we proceed with the contract with these 4
terms, by words, that is emailing, he will immediately start processing Geobuksun (Turtle Ship).
And he told me he would figure out the cost involved with Geobuksun.   4 big main points that
should be specified in the contract is as follows.
Specified Development Area
That is, Axstone is system development company and develops system.   IQI is baseband
modem development company and only does Modem color..   and they wouldn't go beyond
their own development area and would not invade another's developing area
Business Model
For instance, when providing system to a company like Nextwave, IQI (modem) and
Axstone(system) will develop and provide together.

Profit Sharing
When IQI provides modem chips to different system company, if they provide reference board,
RF module and many parts, if Axstone's product or know-how is included, share the profit.
IQI M&A
If in later day, IQI and other company proceeds M&A, how to end relationship with Axstone..
needs to be considered, and these matters to be included in the terms of agreement.   Hence, I
am guessing president Bang's concern is IQI's starting project together at the beginning and
later decides to develop system independently.   That is, he is wondering if they would later

make them loners.

Other than that, we've talked about Axstone's current projects.   President Bang seemed to be busy to keep company under control and going.   He's visiting many places.   Not only system business, but to provide PCMCIA, USB Types of terminal, he's making connections with ODM related businesses. And if he can maintain the relationship with Sequance as it is, he will surely participate in KT BMT by June to August with In-Building solution

I have other stories to tell, but little too much to write all in email.   So, I'll call you.   Well, have a nice day  Hwayong Joung

---------------------------------------------------------------------------------------------------------------------

,["mi",8,3,"11101240df24b486",0,"0","Seyoung Kim","Seyoung","mountainrun@gmail.com",[[]
,[[" Hwayong Joung ","jounghwayong@gmail.com","11101240df24b486"]
,"Feb 26",[" Hwayong Joung   jounghwayong@gmail.com¥>"]
,"Feb 26, 2007 8:00 PM","Re: PCB Development","",[]
,1,,,"Mon Feb 26 2007_8:00 PM","On 2/26/07, Seyoung Kim   mountainrun@gmail.com¥> wrote:","On     2/26/07,     b     class¥u003dgmail_sendername¥>Seyoung     Kim &lt;mountainrun@gmail.com&gt;                                                    wrote:","gmail.com",,,"","",0,, 9d68294f0702261900m666cf4bfwb244a4b71ff2a45f@mail.gmail.com¥>",1172545211000,,0,"In reply to ¥"PCB Development¥"",0]
,["mb",   ¥> Dear Dr.Hwayong Joung, good job discussing many things with Mr..Bang.   As we have discussed over the phone about the agreements, I hope it goes well with contract, and I expect to see the immediate processing in assembly of Geobuksun PCB soon.   It is very important to show our potential to N company or other potential Customers between April and May.   (of course, the presentation will be conducted at a specified place).   If we make a success, it will be a good opportunity for A company, too.   For now, the president, Mr. Bang seems to understand and believe us, I believe it is not an easy job but, time will solve it all. And I also hope to hear good news from KTD.   Please do me a favor by giving contact as soon as you get the news.
Seyoung Kim

EXHIBIT 24



**POSDATA**

276-2, Seohyeon-dong, Bundang-gu
Seongnam, Kyeonggi-do 463-775, KOREA
(Tel) +82.31.779.2114, (Fax) +82.31.779.2300

김 세영 님께:

포스데이타㈜는 귀하와 유지하고 있던 고용계약 관계를 2007년 3월 22일부로 종료합니다. 아울러 귀하와 2006년10월 27일 체결한 합의서도 같은 일자로 해지함을 통보합니다.

포스데이타㈜는 2007년 3월 22일 18:00까지 귀하가 보유한 컴퓨터, 자동차 등 회사 재산을 미국연구소 사무실에 반납하고, 사용중인 회사 명의의 임대 아파트에서 퇴거할 것을 요청합니다.

2007년 3월 21일

포스데이타㈜ 경영지원본부장

상무이사 조 재 구

**ENGLISH
Translation**



**POSDATA**

276-2, Seohyeon-dong, Bundang-gu
Seongnam, Kyeonggi-do 463-775, KOREA
(Tel) +82.31.779.2114, (Fax) +82.31.779.2300

Dear, Mr. Seyoung Kim,

Posdata (Inc) terminates employment relationship with you as of March 22, 2007.  Furthermore, this is to notify you that the agreement made with you on October 27, 2006 is also nullified on the same date.

Posdata (Inc) is hereby requesting you to return the company's properties, such as computers, automobiles, and etc., in your possession to the office of American laboratory by March 22, 2007, at 18:00 and to vacate from company owned rental apartment.

March 21, 2007

Posdata (Inc) Headquarter of operation Support

Managing Director,  Jae Gu Cho

EXHIBIT 25

# EXHIBIT 25

# DOCUMENT SUBMITTED UNDER SEAL

EXHIBIT 26

# EXHIBIT 26

# DOCUMENT SUBMITTED UNDER SEAL

EXHIBIT 27

# Mutual Non-Disclosure Agreement

This Mutual Non-Disclosure Agreement ("Agreement") is made and entered into, as of July 28, 2006, by and between GCT Semiconductor, Inc.("GCT"), having a principal place of business 2121 Ringwood Avenue, San Jose, California 95131, USA, and POSDATA Co. Ltd ("POSDATA"), having a place of business at 276-2, Seohyeon-dong, Bundang-gu Seongnam-si, Kyeonggi-do 463-775, Korea.

1.  Purpose. The parties hereto desire to enter into an "Agreement" to assure the protection and preservation of certain confidential information intended to be disclosed or made available by each party to each other party in connection with the transaction between the parties.

2.  Definition of Confidential Information.  "Confidential Information" as used in this Agreement shall mean any and all technical and non-technical information including patent, copyright, trade secret, and proprietary information, techniques, sketches, drawings, models, inventions, know-how, processes, apparatus, equipment, algorithms, software programs, software source documents, and formula related to the current, future and proposed products and services of each of the parties, and includes, without limitation, each party's respective information concerning research, experimental work, development, design details and specifications, engineering, financial information, procurement requirements, purchasing, manufacturing, customer lists, business forecasts, sales and merchandising, and marketing plans and information. "Confidential Information" also includes proprietary or confidential information of any third party who may disclose such information to either party in the course of the other party's business. Any information disclosed by the disclosing party ("Discloser") will be considered Confidential Information of Discloser by the receiving party ("Recipient"), only if such information (a) if provided as information fixed in a tangible medium of expression, is conspicuously designated as "Confidential" or "Proprietary", or (b) if provided orally, is identified as confidential at the time of disclosure and confirmed in writing within thirty (30) days of disclosure.

3.  Nondisclosure and Nonuse Obligation. Each of the parties, as Recipient, agrees that such Recipient will not use, disseminate, or in any way disclose any Confidential Information of the other party, as Discloser, to any person, firm or business, except to the extent necessary for internal evaluations in connection with negotiations, discussions, and consultations with personnel or authorized representatives of such Discloser, and for any other purpose such Discloser may hereafter authorize in writing. Furthermore, the existence of any business negotiations, discussions, consultations or agreements in progress between the parties shall not be released to any form of public media without written approval of both parties. Each of the parties, as Recipient, agrees that such Recipient shall treat all Confidential Information of the other party, as Discloser, with the same degree of care as such Recipient accords to such Recipient's own Confidential Information, but in no case less than reasonable care. Each of the parties, as Recipient, which is not an individual agrees that such Recipient shall disclose Confidential Information of the other party, as Discloser, only to those of such Recipient's employees who need to know such information, and such Recipient certifies that

AU/4006289.1
9999998-91028

문서에 대한 소유권은 포스데이타에 있으며,
수정,변경 및 복사할 수 없습니다.

such Recipient employees have previously agreed, either as a condition to employment or in order to obtain the Confidential Information of the Discloser, to be bound by terms and conditions substantially similar to those terms and conditions applicable to such Recipient under this Agreement. Each of the parties, as Recipient, shall immediately give notice to the other party, as Discloser, of any unauthorized use or disclosure of Discloser's Confidential Information. Each of the parties, as Recipient, agrees to assist the other party, as Discloser, in remedying any such unauthorized use or disclosure of Discloser's Confidential Information.

4. <u>Exclusions from Nondisclosure and Nonuse Obligations</u>. The obligations under Paragraph 3 ("Nondisclosure and Nonuse Obligations") of each of the parties, as Recipient, with respect to any portion of the Confidential Information of the other party, as Discloser, shall not apply to such portion that such Recipient can document:  (a) was in the public domain at or subsequent to the time such portion was communicated to such Recipient by such Discloser through no fault of such Recipient, (b) was rightfully in such Recipient's possession free of any obligation of confidence at or subsequent to the time such portion was communicated to such Recipient by such Discloser, (c) was developed by employees or agents of such Recipient independently of and without reference to any information communicated to such Recipient by such Discloser, or (d) was communicated by such Discloser to an unaffiliated third party free of any obligation of confidence. A disclosure by each of the parties, as Recipient, of Confidential Information of the other party, as Discloser, either (a) in response to a valid order by a court or other governmental body, (b) otherwise required by law, or (c) necessary to establish the rights of either party under this Agreement, shall not be considered to be a breach of this Agreement by such Recipient or a waiver of confidentiality for other purposes; provided, however, such Recipient shall provide prompt prior written notice thereof to such Discloser to enable such Discloser to seek a protective order or otherwise prevent such disclosure.

5. <u>Ownership and Return of Confidential Information and Other Materials</u>. All Confidential Information of each of the parties, as Discloser, and any Derivatives thereof whether created by such Discloser or the other party, as Recipient, shall remain the property of Discloser, and no license or other rights to such Discloser's Confidential Information or Derivatives is granted or implied hereby.  For purposes of this Agreement, "Derivatives" shall mean: (a) for copyrightable or copyrighted material, any translation, abridgment, revision or other form in which an existing work may be recast, transformed or adapted; (b) for patentable or patented material, any improvement thereon; and (c) for material which is protected by trade secret, any new material derived from such existing trade secret material, including new material which may be protected under copyright, patent and/or trade secret laws.  All materials (including, without limitation, documents, drawings, models, apparatus, sketches, designs, lists and all other tangible media of expression) furnished by each of the parties, as Discloser, to the other party, as Recipient, and which are designated in writing to be the property of such Discloser, shall remain the property of such Discloser.  At such Discloser's request and no later than Seven (7) days after such request, such Recipient shall promptly destroy or deliver to such Discloser, at such Discloser's option, (a) all materials furnished to such Recipient by such Discloser, (b) all tangible media of expression in such Recipient's

AU\4006289.1
9999998-91028

문서에 대한 소유권은 포스데이타에 있으며,
수정,변경 및 복사할 수 없습니다.

possession or control to the extent that such tangible media incorporate any of such Discloser's Confidential Information, and (c) written certification of such Recipient's compliance with such Recipient's obligations under this sentence.

6. <u>Independent Development</u>. Nothing in this Agreement shall prohibit or restrict either party's right to design, develop, use, market or acquire products or services similar to or competitive with those of the other party disclosed in the Confidential Information as long as such product design, development, use, marketing, or acquisition shall not thereby breach this Agreement. Each party acknowledges that the other may already possess or have developed products or services similar to or competitive with those of the other party to be disclosed in the Confidential Information.

7. <u>No License</u>. Nothing contained in this Agreement shall be construed as granting or conferring any rights by license or otherwise in any Confidential Information disclosed, or under any trademark, patent, copyright, or any other intellectual property right of either party. None of the information which may be disclosed or exchanged by the parties shall constitute any representation, warranty, assurance, guaranty or inducement by either party to the other of any kind, and, in particular, with respect to the non-infringement of trademarks, patents, copyrights, or any other intellectual property right.

8. <u>Term and Termination</u>.

   8.1 This Agreement shall become effective as of the date written above and shall expire three (3) years after the effective date, provided that Recipient's obligation duty to protect Confidential Information shall survive expiration or termination of this Agreement and shall expire two (2) years from the date of disclosure of Confidential Information.

   8.2 Upon request by Disclosing Party in writing at any time during the term of this Agreement or within thirty (30) days of expiration or termination hereof, Recipient shall promptly destroy or return to Disclosing Party all Confidential Information and copies thereof within (7) days after such request.

9. <u>Damages and Governing Law</u>.

   9.1 If and when a non-breaching party suffers damages due to a breaching party's breach of this Agreement, the breaching party's liability shall be limited to paying to the non-breaching party damages which the non-breaching party suffers, excluding indirect, incidental and consequential damages (including without limitation, loss of profit).

   9.2 This Agreement and all actions related hereto shall be governed by the laws of the State of New York without regard to the conflicts of law provisions thereof and the parties consent to the exclusive jurisdiction and venue of the state and federal courts located in the State of New York. Any dispute arising out of or in relation to this Agreement shall be finally settled by arbitration, and the decision by such arbitration shall be final and binding on the parties hereto, with prejudice to any other rights or remedies otherwise available under this Agreement or applicable laws. The arbitration shall be conducted in English and take place

AU4006289.1
9999998-91028

문서에 대한 소유권은 포스데이타에 있으며,
수정,변경 및 복사할 수 없습니다.

in the respondent party's country in accordance with the then current rules of the International Chamber of Commerce.

10. Severability.  If any provision of this Agreement is held by a court of law to be illegal, invalid or unenforceable, (i) that provision shall be deemed amended to achieve as nearly as possible the same economic effect as the original provision, and (ii) the legality, validity and enforceability of the remaining provisions of this Agreement shall not be affected or impaired thereby.

11. Waiver; Amendment; Modification.  No term or provision hereof will be considered waived by either party, and no breach excused by either party, unless such waiver or consent is in writing signed by the party against whom such waiver or consent is asserted.  The waiver by either party of, or consent of either party to, a breach of any provision of this Agreement by the other party shall not operate or be construed as a waiver of, consent to, or excuse of any other or subsequent breach by the other party.  This Agreement may be amended or modified only by mutual agreement of authorized representatives of the parties in writing.

12. Injunctive Relief. Each party agrees that the Disclosing Party would be irreparably injured by a breach of this Agreement by the Receiving Party or Representatives and that the Disclosing Party shall be entitled to equitable relief, including injunctive relief and specific performance, in the event of any breach of the provisions of this Agreement. Such remedies shall not be deemed to be the exclusive remedies for a breach of this Agreement, but shall be in addition to all other remedies available at law or in equity.

13. Entire Agreement. This Agreement constitutes the entire agreement with respect to the Confidential Information disclosed hereunder and supersedes all prior or contemporaneous oral or written agreements concerning such Confidential Information.

14. General. (a) All media releases, public announcements, and disclosures by either party relating to this Agreement, its subject matter or existence, or the purpose of this Agreement shall be coordinated with and consented to by each party in writing prior to the release thereof. (b) Neither party will assign or transfer any rights or obligations under this Agreement without the prior written consent of the other party, which consent shall not be unreasonably withheld. (c) Neither party shall communicate any information to the other in violation of the proprietary rights of any third party. (d) All Confidential Information is provided "AS IS" and without any warranty, express, implied or otherwise, regarding such Confidential Information's accuracy or performance.

GCT Semiconductor, Inc                   POSDATA, Co., Ltd.

AU/4006289.1
9999998-91028

문서에 대한 소유권은 포스데이타에 있으며,
수정,변경 및 복사할 수 없습니다.

By: _____

Name: _____JASON LEE_____

Title: __VP of Corporate Development__

By: _____

Name: ____Andrew Jun____

Title: Director, Product Management

AU:4006289.1
9999998-91028

문서에 대한 소유권은 포스데이타에 있으며,
수정,변경 및 복사할 수 없습니다.

Private & Confidential

# NON-DISCLOSURE AGREEMENT

This Agreement is made and entered into this February *9* , 2006 by and between **NTT DoCoMo, Inc.**, a corporation duly organized under the laws of Japan, having its principal place of business at Sanno Park Tower 2-11-1, Nagata-cho, Chiyoda-ku, Tokyo, 100-6150 Japan (hereinafter referred to as "**DoCoMo**") and **POSDATA Co., Ltd.**, a corporation duly organized under the laws of the Republic of Korea, having its principal place of business at 276-2, Seohyeon-dong, Bundang-gu, Seongnam-city, Kyeonggi-do, 463-775 Korea (hereinafter referred to as "**POSDATA**"). (DoCoMo and POSDATA are hereinafter sometimes referred to individually as a "**Party**" and collectively as the "**Parties**".)

In consideration of the premises and mutual covenants herein set forth, the Parties hereby agree as follows:

## ARTICLE 1 (DEFINITIONS)

For the purpose of this Agreement, the following terms shall have the following meanings, respectively:

    (i)    "**Confidential Information**" means:

        (a)    any and all information disclosed during the course of the Joint Discussion (as defined below) in writing with an appropriate indication such as "CONFIDENTIAL";

        (b)    any and all information disclosed orally or visually and confirmed by the Parties during the course of the Joint Discussion as confidential at the time of disclosure and confirmed with summary reduced to writing by the Disclosing Party (as defined below) within ten (10) days from the date of such disclosure; or

        (c)    the existence of this Agreement or the content thereof;

    (ii)    "**System Integrator**" has the meaning set out in Article 2.4 below;

    (iii)    "**Disclosing Party**" means the Party that discloses Confidential Information to the other Party;

    (iv)    "**Joint Discussion**" means the discussion conducted by the Parties under this Agreement in relation to the feasibility and possibility of implementation of POSDATA's IEEE802.16e experimental equipment designed for Mobile WiMax;

    (v)    "**Receiving Party**" means the Party who receives Confidential Information; and

    (vi)    "**Third Party**" means any third party except for the directors, officers and employees of the Receiving Party and those of System Integrator ( if any) who need to have access to Confidential Information for the performance of the Joint Discussion.

## ARTICLE 2 (JOINT DISCUSSION)

Private & Confidential

2.1   The Parties will conduct the Joint Discussion for a period from February 9 , 2006 to March 31, 2007 (both inclusive).

2.2   Each Party shall pay and bear all costs and expenses incurred by itself in connection with the preparation, the performance of, and participation in the Joint Discussion.

2.3   Notwithstanding Article 2.1 above, each Party may terminate the Joint Discussion hereunder at any time for whatever reasons by giving the other Party a prior written notice no less than fourteen (14) calendar days before the date of such termination.   Neither Party shall be held liable for any damages or losses (if any) incurred by the other Party arising out of or in connection with such termination.

2.4   If either Party wishes to have a third party system integrator participated in the Joint Discussion and/or to disclose to such system integrator Confidential Information (hereinafter referred to as "**System Integrator**"), such Party may do so with prior written consent of the other Party, provided that such Party shall cause its System Integrator to be bound by and comply with the same confidentiality obligations as those of the Receiving Party hereunder.

## ARTICLE 3 (DECISION TO PROCEED)

3.1   At the time of completion of the Joint Discussion, the Parties shall discuss and determine whether the Parties shall proceed to any further phase based on the result of the Joint Discussion.   The Parties shall proceed to such phase only upon the mutual agreement to do so.

3.2   Each Party shall be entitled to make its independent decision in evaluating the result of the Joint Discussion and shall be free to make its decision whether or not to proceed to any further phase at its own full discretion.   For the avoidance of any doubt, neither Party shall be liable nor responsible to the other Party with regard to such a decision.

## ARTICLE 4 (CONFIDENTIALITY)

4.1   The Receiving Party shall protect and preserve the confidentiality and secrecy of all Confidential Information which may be obtained hereunder and it shall not, without the Disclosing Party's prior written consent:
(i)    disclose any Confidential Information to any Third Party;
(ii)   give any Third Party access to any Confidential Information;
(iii)  use any Confidential Information or permit the use of any Confidential Information solely for the purpose of conducting the Joint Discussion.

4.2   Notwithstanding the above, the confidential obligations with respect to the Receiving Party set forth in Article 4.1 shall not apply with respect to any

2

Confidential Information which:

(i)   is in or subsequently entered into the public domain otherwise than by act or omission of the Receiving Party;

(ii)   was in the lawful possession of the Receiving Party prior to and independently of the disclosure or provision by the Disclosing Party free of any restriction as to its use or disclosure;

(iii)   is developed by the Receiving Party independently of the disclosure from the Disclosing Party; or

(iv)   becomes available to the Receiving Party without incurring any confidential obligation.

4.3   The Receiving Party shall ensure that its directors, officers and employees and those of System Integrator (if any) receiving Confidential Information shall be under and shall comply with the same confidentiality obligations as those of the Receiving Party set forth in Article 4 hereof.

4.4   The Receiving Party may copy or reproduce any Confidential Information only to the extent as may be reasonably necessary for the purpose of conducting the Joint Discussion. The Receiving Party shall treat any Confidential Information with the same degree of care with which it treats its own confidential information of like importance, and in any event taking reasonable precautions for its safe custody.

4.5   Notwithstanding the Articles 4.1 above, the Receiving Party may without liability to Disclosing Party disclose Confidential Information as required by law, rules or regulations (including, but not limited to, rules or regulations of a stock exchange on which the securities of the Receiving Party are listed or quoted), order of a relevant court of law or the direction of regulatory authority, provided that before such disclosure and to the extent that it is reasonably practical to do so, the Receiving Party shall first notify the Disclosing Party thereof, give the Disclosing Party an opportunity to obtain a protective order, and restrict the disclosure to the extent it is required to do so.

4.6   Each Party acknowledges that a breach of this Article 4 may cause the Disclosing Party, irreparable damage for which monetary indemnity would not be an adequate remedy. Accordingly, in addition to other remedies that may be available, each of the Disclosing Party may seek and obtain injunctive relief against such a breach or a threatened breach.

## ARTICLE 5 (INTELLECTUAL PROPERTY)

5.1   It is understood that the Joint Discussion itself will not be intended to develop any proprietary works containing any type of intellectual property rights. Should any proprietary works be developed as a result of the Joint Discussion, the Parties shall as practical as possible discuss and execute a separate agreement stipulating the terms and conditions of the ownership of such proprietary works.

5.2    The ownership of, interest in, and any other rights (including intellectual property rights) contained in or pertaining to the Confidential Information shall be at all times retained by the Disclosing Party.

5.3    The Confidential Information is delivered "AS IS" and all representations and warranties, express or implied, are hereby disclaimed, including but not limited to, that:

    (i)    the Confidential Information is accurate or fits for any particular purposes; and

    (ii)   the use of the Confidential Information does not infringe any rights that may be held by a third party in respect of any such information.

## ARTICLE 6 (INDEPENDENT DEVELOPMENT / NO OBLIGATION)

6.1    The Parties acknowledge that the other Party may currently or in the future be developing information internally, or receiving information from any third party, that is similar to the Confidential Information of the other Party to this agreement. Accordingly, nothing in this Agreement will be construed as a representation or agreement that the other Party will not develop or have developed for it products, concepts, systems or techniques that are similar to or compete with the products, concepts, systems or techniques contemplated by the Joint Discussion or embodied in the Confidential Information of the other Party , provided that said Party does not violate any of its obligations under this Agreement in connection with such development.

6.2    The Parties acknowledge that this Agreement creates no obligation on either Party to enter into any further agreement, such as a contract, to offer or take a license or to assign development work to the other Party in any manner.

## ARTICLE 7 (RETURN OF THE CONFIDENTIAL INFORMATION)

After the expiration or termination of this Agreement in accordance with Article 8 below, or sooner upon the Disclosing Party's request, the Receiving Party shall, at the option and instruction of the Disclosing Party, return promptly to the Disclosing Party all Confidential Information received by it pursuant to this Agreement with all copies made thereof and/or destroy any materials in its possession or control which contain any Confidential Information.

## ARTICLE 8 (TERM OF THIS AGREEMENT)

8.1    This Agreement shall become effective on the date of this Agreement and expire at the end of the Joint Discussion in accordance with Article 2.1 or 2.3 hereof.

8.2    Notwithstanding Article 8.1 above, the confidentiality obligations set forth herein shall survive any expiration or termination of this Agreement for a period of five

Private & Confidential

(5) years from the date of such expiration or termination.

## ARTICLE 9 (MISCELLANEOUS)

9.1    Neither Party shall assign or transfer, in whole or in part, any of its rights and/or obligations hereunder to any third party without a prior written consent of the other Party.

9.2    This Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, and supersedes all prior agreements, discussions and understandings with respect to the subject matter hereof.   This Agreement may not be amended, changed or modified unless otherwise agreed by the Parties in writing.

9.3    If any of the provisions contained in this Agreement shall be declared invalid, illegal or unenforceable in any respect under any applicable law, the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired.

9.4    Any notice required or permitted to be given under this Agreement shall be given in writing by personal delivery, certified or registered mail, or facsimile and shall be addressed to the nominated addressees set forth below:

(i)    If to DoCoMo:
   (*Attention*)  Wireless Broadband Group, Research and Development Planning Department, NTT DoCoMo, Inc.
   (*Address*)    3-5, Hikarinooka, Yokosuka-shi, Kanagawa, 239-8536 Japan
   (*Fax*)        +81-46-840-3738

(ii)   If to POSDATA:
   (*Attention*)  Sales Team, POSDATA Co., Ltd.
   (*Address*)    276-2,   Seohyeon-dong,   Bundang-gu,   Seongnam-city, Kyeonggi-do, 463-775 Korea
   (*Fax*)        +82-31-779-2633

## ARTICLE 10 (GOVERNING LAW / DISPUTE RESOLUTION)

10.1    This Agreement shall be governed by and construed in accordance with the laws of Singapore.

10.2    All disputes, controversies or differences of opinion arising from or related to this Agreement between the Parties shall be settled amicably.   In the event that an amicable settlement cannot be reached through such negotiation within thirty (30) days from the beginning of such negotiation, such disputes shall be finally settled by arbitration conducted in Singapore, pursuant to the Rules of Arbitration of the International Chamber of Commerce.   The tribunal shall consist of three (3)

5

Private & Confidential

arbitrators appointed in accordance with the said rules, and the arbitration shall be conducted in English.   The award thereof shall be final and binding upon the Parties and may be entered into any court having jurisdiction thereof for its enforcement.   The prevailing Party shall be entitled to recover reasonable attorneys' fees.   Notwithstanding the foregoing, nothing in this Article 10.2 shall prevent the Parties from seeking any injunctive or equitable relief by a court of competent jurisdiction in accordance with Article 4.6.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed in duplicate in English respectively by their duly authorized representative as of the date first above written:

**NTT DoCoMo, Inc.**

By: _Tatsuji Habuka_ 2006/2/8

Name: Tatsuji Habuka

Title: Vice President & Managing Director

**POSDATA Co., Ltd.**

By: _[signature]_ 2006/2/8-9

Name: Hyun Chul Yoo

Title: General Manager

6

**WiMAX Forum**
**Multi-Vendor Interoperability Testing**
**Confidentiality Agreement**
**(Multiple Events)**

**BACKGROUND:**

The WiMAX Forum was formed to promote multi-vendor compatibility and interoperability of wireless networking products products using the IEEE 802.16 standard and certain approved related standards. As part of this process, the WiMAX Forum periodically hosts or sponsors "plugfests" in which vendors create a multi-vendor networked environment that allows them to evaluate the compatibility of their products with the products of other vendors and to improve the overall compatibility and interoperability of those products. To further this objective, it is necessary that all testing occur in a cooperative setting that allows all participants to candidly evaluate any interoperability problems that may exist. This agreement **(the "Agreement")** provides for the confidential and proprietary treatment of the information that each participating vendor may receive from other participants during the test process.

**AGREEMENT:**

As a condition of participating in each plugfest event that the WiMAX Forum hosts or sponsors during the term of this Agreement **(the "Event")**, the participating company identified below **("Vendor")** hereby agrees that any information about the performance or compatibility of the products of each other participant at the Event **(each a "Participant")** is that Participant's confidential and proprietary property. Vendor agrees that it will not disclose this proprietary information or report any problems encountered by Participants with the testing of their products during the Event to any third party who is not a Participant at the Event. Vendor's nondisclosure obligation will continue for a period of one (1) year after the last day of the Event. Vendor shall have no obligation to maintain as confidential any information that (a) now or hereafter becomes generally known or available to the public through no fault of the Vendor (b) is knowingly furnished to others by Participant without restrictions on disclosure, (c) is received from a third party who is not under a contractual obligation to treat the information as confidential, or (d) is independently developed by Vendor without access to the information obtained by Vendor at the Event.

Vendor may use the information and products to which it receives access during the Event for the sole purpose of participating in the group compatibility and interoperability testing that is taking place at the Event and for no other purpose. Without limitation, Vendor shall not seek through its access to the other Participants' products at the Event to obtain confidential or proprietary information concerning those products (except for such information, if any, that may be obvious from the operation of those products in their intended manner at the Event) and shall use such proprietary information as it may obtain for the sole purpose of improving the interoperability and compatibility of its own products. Vendor shall not remove any Participant's product or any portion thereof, including, without limitation, any software scripts, software code, or software images from the Event without the Participant's express written permission.

Vendor shall ensure that its subcontractors or agents participating in the Event shall comply with the confidentiality and use restrictions set forth herein.

Vendor's obligations under this Agreement shall commence upon its execution and shall continue until either Vendor or the WiMAX Forum terminates it by delivering written notice to the other party. Vendor agrees that it shall not attend any other plugfest event hosted by the WiMAX Forum after the termination of this Agreement without executing a confidentiality agreement for that event in a form that is satisfactory to the WiMAX Forum. In the absence of such agreement or a written consent by the WiMAX Forum, Vendor shall be deemed by its attendance at any such post-termination event to have agreed to the terms and conditions of this Agreement with respect to that event. Vendor's post-termination obligations under this paragraph shall survive the termination of this Agreement indefinitely.

Vendor's confidentiality obligation hereunder with respect to each Event shall survive the termination of this Agreement for the period that is applicable to that Event, as stated above.

The WiMAX Forum acknowledges that Vendor may currently or in the future be developing information internally, or receiving information from other parties, that is similar to the information it may gain access to

1

while participating in the Event. Nothing in this Agreement will prohibit Vendor from developing or having developed for its products concepts, systems or techniques that are similar to or compete with the products, concepts, systems or techniques contemplated by or embodied in other products at the Event, provided that Vendor does so without the use of any information that it obtains at the Event and does not otherwise violate any of its obligations under this Agreement in connection with such development. Neither party shall have any obligation to limit or restrict the assignment of its employees or consultants as a result of their having participated in the Event. Further, the parties agree that as a result of participation in the Event, employees of Vendor may gain or enhance general knowledge, skills and experience (including ideas, concepts, know-how and techniques) related to the products that Vendor is testing at the Event (**"General Knowledge"**). Subject to the trade secret rights, copyrights, mask work rights and patent rights of each Participant and the WiMAX Forum, and to Vendor's confidentiality obligation under this Agreement, the subsequent use by these employees of such General Knowledge as retained in their unaided memories, without reference to any information that they have access to or create in written, electronic or other fixed form (a) while at the Event or (b) after the event based upon their memory of the information they obtained at the Event, shall not constitute a breach of this Agreement. Vendor expressly acknowledges that "General Knowledge" does not include any trade secret right, copyright, mask work right, or patent right and that nothing in this Agreement shall be deemed to constitute a grant of any license whatsoever under any of the foregoing rights or any other intellectual property or proprietary right by the WiMAX Forum or any Participant. Neither party shall have any obligation to limit or restrict the assignment of persons or to pay royalties for any work resulting from the use of such General Knowledge.

This Agreement shall be governed by and construed in accordance with the laws of the State of California as applied to agreements entered into and fully performed therein by residents thereof. It may only be modified or amended through a writing that is signed by Vendor and the WiMAX Forum. No waiver shall be effective unless in writing and a written waiver shall be effective only with respect to the specific matter for which it was granted and no other.

The person signing below on behalf of Vendor warrants that he or she has been authorized to execute this Agreement on Vendor's behalf.

Date: <u>May 14, 2006</u>

Vendor Name: <u>POSDATA</u>

Signature: _____

Print Name and Title: <u>Hwayong Joung, Senior Manager</u>

2

EXHIBIT 28

# POSDATA

### Confidential Agreement

As of the date set forth below and for a period of [three] ([3]) years thereafter, I, the undersigned, hereby pledge to observe the rules specified in this Confidentiality Agreement (this "Agreement") while performing certain work for POSDATA Co Ltd (hereinafter referred to as the "Company"). I further agree:

1. to the Company's information control policy that the Company regards all of its incoming and/or outgoing communications (oral or written), including, without limitation, electronic mail, facsimiles, hard documentation and oral communications as the Company's confidential and proprietary information and valuable assets of the Company. I also hereby acknowledge and agree that the Company can monitor and record such information and/or communications;

2. to recognize and respect that intellectual property rights for information including trade secrets are created, disclosed and used for the Company and belong to the Company;

3. to return any and all materials that contain the Company's information and all copies, extracts and other objects or items in which it may be contained or embodied to the Company immediately upon any termination of my employment with the Company;

4. to keep secret any user ID and password used by the Company or by myself for the Company, including, without limitation, use for communications and IT systems such as enterprise portal systems; and

5. to not disclose any confidential or proprietary information learned during the course of my employment to any third party and to not use the same either directly or indirectly for myself or for any other person except in the scope of my employment for the Company and in accordance with this Agreement.

I hereby pledge that I have thoroughly read and that I fully understand the foregoing and that I hereby agree to be bound by the terms of this document. I hereby covenant and agree to reimburse and/or protect the Company for any and all losses suffered by the Company as a result of any breach committed by me hereunder. In addition, I acknowledge and agree that I may be subject to any disciplinary measures according to the Company's rules, and shall bear any responsibilities related to applicable civil and criminal laws.

Signature: _Seyoung Kim_

Print Name: _SEYOUNG KIM_

Social Security Number: _173647542_

Date: _05/07/2004_

EXHIBIT 29

# POSDATA   **Confidential Agreement**

| Company Name | Posdata | Employee ID Number | PD 087442 |
|---|---|---|---|
| Name | Jong Kwan Choi | SS Number | 621-11-pgo2 |

I hereby pledge to observe the rules specified in this agreement while performing work for POSDATA Co., Ltd (hereinafter referred to as the "Company").

1. Abide by the Company's regulations on the use of software and the provisions of Computer Program Protection Law and do not duplicate, distribute, or use any kind of commercial software unlawfully without due title while working at the Company.

2. Protect the Company's IT (information technology) assets from computer viruses by running anti-virus program periodically.

3. Keep secret the user ID and password of the Company's IT systems including without limitation to Enterprise Portal system and do not divulge them to anyone else.

4. Recognize that intellectual property rights for information including trade secrets that is made for the Company by me belong to the Company.

5. Agree the Company's information control policy that the Company regards all the documents including without limitation to electronic mails and facsimiles, sending in or out of the Company, as the Company's information assets and can monitor and save them.

6. Return all the materials that contain the Company's secret and information to the Company's pertinent organization when quitting the Company.

7. Do not disclose any confidential information to third party and do not use it for personal purpose not only while but also after working at the Company.

I hereby pledge that I have read the above regulations thoroughly and agree to them. In case of violating any of the specified regulations, I shall reimburse and recover any loss inflicted to the Company. In addition, I shall be submitted to any disciplinary measures according to the Company's rules, and shall bear any responsibilities related to the civil and criminal law.

Signature:

Date: 05 / 23 / 2005

00-05-018, Approved on Jan 27, 2004

POSDATA Co., Ltd.

# POSDATA  **Confidential Agreement**

| Company Name | *POSDATA America R&D Center* | Employee ID Number | *PD087475* |
|---|---|---|---|
| Name | *Choon Shin* | SS Number | *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* |

I hereby pledge to observe the rules specified in this agreement while performing work for POSDATA Co., Ltd (hereinafter referred to as the "Company").

1. Abide by the Company's regulations on the use of software and the provisions of Computer Program Protection Law and do not duplicate, distribute, or use any kind of commercial software unlawfully without due title while working at the Company.

2. Protect the Company's IT (information technology) assets from computer viruses by running anti-virus program periodically.

3. Keep secret the user ID and password of the Company's IT systems including without limitation to Enterprise Portal system and do not divulge them to anyone else.

4. Recognize that intellectual property rights for information including trade secrets that is made for the Company by me belong to the Company.

5. Agree the Company's information control policy that the Company regards all the documents including without limitation to electronic mails and facsimiles, sending in or out of the Company, as the Company's information assets and can monitor and save them.

6. Return all the materials that contain the Company's secret and information to the Company's pertinent organization when quitting the Company.

7. Do not disclose any confidential information to third party and do not use it for personal purpose not only while but also after working at the Company.

I hereby pledge that I have read the above regulations thoroughly and agree to them. In case of violating any of the specified regulations, I shall reimburse and recover any loss inflicted to the Company. In addition, I shall be submitted to any disciplinary measures according to the Company's rules, and shall bear any responsibilities related to the civil and criminal law.

Signature:

Date:

00-05-018, Approved on Jan 27, 2004

POSDATA Co., Ltd.

EXHIBIT 30

## POS'DATA

# Confidential  Agreement

As from the date set forth below and to the end of  employment  plus 3 years
thereafter, I, the undersigned, hereby pledge to observe the rules specified in this
Confidentiality Agreement (this "Agreement") while performing certain work for
POSDATA Co., Ltd (hereinafter referred to as the "Company").  I further agree:

1. to the Company's information control policy that the Company regards all
   of its incoming and/or outgoing communications (oral or written), including,
   without limitation, electronic mail, facsimiles, hard documentation and oral
   communications as the Company's confidential and proprietary
   information and valuable assets of the Company.  I also hereby
   acknowledge and agree that the Company can monitor and record such
   information and/or communications;
2. to recognize and respect that intellectual property rights for information
   including trade secrets are created, disclosed and used for the Company
   and belong to the Company;
3. to return any and all materials that contain the Company's  information
   and all copies, extracts and other objects or items in which it may be
   contained or embodied to the Company immediately upon any termination
   of my employment with the Company;
4. to keep secret any user ID and password used by the Company or by
   myself for the Company, including, without limitation, use for
   communications and IT systems such as enterprise portal systems; and
5. to not disclose any confidential or proprietary information learned during
   the course of my employment to any third party and to not use the same
   either directly or directly for myself or for any other person except in the
   scope of my employment for the Company and in accordance with this
   Agreement.

I hereby pledge that I have thoroughly read and that I fully understand the
foregoing and that I hereby agree to be bound by the terms of this document. I
hereby covenant and agree to reimburse and/or protect the Company for any and
all losses suffered by the Company as a result of any breach committed by me
hereunder. In addition, I acknowledge and agree that I may be
 subject to any disciplinary measures according to the Company's rules, and
shall bear any responsibilities related to applicable civil and criminal laws.

Signature: *Choon Shin*

Name   : *Choon Shin*

Title  : *Senior Staff Engineer,*

Date   : *0 5 / 11 / 2007.*

✓ CMOS password= *none*

✓ Windows Logon Id & password = ~~Choon~~  , *1234 abcd*

*WiMAX*