1  SQUIRE, SANDERS & DEMPSEY L.L.P.
   David S. Elkins (State Bar # 148077)
2  delkins@ssd.com
   Allison E. Pitigoi (State Bar # 242211)
3  apitigoi@ssd.com
   600 Hansen Way
4  Palo Alto, CA  94304-1043
   Telephone:     +1.650.856.6500
5  Facsimile:     +1.650.843.8777

6  SQUIRE, SANDERS & DEMPSEY L.L.P.
   Nathan Lane III (State Bar # 50961)
7  nlane@ssd.com
   One Maritime Plaza, Third Floor
8  San Francisco, CA  94111
   Telephone:     +1.415.954.0200
9  Facsimile:     +1.415.393.9887

10 Attorneys for Defendants
   SEYOUNG KIM and INQUADRON, INC.
11

12

13                  UNITED STATES DISTRICT COURT

14                NORTHERN DISTRICT OF CALIFORNIA

15                      SAN JOSE DIVISION

16 POSDATA CO., LTD., a South Korean          Case No. C 07 2504 RMW (PVT)
   corporation,
17                                            **MEMORANDUM OF POINTS AND**
                       Plaintiff,             **AUTHORITIES IN SUPPORT OF**
18                                            **DEFENDANTS SEYOUNG KIM AND**
                                              **INQUADRON, INC.'S OPPOSITION TO**
19           vs.                              **PLAINTIFF POSDATA CO. LTD'S** *EX*
                                              *PARTE* **APPLICATION FOR:**
20 SEYOUNG KIM, an individual and
   INQUADRON, INC., a California              **(1)    TEMPORARY RESTRAINING**
21 corporation,                               **ORDER;**

22                     Defendants.            **(2)    ORDER TO SHOW CAUSE WHY**
                                              **PRELIMINARY INJUNCTION**
23                                            **SHOULD NOT ISSUE; AND**

24                                            **(3)    ORDER PERMITTING EXPEDITED**
                                              **DISCOVERY**
25
                                              Judge:  The Honorable Ronald M. Whyte
26                                            Date:   June 26, 2007
                                              Time:   9:00 a.m.
27

28

DEFENDANTS' MEMORANDUM IN OPPOSITION TO TRO, OSC AND EXPEDITED DISCOVERY
Case No. C 07 2504 RMW (PVT)

1

# TABLE OF CONTENTS

2

**Page**

3    I.    Introduction And Summary Of Argument ........................................................................ 1

4    II.    Factual Background ........................................................................................................ 2

5          A.    Kim Is Hired By Posdata ........................................................................................ 2

6          B.    Development Of The "Turtle Board." ..................................................................... 3

7          C.    Posdata Terminates Kim But Agrees To Pay His Severance Over Time ............... 4

8          D.    InQuadron's Formation ........................................................................................... 4

9          E.    InQuadron Suspended Operations Before Developing A Product, Product
10                Design Or Product Specifications .......................................................................... 5

11         F.    Neither Kim Nor InQuadron Has Misappropriated Anything Of Value
12                Belonging To Posdata, Nor Has Kim Improperly Solicited Posdata
                  Employees .............................................................................................................. 5

13         G.    Posdata Has Publicly Admitted In Korea That InQuadron Misappropriated
14                Nothing Of Value And That Posdata Has Suffered No Significant Harm,
                  Let Alone Irreparable Harm ................................................................................... 6

15   III.    Posdata's Ex Parte Application For A TRO Should Be Denied .................................... 7

16         A.    The Legal Standards Governing Posdata's Application ......................................... 7

17         B.    Posdata Fails To Show A Likelihood Of Success On The Merits .......................... 8

18                1.    Posdata Does Not Demonstrate Theft Of Any Trade Secrets .................... 8

19                      a.    The Posdata Digital Channel Card Unit (DCCU) .......................... 9

20                      b.    The "Test Methods And Comparison Data." ................................. 11

21                      c.    The Turtle Card .......................................................................... 12

22                2.    Posdata's "Employee Raiding" Allegations, Even If True, Are
23                      Insufficient To Impose Any Liability And Must Be Disregarded ........... 13

24         C.    Posdata Fails To Demonstrate Immediate Threatened Harm ............................... 15

25   IV.    Expedited Discovery Should Be Denied Or Limited .................................................. 16

26   V.    Conclusion ................................................................................................................... 18

27

28

# TABLE OF AUTHORITIES

Page

*3DO Co. v. Poptop Software, Inc.*,
    1998 U.S. Dist. LEXIS 21281 (N.D. Cal. Oct. 27, 1998) .................................................. 7

*Apache Survival Coalition v. United States*,
    118 F.3d 663 (9th Cir. 1997) .................................................................................................. 8

*Barahona-Gomez v. Reno*,
    167 F.3d 1228 (9th Cir. 1999) .............................................................................................. 7

*Caribbean Marine Serv. Co., Inc. v. Baldrige*,
    844 F.2d 668 (9th Cir. 1988) ................................................................................................ 8

*Colt v. Mendoza*,
    2007 U.S. Dist. LEXIS 2516 (E.D. Cal. Mar. 13, 2007) .................................................. 7

*Dymo Indus., Inc. v. Tape Printer, Inc.*
    326 F.2d 141, (9th Cir. 1964) ............................................................................................... 7

*Earth Island Inst. v. U.S. Forest Serv.*,
    442 F.3d 1147 (9th Cir. 2006) .............................................................................................. 8

*Hollingsworth Solderless Terminal Co. v. Turley*,
    622 F.2d 1324 (9th Cir. 1980) ............................................................................................ 13

*LGS Architects, Inc. v. Concordia Homes of Nev.*,
    434 F.3d 1150 (9th Cir. 2006) .............................................................................................. 8

*Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*,
    634 F.2d 1197 (9th Cir. 1980) ......................................................................................... 7, 8

*Mazurek v. Armstrong*
    520 U.S. 968 (1997) ............................................................................................................... 7

*Midgett v. Tri-County Metro. Transp. Dist. of Oregon*,
    254 F.3d 846 (9th Cir. 2001) ................................................................................................ 8

*Oakland Tribune, Inc. v. Chronicle Pub. Co.*,
    762 F.2d 1374 (9th Cir. 1985) .............................................................................................. 8

*Pod-ners L.L.C. v. Northern Feed & Bean of Lucerne, Ltd.*,
    204 F.R.D. 675 (D. Colo. 2002) ........................................................................................ 17

*Qwest Commc'ns Int'l, Inc. v. Worldquest Networks, Inc.*,
    213 F.R.D. 418 (D. Colo. 2003) ........................................................................................ 17

*Semitool, Inc. v. Tokyo Electron Am., Inc.*,
    208 F.R.D. 273 (N.D. Cal. 2002) ...................................................................................... 16

*Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*,
    240 F.3d 832 (9th Cir. 2001) ................................................................................................ 7

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA  94304-1043

**TABLE OF CONTENTS**
**(continued)**

Page

**STATE CASES**

*American Alloy Steel Corp. v. Ross,*
    149 Cal. App. 2d 215 (1957)............................................................................................. 14

*Mathews Paint Co. v. Seaside Paint & Lacquer Co.,*
    148 Cal. App. 2d 168 (1957)............................................................................................. 14

**STATE STATUTES**

Cal Civ. Code §3426.1(d)(2)................................................................................................. 10

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA  94304-1043

- iii -

1    **I.**    **INTRODUCTION AND SUMMARY OF ARGUMENT.**

2         Posdata filed this action on May 10, 2007. Exactly six weeks later on June 21, Posdata

3    filed its present TRO application, together with a 25-page brief and three inches of declarations

4    and exhibits that purportedly justify the extraordinary remedy Posdata seeks on less than one

5    day's notice (Posdata's papers seek a June 21 hearing). The moving papers and claimed evidence

6    do have a superficial appeal at first blush, thanks to the large amount of time Posdata took to

7    prepare them. Scratching the surface of Posdata's contentions — its opening brief — reveals,

8    however, much less there than first meets the eye. In particular, Posdata's brief repeatedly makes

9    conclusory accusations of wrongdoing, but the "evidence" cited for those accusations either

10   provides no support or at best can be construed in multiple ways. For example, Posdata

11   repeatedly charges defendants with misappropriating source code. The declarations cited to

12   support these charges, however, are unsupported by any facts showing that defendants have or

13   ever had source code in their possession (they have not and do not). Also missing is any showing

14   that Posdata faces an immediate threat of irreparable harm in the event injunctive relief is not

15   granted. Such harm is to be presumed, apparently, from conclusory allegations that valuable

16   trade secrets are at stake. Posdata, however, has the burden of demonstrating an immediate threat

17   of irreparable harm; mere inferences will not do.

18        Defendants' evidence presented here further undercuts Posdata's application. InQuadron

19   is a start up venture in its infancy that never closed an opening financing round. It has no

20   product, nor even an established architecture or design for any product. InQuadron has no

21   customers. And, as a result of this action, InQuadron has suspended operations. Even assuming

22   arguendo that InQuadron had any of the trade secrets or other things claimed by Posdata — which

23   it does not — InQuadron is not active and in no position to be active. Any threats of irreparable

24   harm are simply imagined or feigned by Posdata.

25        Indeed, Posdata's claim of irreparable harm here is contradicted by its public statements in

26   Korea. There Posdata officials have proclaimed that any "leak" of important technology to

27   InQuadron was thwarted, and that Posdata has not suffered any harm as a result. These

28   admissions are squarely at odds with its conclusory allegations here.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA  94304-1043

DEFENDANTS' MEMORANDUM IN OPPOSITION TO TRO, OSC AND EXPEDITED DISCOVERY
Case No. C 07 2504 RMW (PVT)

1    Finally, Posdata's implicit claim that immediate injunctive relief is required to prevent

2  irreparable harm is contravened by its dilatory conduct in seeking a TRO. The declarations

3  Posdata has submitted show that it suspected wrongdoing "in early 2007" and obtained the

4  documents attached to its declarations in March to April 2007. This action was filed six full

5  weeks before Posdata sought the present TRO application, even though its counsel threatened to

6  file one on May 11 on the basis of defendants' allegedly incriminating e-mails in Posdata's

7  possession. Any real, immediate threat to Posdata is belied by its leisurely pace in seeking a

8  TRO.

9    Considered together, the true nature of Posdata's evidence (which cannot be fully explored

10  given the time constraints required of this response), defendants' evidence submitted here and

11  Posdata's delay in seeking relief all demonstrate that Posdata cannot establish either the

12  likelihood of success on the merits or the irreparable harm required for injunctive relief — let

13  alone injunctive relief on the extraordinary and drastic basis of a TRO.

14    This brief begins with a brief summary of the facts central to an understanding of who the

15  parties are and what they do. The brief then shows that Posdata has failed to show a likelihood of

16  success on the merits, nor has it demonstrated "immediate threatened harm," as is required for the

17  relief it seeks. Finally, defendants show that defendants are entitled to expedited discovery but

18  that Posdata is not.[1]

19  **II.    FACTUAL BACKGROUND.**

20    **A.    KIM IS HIRED BY POSDATA.**

21    Defendant Seyoung Kim ("Kim") is an expert in wired and wireless telecommunications

22  technology. Kim, who earned his Ph.D. in electrical engineering from Penn State University, was

23  working at Lucent in 2004 when recruited to join Posdata. Declaration of Seyoung Kim in

24  Opposition to Application for TRO ("Kim Decl.") ¶2. Posdata hired Kim to assemble and then

25  lead a team of engineers in San Jose, called "Lab 1," to develop a channel card, one part of

26

27  [1] Posdata seeks an evidence preservation order as part of a TRO. Defendants' counsel took immediate steps following service of process to secure relevant evidence that might exist, including any electronically stored materials. In any event, Defendants do not object to an evidence preservation order so long as it

28  also binds Posdata (which its Proposed Order does not do).

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA 94304-1043

-2-
DEFENDANTS' MEMORANDUM IN OPPOSITION TO TRO, OSC AND EXPEDITED DISCOVERY
Case No. C 07 2504 RMW (PVT)

Posdata's planned "WiBro" base station. *Id.* ¶3. A channel card is somewhat analogous to the mother board of a personal computer; the Posdata WiBro channel card consisted of a printed circuit board ("PCB"), a modem comprised of field-programmable gate arrays ("FPGAs"), memory, an off-the-shelf CPU and complimentary PCB devices, and an in/out ("I/O") interface. *Id.* A different team of engineers in Korea, in "Lab 3," was charged with creating a new, cheaper modem for the mobile station (user terminal) by replacing the FPGAs with a single application-specific integrated circuit (or "ASIC"). *Id.* The Lab 3 effort apparently never succeeded. *Id.*

"WiBro," which is shorthand for "wireless broadband," is a name given by a consortium of Korean government and business interests, led by Samsung, to Korea's particular implementation of IEEE 802.16e-2005, which is also called "Mobile WiMax." *Id.* ¶4. Mobile WiMax is intended to be a higher speed alternative to cellular networks (such as CDMA), allowing people to communicate wirelessly while walking or riding in cars. *Id.*; http://standards.ieee.org/announcements/pr_p80216.html. WiBro is intended to operate at a different data rate than Mobile WiMax, at a different radio transmission bandwidth (8.75 MHz vs. 10 MHz) and different frequency (2.3 GHz vs. 2.5–3.5 GHz).. Kim Decl. ¶4.

### B.    DEVELOPMENT OF THE "TURTLE BOARD."

In 2006, Dr. Kim's Posdata team received a request for assistance from Sang Geun Hwang ("Hwang"), an employee in Posdata's test lab. *Id.* ¶5. Hwang's role was to performance test all WiBro components. *Id.* Hwang wanted to build a WiBro test base station but in a compact form factor, but could not get approval from his supervisor, Joon-Il Shin. *Id.* Kim thought the compact test system would be useful to Posdata. *Id.* Choon Shin, who worked on Kim's team, thus assisted Hwang. *Id.* The resulting test system, which included a "turtle board," was fabricated for Posdata by a Korean company called Axstone and sent to Choon Shin for testing. *Id.* The turtle board is not a "channel card" capable of use in any WiBro system and lacked a full-featured modem and its associated physical layer (or "PHY," which is the electro-mechanical interface for transmitting data to a physical medium). *Id.* Indeed, the turtle board ultimately did not operate at all except to power up the board's CPU.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA  94304-1043

-3-
DEFENDANTS' MEMORANDUM IN OPPOSITION TO TRO, OSC AND EXPEDITED DISCOVERY
Case No. C 07 2504 RMW (PVT)

C.    **POSDATA TERMINATES KIM BUT AGREES TO PAY HIS SEVERANCE OVER TIME.**

By June 2006, Kim's team at Posdata successfully developed a channel card for Posdata's WiBro base station and successfully passed an interoperability test ("IOT") conducted in Spain. *Id.* ¶6. Kim was offered and signed a two-year extension to his Posdata employment agreement. *Id.* On or about June 27 or 28, 2006, however, Kim received a cell phone call from the Posdata lab manager Inchul Shin, who told Kim that while he had done a good job, his position was eliminated as part of a reorganization. *Id.* Kim's new position was to supervise three employees whose jobs were to attend various standards committee meetings and summarize the proceedings. *Id.* In other words, this was a "make work" position with no real responsibility. *Id.*

On August 22, 2006, Kim attended by phone a meeting at which Posdata's president reprimanded the lab manager, branding his reorganization a failure. *Id.* ¶7. The next day, however, Kim was suspended from all duties, without any explanation. *Id.* After being idled for almost two months, Kim flew to Seoul, Korea, where he met with Posdata's president, Mr. Yoo on October 26 or 27, 2006. Yoo gave Kim the choice of staying in Korea and doing nothing or resigning. *Id.* With his family living in the U.S., Kim was constructively terminated. Yoo offered Kim a one-year severance, terminating on June 17, 2007, the one-year anniversary of Kim's contract extension. *Id.* The severance agreement provided that Kim's severance payments through then would be accelerated and paid all at once that month. *Id.* Not wanting to incur the additional tax liability associated with the payout, Kim asked if the severance pay could be paid on Posdata's normal pay periods instead. *Id.* Yoo agreed. *Id.* Kim told Yoo that he would likely look for other work in the WiMax area. *Id.* From that day (October 27, 2006) forward, Kim understood that he no longer was an "employee" of Posdata. *Id.*

D.    **INQUADRON'S FORMATION.**

Beginning with his apparent demotion in late June 2006, as part of the failed reorganization of Posdata's labs, Kim understood that his future with Posdata was probably limited and would not last much longer. *Id.* ¶8. He contemplated how to reassemble, within Posdata, the team with which he had successfully worked, but eventually realized doing so would not happen. *Id.* Kim also thought about beginning a new company that would take advantage of

1  his accumulated knowledge regarding wireless communication products, but took no concrete

2  steps to do so until after his termination by Posdata on October 27, 2006.  *Id.*

3      Kim eventually decided to create a company, InQuadron, that would design and eventually

4  sell a WiMax modem design as a system on a chip, or "SoC."  *Id.* ¶9.  Kim intended that the new

5  company would design the modem to operate with all WiMax implementations, which would

6  require operations over multiple frequencies and required a design and architecture that would be

7  wholly different from the WiBro-only designs Posdata had developed.  *Id.*  This was intentional,

8  for while Kim wanted to use his accumulated experience in the field of wireless communications,

9  he did not want his new company to follow the same WiBro path as Posdata, which would limit

10  its marketability to the Korean market and invite claims by Posdata.  *Id.*

11  

12  **E.    INQUADRON SUSPENDED OPERATIONS BEFORE DEVELOPING A PRODUCT, PRODUCT DESIGN OR PRODUCT SPECIFICATIONS.**

13      InQuadron had ceased its operations by about May 31, except for its anticipated defense of

14  this action.  *Id.* ¶10.  The very existence of this action — regardless of the truth or falsity of

15  plaintiff's allegations — has rendered InQuadron incapable of raising money.  *Id.*

16      As of the date it ceased operations, InQuadron had (and today still has) no product.  *Id.*

17  ¶11.  The company never finalized an architecture for its planned modem, let alone a product

18  design or set of specifications.  *Id.*

19  

20  **F.    NEITHER KIM NOR INQUADRON HAS MISAPPROPRIATED ANYTHING OF VALUE BELONGING TO POSDATA, NOR HAS KIM IMPROPERLY SOLICITED POSDATA EMPLOYEES.**

21      InQuadron and Kim do not have, never had and never used or disclosed to anyone a

22  Posdata channel card, "Posdata's DCCU technology," or any trade secrets that are comprised of

23  "test methods and comparison data."  *Id.* ¶12.  Neither Kim nor InQuadron possesses any turtle

24  board or card, nor do they have any diagrams, schematics or design documentation for such a

25  board or card.  *Id.*  Kim has not used any alleged Posdata trade secrets or confidential information

26  to solicit Posdata employees.  *Id.*

27      Kim did not have discussions with Posdata employees about their desire to work with Kim

28  at InQuadron until after Posdata terminated Kim in October 2006.  *Id.* ¶13.  Kim has never

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA  94304-1043

-5-
DEFENDANTS' MEMORANDUM IN OPPOSITION TO TRO, OSC AND EXPEDITED DISCOVERY
Case No. C 07 2504 RMW (PVT)

1    instructed anyone, directly or indirectly, to steal Posdata trade secrets or property, and he has not

2    misappropriated any Posdata trade secrets or property himself.  *Id.*

3         G.    **POSDATA HAS PUBLICLY ADMITTED IN KOREA THAT INQUADRON
               MISAPPROPRIATED NOTHING OF VALUE AND THAT POSDATA HAS SUFFERED**

4               **NO SIGNIFICANT HARM, LET ALONE IRREPARABLE HARM.**

5         On May 18, 2007, the Seoul Central District Prosecutor's Office issued a press release, a

6    copy of which purports to be attached as Exhibit F to plaintiff's Dolan Declaration.  The

7    translated press release from the Prosecutor's Office alleges an "espionage plan" involving

8    InQuadron personnel in Korea and in the U.S. — apparently including Kim.  The release also

9    touts, however, that "[t]his espionage plan was discovered at an early stage, preventing the

10   leakage of the world's first WiBro technology to overseas."  Dolan Decl. Ex. F at 1 (original

11   emphasis).

12        The Korean press picked up the story, adding further details.  For example, the Digital

13   Times reported, in a May 21, 2007 on-line article, now translated:

14            Posdata has announced: "We learned of an attempt to leak
             technology by retired staff members from the beginning of this year
15           and have confirmed the evidence through expert organizations, and
             in addition to lodging a civil suit in the State Court of California
16           against InQuadron, the organization concerned, we also intend to
             press criminal charges.["]  Posdata added that the losses for the
17           company owing to the attempt to leak technology on this occasion
             are insignificant, and there will be no great snag in the research and
18           development that is under way.

19   Declaration of David S. Elkins in Opposition to Application for TRO ¶ 2 & Ex. A.  The article

20   also criticized Posdata's apparent lack of appropriate efforts to maintain the confidentiality of its

21   information:  "However, according to the authorities, the rudimentary protective measures on the

22   Posdata side such as the restrictions and controls on reading are feeble and the fact that the

23   conspirators in the case easily got their hands on the core technology documents is an indication

24   of the warning that it has provided."  *Id.*  Seoul Economic similarly reported, in an on-line article

25   posted the same day and also translated:

26            The Prosecutors' Office has made plain in the recently revealed
27           case of the leaking of Posdata's portable Internet (WiBro)
             technology just how negligent the handling of security management
28           regarding core technology and technical personnel has been.  Even

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA  94304-1043

-6-
DEFENDANTS' MEMORANDUM IN OPPOSITION TO TRO, OSC AND EXPEDITED DISCOVERY
Case No. C 07 2504 RMW (PVT)

though Posdata spent 90 Billion Won in developing WiBro technology, it barely escaped astronomical losses of up to 15 Trillion Won from negligent handling of security management that, among other things, left anyone free to peruse it.

Elkins Decl. ¶3 & Ex. B.

The accompanying news broadcast from Korean station YTN contains Posdata's clearest admission that it has not been harmed, at least not substantially or irreparably. In that broadcast, Posdata Executive Director Joon-Il Shin states that "with the technology now being developed, since it is a technology that is more than a year in advance of our competitors, *if the technology had leaked out*, our competitors would have been right at our heels and the losses for Korea's industry could have been around 15 Trillion Won." Elkins Exs. C (.asf file containing the news broadcast, playable through Windows Media Player[2]) and D (translation of the broadcast).

## III.    POSDATA'S EX PARTE APPLICATION FOR A TRO SHOULD BE DENIED.

### A.    THE LEGAL STANDARDS GOVERNING POSDATA'S APPLICATION.

"A temporary restraining order is an *extraordinary remedy that must be denied 'except in a case clearly warranting it.'*" *3DO Co. v. Poptop Software, Inc.*, 1998 U.S. Dist. Lexis 21281, *10 (N.D. Cal. Oct. 27, 1998) (Conti, J.) (quoting *Dymo Industries, Inc. v. Tape Printer, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964) (emphasis added)); *accord Colt v. Mendoza*, 2007 U.S. Dist. Lexis 2516, *1 (E.D. Cal. Mar. 13, 2007) (a TRO is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.") (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).

The criteria for granting an application for a temporary restraining order ("TRO") are substantially the same as those for granting a preliminary injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

Thus, the applicant must show: (1) a strong likelihood of success on the merits; (2) the possibility of irreparable injury to the plaintiffs if injunctive relief is not granted; (3) a balance of hardships favoring the plaintiffs; and (4) advancement of the public interest. *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1234 (9th Cir. 1999) (citing *Los Angeles Mem'l Coliseum Comm'n v. Nat'l*

---

[2] A subtitled video is being prepared and will be submitted on June 25 or 26.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA  94304-1043

-7-
DEFENDANTS' MEMORANDUM IN OPPOSITION TO TRO, OSC AND EXPEDITED DISCOVERY
Case No. C 07 2504 RMW (PVT)

1  *Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980)).  Alternatively, the applicant may

2  establish "*either* a combination of probable success on the merits and the possibility of irreparable

3  harm *or* that serious questions are raised and the balance of hardships tips sharply in his favor."

4  *Earth Island Inst. v. U.S. Forest Serv.*, 442 F.3d 1147, 1158 (9th Cir. 2006) (emphasis in

5  original).  These two formulations of the alternate test "represent two points on a sliding scale in

6  which the required degree of irreparable harm increases as the probability of success decreases."

7  *LGS Architects, Inc. v. Concordia Homes of Nev.*, 434 F.3d 1150, 1155 (9th Cir. 2006).

8        The applicant "must *demonstrate* immediate threatened harm."  *Caribbean Marine Serv.*

9  *Co., Inc. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988) (emphasis in original).  Establishing a

10 risk of irreparable harm in the indefinite future is insufficient; rather, the applicant must show that

11 it "faces ***a real or immediate threat of substantial or irreparable injury***."  *Midgett v. Tri-County*

12 *Metro. Transp. Dist. of Oregon*, 254 F.3d 846, 850-51 (9th Cir. 2001) (emphasis added).

13       A district court will deny a motion for a TRO, however, where the applicant has not been

14 diligent in seeking this remedy.  *E.g., Apache Survival Coalition v. United States*, 118 F.3d 663,

15 665 (9th Cir. 1997) (affirming dismissal of TRO on grounds of laches).  To establish the defense

16 of laches, a party must show prejudice caused by the opposing party's lack of diligence in

17 pursuing its claim.  *Id.*  Indeed, a "long delay before seeking a preliminary injunction implies a

18 lack of urgency and irreparable harm."  *Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F.2d

19 1374, 1377 (9th Cir. 1985).

20       With these principles guiding the Court's discretion, the Court should deny Posdata's

21 application for a TRO.

22   **B.    P<small>OSDATA</small> F<small>AILS</small> T<small>O</small> S<small>HOW</small> A L<small>IKELIHOOD</small> O<small>F</small> S<small>UCCESS</small> O<small>N</small> T<small>HE</small> M<small>ERITS</small>.**

23        **1.    P<small>OSDATA</small> D<small>OES</small> N<small>OT</small> D<small>EMONSTRATE</small> T<small>HEFT</small> O<small>F</small> A<small>NY</small> T<small>RADE</small> S<small>ECRETS</small>.**

24       Posdata's brief repeats the same allegations of trade secret misappropriation or conversion

25 several times using different words, which tends both to create the illusion of greater substance

26 and to obscure the gravamen of its claim.  On pages 14-15, however, Posdata identifies three

27 categories of "stolen trade secrets, now in the hands of Defendants."  Posdata Brief at 14.  Each

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA  94304-1043

-8-
DEFENDANTS' MEMORANDUM IN OPPOSITION TO TRO, OSC AND EXPEDITED DISCOVERY
Case No. C 07 2504 RMW (PVT)

1   category is briefly analyzed below.  In each case, the analysis fails to show that defendants

2   misappropriated the claimed trade secret, or that the category qualifies as a trade secret, or both.

3                    **a.      THE POSDATA DIGITAL CHANNEL CARD UNIT (DCCU).**

4        First, Posdata claims that defendants "stole" Posdata's Digital Channel Card Unit, or

5   "DCCU."  *Id.*  Included as the DCCU are its PCB, its "combination of generic processors and

6   components," the placement of such components on the PCB, "Posdata's MAC and PHY

7   software, which contains unique Posdata-created source codes," "an overall proprietary

8   architecture and design for optimal interface between the DCCU's hardware and source code-

9   operated software," the "Modular RAS Implementation" file and the "Rev. O.4 DCCU Block

10  Diagram file."  *Id.* at 14-15 (citing Han Decl. ¶¶6, 24, 31, 39 and 40).  None of these cited

11  paragraphs in the Han Declaration, however, supports Posdata's contention.

12       Han Declaration paragraph 6 asserts that the DCCU "consists of several commercial

13  processors and components, which are placed on a Printed Circuit Board ('PCB').  Although the

14  processors and components are generic, the combination of the processors and components used

15  and their placement on the PCB is unique to Posdata and unknown to competitors."  The same

16  paragraph then concludes, without any facts, that "Posdata closely guards this design

17  configuration because it a creates a proprietary process to support its large and small base stations

18  in achieving connectivity to the Internet, while physically moving at high speeds."  *Id.*  This

19  seems to say that Posdata "guards" its design because it is part of the product, but includes no

20  facts about what Posdata does to maintain the alleged secrecy of its "unique" layout of

21  commercially available components.  In fact, Posdata's declarations are remarkably silent about

22  what steps it has taken to designate and protect its purportedly confidential information, apart

23  from the standard practice of having employees sign nondisclosure agreements.  No allegation is

24  made that anything was marked confidential, or protected from reverse engineering, and the like.

25  For example, Posdata does not provide any facts suggesting that a customer or even a competitor

26  could not open up Posdata's base station, examine the PCB and see exactly which components

27  and layout Posdata chose to use ─ much like one can do with a PC motherboard when adding an

28  additional stick of RAM.  This omission is fatal to the existence of a trade secret, which Posdata

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA  94304-1043

-9-
DEFENDANTS' MEMORANDUM IN OPPOSITION TO TRO, OSC AND EXPEDITED DISCOVERY
Case No. C 07 2504 RMW (PVT)

1   must establish. Cal Civ. Code §3426.1(d)(2) (defining "trade secret" as information that derives

2   independent economic value from not being generally known to the public and that "[i]s the

3   subject of efforts that are reasonable under the circumstances to maintain its secrecy.").[3]

4   　　　　Han Declaration paragraph 24 contends that Posdata recovered, from an external storage

5   device of Choon Shin *that he turned in to Posdata, along with his computer, on May 14, 2007*, a

6   file that is "Posdata's proprietary PCB design." Given that Choon Shin was a Posdata employee,

7   his possession of the file is irrelevant. Han then contends that the file on Shin's storage device is

8   identical to the "MCCA/Turtle Card's hardware architecture." *Id.* Contrary to Posdata's repeated

9   contentions, InQuadron did not develop the turtle board or card. It is or was something developed

10  by Posdata employees for Posdata's use. Moreover, Posdata fails to demonstrate that defendants

11  have such a board, are using it or even have a use for it.

12  　　　　Han Declaration paragraph 31 attempts to link a "MCCA REV.C. GERBER DATA" .zip

13  file to defendants, citing Han Exhibit 11. Han contends that the files "contain information

14  regarding Posdata's proprietary PCB design and layout." Han Decl. ¶31. Apart from Posdata's

15  failure to establish the trade secret or even confidential status of the PCB design and layout,

16  Han's contention is contradicted by paragraph 23 of his declaration, in which he states the .zip

17  file was not recovered. Any conclusions about its contents are thus unfounded speculation.

18  Moreover, while Han notes in paragraph 23 that a similarly named file was taken from Axstone

19  and viewed at the Prosecutor's Office, Han's conclusions about what the file contained lack

20  foundation (he claims no personal knowledge) and are incompetent ─ Han's business

21  department, investment department and corporate planning team experience at Posdata hardly

22  qualify him to opine on technical issues.

23  　　　　Han Declaration paragraph 39 is conclusory in the extreme. He blankly states that "[i]t is

24  apparent to me from reviewing several emails between Dr. Kim, Choon Shin and Jeff Choi

25  (members of Dr. Kim's former Lab 1 team), and other correspondence between Kim and his

26  associates, that they stole Posdata's trade secrets to develop their own smaller base station

27

28  [3] In addition, the Korean Public Prosecutor publicly lambasted Posdata for its "rudimentary," "feeble" and insufficient confidentiality measures. Elkins Decl. Exs. A-B.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA 94304-1043

-10-
DEFENDANTS' MEMORANDUM IN OPPOSITION TO TRO, OSC AND EXPEDITED DISCOVERY
Case No. C 07 2504 RMW (PVT)

1    MCCA/Turtle Card, during company time and using company resources." *Id.* No evidence is

2    cited for Han's personal opinion, nor are any time frames attached to the opinion. The rest of the

3    paragraph makes similar, conclusory statements without any citations to exhibits or any other

4    claimed evidence. Paragraph 40 merely contends that Posdata recovered a Posdata data file from

5    Choon Shin's external storage device when he turned in his company equipment on May 14,

6    2007, presumably when he was terminated. That fact does not show that defendants had the file

7    or ever even had access to it.

8        Moreover, Posdata's contention ignores the technological differences between its WiBro

9    base station and the broader WiMax product that InQuadron hoped to create. A product for the

10   multiple WiMax standards, as noted above, operates over multiple frequencies and requires a

11   design and architecture that would be wholly different from the WiBro-only designs Posdata had

12   developed. Kim Decl. ¶9. InQuadron thus did not need and could not use Posdata's DCCU

13   architecture, design or anything else. *Id.*

14       Boiled down, Posdata's claim about misappropriation of the DCCU PCB is that

15   defendants developed a "turtle card" that has components and a layout remarkably similar to the

16   DCCU components and layout. As explained in the fact section, however, the turtle card was a

17   Posdata product. Defendants do not have it. And, in any event, even if they did, Posdata has

18   failed to establish that the PCB was the subject of reasonable efforts to maintain its secrecy.

19       Moreover, wholly absent from Posdata's brief and declarations is *any* purported evidence

20   that defendants stole "Posdata's MAC and PHY software, which contains unique Posdata-created

21   source codes," "an overall proprietary architecture and design for optimal interface between the

22   DCCU's hardware and source code-operated software," the "Modular RAS Implementation" file

23   and the "Rev. O.4 DCCU Block Diagram file." Posdata Brief at 14-15.

24       Taken as a whole, Posdata has failed to establish a likelihood of success on the merits of

25   its DCCU-related contentions.

26           **b.    THE "TEST METHODS AND COMPARISON DATA."**

27       Posdata asserts that defendants misappropriated trial run reports involving DoCoMo, the

28   Mobile 3 Plugfest Interim Report and Interoperability Test ("IOT") data. *Id.* at 15 (citing Han

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA  94304-1043

-11-
DEFENDANTS' MEMORANDUM IN OPPOSITION TO TRO, OSC AND EXPEDITED DISCOVERY
Case No. C 07 2504 RMW (PVT)

1  Decl. ¶¶6-9, 21-23, 31, 36, 39).  Paragraph 6, examined above, is Han's conclusory contention

2  that the DCCU PCB is a closely guarded secret.  Paragraph 7 alleges that the IOT reports

3  "contained data useful for Posdata's engineers" and are important to the design process.  Missing,

4  however, are any facts establishing that the IOT reports derive independent economic value from

5  not being generally known to the public and are the subject of efforts that are reasonable under

6  the circumstances to maintain their secrecy.  Han paragraph 21 alleges that a Posdata employee e-

7  mailed IOT reports to Kim.  The accompanying Exhibit 9, however, shows that the purpose of the

8  e-mail was to send news of a shared accomplishment — it was Kim's former Posdata team that

9  was responsible for the product.  The IOT report itself is not included as an exhibit, and despite

10  his incompetence to opine on the technical value of IOT reports, Han's Declaration contains no

11  specific facts demonstrating that they are confidential or useful outside Posdata.

12      Han Declaration paragraph 21 states that on December 11, 2006, Jeff Choi — a Posdata

13  employee — received NTT DoCoMo test results from Jinyoung Park — another Posdata

14  employee.  Exhibit 10, which Han cites, confirms that the report was sent only to people with

15  Posdata e-mail addresses.  The purpose of including this exhibit is unclear, but in no way does it

16  implicate defendants.

17      Finally, Han contends that Choon Shin improperly sent defendants a copy of the Plugfest

18  Mobile 3 Interim Report.  Han Decl. ¶22.  This is not a trade secret violation or any other tort.

19  Han admits that "Plugfest reports are peer data reports that measures [sic] performance against

20  other vendor's products."  *Id.*  In other words, this is data shared among Posdata and its

21  competitors, comparing their products.  Han contends that non-members of the Plugfest group

22  have an advantage if they get the reports.  *Id.*  This "advantage" is akin to one being sent a page

23  from the subscription-only Wall Street Journal Online Edition by a subscriber without paying for

24  it; maybe the subscriber violated a Wall Street Journal policy, but no trade secret violation results.

25      Posdata fails to demonstrate a likelihood of success in establishing a trade secret violation

26  as to reports.

27          c.    THE TURTLE CARD.

28      Posdata contends that defendants created the Modular Channel Card Assembly

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA  94304-1043

-12-
DEFENDANTS' MEMORANDUM IN OPPOSITION TO TRO, OSC AND EXPEDITED DISCOVERY
Case No. C 07 2504 RMW (PVT)

("MCCA") or "Turtle Card" using Posdata's trade secrets or proprietary information. Posdata Brief at 15 (citing Han Decl. ¶¶6, 23 & 30). As previously observed, Posdata's papers misconstrue what the Turtle Card is (or at least was). It was not an InQuadron device, but a Posdata one. Posdata's papers are likewise devoid of any evidence that defendants have the Turtle Card, have used it or had any ability to use it. The cited paragraphs to the Han Declaration demonstrate this failing. As analyzed above, paragraph 6 simply makes the conclusory claim that the DCCU PCB is a trade secret. Paragraph 23 states that the Turtle Card and DCCU shared "a very similar design and layout." Given that the Turtle Card is/was Posdata's, these contentions do not implicate defendants. Paragraph 30 asserts that InQuadron was seeking a business relationship with "several companies to develop the Turtle Card and capitalize on other Posdata trade secret information." Exhibit 22, however — the only support for that paragraph's assertions — contains e-mails that have no cognizable connection to the Turtle Card or to any of Posdata's alleged trade secrets or property. Rather, the e-mails appear to be related to InQuadron's attempts to set up meetings with potential investors.

### 2.    POSDATA'S "EMPLOYEE RAIDING" ALLEGATIONS, EVEN IF TRUE, ARE INSUFFICIENT TO IMPOSE ANY LIABILITY AND MUST BE DISREGARDED.

Posdata lists certain Posdata employee information as trade secrets in Posdata's trade secret designation pursuant to California Code of Civil Procedure section 2019.210. Posdata apparently abandons this contention by failing to establish through legal or factual documentation that InQuadron and Kim unlawfully misappropriated these purported trade secrets. Accordingly, Posdata's request for a TRO against InQuadron and Kim as to solicitation of Posdata's employees must be denied.

InQuadron and Kim may solicit employees from Posdata (or any other company) so long as they do not use Posdata's trade secrets in doing so. "Mere solicitation of an employee, under no contract of employment, to leave and associate with a competing firm is not illegal." *Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1338 (9th Cir. 1980). Only if there is a "misappropriation of trade secrets as a concomitant of the solicitation" may relief be granted. *Id.* Here, Posdata fails to demnstrate that InQuadron and Kim misappropriated any trade

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA 94304-1043

-13-
DEFENDANTS' MEMORANDUM IN OPPOSITION TO TRO, OSC AND EXPEDITED DISCOVERY
Case No. C 07 2504 RMW (PVT)

1  secrets in allegedly soliciting Posdata employees.  The extraordinary TRO relief requested must

2  thus be denied.

3     In its designation of trade secrets pursuant to California Code of Civil Procedure section

4  2019.210, Posdata identifies "Posdata's employee lists and organization charts, including but not

5  limited to the research teams assembled by Posdata and working in Posdata's Lab 1 and Lab 2 on

6  development of its FLYVO$^{TM}$ base station technology, and knowledge of the specific work being

7  done for Posdata by particular employees."  Nowhere in its Brief, however, does Posdata

8  expressly or implicitly allege that Kim or InQuadron misappropriated Posdata's employee

9  information-type "trade secrets" in soliciting Posdata employees.  At best, Posdata alleges that

10  InQuadron and Kim solicited Posdata employees after Kim was fired in October 2006 — which

11  by itself is not unlawful.

12     Plaintiff's assertions that defendants allegedly "raided" Posdata's employees do not entitle

13  it to the extraordinary TRO relief it seeks.

14
15  ***Injunctive relief should be granted only upon convincing proof of a harmful violation of the plaintiff's rights***, and the instances in which such rights are violated by an employee's misuse of
16  information gained during his employment constitute an exceedingly small proportion of the whole. . . . The doctrine under
17  which injunctive relief is granted should not be given application that would overemphasize the employer's right to the detriment of
18  the employee by treating as confidential and secret all knowledge and information gained by the employee that might be of assistance
19  to him and a later and competing employer.

20  *Mathews Paint Co. v. Seaside Paint & Lacquer Co.*, 148 Cal. App. 2d 168, 175 (1957); *American*

21  *Alloy Steel Corp. v. Ross*, 149 Cal. App. 2d 215, 219 (1957) (quoting *Mathews Paint Co. v.*

22  *Seaside Paint & Lacquer Co.*, 148 Cal. App. 2d 168, 175 (1957)) (adopting *Mathews Paint Co.'s*

23  reasoning) (emphasis added).  Posdata provides neither convincing factual proof of misuse of

24  Posdata's employee information "trade secrets" nor provided any legal analysis or argumentation

25  as to the lawfulness of InQuadron and Kim's alleged solicitation of Posdata employees.

26  Posdata's request for a TRO against InQuadron and Kim as to solicitation of Posdata's employees

27  must be denied.

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA  94304-1043

-14-
DEFENDANTS' MEMORANDUM IN OPPOSITION TO TRO, OSC AND EXPEDITED DISCOVERY
Case No. C 07 2504 RMW (PVT)

1

## C.    POSDATA FAILS TO DEMONSTRATE IMMEDIATE THREATENED HARM.

2          Posdata's attempt to demonstrate irreparable harm if the requested TRO is denied is long

3    on rhetoric and short on substance.  In fact, Posdata would suffer no harm, irreparable or

4    otherwise, if the TRO is denied.

5          To show irreparable harm, Posdata relies exclusively on paragraphs 37, 38, 39 and 41 of

6    the declaration of Ho Tae Han.  These paragraphs contain general conclusions about Posdata's

7    investment in WiMax technology and assertions that a competitor of Posdata could benefit from

8    unspecified proprietary information of Posdata if the competitor had access to it.  The only

9    technology that Han claims the defendants have used relates to a MCCA/Turtle Card.  Han Decl.

10   ¶38.  In fact, however, the defendants do not have and have not used any technology related to a

11   MCCA/Turtle Card and have not made any efforts to develop such a product.  Kim Decl. ¶12.

12   InQuadron's development efforts have been directed to a modem to operate with all WiMax

13   implementations.  *Id.* ¶9.  This project requires a design and architecture wholly different from

14   the WiBro-only designs that Posdata has developed.  Moreover, InQuadron has ceased all

15   operations because of this lawsuit and is not engaged in any business at all at the present time.  *Id.*

16   ¶¶10-11.  Despite Han's general statements about how a competitor could obtain an advantage

17   from using Posdata's information, Mr. Han is very careful not to characterize InQuadron as such

18   a competitor.  This is hardly an inadvertent omission, since Posdata has trumpeted to the Korean

19   media that none of the alleged "thefts" of trade secrets has caused it, or will cause it, any harm at

20   all.  Elkins Decl. Exs. A, B, C & D.

21         Although Posdata bears a heavy burden to demonstrate irreparable harm in order to

22   persuade this court to grant its requested temporary restraining order, it offers only generalities

23   that are contradicted by its public statements in the Korean media.

24         Posdata's claim of irreparable injury is also belied by the significant delay between the

25   time it claims to have been aware of Dr. Kim's suspicious activity and hired Kroll to investigate –

26   in early 2007 (Yoon Decl. ¶4) – and the time it applied for a TRO.  Moreover, Posdata offers no

27   bona fide explanation for the six-week delay between the time its complaint was filed and the

28   filing of its TRO application.  If the harm it expected to experience was truly irreparable and

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA  94304-1043

-15-
DEFENDANTS' MEMORANDUM IN OPPOSITION TO TRO, OSC AND EXPEDITED DISCOVERY
Case No. C 07 2504 RMW (PVT)

1   immediate, it would have been expected to seek injunctive relief with the original complaint or

2   shortly thereafter.  Its long delay belies its claim of any present threat of irreparable injury.

3   **IV.     EXPEDITED DISCOVERY SHOULD BE DENIED OR LIMITED.**

4            Posdata claims that it is entitled to expedited discovery "to further uncover Defendants'

5   unlawful conduct prior to the preliminary injunction hearing."  This request suggests its

6   fundamental lack of confidence in the evidence it has adduced in support of its motion.  If the

7   motion is well-taken, it should not require discovery; if it is not, the motion should not have been

8   brought.  Moreover, Posdata apparently intends to present defendants with a constantly moving

9   target in connection with its motion for a preliminary injunction.  Civil L.R. 7-2 sets forth the

10  briefing schedule for motions, including motions for preliminary injunction.  (*See* Civil L.R.65-

11  2).  Posdata has filed its opening brief.  Defendants are entitled to an opposition brief and Posdata

12  to a reply.  Oral testimony at the hearing is not permitted.  Civil L. R. 7-6.  Posdata apparently

13  intends to submit entirely new evidence with its reply and so deprive defendants of the

14  opportunity to respond to that evidence.  This attempt to disadvantage defendants should not be

15  countenanced.

16           Posdata argues that discovery should be permitted because it claims that there is a risk that

17  documents, data and other evidence will be destroyed.  This assertion is specious.  Counsel for

18  defendants has taken custody of documents and electronic data relevant to this proceeding and is

19  well-aware of the need to preserve those documents and data.  Posdata also argues that expedited

20  discovery is appropriate because it is seeking a preliminary injunction, but it identifies no

21  particular discovery that it requires to support its motion.  Rather, Posdata's request is really an

22  attempt to distract defendants' counsel from the substantial work required to oppose a preliminary

23  injunction motion that Posdata has taken weeks or months to prepare.  Defendants submit that

24  Posdata's motion should stand or fall on the record that it represents is sufficient for a temporary

25  restraining order and a preliminary injunction and that expedited discovery should be denied.

26           The cases Posdata cites in its quest for expedited discovery do not support the broad,

27  unfettered and greatly accelerated discovery Posdata seeks.  For example, in *Semitool, Inc. v.*

28  *Tokyo Electron America, Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002), Magistrate Judge Chen

**SQUIRE, SANDERS &**
**DEMPSEY L.L.P.**
600 Hansen Way
Palo Alto, CA  94304-1043

-16-
DEFENDANTS' MEMORANDUM IN OPPOSITION TO TRO, OSC AND EXPEDITED DISCOVERY
Case No. C 07 2504 RMW (PVT)

1   permitted the early (by about three weeks) discovery of specifically described "core documents

2   central to the underlying case" within twenty days instead of the normal thirty days.  Here,

3   Posdata has not described the documents or depositions it seeks at all and it purports to require its

4   vaguely defined discovery on seven days notice for documents and three days for depositions.

5   There is simply no basis for this Court to conclude that Posdata has established good cause for

6   this expansive discovery during the period that defendants will be busy preparing their opposition

7   to Posdata's preliminary injunction motion.  Indeed, in another case Posdata cites, *Qwest*

8   *Communications International, Inc. v. Worldquest Networks, Inc.,* 213 F.R.D. 418, 420 (D. Colo.

9   2003), the court denied expedited discovery in part because the court was "hard pressed to define

10  the outer boundary of [the proposed discovery] requests."  Posdata's requests suffer the same

11  infirmity.  Finally, in *Pod-ners L.L.C. v. Northern Feed & Bean of Lucerne, Ltd.*, 204 F.R.D. 675,

12  676 (D. Colo. 2002), the court granted the request for expedited discovery limited to inspection of

13  certain beans and to documents showing their origin because the beans were commodities subject

14  to sale and consumption.  None of the information conceivably at issue here is the type that is

15  ordinarily sold or eaten.  Moreover, defendants' counsel has already taken steps to assure the

16  preservation of relevant evidence.

17          Even if expedited discovery were appropriate, the scope of discovery Posdata seeks is

18  plainly excessive.  First, Posdata asks to be permitted discovery "as to matters reasonably

19  calculated to lead to discovery of evidence relevant to resolution of plaintiff's motion for

20  preliminary injunction."  Proposed Order at 4.  Not only does Posdata make no effort to specify

21  the evidence necessary to the resolution of its motion, it also seeks discovery beyond that to

22  which it would be entitled in the ordinary course.  Federal Rule of Civil Procedure 26(b)(1) only

23  permits discovery "relevant to the claim or defense of any party."  Discovery "relevant to the

24  subject matter involved in the action", which is what Posdata seeks, is only permitted for good

25  cause, which Posdata has made no effort to establish.  *Id.*

26          While the Court should deny Posdata's request for discovery, it should grant defendants

27  expedited discovery of the matters set forth in the declarations Posdata filed with its motion.

28  Only if this discovery is provided and subject to analysis and argument in defendants' opposition

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA 94304-1043

-17-
DEFENDANTS' MEMORANDUM IN OPPOSITION TO TRO, OSC AND EXPEDITED DISCOVERY
Case No. C 07 2504 RMW (PVT)

1    will this Court be able to render a fair and reasoned decision.  Thus, the Court should permit

2    defendants to serve and require Posdata to respond to a single document request, limited to

3    matters raised in the declarations Posdata has filed in support of its preliminary injunction motion,

4    with the response and production of documents due fourteen days before defendants' opposition

5    to the preliminary injunction motion is due.  In addition, during the period before defendants'

6    opposition is due, defendants should be permitted to take, in this district, the depositions of each

7    of Posdata's declarants with respect to the matters set forth in their declarations submitted in

8    support of the pending motion.  Only in this way will defendants have a fair chance to oppose the

9    motion that Posdata has prepared over a period of weeks or months.

10   **V.     CONCLUSION.**

11       Posdata has not borne its burden of establishing a likelihood of success on the merits, or of

12   demonstrating immediate threatened harm.  The requested TRO should be denied and no Order to

13   Show Cause should issue.  Posdata's request for expedited discovery seeks to disadvantage

14   defendants and fails to identify with specificity any claimed need for discovery in connection

15   with any preliminary injunction proceedings, let alone good cause for expediting such discovery.

16   Dated:   June 22, 2007                    Respectfully submitted,

17                                             SQUIRE, SANDERS & DEMPSEY L.L.P.

18

19                                             By:  /s/ David S. Elkins
20                                                 David S. Elkins
                                                   Nathan Lane III
21                                                 Allison E. Pitigoi

22                                                 Attorneys for Defendants
                                                   SEYOUNG KIM and INQUADRON, INC.

23

24

25

26

27

28

-18-
DEFENDANTS' MEMORANDUM IN OPPOSITION TO TRO, OSC AND EXPEDITED DISCOVERY
Case No. C 07 2504 RMW (PVT)