1  SQUIRE, SANDERS & DEMPSEY L.L.P.
   David S. Elkins (State Bar # 148077)
2  delkins@ssd.com
   Allison E. Pitigoi (State Bar # 242211)
3  apitigoi@ssd.com
   Xavier M. Brandwajn (State Bar # 246218)
4  xbrandwajn@ssd.com
   600 Hansen Way
5  Palo Alto, CA  94304-1043
   Telephone:    +1.650.856.6500
6  Facsimile:    +1.650.843.8777

7  SQUIRE, SANDERS & DEMPSEY L.L.P.
   Nathan Lane III (State Bar # 50961)
8  nlane@ssd.com
   One Maritime Plaza, Third Floor
9  San Francisco, CA  94111
   Telephone:    +1.415.954.0200
10 Facsimile:    +1.415.393.9887

11 Attorneys for Defendants
   SEYOUNG KIM and INQUADRON, INC.

12

13

14              UNITED STATES DISTRICT COURT

15            NORTHERN DISTRICT OF CALIFORNIA

16                 SAN JOSE DIVISION

17 POSDATA CO., LTD., a South Korean            Case No. C 07 2504 RMW (PVT)
   corporation,
18                                              **DEFENDANTS SEYOUNG KIM'S AND
                                                INQUADRON, INC.'S NOTICE OF
19              Plaintiff,                       MOTION, MOTION AND
                                                MEMORANDUM IN SUPPORT OF
20        vs.                                    MOTION TO ENFORCE SETTLEMENT**

21 SEYOUNG KIM, an individual and
   INQUADRON, INC., a California
22 corporation,

23              Defendants.

24

25

26

27

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, California  94304-1043

1

**TABLE OF CONTENTS**

2

**Page**

3    I.     INTRODUCTION AND SUMMARY OF ARGUMENT ............................................... 1

4    II.    STATEMENT OF FACTS SUPPORTING ENFORCEMENT ..................................... 2

5           A.    The Parties' Settlement Reached On August 3, 2007 .................................... 2

6           B.    Posdata Assumes But Backburners The Drafting Role................................... 4

7           C.    Posdata Demands More Information While Withholding Draft Settlement
                  Documents .................................................................................................... 5

8           D.    The Parties Agree To Resolve Posdata's Demands For Further Responses
                  To Written Deposition Questions In Exchange For Sworn Financial
9                 Statements From Each Defendant................................................................... 6

10          E.    Posdata Gets The Sworn Financial Statements — But Continues To String
                  Defendants Along By Promising, And Then Failing, To Respond To
11                Defendants' Revisions To The Settlement Documents .................................. 8

12          F.    Posdata Tries To Change The Settlement By Demanding Money, But
                  Defendants Refuse And Indicate That They Will Seek To Enforce The
13                Settlement Reached On August 3, 2007 Unless Posdata Proceeds................. 8

            G.    Posdata Repudiates The Parties' Settlement Of August 3, 2007 ................. 10
14
     III.   THE COURT SHOULD ENFORCE THE PARTIES' AUGUST 3, 2007
15          SETTLEMENT IN LIGHT OF POSDATA'S LONG HISTORY OF FOOT-
            DRAGGING AND ITS RECENT REPUDIATION ........................................... 11
16
            A.    The Standards Governing This Motion To Enforce Settlement.................... 11
17
            B.    The Parties' Settlement Is Ripe For Enforcement ...................................... 12
18
                  1.     The Parties Intended Their Settlement To Be Binding ........................... 12
19
                  2.     The Parties Reached Agreement On Material Terms .............................. 14
20
     IV.    THE COURT SHOULD ENTER THE PROPOSED JUDGMENT .............................. 15

21   V.     CONCLUSION.................................................................................................. 15

22

23

24

25

26

27

28

**SQUIRE, SANDERS &
DEMPSEY L.L.P.**
600 Hansen Way
Palo Alto, California  94304-1043

- i -
DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT
CASE NO. C 07 2504 RMW (PVT)

1

## TABLE OF AUTHORITIES

2

**Page**

3

### CASES

4

*Adams v. Johns-Manville Corp.*,
  876 F.2d 702 (9th Cir. 1989) ............................................................................................ 11

5

*Callie v. Near*,
  829 F.2d 888 (9th Cir. 1987) ....................................................................................... 11, 12

6

7

*Core-Vent Corp. v. Implant Innovations*,
  53 F.3d 1252 (Fed. Cir. 1995) ......................................................................................... 12

8

*Denver v. Adolph Coors Co.*,
  813 F. Supp. 1476 (D. Colo. 1993) .................................................................................. 12

9

10

*Gardias v. San Jose State Univ.*,
  2007 U.S. Dist. LEXIS 24418 (N.D. Cal. Mar. 20, 2007) ............................................... 11

11

*Gopal v. Yoshikawa*,
  147 Cal. App. 3d 128 (1983) ............................................................................................ 11

12

13

*Harrop v. Western Airlines, Inc.*,
  550 F.2d 1143 (9th Cir. 1977) .......................................................................................... 11

14

*Jeff D. v. Andrus*,
  899 F.2d 753 (9th Cir. 1989) ............................................................................................ 11

15

16

*Richardson v. Richardson*,
  180 Cal. App. 3d 91 (1986) .............................................................................................. 11

17

*United Commer. Ins. Serv. v. Paymaster Corp.*,
  962 F.2d 853 (9th Cir. 1992) ............................................................................................ 11

18

19

*Varwig v. Leider*,
  171 Cal. App. 3d 312 (1985) ............................................................................................ 11

20

21

### STATUTES

22

Cal. Labor Code §2802 ............................................................................................................ 10

23

Fed. R. Civ. P. 30(b) ......................................................................................................... *passim*

24

25

26

27

28

**SQUIRE, SANDERS &
DEMPSEY L.L.P.**
600 Hansen Way
Palo Alto, California 94304-1043

- ii -
DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT

CASE NO. C 07 2504 RMW (PVT)

1

## NOTICE OF MOTION

2    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3    NOTICE IS HEREBY GIVEN that as soon as the matter may be heard by the above-

4 entitled court, located at 280 S. First Street, San Jose, California, defendants Seyoung Kim and

5 InQuadron, Inc. will and hereby do move to enforce the binding settlement reached by

6 Defendants and plaintiff Posdata Co., Ltd. at the August 3, 2007 Settlement Conference in this

7 action hosted by Magistrate Judge Trumbull.  The agreed material terms of that settlement are

8 detailed in the Memorandum of Points and Authorities that follows and in the Proposed Judgment

9 attached to this document for the Court's consideration and entry.  The Court's equitable power to

10 enforce summarily an agreement to settle a case pending before it serves as the legal basis for

11 Defendants' motion.

12    Defendants' motion is based on this Notice of Motion and Motion, on the accompanying

13 Memorandum of Points and Authorities, on the Declarations of Kenneth D. Lee and David S.

14 Elkins filed concurrently herewith, on the Court's files and records of this action, on any reply

15 papers that may be submitted and on the arguments of counsel at any hearing that may be held.

16

17

18

19

20

21

22

23

24

25

26

27

28

**SQUIRE, SANDERS &**
**DEMPSEY L.L.P.**
600 Hansen Way
Palo Alto, California  94304-1043

DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT

CASE NO. C 07 2504 RMW (PVT)

1    **I.        INTRODUCTION AND SUMMARY OF ARGUMENT.**

2              Defendants InQuadron, Inc. ("InQuadron") and Dr. Seyoung Kim ("Kim") find

3    themselves in the curious position of seeking to enforce the parties' August 3, 2007 settlement in

4    this action that makes permanent the TRO entered by this Court on June 27, 2007, adds an

5    employee solicitation bar, requires that any future InQuadron products for commercial use be

6    examined by a neutral expert, and carries liquidated damages for any proven violation of the

7    permanent injunction.  What is absent from the settlement is any requirement that Defendants pay

8    money—a settlement term expressly negotiated and agreed on by the parties.  After five months

9    of stalling, excuses and then broken promises by plaintiff Posdata Co., Ltd. ("Posdata"),

10   Defendants have no choice but to seek Court enforcement of the parties' settlement.

11             The evidence below chronicles that the parties reached their settlement on August 3, 2007,

12   at the end of an all-day settlement conference hosted by Magistrate Judge Trumbull.  As is

13   typical, the parties recited their settlement on the record, with the documentation (a consent

14   judgment containing the permanent injunction and settlement agreement and release) to be

15   completed afterward.  The Court entered a Minute Order indicating that the case settled.

16   InQuadron fulfilled the settlement condition that required it to respond under oath and in writing

17   to Posdata's written FRCP 30(b)(6) deposition questions.  Posdata, however, evidently began to

18   suffer an acute case of buyer's remorse.  In particular, Posdata—or at least certain persons within

19   Posdata—apparently concluded that for whatever reason, it must get some money from Dr. Kim.

20   Thus, despite the parties' agreement to use their "best efforts" to close their settlement by

21   September 30, 2007, Posdata strung along Defendants (and Magistrate Judge Trumbull, who until

22   last week continued her attempts to keep the settlement on track) until a few days ago.

23             The Court possesses the equitable power to enforce summarily an agreement to settle a

24   case pending before it.  To exercise that power, the Court must find that the parties made an

25   agreement that they intended to be binding, and that they agreed on material terms.  The parties'

26   agreement here meets both requirements.  First, the parties' expressed their intent on August 3,

27   2007 that their settlement be binding, and confirmed that intent by reciting the settlement on the

28   record.  The available circumstantial evidence—the Court's Minute Order indicating that the case

**SQUIRE, SANDERS &**
**DEMPSEY L.L.P.**
600 Hansen Way
Palo Alto, California  94304-1043

1    settled and the course of dealing between the parties to date—underscores the parties' intent to

2    bind each other.  Second, the parties agreed on the material terms of their settlement, as

3    foreshadowed above and detailed below.

4         It is not clear whether Posdata decided to disregard the parties' binding settlement shortly

5    after it was made on August 3, or whether Posdata's foot dragging and broken promises reflect

6    internal indecision until more recently.  What is clear is that for some time Posdata's conduct has

7    not been in good faith.  It has wasted at least three months of time devoted by Defendants and

8    their counsel and by Magistrate Judge Trumbull.  The lost time has robbed InQuadron of

9    opportunities to raise funds to embark on a new path forward.  It has increased the cost of

10   litigation.  And, as briefed in Defendants' concurrent request to expedite this motion, the lost time

11   may have serious penal consequences for three former InQuadron employees who face a criminal

12   proceeding in Korea on January 16, 2008 (the afternoon of January 15 in California).

13        Posdata received the benefit of the Court's immediate exercise of its equitable powers

14   when Posdata sought its TRO, having the motion heard on the third court day after filing it (even

15   though Defendants had appeared six weeks earlier).  Equity compels the same consideration now.

16   Defendants thus request that the Court use its equitable powers on shortened time to enforce

17   summarily the settlement reached by the parties over five months ago.

18   **II.    STATEMENT OF FACTS SUPPORTING ENFORCEMENT.**

19        **A.    THE PARTIES' SETTLEMENT REACHED ON AUGUST 3, 2007.**

20        Following entry of a TRO, the Court ordered the parties to an early settlement conference

21   with Magistrate Judge Trumbull, which was scheduled for the morning of Friday, August 3, 2007.

22   Declaration of David S. Elkins in Support of Defendants' Motion to Enforce Settlement ("Elkins

23   Decl.") ¶2 & Ex. A.  The August 3, 2007 Settlement Conference hosted by Magistrate Judge

24   Trumbull was attended on the plaintiff's side by Mr. Ho Tae Han of Posdata, who had submitted

25   declarations in support of Posdata's motion for TRO and who was represented as having full

26   settlement authority, and Posdata's counsel of record.  *Id.* ¶3; Declaration of Kenneth D. Lee in

27   Support of Defendants' Motion to Enforce Settlement ("Lee Decl.") ¶3.  Individual defendant and

28   InQuadron founder Dr. Seyoung Kim, and Kenneth D. Lee, who is InQuadron's general counsel

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, California  94304-1043

- 2 -
DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT
CASE NO. C 07 2504 RMW (PVT)

1    and CFO, were Defendants' party representatives, and were accompanied by Defendants' counsel

2    of record.  Elkins Decl. ¶3; Lee Decl. ¶2.

3        Settlement discussions were intensive and lasted through lunch (which no one took) and

4    most of the day, culminating in a binding settlement put on the record after 4:00 p.m.  *Id.* ¶4;

5    Elkins Decl. ¶4.  After re-confirming the terms together, counsel for the parties recited the

6    material terms of the settlement onto the record.  *Id.*; Lee Decl. ¶3.  Because the magistrate judge

7    courtrooms use recordings instead of court reporters, counsel's recitation of the terms was

8    recorded.  Elkins Decl. ¶4.  Unfortunately, the recording machine was not turned on until after the

9    recitation that the settlement was intended by the parties to be binding had been spoken.  *Id.*  The

10    remaining recitation on the record, however, along with the fact that the settlement was put on the

11    record at all confirm its binding nature.  *Id.*

12        The binding settlement agreed to by the parties included several material terms.  *Id.* ¶5;

13    Lee Decl. ¶¶4-5.  The documents intended to effectuate the settlement's material terms were left

14    to the parties to draft, as is typical in such cases.  Elkins Decl. ¶5; Lee Decl. ¶4.  The material

15    terms of the settlement agreed to by the parties are as follows:

   a.  The parties agreed to entry of a consent judgment containing a permanent
16       injunction identical in most respects to the Court's TRO entered on June 27, 2007
17       (docket no. 29), but with the addition of an employee solicitation bar that matched
         the conditions of the existing TRO provisions[1];
18

   b.  In the event that InQuadron developed a product for commercial sale in the
19       "WiMax" or "WiBro" segments, a neutral, independent expert selected by the
         parties would be provided access to InQuadron's prototype to compare it against
20       what Posdata claimed were its trade secrets at issue in the action, and would report
         to the parties, with his/her final report binding;
21

   c.  Posdata would be able to take a Federal Rule 30(b)(6) deposition of InQuadron
22       through written questions, which would be answered in writing and executed
         under penalty of perjury;
23

   d.  Except as to any settlement obligations, the parties agreed to release each other
24       from any and all claims, including unknown claims;

25

---

26    [1] Namely, that Defendants would not solicit Posdata employees "for the purpose of (i) working
     for Defendants or any entity that Defendants may own, be involved in, or affiliated with, that is
27    within the WiMAX technology industry, and (ii) having the Solicited Personnel utilize, disclose,
     or share any of the Protected Property with Defendants or any entity that Defendants may own, be
28    involved in, or affiliated with."  Elkins Decl. ¶5a.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, California  94304-1043

DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT

CASE NO. C 07 2504 RMW (PVT)

      e.   The parties would not say anything publicly about the settlement except as provided in an agreed statement to be negotiated, and that in the meantime they would maintain the fact of settlement as confidential except for certain principals of the parties;

      f.   Defendants pay nothing in settlement, but agreed to liquidated damages in the amount of $750,000 in the event Posdata were able to show, by clear and convincing evidence, a willful violation of the permanent injunction contained in the consent judgment; and

      g.   The parties would use best efforts to close the settlement by September 30, 2007.

Elkins Decl. ¶5 & Ex. B (transcription of the recording of proceedings at the end of the August 3, 2007 Settlement Conference); Lee Decl. ¶5. The Rule 30(b)(6) deposition of InQuadron by written questions and written answers was requested by Posdata so that it could account for Defendants' use, if any, of the trade secrets or proprietary information allegedly misappropriated. Elkins Decl. ¶5. After the recitation of material terms, counsel for Posdata and counsel for Defendants each turned back toward his client and clients, respectively, and received confirmation that the recited material terms were understood and agreed. Lee Decl. ¶6. At the conclusion of the Settlement Conference, it was apparent from the pleasantries and relief expressed by the party representatives and their lawyers that the settlement was binding, and that everyone understood the material terms of the settlement. *Id.* On August 8, 2007, the Court entered a Civil Minute Order stating that a pretrial settlement conference was held and that the case settled. Elkins Decl. ¶6 & Ex. C.

**B.**    **POSDATA ASSUMES BUT BACKBURNERS THE DRAFTING ROLE.**

Pursuant to the settlement reached, Posdata was to take the lead in drafting the draft permanent injunction and settlement agreement, and was to serve Rule 30(b)(6) written deposition questions. *Id.* ¶7. Posdata's counsel, Brendan Dolan, told Defendants' lead counsel, David Elkins, that the questions and settlement documents would be sent at the end of the week beginning August 13 because he would be on vacation the week of August 6. *Id.* In an e-mail to Mr. Dolan on September 6, having not received anything yet, Mr. Elkins asked Posdata's counsel for an estimate of when Defendants would receive the draft permanent injunction and at the same time offered to draft the settlement agreement. *Id.* & Ex. D. Posdata never responded. *Id.*

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, California 94304-1043

- 4 -
DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT
CASE NO. C 07 2504 RMW (PVT)

1    Posdata provided no drafts and did not attempt to contact Defendants' counsel in August

2    2007, despite voicemail messages left for Posdata's lead counsel asking when draft settlement

3    documents would be sent.  *Id.* ¶8.  Likewise, Posdata did not serve any deposition questions.  *Id.*

4    Defendants' counsel sent e-mails to all three of Posdata's counsel of record on September 14,

5    asking for an estimated time of arrival of the draft injunction.  *Id.*  After yet another week elapsed

6    without word from Posdata, Julius Turman, one of Posdata's counsel of record, finally sent a

7    September 21, 2007 e-mail to Defendants' counsel.  *Id.*  The e-mail indicated that the written

8    deposition questions would be delivered that day, but that the draft injunction and settlement

9    agreement would take a bit longer:  "Brendan and I are still reviewing and revising the

10   stipulations for consent decree and judgment and the settlement agreement.  We will get them to

11   you as soon as possible, but in the meantime we will be sending you by email and us mail, the

12   deposition upon written questions."  *Id.* & Ex. D.

13   Posdata did serve its Rule 30(b)(6) written deposition questions on September 21—seven

14   weeks after the August 3, 2007 Settlement Conference.  *Id.* ¶9.  Posdata's written deposition

15   questions far exceeded the scope discussed at the August 3 Settlement Conference, totaling 107

16   questions, many with multiple subparts.  *Id.*  InQuadron nevertheless answered each question

17   fully and in good faith, objecting only to one question on the grounds of relevance.  *Id.* & Ex. E.

18   For more than a week following service of InQuadron's response to the written deposition

19   questions on October 24, Defendants heard nothing further from Posdata.  *Id.* ¶10.  In particular,

20   despite the passing of another month, despite the parties' agreement to use best efforts to close

21   their settlement by September 30, and despite the assurance from Posdata's counsel that the draft

22   consent judgment and settlement agreement were being reviewed and would be sent "as soon as

23   possible," they did not arrive.  *Id.*

24
25   **C.      POSDATA DEMANDS MORE INFORMATION WHILE WITHHOLDING DRAFT
         SETTLEMENT DOCUMENTS.**

26   More time passed.  On Saturday, November 3, 2007, Defendants' lead counsel e-mailed a

27   letter to Posdata's counsel, Messrs. Dolan and Turman.  *Id.* ¶11.  The November 3 letter stated

28   that in the absence of any settlement progress by the close of business on November 6,

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, California  94304-1043

- 5 -
DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT
CASE NO. C 07 2504 RMW (PVT)

1    Defendants would ask Magistrate Judge Trumbull to reconvene the settlement conference for the

2    purposes of enforcing the parties' settlement. *Id.* & Ex. F. That finally brought a response, sort

3    of. Mr. Turman and Steven Garrett, who also represents Posdata, called Mr. Elkins at the end of

4    the day on November 6. *Id.* ¶12. Posdata's counsel indicated that Posdata had questions about

5    the deposition responses for which they required answers. After some discussion about the nature

6    of Posdata's questions, Messrs. Turman and Garrett promised that supplemental deposition

7    questions, the draft consent judgment and the draft settlement agreement would be sent later that

8    week. *Id.* Mr. Garrett called at 5:00 p.m. that Friday, November 9, to explain that Posdata would

9    not have the written follow-up questions until Monday or Tuesday the following week. *Id.* ¶13.

10   But despite its promises to do so, Posdata's counsel sent nothing the following Monday or

11   Tuesday (November 12 and 13), or any other day that week either. *Id.* Posdata's counsel never

12   provided an explanation for its failure to respond as promised. *Id.*

13       On November 19, Defendants' counsel followed through on their November 3 letter and

14   contacted the Magistrate Judge Trumbull's chambers to obtain her assistance in keeping

15   settlement moving toward a closing. *Id.* ¶14. On November 20, 2007, the Court noticed a further

16   settlement conference call with Magistrate Judge Trumbull for Friday, November 30, 2007 at

17   2:00 p.m., and directed the parties to lodge settlement conference statements (docket no. 40). *Id.*

18   On the afternoon of November 21, hours before the Thanksgiving holiday began, Posdata finally

19   sent a six-page, single-spaced letter requesting various follow up information in light of the

20   deposition responses served four weeks earlier, more deposition questions, a draft permanent

21   injunction and a draft settlement agreement. *Id.* & Ex. G.

22       **D.    THE PARTIES AGREE TO RESOLVE POSDATA'S DEMANDS FOR FURTHER
              RESPONSES TO WRITTEN DEPOSITION QUESTIONS IN EXCHANGE FOR SWORN
23            FINANCIAL STATEMENTS FROM EACH DEFENDANT.**

24       Lead counsel for the parties spoke on November 25, 2007. *Id.* ¶15. Mr. Dolan reported

25   that Posdata's main concern was verifying the financial status of InQuadron and Mr. Kim,

26   respectively, in light of Defendants' representations before the initial settlement conference that

27   continuing the litigation may force each of them to file for bankruptcy because of the steep costs

28   of litigating this case and InQuadron's rapidly depleting funds. *Id.* Mr. Dolan stated that if

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, California 94304-1043

- 6 -
DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT
CASE NO. C 07 2504 RMW (PVT)

1    Defendants would provide basic financial statements showing their respective assets and

2    liabilities, Posdata's concerns would be put at ease and expedite the conclusion of the settlement.

3    *Id.* The parties agreed that in exchange for Defendants' sworn financial statements, Posdata

4    would not contest Defendants' Rule 30(b)(6) written deposition responses and would not seek

5    follow-up information. *Id.* ¶16.

6         At the November 30, 2007 further settlement conference call, the parties' counsel

7    confirmed their agreement that Defendants would provide sworn financial statements and that

8    Posdata would drop its demand for further deposition responses and other information. *Id.* ¶17.

9    Defendants' counsel added that the financial statement would be produced with strict

10    confidentiality and may only be shared with certain Posdata employees. *Id.* Posdata's counsel

11    stated that the settlement would be completed pending receipt of Defendants' financial statements

12    and agreement on the wording of the draft permanent injunction and draft settlement agreement.

13    *Id.* The parties agreed to turn around the settlement documents as fast as possible. *Id.* On

14    Monday, December 3, 2007, Defendants' counsel sent their Posdata counterparts a draft of the

15    settlement agreement and consent judgment with Defendants' proposed revisions (reflected in

16    redlining so that the proposed changes could be easily identified). *Id.* ¶18 & Ex. H.

17         On November 30, Defendants' counsel sent Posdata draft financial statement forms for

18    approval. *Id.* ¶19 & Ex. I. Throughout the week, the parties met and conferred by telephone and

19    e-mail about the declaration at the end of the financial statements and who at Posdata could

20    access the financial statements. *Id.* ¶19. By the end of Friday, December 7, 2007, Posdata finally

21    agreed to the form of the sworn statement for the financial statements. *Id.* On the morning of

22    Monday, December 10, less than one full business day later, Defendants' counsel sent the sworn

23    financial statement forms to Posdata's counsel. *Id.* & Ex. J.[2]

24

25

_____

26    [2] To avoid the need for lodging the financial statements and seeking permission to have them filed under seal, Defendants will bring copies to the hearing on this matter. Settlement was never conditioned on Defendants' financial status or on providing financial statements. Defendants thus do not believe that the

27    financial statements are particularly relevant except to illustrate the obstacles to closing the parties' settlement that Posdata has erected through its consistent foot-dragging and attempts now to change the

28    deal it made.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, California 94304-1043

- 7 -
DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT
CASE NO. C 07 2504 RMW (PVT)

1

2

E.    **POSDATA GETS THE SWORN FINANCIAL STATEMENTS — BUT CONTINUES TO STRING DEFENDANTS ALONG BY PROMISING, AND THEN FAILING, TO RESPOND TO DEFENDANTS' REVISIONS TO THE SETTLEMENT DOCUMENTS.**

3    As noted above, the parties' counsel had pledged, during the November 30 further

4    settlement conference call, to turn documents around in two days. *Id.* ¶20.  Despite prodding (*id.*

5    Ex. K), Posdata's counsel did not provide a written response regarding Defendants' December 3,

6    2007 revisions to the draft consent judgment and draft settlement agreement—and in fact have

7    never done so. *Id.* ¶20.

8    Once again, Posdata's failure to adhere to its promises to keep settlement moving to

9    closure compelled Defendants to request another continued settlement conference call with

10    Magistrate Judge Trumbull. *Id.* ¶21.  The call was set for December 14 to discuss the progress—

11    or rather lack thereof—in closing the settlement. *Id*.  Defendants submitted a short one-page

12    letter updating the Court concerning Posdata's persistent failure to follow through on its

13    promises. *Id.* & Ex. L.  Posdata's counsel did not submit a statement. *Id.* ¶21.

14    During the December 14, 2007 telephone conference call with Magistrate Judge Trumbull,

15    Posdata's counsel represented that their return comments on the draft consent judgment and draft

16    settlement agreement were almost finished and would be sent to Defendants' counsel by the end

17    of that day or, by the latest, on Monday, December 17. *Id.* ¶22.  Posdata's counsel further

18    predicted that the settlement should be concluded within a week of that day, or by December 21.

19    Magistrate Judge Trumbull agreed to hold another conference call on that day. *Id.*  To ensure

20    clarity, Defendants' counsel sent Posdata's counsel a letter that same day, confirming his

21    representations. *Id.* & Ex. M.

22

23

F.    **POSDATA TRIES TO CHANGE THE SETTLEMENT BY DEMANDING MONEY, BUT DEFENDANTS REFUSE AND INDICATE THAT THEY WILL SEEK TO ENFORCE THE SETTLEMENT REACHED ON AUGUST 3, 2007 UNLESS POSDATA PROCEEDS.**

24    Posdata did not live up to its counsel's representations.  It failed to provide return

25    comments on the revised settlement documents later that day or on Monday, December 17. *Id.*

26    ¶23.  Instead, on December 19, 2007, Posdata's lead counsel, Mr. Dolan, left a voicemail message

27    for Mr. Elkins, indicating that Posdata now wanted to change the terms of the settlement by

28    demanding money from Mr. Kim.  *Id.* & Ex. N.  Mr. Dolan said that he had a revised version of

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, California  94304-1043

- 8 -
DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT
CASE NO. C 07 2504 RMW (PVT)

1   the settlement agreement reflecting that demand, though he never sent it. *Id.* Mr. Elkins left a

2   return voice message for Mr. Dolan the next day, December 20. *Id.* ¶24. Mr. Elkins stated that:

3   • Defendants were offended by Posdata's attempt to change the terms of the agreed
    settlement;

4   • the financial term of the settlement (i.e., no money changing hands absent a proven
    violation of the permanent injunction included in the consent judgment) was the

5   product of extensive negotiation;

6   • Defendants had agreed to provide the financial statements only as a showing of good
    faith and as an accommodation to resolve Posdata's complaints about the deposition

7   responses; and

8   • Defendants would not renegotiate the settlement that the parties reached on August 3.

9   *Id.* Mr. Elkins stated that if Posdata demanded money as a new condition to closing the

10  settlement, Defendants would file a motion to enforce the settlement and seek to recover their

11  fees. *Id.* He closed his message by expressing hope that Mr. Dolan could convince Posdata to

12  abandon its bad faith position, and asked for a return call before the further settlement conference

13  call with Magistrate Judge Trumbull the next afternoon. *Id.*

14  Mr. Dolan replied with a message stating that he would forward Mr. Elkins' voicemail

15  message to Posdata "so that they understand, you know, kind of what's at stake in terms of what

16  they're doing." *Id.* ¶25 & Ex. O. Messrs. Dolan and Elkins spoke later that day (December 20)

17  by phone, and at no time during that call—or during any other call—did Mr. Dolan take the

18  position that the parties had never intended their August 3, 2007 agreement to be enforceable. *Id.*

19  Magistrate Judge Trumbull hosted a final continued settlement conference call on Friday,

20  December 21. *Id.* ¶26. While the statements of counsel during that call are best left confidential,

21  both the Court and Defendants' counsel were convinced that providing Posdata an additional two

22  weeks to reflect on and consider its position further was the best way to proceed. *Id.* The Court

23  set a final conference call for January 4, 2008 (later changed to January 7, 2008). *Id.*

24  Defendants' counsel made clear during the conference call that in the event Posdata continued to

25  refuse to proceed with the settlement reached on August 3, Defendants would move to enforce the

26  settlement and would seek to do so on shortened time, just as Posdata had moved for its TRO

27  with two court days' notice before the hearing over six weeks after commencing suit. *Id.* Mr.

28  Dolan said he understood. *Id.*

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, California  94304-1043

- 9 -
DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT
CASE NO. C 07 2504 RMW (PVT)

1    During a discussion of counsel on January 2, 2008, Defendants' counsel were convinced

2    that sending Mr. Dolan a letter expressly setting forth Defendants' position was the only hope of

3    avoiding the need for this motion. *Id.* ¶28. Mr. Elkins thus e-mailed Mr. Dolan a letter that

4    afternoon, which in summary:

5    • Emphasized that the parties had reached a binding settlement on August 3, 2007
         and that closing the settlement is the best course of action for all parties;

6

7    • Stated that Posdata had a slim chance of obtaining money from Defendants in these
         circumstances because Defendants were prepared to file a motion to enforce the
         parties' August 3 settlement on an expedited basis;

8

9    • Explained that while Dr. Kim's financial statements show some assets, they are
         shared with his wife and together they now do not have enough money on which to
         retire;

10

11   • Explained that Dr. Kim is immune from personal liability under Cal. Labor Code
         §2802; and

12   • Stated that Defendants did not have the financial means to continue litigation and
         that in the event the Court did not enforce the parties' settlement, Defendants

13       would have no choice but to seek protection by filing petitions for bankruptcy.

14   *Id.* & Ex. Q.

15   **G.    POSDATA REPUDIATES THE PARTIES' SETTLEMENT OF AUGUST 3, 2007.**

16   Mr. Dolan ultimately responded with a letter to Magistrate Judge Trumbull on January 4,

17   2008, in advance of the further settlement conference call rescheduled for 2:00 p.m. that day. *Id.*

18   ¶29. The letter restated Posdata's complaints about InQuadron's deposition responses. The letter

19   also complained that contrary to Defendants' representations prior to the August 3, 2007

20   Settlement Conference, Dr. Kim had some assets (which the letter overstated to include the

21   liquidated value of all assets, including a 401K account and the modest equity in Dr. Kim's

22   home) and demanded payment as a condition for moving forward. *Id.* & Ex. R. In light of the

23   letter, Magistrate Judge Trumbull canceled the conference call as unnecessary. I spoke by phone

24   with Mr. Dolan later that day and, among other things, explained that Defendants would in fact

25   file their motion to enforce the settlement, probably on January 8, and that they would seek to

26   have the motion heard on shortened time.

27

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, California 94304-1043

- 10 -
DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT
CASE NO. C 07 2504 RMW (PVT)

1

2

**III.    THE COURT SHOULD ENFORCE THE PARTIES' AUGUST 3, 2007
SETTLEMENT IN LIGHT OF POSDATA'S LONG HISTORY OF FOOT-
DRAGGING AND ITS RECENT REPUDIATION.**

3

    **A.    THE STANDARDS GOVERNING THIS MOTION TO ENFORCE SETTLEMENT.**

4

        This Court may summarily enforce the August 3, 2007 settlement reached by Posdata and

5

Defendant.  "It is well settled that a district court has the equitable power to enforce summarily an

6

agreement to settle a case pending before it."  *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987)

7

(citations omitted).[3]

8

        The Court's inquiry starts and ends with its determination whether the parties formed a

9

binding agreement to resolve this action.  "The construction and enforcement of settlement

10

agreements are governed by principles of local law which apply to interpretation of contracts

11

generally."  *United Commer. Ins. Serv. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992)

12

(quoting *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989)).  "Under California law, settlement

13

agreements are governed by general principles of contract law."  *Adams v. Johns-Manville Corp.*,

14

876 F.2d 702, 704 (9th Cir. 1989) (citing *Varwig v. Leider*, 171 Cal. App. 3d 312 (1985)).  An

15

enforceable settlement requires findings that the parties (i) intended to bind themselves and

16

(ii) reached agreement on material terms.  *See Callie v. Near*, 829 F.2d at 891 ("In addition to the

17

intent of the parties to bind themselves, the formation of a settlement contract requires agreement

18

on its material terms").  *See also Gardias v. San Jose State Univ.*, 2007 U.S. Dist. LEXIS 24418

19

(N.D. Cal. Mar. 20, 2007) (Lloyd, M.J.) ("To be enforceable, a settlement must meet two

20

requirements.  First, it must be a completed agreement.  *Callie,* 829 F.2d at 890-91.  Second, both

21

parties must have either agreed to the terms of the settlement or authorized their respective

22

counsel to settle the dispute.  *Harrop v. Western Airlines, Inc.,* 550 F.2d 1143, 1144-45 (9th Cir.

23

1977).").

24

25

26

27

28

[3] California law is in accord.  *See, e.g., Gopal v. Yoshikawa*, 147 Cal. App. 3d 128, 132 (1983)  ("[C]ourts must have the ability to enforce [settlement] agreements . . . not only to control the proceedings before the court, but also to protect the interests of parties who may have materially altered their positions in reliance on the settlement."); *Richardson v. Richardson*, 180 Cal. App. 3d 91, 97-98 (1986) ("An agreement to settle a lawsuit which is reached at a judicially supervised settlement conference is enforceable.") (citing *Gopal, supra*).

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, California  94304-1043

- 11 -

DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT

CASE NO. C 07 2504 RMW (PVT)

1    The fact that the parties contemplated formalizing their agreement in a later writing does

2    not make the agreement incapable of enforcement in the writing's absence, but the party claiming

3    the requirement of a signed writing has the burden of so proving it.  "[T]he party arguing that the

4    parties intended not to be bound until the execution of a formal writing has the burden of proving

5    'either that both parties understood they were not to be bound until the executed contract was

6    delivered, or that the other party should have known that the disclaiming party did not intend to

7    be bound before the contract was signed.'"  *Denver v. Adolph Coors Co.*, 813 F. Supp. 1476,

8    1481 (D. Colo. 1993) (citations omitted); *see also Core-Vent Corp. v. Implant Innovations*, 53

9    F.3d 1252, 1259 (Fed. Cir. 1995) (citations omitted) ("It is long established that courts favor

10    dispute resolution through voluntary settlements. . . . Those who employ the judicial . . . process

11    to attack a settlement through which controversy has been set to rest bear a properly heavy

12    burden.").  This Court's enforcement of the parties' settlement agreement would be reviewed (if

13    appealed) for an abuse of discretion.  *Callie v. Near*, 829 F.2d at 891 (citation omitted).

14    **B.    THE PARTIES' SETTLEMENT IS RIPE FOR ENFORCEMENT.**

15    The legal standards section above shows that Defendants must provide the Court with

16    sufficient evidence to make two findings so that the parties' settlement can be enforced:  (i) the

17    parties intended to bind themselves and (ii) the parties reached agreement on material terms.

18    Ample evidence supports each finding, which is the principal reason why Defendants Statement

19    of Facts above includes a high level of detail.

20    **1.    THE PARTIES INTENDED THEIR SETTLEMENT TO BE BINDING.**

21    The evidence demonstrating the parties' intent that the August 3, 2007 agreement bind

22    them is clear.  First, the recitation of material terms on the record was prefaced by the

23    announcement that settlement was binding.  While that statement was inadvertently not included

24    in the recording of proceedings, the fact the statement was made is the best evidence of the

25    parties' binding intent.

26    Second, the parties put their settlement on the record.  Doing so is consistent only with

27    having reached a binding settlement.  While putting a settlement *framework* on the record that the

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, California  94304-1043

- 12 -
DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT
CASE NO. C 07 2504 RMW (PVT)

1   parties do not intend to bind them absent a signed writing is theoretically possible,[4] one would

2   logically expect the parties to express that limitation and their intention *not* to be bound on the

3   record.  That did not happen here.

4          Third, the level of detail of the settlement recited on the record is consistent with a binding

5   agreement, not a mere agreement to agree or mere settlement framework.  The parties

6   incorporated the wording of the Court's TRO for the terms of the permanent injunction to be

7   included in the consent judgment, and recited that the solicitation bar would mirror the TRO

8   language prohibiting use and disclosure of any Posdata trade secrets.  The parties recited in detail

9   the use of a neutral expert to examine future Posdata products.  The parties recited a high level of

10  detail regarding the confidentiality to be accorded the settlement until an agreed statement was

11  crafted.  The parties detailed the deposition by written questions and written answers that

12  InQuadron was required to provide.  Such detail in consistent with a binding agreement.

13         Fourth, circumstantial evidence that the settlement was intended to be binding comes from

14  the party representatives' affirmative acknowledgements of their understanding of the settlement

15  terms after the recitation (as shown by each lawyer's glance back and his client's affirmative

16  expressions of understanding), and the pleasantries and relief expressed by all after the August 3,

17  2007 Settlement Conference had concluded.

18         Fifth, the communications and actions of the parties' counsel since the August 3, 2007

19  Settlement Conference are consistent with having made a binding agreement.  Never once has any

20  counsel representing Posdata ever taken the position that the parties' August 3 settlement was not

21  intended to be binding.  Through the end of December, when Posdata first made noise about

22  wanting money, the terms of the settlement did not vary.  The e-mails from Posdata's counsel,

23  apologizing for delays and blaming them on the press of other business, reinforce that the Posdata

24  side was fixed on the settlement terms already reached.  The December 20, 2007 voicemail from

25  Posdata's lead counsel—stating that he would forward Mr. Elkins' voicemail about enforcing

26

27  _____
    [4] Defendants' lead counsel has never seen a non-binding settlement put on the record in 17 years of
28  litigating experience, including over ten years experience as a judge *pro tem* for mandatory settlement
    conferences in Santa Clara County Superior Court.

**SQUIRE, SANDERS &
DEMPSEY L.L.P.**
600 Hansen Way
Palo Alto, California  94304-1043

- 13 -
DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT
CASE NO. C 07 2504 RMW (PVT)

1    settlement to Posdata, "so that they understand, you know, kind of what's at stake in terms of

2    what they're doing"—further suggests the binding nature of the parties' settlement.

3        Each of these indicia is strong evidence of the binding nature of the parties' August 3

4    settlement.  Taken together, however, these indicia are incontrovertible.  The first prong of the

5    two-prong test for determining the settlement to be enforceable is thus met.

6            **2.     THE PARTIES REACHED AGREEMENT ON MATERIAL TERMS.**

7        The Statement of Facts and, in particular, the recitation in accompanying Elkins and Lee

8    Declarations (paragraph 5 in each) set forth the material terms, which are repeated here for

9    convenience:

    a.   The parties agreed to entry of a consent judgment containing a permanent injunction identical in most respects to the Court's TRO entered on June 27, 2007 (docket no. 29), but with the addition of an employee solicitation bar that matched the conditions of the existing TRO provisions;

    b.   In the event that InQuadron developed a product for commercial sale in the "WiMax" or "WiBro" segments, a neutral, independent expert selected by the parties would be provided access to InQuadron's prototype to compare it against what Posdata claimed were its trade secrets at issue in the action, and would report to the parties, with his/her final report binding;

    c.   Posdata would be able to take a Federal Rule 30(b)(6) deposition of InQuadron through written questions, which would be answered in writing and executed under penalty of perjury;

    d.   Except as to any settlement obligations, the parties agreed to release each other from any and all claims, including unknown claims;

    e.   The parties would not say anything publicly about the settlement except as provided in an agreed statement to be negotiated, and that in the meantime they would maintain the fact of settlement as confidential except for certain principals of the parties;

    f.   Defendants pay nothing in settlement, but agreed to liquidated damages in the amount of $750,000 in the event Posdata were able to show, by clear and convincing evidence, a willful violation of the permanent injunction contained in the consent judgment; and

    g.   The parties would use best efforts to close the settlement by September 30, 2007.

25        The material terms were recited clearly.  No material terms were left out.  Consequently,

26    the second prong of the settlement enforceability test is also met.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, California  94304-1043

DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT

CASE NO. C 07 2504 RMW (PVT)

## IV.    THE COURT SHOULD ENTER THE PROPOSED JUDGMENT.

The detailed facts above demonstrate that the parties entered into a binding settlement and agreed to its material terms.  The agreed terms are set forth in the Proposed Judgment attached to this brief, which the Court should enter.  The Proposed Judgment is the consent judgment drafted by Posdata, with revisions by Defendants and sent to Posdata's counsel on November 30, 2007, to accurately reflect the parties' recitation of their agreement.  (With one exception, explained below, it is the same document attached to the Elkins Declaration as Exhibit H.)  Posdata has refused to comment on those revisions.  Given Posdata's wrongful repudiation of the binding settlement, it should not have the opportunity to do so now.

Rather than have the Court compel Posdata to enter into the settlement agreement and release contemplated by the parties, the Proposed Judgment contains a final paragraph confirming the parties' mutual release of all claims except as to obligations created by the Consent Judgment.  Although the proposed settlement agreement would have contained confidentiality provisions, the need for this enforcement process, and Posdata's desire and request to delete the provisions (*see* Elkins Decl. ¶26), which Defendants share, makes those provisions—and a separate settlement agreement—unnecessary.

## V.    CONCLUSION.

Defendants have maintained extraordinary patience through this process.  Because Posdata evidently has little or no experience litigating in the United States, Defendants allowed Posdata to drag matters out for a long time (far too long, in retrospect) because an impression was created that Posdata required careful explanations and then a time to regroup.

At this juncture, however, waiting any further is of no use.  Indeed, waiting any longer would damage Posdata to a greater extent than has already occurred.  Dr. Kim, the individual defendant, has had his life on hold since this action began.  He thought the August 3 settlement would allow him to go on with his work and his life.  He has waited too long for that to happen.

InQuadron, meanwhile, is out of money.  It cannot raise more or even create a new business plan that would give investors comfort that Posdata will not loom large, in the absence of this settlement being closed.  It, too, has waited far too long for this process to conclude.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, California  94304-1043

- 15 -

DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT

CASE NO. C 07 2504 RMW (PVT)

1   It does not matter much whether Posdata consciously began its bad faith settlement

2 conduct shortly after August 3, or more recently, when perhaps the buyer's remorse of some

3 within Posdata about the absence of a monetary component led the company to repudiate the

4 parties' binding agreement. Whatever the cause of such remorse and whenever it began, the

5 clock cannot be turned back now. The parties entered into a binding settlement and agreed to

6 material terms. That settlement is capable of enforcement and, as the facts demonstrate, doing so

7 is the best exercise of the Court's equitable powers.

8   For all of these reasons, the Court should grant Defendants' motion to enforce and enter

9 the Proposed Judgment.

10 Dated: January 9, 2008       Respectfully submitted,

11              SQUIRE, SANDERS & DEMPSEY L.L.P.

12

13              By: /s/David S. Elkins
                David S. Elkins

14              Attorneys for Defendants
               SEYOUNG KIM and INQUADRON, INC.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, California  94304-1043

- 16 -
DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT
CASE NO. C 07 2504 RMW (PVT)