SQUIRE, SANDERS & DEMPSEY L.L.P.
David S. Elkins (State Bar # 148077)
delkins@ssd.com
Allison E. Pitigoi (State Bar # 242211)
apitigoi@ssd.com
600 Hansen Way
Palo Alto, CA  94304-1043
Telephone:   +1.650.856.6500
Facsimile:    +1.650.843.8777

SQUIRE, SANDERS & DEMPSEY L.L.P.
Nathan Lane III (State Bar # 50961)
nlane@ssd.com
One Maritime Plaza, Third Floor
San Francisco, CA  94111
Telephone:   +1.415.954.0200
Facsimile:    +1.415.393.9887

Attorneys for Defendants
SEYOUNG KIM and INQUADRON, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| POSDATA CO., LTD., a South Korean corporation,<br><br>　　　　　　　　Plaintiff,<br><br>　　vs.<br><br>SEYOUNG KIM, an individual and INQUADRON, INC., a California corporation,<br><br>　　　　　　　　Defendants. | Case No. C 07 2504 RMW (PVT)<br><br>**DECLARATION OF KENNETH D. LEE IN SUPPORT OF DEFENDANTS' MOTION TO ENFORCE SETTLEMENT**<br><br>Judge:  The Honorable Ronald M. Whyte<br>Date:<br>Time: |

1  I, KENNETH D. LEE, hereby declare and state as follows:

2  1. I am general counsel and CFO of InQuadron, Inc. ("InQuadron"). I have personal knowledge of the facts and circumstances set forth in this declaration and, if called on to do so, could and would testify competently thereto.

2. I attended an Early Settlement Conference hosted by Magistrate Judge Trumbull on Friday, August 3, 2007 at 10:00 a.m. The Settlement Conference was attended on the plaintiff's side by Mr. Ho Tae Han of Posdata Co., Ltd. ("Posdata"), who was represented as having full settlement authority, and by Posdata's counsel of record. Individual defendant and InQuadron founder Dr. Seyoung Kim ("Kim") and I (collectively "Defendants") were Defendants' party representatives, and we were accompanied by Defendants' counsel of record, David Elkins and Allison Pitigoi.

3. Settlement discussions were intensive, exhausting and lasted through lunch (which no one took) and most of the day, culminating in a binding settlement put on the record after 4:00 p.m. I was present and heard the recitation of the settlement on the record, in its entirety. After re-confirming the terms together, lead counsel for the parties, Brendan Dolan and Mr. Elkins, recited the material terms of the settlement onto the record. I distinctly heard at the beginning of this process that the settlement was intended to be binding, which was consistent with my understanding and my intentions, as the InQuadron representative, as was the case with Dr. Kim. (I understand that this statement was not included in the Court's recording of proceedings.) Indeed, InQuadron and Dr. Kim never would have embarked on the long, expensive process to close the settlement that followed unless we believed the settlement reached on August 3, 2007 was binding.

4. At the Settlement Conference, the parties intended to and did enter a binding settlement which included all material terms. The documents intended to effectuate the settlement's material terms were left to the parties to draft after the Settlement Conference. The parties understood that any remaining tasks would be merely ministerial.

5. The material terms of the settlement agreed to by the parties are as follows:

     a. The parties agreed to entry of a consent judgment containing a permanent injunction identical in most respects to the Court's Temporary Restraining Order entered on June 27, 2007 (docket no. 29), but with the addition of an employee solicitation bar that matched the conditions of the existing TRO provisions;

     b. In the event that InQuadron developed a product for commercial sale in the WiMax or "WiBro" segments, a neutral, independent expert selected by the parties would be provided access to InQuadron's prototype to compare it against what Posdata claimed were its trade secrets at issue in the action, and would report to the parties, with his/her final report binding;

     c. Posdata would be able to take a Federal Rule 30(b)(6) deposition of InQuadron through written questions, which would be answered in writing and executed under penalty of perjury;

     d. Except as to any settlement obligations, the parties agreed to release each other from any and all claims, including unknown claims;

     e. The parties would not say anything publicly about the settlement except as provided in an agreed statement to be negotiated, and that in the meantime they would maintain the fact of settlement as confidential except for certain principals of the parties;

     f. Defendants pay nothing in settlement, but agreed to liquidated damages in the amount of $750,000 in the event Posdata were able to show, by clear and convincing evidence, a willful violation of the permanent injunction contained in the consent judgment; and

     g. The parties would use best efforts to close the settlement by September 30, 2007.

6. While still on the record after the binding settlement and material terms were read by counsel, Mr. Elkins looked back at Dr. Kim and me to make sure that we understood the material terms of the binding settlement. Dr. Kim and I indicated through affirmative nods of our heads that we did. Mr. Dolan also looked back at Mr. Han of Posdata to make sure that he understood the material terms of the binding settlement. Mr. Han also nodded his affirmance. At the conclusion of the Settlement Conference, it was apparent from the pleasantries and relief expressed by the party representatives and their lawyers that the settlement was binding, and that everyone understood the material terms of the settlement.

7. While the process of closing our settlement with Posdata has been pending, three former employees of InQuadron in Korea—Hwayong Joung, Seong Dong Park and Jong Wook Lee—have been jailed facing criminal charges of misappropriating Posdata trade secrets. All are also former Posdata employees. After a trial, Messrs. Park and Lee were sentenced to probation. Mr. Joung was sentenced to two years in prison. The Korea Prosecutor's Office appealed the

1. probation sentences, and Mr. Joung appealed his sentence. An appeal hearing is scheduled for January 16, 2008, which begins the late afternoon on January 15, 2008 in California.

8. I am informed and believe that the fact of the settlement between Posdata and Defendants would have greatly influenced the outcome of the criminal proceedings. In particular, I am informed and believe that revealing the fact of our settlement would have compelled the Prosecutor's Office to drop all charges, or would have virtually ensured that all defendants would receive sentences of probation. During the August 3, 2007 Settlement Conference, this issue arose. Posdata insisted that neither Dr. Kim nor InQuadron reveal the settlement because Posdata did not want the settlement to impact the criminal prosecutions in Korea, which appeared important to Posdata in light of the amount of money the company spent investigating the alleged misappropriation. InQuadron and Dr. Kim have not revealed the settlement except through this declaration and the concurrently filed motion papers, which are made necessary by Posdata's refusal to comply with its binding settlement obligations. I am informed and believe that if the Court is able to determine and grant this motion on or before January 15, 2008, doing so would have a large impact on the January 16, 2008 hearing in Korea.

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 9, 2008.

Kenneth D. Lee