1    SQUIRE, SANDERS & DEMPSEY L.L.P.
     David S. Elkins (State Bar # 148077)
2    delkins@ssd.com
     Allison E. Pitigoi (State Bar # 242211)
3    apitigoi@ssd.com
     600 Hansen Way
4    Palo Alto, CA  94304-1043
     Telephone:    +1.650.856.6500
5    Facsimile:    +1.650.843.8777

6    SQUIRE, SANDERS & DEMPSEY L.L.P.
     Nathan Lane III (State Bar # 50961)
7    nlane@ssd.com
     One Maritime Plaza, Third Floor
8    San Francisco, CA  94111
     Telephone:    +1.415.954.0200
9    Facsimile:    +1.415.393.9887

10   Attorneys for Defendants
     SEYOUNG KIM and INQUADRON, INC.
11

12

13                    UNITED STATES DISTRICT COURT

14                   NORTHERN DISTRICT OF CALIFORNIA

15                         SAN JOSE DIVISION

16   POSDATA CO., LTD., a South Korean          Case No. C 07 2504 RMW (PVT)
     corporation,
17                                              **DECLARATION OF DAVID S. ELKINS IN**
                         Plaintiff,             **SUPPORT OF DEFENDANTS SEYOUNG**
18                                              **KIM AND INQUADRON, INC.'S MOTION**
                 vs.                            **TO ENFORCE SETTLEMENT**
19
     SEYOUNG KIM, an individual and            Judge:    The Honorable Ronald M. Whyte
20   INQUADRON, INC., a California
     corporation,
21
                         Defendants.
22

23

24

25

26

27

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA  94304-1043

1    I, DAVID S. ELKINS, hereby declare and state as follows:

2        1.       I am an attorney-at-law, licensed to practice before the courts of the State of

3    California and this Court, and am a partner of the law firm of Squire, Sanders & Dempsey,

4    L.L.P., attorneys of record for defendants Seyoung Kim ("Kim") and InQuadron, Inc.

5    ("InQuadron") (collectively "Defendants").  I have personal knowledge of the facts and

6    circumstances set forth in this declaration and, if called on to do so, could and would testify

7    competently thereto.

8        2.       As shown in Exhibit A, this Court ordered the parties to an early settlement

9    conference with Magistrate Judge Trumbull, which was scheduled for the morning of Friday,

10   August 3, 2007.  (Exhibit A is a true and correct copy of the Clerk's July 5, 2007 Notice

11   Referring Case to an Early Settlement Conference, referring the case to Magistrate Judge

12   Trumbull for an early settlement conference on August 3 at 10:00 a.m.)

13       3.       The August 3, 2007 Settlement Conference hosted by Magistrate Judge Trumbull

14   was attended on the plaintiff's side by Mr. Ho Tae Han of Posdata Co., Ltd., who was represented

15   as having full settlement authority, and Posdata's counsel of record.  Individual defendant and

16   InQuadron founder Dr. Seyoung Kim and Ken Lee, who is InQuadron's general counsel and

17   CFO, were Defendants' party representatives, and were accompanied by Defendants' counsel of

18   record.

19       4.       Settlement discussions were intensive and lasted through lunch (which no one

20   took) and most of the day, culminating in a binding settlement put on the record after 4:00 p.m.

21   After re-confirming the terms together, counsel for the parties recited the material terms of the

22   settlement onto the record.  Because the magistrate judge courtrooms use recordings instead of

23   court reporters, counsel's recitation of the terms was recorded.  Unfortunately, the recording

24   machine was not turned on until after the recitation that the settlement was intended by the parties

25   to be binding had been spoken.  The remaining recitation on the record, however, along with the

26   fact that the settlement was put on the record at all, confirm its binding nature.

27       5.       The binding settlement agreed to by the parties included several material terms.

28   The documents intended to effectuate the settlement's material terms were left to the parties to

ELKINS DECLARATION IN SUPPORT OF DEFENDANTS' MOTION TO ENFORCE SETTLEMENT
CASE NO. C 07 2504 RMW (PVT)

draft, as is typical in such cases.  The material terms of the settlement agreed to by the parties are as follows:

    a.  The parties agreed to entry of a consent judgment containing a permanent injunction identical in most respects to the Court's Temporary Restraining Order entered on June 27, 2007 (docket no. 29), but with the addition of an employee solicitation bar that matched the conditions of the existing TRO provisions[1];

    b.  In the event that InQuadron developed a product for commercial sale in the WiMax or "WiBro" segments, a neutral, independent expert selected by the parties would be provided access to InQuadron's prototype to compare it against what Posdata claimed were its trade secrets at issue in the action, and would report to the parties, with his/her final report binding;

    c.  Posdata would be able to take a Federal Rule 30(b)(6) deposition of InQuadron through written questions, which would be answered in writing and executed under penalty of perjury;

    d.  Except as to any settlement obligations, the parties agreed to release each other from any and all claims, including unknown claims;

    e.  The parties would not say anything publicly about the settlement except as provided in an agreed statement to be negotiated, and that in the meantime they would maintain the fact of settlement as confidential except for certain principals of the parties;

    f.  Defendants pay nothing in settlement, but agreed to liquidated damages in the amount of $750,000 in the event Posdata were able to show, by clear and convincing evidence, a willful violation of the permanent injunction contained in the consent judgment; and

    g.  The parties would use best efforts to close the settlement by September 30, 2007.

The Rule 30(b)(6) deposition of InQuadron by written questions and written answers was requested by Posdata so that it could account for Defendants' use, if any, of the trade secrets or proprietary information allegedly misappropriated.  Attached as <u>Exhibit B</u> is a true and correct informal transcription of the recording made at the end of the August 3, 2007 Settlement Conference.

    6.    On August 8, 2007, the Court entered a Civil Minute Order stating that a pretrial settlement conference was held and that the case settled, a true and correct copy of which is attached as <u>Exhibit C</u>.

---

[1] Namely, that Defendants would not solicit Posdata employees "for the purpose of (i) working for Defendants or any entity that Defendants may own, be involved in, or affiliated with, that is within the WiMAX technology industry, and (ii) having the Solicited Personnel utilize, disclose, or share any of the Protected Property with Defendants or any entity that Defendants may own, be involved in, or affiliated with."

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA  94304-1043

-2-
ELKINS DECLARATION IN SUPPORT OF DEFENDANTS' MOTION TO ENFORCE SETTLEMENT
CASE NO. C 07 2504 RMW (PVT)

7.    Pursuant to the settlement reached, Posdata was to take the lead in drafting the draft permanent injunction and settlement agreement, and was to serve Rule 30(b)(6) written deposition questions.  Posdata's counsel, Brendan Dolan, told me that the documents would be sent at the end of the week beginning August 13 because he would be on vacation the week of August 6.  In an e-mail to Mr. Dolan on September 6, having not received anything yet, I asked Posdata's counsel for an estimate of when we would receive the draft permanent injunction and at the same time offered to draft the settlement agreement.  A true and correct copy of my September 6, 2007 e-mail is nested in the e-mail chain attached as <u>Exhibit D</u>.  Posdata never responded to my offer.

8.    Posdata provided no drafts and did not contact me or my colleagues during the month of August, despite two voicemail messages I left for Posdata's lead counsel Brendan Dolan asking when draft settlement documents would be sent.  Likewise, Posdata did not serve any deposition questions.  On September 14, 2007, I again followed up with e-mails to all three of Posdata's counsel of record, asking for an estimated time of arrival of the draft injunction.  I did not hear from Posdata until September 21, when Julius Turman, one of Posdata's counsel of record, sent me an e-mail indicating that the written deposition questions would be delivered that day, but that the draft injunction and settlement agreement would take a bit longer:  "Brendan and I are still reviewing and revising the stipulations for consent decree and judgment and the settlement agreement.  We will get them to you as soon as possible, but in the meantime we will be sending you by email and us mail, the deposition upon written questions."  A true and correct copy of Mr. Turman's September 21, 2007 e-mail is part of the e-mail string attached as <u>Exhibit D</u>.

9.    Posdata did serve its Rule 30(b)(6) written deposition questions on September 21—seven weeks after the August 3, 2007 Settlement Conference.  Posdata's written deposition questions far exceeded the scope discussed at the August 3 Settlement Conference, totaling 107 questions, many with multiple subparts.  InQuadron nevertheless answered each question fully and in good faith, objecting only to one question on the grounds of relevance.  Attached as <u>Exhibit E</u> is a true and correct copy of InQuadron's verified written response to

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA 94304-1043

-3-
ELKINS DECLARATION IN SUPPORT OF DEFENDANTS' MOTION TO ENFORCE SETTLEMENT
CASE NO. C 07 2504 RMW (PVT)

1   Posdata's written deposition questions under Federal Rule 30(b)(6), served by e-mail on

2   October 24, 2007.

3       10.   For more than a week following service of InQuadron's response to the written

4   deposition questions on October 24, Defendants heard nothing further from Posdata.  In

5   particular, despite the passing of another month, despite the parties' agreement to use best efforts

6   to close their settlement by September 30, and despite the assurance from Posdata's counsel that

7   the draft consent judgment and settlement agreement were being reviewed before transmission to

8   us, we still had not received the promised settlement documents.

9       11.   On Saturday, November 3, 2007, I e-mailed a letter to Messrs. Dolan and Turman.

10  My November 3 letter stated that in the absence of any settlement progress by the close of

11  business on November 6, Defendants would ask the Court to reconvene the settlement conference

12  for the purposes of enforcing the parties' settlement.  A true and correct copy of my November 3,

13  2007 letter with its transmitting e-mail are attached as Exhibit F.

14      12.   Julius Turman and Steven Garrett, who also represents Posdata, called me on

15  November 6 at about 4:00 p.m.  Messrs. Turman and Garrett indicated that Posdata had questions

16  about the deposition responses for which they required answers.  After discerning some of the

17  questions, I told Messrs. Turman and Garrett that some of Posdata's concern over what is

18  considered to be inconsistent responses was the product of imprecise questions.  After some

19  discussion, Posdata's counsel agreed to put the questions in writing.  I replied that Defendants had

20  already spent considerable time responding, but wanted to put Posdata at ease and would

21  supplement the responses upon receiving reasonable follow up questions.  I asked again for drafts

22  of the permanent injunction and settlement agreement.  Messrs. Turman and Garrett replied that

23  supplemental deposition questions, the draft consent judgment and draft settlement agreement

24  would be sent to me later that week.

25      13.   On Friday, November 9 at 5:00 p.m., I received a voicemail message from Steven

26  Garrett explaining that Posdata would not have the written follow-up questions until Monday or

27  Tuesday the following week.  But despite its promises to do so, Posdata's counsel sent nothing

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA  94304-1043

-4-
ELKINS DECLARATION IN SUPPORT OF DEFENDANTS' MOTION TO ENFORCE SETTLEMENT
CASE NO. C 07 2504 RMW (PVT)

1    the following Monday or Tuesday (November 12 and 13), or any other day that week either.

2    Posdata's counsel never provided an explanation for its failure to respond as promised.

3         14.    On November 19, Defendants' counsel followed through on their November 3

4    letter and contacted the Magistrate Judge Trumbull's chambers to obtain her assistance in keeping

5    settlement moving toward a closing.  On November 20, 2007, the Court noticed a further

6    settlement conference call with Magistrate Judge Trumbull for Friday, November 30, 2007 at

7    2:00 p.m., and directed the parties to lodge settlement conference statements (docket no. 40).  On

8    the afternoon of November 21, hours before the Thanksgiving holiday began, Posdata finally sent

9    a six-page, single-spaced letter requesting various follow up information in light of the deposition

10   responses served four weeks earlier, more deposition questions, a draft permanent injunction and

11   a draft settlement agreement.  True and correct copies of these documents are attached as

12   Exhibit G.

13         15.    On November 25, I spoke with Mr. Dolan about InQuadron's written deposition

14   responses, Posdata's demand for follow-up information and Posdata's draft permanent injunction

15   and draft settlement agreement.  Mr. Dolan reported that Posdata's main concern was verifying

16   the financial status of InQuadron and Mr. Kim, respectively, in light of Defendants'

17   representations before the initial settlement conference that continuing the litigation may force

18   each of them to file for bankruptcy because of the steep costs of litigating this case and

19   InQuadron's rapidly depleting funds.  Mr. Dolan stated that if Defendants could provide basic

20   financial statements showing their respective assets and liabilities, Posdata's concerns would be

21   put at ease and expedite the conclusion of the settlement.

22         16.    After considering Mr. Dolan's comments, on behalf of Defendants I agreed that

23   they would provide basic financial information in a mutually agreeable format in effort to

24   advance the settlement.  Posdata agreed in turn that in exchange for Defendants' sworn financial

25   statements, it would not contest Defendants' Rule 30(b)(6) written deposition responses and

26   would not seek follow-up information.

27         17.    At the November 30, 2007 further settlement conference, the parties' counsel

28   confirmed their November 25 agreement regarding Defendants' financial statements and written

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA  94304-1043

-5-
ELKINS DECLARATION IN SUPPORT OF DEFENDANTS' MOTION TO ENFORCE SETTLEMENT
CASE NO. C 07 2504 RMW (PVT)

1   deposition responses.  Defendants' counsel added that the financial statement would be produced

2   with strict confidentiality and may only be shared with certain Posdata employees.  Posdata's

3   counsel stated that the settlement would be completed pending receipt of Defendants' financial

4   statements and agreement on the wording of the draft permanent injunction and draft settlement

5   agreement.  I expressed confidence that the settlement would be concluded based on the parties'

6   discussions, but requested a further settlement conference call with Judge Trumbull in two weeks

7   if the action was not dismissed before then.  The parties agreed to turn around the settlement

8   documents as fast as possible.

9        18.     On Monday, December 3, 2007, I sent Mr. Dolan and his colleagues a draft of the

10  settlement agreement and consent judgment with Defendants' proposed revisions, which were

11  reflected in redlining so that the proposed changes could be easily identified.  A true and correct

12  copy of my December 3, 2007 e-mail to Mr. Dolan (with the accompanying revised drafts) is

13  attached as <u>Exhibit H</u>.

14       19.     Just hours after the settlement conference, on November 30, we sent Posdata draft

15  financial statement forms.  Attached as <u>Exhibit I</u> is a true and correct copy of my colleague

16  Allison Pitigoi's November 30 e-mail transmitting proposed financial statements.  Posdata's

17  counsel responded the following Monday, December 3, with proposed revisions to the financial

18  statement form.  Throughout the week, the parties met and conferred by telephone and e-mail

19  about the declaration at the end of the financial statements and who at Posdata could access the

20  financial statements.  By the end of Friday, December 7, 2007, Posdata finally agreed to the form

21  of the sworn statement for the financial statements, and that was acceptable to Defendants.  On

22  the morning of Monday, December 10, less than one full business day later, we sent the sworn

23  financial statement forms to Posdata's counsel.  Attached as <u>Exhibit J</u> is a true and correct copy of

24  Ms. Pitigoi's December 10, 2007 e-mail to Posdata's counsel, with its attached cover letter

25  transmitting Defendants' financial statements.

26       20.     On December 11, 2007, we had not heard any response to our proposed revisions

27  to the draft consent judgment and draft settlement agreement, even though the parties' counsel

28  had pledged, during the November 30 further settlement conference call, to turn documents

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA  94304-1043

-6-

ELKINS DECLARATION IN SUPPORT OF DEFENDANTS' MOTION TO ENFORCE SETTLEMENT
CASE NO. C 07 2504 RMW (PVT)

1   around in two days. (Indeed, Posdata never provided any written response regarding the

2   revisions.) I expressed my disappointment to Mr. Dolan that Posdata had not provided any return

3   comments, particularly given that Defendants had followed through on their promises to provide

4   the revised drafts of the consent judgment and settlement agreement and permanent injunction

5   and financial statements on an expedited basis. I wrote that yet another settlement conference call

6   with Magistrate Judge Trumbull on December 14 would be necessary if Posdata continued to stall

7   the settlement. A true and correct copy of my December 11, 2007 e-mail to Posdata's counsel is

8   attached as Exhibit K.

9       21.    Posdata's counsel failed to respond to my December 11, 2007 e-mail in any way.

10  Consequently, we scheduled a continued settlement conference call with Magistrate Judge

11  Trumbull for December 14 to discuss our progress—or lack thereof—in closing the settlement.

12  Defendants submitted a short one-page letter on December 13, 2007, updating the Court

13  regarding Posdata's persistent failure to follow through on its promises, a true and correct copy of

14  which is attached as Exhibit L. Posdata's counsel did not submit a statement.

15      22.    During the telephone conference with Magistrate Judge Trumbull, Mr. Garrett

16  represented that Posdata's return comments on the draft consent judgment and draft settlement

17  agreement were almost finished and would be sent to Defendants' counsel by the end of that day

18  or, by the latest, on Monday, December 17. Mr. Garrett further represented that the settlement

19  should be concluded within a week of that day, or by December 21. Magistrate Judge Trumbull

20  agreed to hold another conference call on that day. To ensure clarity, Ms. Pitigoi sent Mr. Garrett

21  a letter later in the day on December 14, confirming his representations to the Court and to us. A

22  true and correct copy of Ms. Pitigoi's letter is attached as Exhibit M.

23      23.    Despite Mr. Garrett's assurances on December 14, Posdata did not provide return

24  comments later that day or on Monday, December 17, either. Instead, Mr. Dolan left me a

25  voicemail message on December 19, indicating that Posdata now wanted to change the terms of

26  the settlement by demanding money from Mr. Kim. Mr. Dolan's voicemail message indicated

27  that he had a revised version of the settlement agreement reflecting that demand, but he never sent

28  it. My assistant transcribed Mr. Dolan's voicemail message, and I checked the transcript for

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA 94304-1043

-7-
ELKINS DECLARATION IN SUPPORT OF DEFENDANTS' MOTION TO ENFORCE SETTLEMENT
CASE NO. C 07 2504 RMW (PVT)

1    accuracy against Mr. Dolan's voicemail message.  A true and accurate transcription of Mr.

2    Dolan's December 19, 2007 voicemail message is attached as <u>Exhibit N</u>.

3         24.    On December 20, I left a return voice message for Mr. Dolan, stating that

4    Defendants were offended by Posdata's attempt to change the terms of the agreed settlement, that

5    the financial term of the settlement (i.e., no money changing hands absent a proven violation of

6    the permanent injunction included in the consent judgment) was the product of extensive

7    negotiation, that Defendants agreed to provide the financial statements only as a showing of good

8    faith and as an accommodation to resolve Posdata's complaints about the deposition responses,

9    and that Defendants would not renegotiate the settlement that the parties reached on August 3.  I

10   stated that if Posdata demands money as a new condition to closing the settlement, Defendants

11   will file a motion to enforce the settlement and seek to recover their fees.  I expressed hope that

12   Mr. Dolan could convince Posdata to abandon what I viewed as a bad faith position, and asked

13   that he call me before the further settlement conference call with Magistrate Judge Trumbull the

14   next afternoon.

15        25.    Later on December 20, Mr. Dolan left me a voicemail message indicating that he

16   would forward my voicemail message to Posdata "so that they understand, you know, kind of

17   what's at stake in terms of what they're doing."  A true and accurate transcription of Mr. Dolan's

18   December 20, 2007, voicemail message is attached as <u>Exhibit O</u>.  Mr. Dolan and I in fact spoke

19   later that day by phone, during which I explained in detail why Posdata's latest demands were

20   unreasonable and wholly inconsistent with the parties' settlement agreement.  Mr. Dolan told me,

21   among other things, that following his discussions with his client, Posdata wanted to delete the

22   confidentiality provisions in the settlement agreement, because (i) the consent judgment would be

23   filed in the public record, and (ii) Posdata wanted to use the consent judgment to follow up with

24   former Posdata employees to convince them to enter into similar agreements.  At no time during

25   that call—or any other call—did Mr. Dolan or any of Posdata's other counsel ever take the

26   position that the parties had never intended their August 3, 2007 agreement to be enforceable.

27        26.    Magistrate Judge Trumbull hosted a final continued settlement conference call on

28   Friday, December 21.  Unlike with the prior conferences, I believe that reciting the comments of

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA  94304-1043

counsel made at the December 21 conference would impinge on the confidentiality of the process. Both the Court and I were convinced, however, that providing Posdata an additional two weeks to reflect on and consider its position further was the best way to proceed. The Court set a final conference call for January 4, 2008 (later changed to January 7, 2008). I made it clear during the conference call that in the event Posdata continued to refuse to proceed with the settlement reached on August 3, Defendants would move to enforce the settlement and would seek to do so on shortened time, just as Posdata had moved for its TRO with two court days' notice before the hearing over six weeks after commencing suit. Mr. Dolan said he understood.

27.     On December 28, 2007, I sent Mr. Dolan an e-mail saying simply, "Any news?" Mr. Dolan replied by e-mail that he had none, but hoped to have some by the following Monday (December 31). A true and correct copy of our December 28, 2007 e-mail exchange is attached as Exhibit P.

28.     Mr. Dolan called me on January 2, 2008. Again, I do not believe that revealing the details of our discussion would be proper in this forum. Following the call, however, I had a clear understanding that sending Mr. Dolan a letter expressly setting forth Defendants' position was possibly our only hope of avoiding the need for this motion. I e-mailed Mr. Dolan a letter so that he would have time to discuss it with his contacts at Posdata that afternoon (which would be the morning of January 3 in Korea). A true and correct copy of my January 2, 2008 letter to Mr. Dolan is attached as Exhibit Q. In summary, my letter:

- Emphasized that the parties had reached a binding settlement on August 3 and that closing the settlement is the best course of action for all parties;

- Stated that Posdata had a slim chance of obtaining money from Defendants in these circumstances because Defendants were prepared to file a motion to enforce the parties' August 3, 2007 settlement on an expedited basis;

- Explained that while Dr. Kim's financial statements show some assets, they are shared with his wife and together they now do not have enough money on which to retire;

- Explained that Dr. Kim is immune from personal liability under Cal. Labor Code §2802; and

- Stated that Defendants did not have the financial means to continue litigation and that in the event the Court did not enforce the parties' settlement, Defendants would have no choice but to seek protection by filing petitions for bankruptcy.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA 94304-1043

-9-
ELKINS DECLARATION IN SUPPORT OF DEFENDANTS' MOTION TO ENFORCE SETTLEMENT
CASE NO. C 07 2504 RMW (PVT)

1         29.    Mr. Dolan responded with a letter to Magistrate Judge Trumbull faxed at 6:12 p.m.

2    on January 4, 2008 , in advance of the further settlement conference call rescheduled for

3    January 7.  The letter restated Posdata's complaints about InQuadron's deposition responses.  The

4    letter also complained that contrary to Defendants' representations prior to the August 3, 2007

5    Settlement Conference, Dr. Kim had some assets (which the letter overstated to include the

6    liquidated value of all assets, including a 401K account and the modest equity in Dr. Kim's

7    home) and demanded payment as a condition for moving forward.  A true and correct copy of Mr.

8    Dolan's January 4, 2008 letter is attached as <u>Exhibit R</u>.  In light of the letter, Magistrate Judge

9    Trumbull canceled the conference call as unnecessary.  I spoke by phone with Mr. Dolan later

10   that day and, among other things, explained that Defendants would in fact file their motion to

11   enforce the settlement, probably on January 8, and that they would seek the have the motion

12   heard on shortened time.

13        I declare under penalty of perjury that the foregoing is true and correct.  Executed on

14   January 8, 2008.

15                                  By:  /s/ David S. Elkins
                                    David S. Elkins

16

17

18

19

20

21

22

23

24

25

26

27

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA  94304-1043

-10-
ELKINS DECLARATION IN SUPPORT OF DEFENDANTS' MOTION TO ENFORCE SETTLEMENT
CASE NO. C 07 2504 RMW (PVT)