# EXHIBIT E

1   SQUIRE, SANDERS & DEMPSEY L.L.P.
    David S. Elkins (State Bar # 148077)
2   delkins@ssd.com
    Allison E. Pitigoi (State Bar # 242211)
3   apitigoi@ssd.com
    Xavier M. Brandwajn (State Bar # 246218)
4   xbrandwajn@ssd.com
    600 Hansen Way
5   Palo Alto, CA  94304-1043
    Telephone:    +1.650.856.6500
6   Facsimile:    +1.650.843.8777

7   SQUIRE, SANDERS & DEMPSEY L.L.P.
    Nathan Lane III (State Bar # 50961)
8   nlane@ssd.com
    One Maritime Plaza, Third Floor
9   San Francisco, CA  94111
    Telephone:    +1.415.954.0200
10  Facsimile:    +1.415.393.9887

11  Attorneys for Defendants
    SEYOUNG KIM and INQUADRON, INC.
12

13

14              UNITED STATES DISTRICT COURT

15             NORTHERN DISTRICT OF CALIFORNIA

16                   SAN JOSE DIVISION

17  POSDATA CO., LTD., a South Korean          Case No. C 07 2504 RMW (PVT)
    corporation,
18                                             **INQUADRON, INC.'S WRITTEN
                                               RESPONSES TO PLAINTIFF'S
19                 Plaintiff,                   WRITTEN DEPOSITION QUESTIONS
                                               PURSUANT TO FEDERAL RULE OF
20          vs.                                CIVIL PROCEDURE 30(b)(6)**

21  SEYOUNG KIM, an individual and
    INQUADRON, INC., a California
22  corporation,

23                 Defendants.

24

25

26

27

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA 94304-1043

INQUADRON, INC.'S WRITTEN RESPONSES TO PLAINTIFF'S WRITTEN DEPOSITION QUESTIONS

CASE NO. C 07 2504 RMW (PVT)

Pursuant to Rules 26, 30(b)(6) and 31 of the Federal Rules of Civil Procedure, and pursuant to the agreement of the parties made as part of their settlement dated August 3, 2007, defendant InQuadron, Inc. ("InQuadron") responds to PosData Co., Ltd.'s ("plaintiff" or "PosData") deposition of InQuadron on written questions as follows:

**1.    Describe the corporate structure of InQuadron?**

InQuadron has authorized a total of 14,500,000 shares of stock, of which 2,500,000 shares are designated as Series A Preferred Stock and the rest as Common Stock. There are presently 4,000,000 shares of Common Stock and 750,000 shares of Series A Preferred Stock issued and outstanding. InQuadron has four directors: Seyoung Kim, Kenneth D. Lee, Hwayong Joung, and Joonsug Chung. InQuadron's officers are Seyoung Kim, President, and Kenneth D. Lee, Secretary and Treasurer.

**2.    Identify each person that has ever been an officer or director of InQuadron, Inc.**

**a.    For each person identified, please provide their title, the dates they have held an officer or director position, their job responsibilities as an officer or director, salary, and other compensation benefits.**

**Seyoung Kim, Director and President from January 1, 2007**

Job Responsibilities: from InQuadron's Bylaws:

> Section 3.1    Powers.    Subject to the provisions of the California General Corporation Law and to any limitations in the articles of incorporation or these bylaws requiring shareholder authorization or approval of a particular action, the business and affairs of the corporation shall be managed, and all corporate powers shall be exercised, by or under the direction of the board of directors. The board of directors may delegate the management of day-to-day operation of the business of the corporation to a management company or other person; provided, however, that the business and affairs of the corporation shall be managed, and all corporate powers shall be exercised, under the ultimate direction of the board of directors.
>
> Section 4.4    President.    The president shall be the general manager and chief executive officer of the corporation and, subject to the control of the board of directors, shall have general

supervision over and control of the business and officers of the corporation. In the absence of the chairman of the board or if that office is not filled, the president shall preside at all meetings of the shareholders and, if a member of the board of directors, at all meetings of the board of directors. The president shall have general power of management as well as any other powers and duties prescribed by the board of directors, and shall be primarily responsible for carrying out all orders and resolutions of the board of directors.

<u>Salary:</u>    US$185,000 per annum
<u>Benefits:</u>    Apartment and Auto; health, dental and vision coverage when available.

**Kenneth D. Lee, Director, Secretary and Treasurer from January 1, 2007**

Job Responsibilities:  see Section 3.1 of InQuadron's Bylaws as cited above.  Also the following sections from the Bylaws:

Section 4.6    Secretary.   The secretary shall keep a book of minutes of all meetings and actions of directors, committees of directors and shareholders.  The minutes of each meeting shall state the time and place that it was held and such other information as shall be necessary to determine the actions taken thereat and whether the meeting was held in accordance with the law and these bylaws.   The secretary shall keep at the corporation's principal executive office, or at the office of its transfer agent or registrar, a share register showing the names and addresses of all shareholders and the number and class of shares held by each.   The secretary shall give notice of all meetings of shareholders, directors and committees required to be given by the bylaws.  The secretary shall keep the seal of the corporation in safe custody and shall have such other powers and perform such other duties as may be prescribed by the board of directors, the chairman of the board or the president.

Section 4.7    Chief Financial Officer.   The chief financial officer shall have the custody of all moneys and securities of the corporation and shall keep regular books of account.   The chief financial officer shall disburse the funds of the corporation in payment of the just demands against the corporation or as may be ordered by the board of directors, taking proper vouchers for such disbursements, and shall render to the board of directors from time to time as may be required by the board of directors, an account of all transactions as chief financial officer and of the financial condition of the corporation.   The chief financial officer shall perform all duties incident to the office or which are properly

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto CA 94304-1043

required by the board of directors, the chairman of the board or the president.

Salary:    US$125,000 per annum
Benefits:    Health, dental and vision coverage when available

**Hwayong Joung: Director from January 1, 2007**

Job Responsibilities: See Section 3.1 of InQuadron's Bylaws as cited above.

Salary:  Uncompensated as a director.

**Joonsug Chung: Director from January 1, 2007**

Job Responsibilities:  See Section 3.1 of InQuadron's Bylaws as cited above.

Salary:  Uncompensated as a director.

b.    **Identify each person that is still currently an officer or director of InQuadron. Inc.**

Seyoung Kim, Kenneth D. Lee, Hawyong Joung, and Joonsug Chung.

**3.    Why was InQuadron founded?**

InQuadron was founded to develop and license core technologies for the emerging global mobile WiMax market.

**4.    Did InQuadron have a written business plan?**

Yes.

a.    **If yes, describe each document, including its title, number of pages and description of content?**

Title: "Mobile Internet Core Technology Business Plan," 25 pages.  This draft plan describes the general WiMax market and InQuadron's technology roadmap.  It also presents information about various players in the market as well as general market trends.

b.    **If yes, identify each person who authored the business plan?**

Joonsug Chung and Seyoung Kim.

c.    **If yes, identify each person or entity who contributed any information to the business plan?**

Joonsug Chung and Seyoung Kim.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA 94304-1043

      **d.**    **For each person that authored or contributed to InQuadron's business plan, describe their contribution, their job title, and company affiliation.**

Joonsug Chung composed the market overview, competition information, and financial projections. Seyoung Kim provided market trends, technology, and potential products information.

Joonsug Chung and Seyoung Kim are directors of InQuadron. Seyoung Kim is also the president of InQuadron.

    **5.**    **Was InQuadron's business plan given to any person or entity?**

      **a.**    **If yes, identify each person or entity, including their address and phone number.**

| | | | |
|---|---|---|---|
| Chan Park<br>Retired Individual<br>908 Hosugreen<br>BLDG, 752-1<br>Janghang-dong<br>Ilsan-gu,<br>Gyeonggi-do<br>Korea<br>031-908-6568 | Dongkyu Choi<br>1259 Lakeside Drive,<br>#2223, Sunnyvale,<br>California 94085<br>USA<br>650-799-0218 | Byung-min Lee<br>Vice Korea<br>President<br>MtekVision, Inc.<br>Tower Palace<br>Dogok-dong,<br>Gangnam-gu, Seoul<br>011-216-4425 | Duk-yong Kim<br>CEO<br>Korea Microwave, Inc.<br>Yongin, Gyeonggi -do<br>Korea<br>(No further address<br>information)<br>031-370-8601 |
| Yong-choon Kim<br>President<br>NSC Korea<br>7F KLI 63 BLDG<br>60 Yoido, Seoul<br>Korea<br>02-3771-6909 | Kwang-sun Kim<br>President<br>D&T<br>Daedeok Valley 60-1<br>Jang-dong, Yuseong-<br>gu, Daejeon, Korea<br>02-2113-1530 | Yong-min Kim<br>President<br>STIC Investment Co.<br>VC<br>10F MSA BLDG<br>891-43 Daechi-dong<br>Kangnam-gu, Seoul<br>Korea<br>02-3404-7848 | Hoon Kim<br>Vice President<br>Woori Co.<br>Suite 5, 201 Dongil Techno<br>Town 202-6 Anyang7-<br>dong, Manan-gu, Anyang-<br>shi, Gyeonggi-do<br>Korea<br>031-449-1003 |
| Tae-ho Park<br>President<br>Woori Co.<br>Korea<br>Suite 5, 201 Dongil<br>Techno Town 202-<br>6 Anyang7-dong,<br>Manan-gu,<br>Anyang-shi,<br>Gyeonggi-do<br>031-449-1003 | Young-jo Lee<br>Team Manager<br>LG-Nortel<br>Korea<br>No business plan<br>given to this person. | | |

6.    **What is InQuadron's mission statement?**

InQuadron has not adopted a mission statement.

7.    **Provide a description of InQuadron's business.**

Research and development, manufacturing, and sales of telecommunication products.

8.    **Describe InQuadron's business or anticipated business, products or potential products, and/or services or potential services from 2006 to the present?**

Development of WiMAX (non-WiBro) basestation core technology that would lead to the development of a WiMAX basestation baseband modem ASIC for the US market.

9.    **Describe InQuadron's business or anticipated business, products or potential products, and/or services or potential services for the next twelve months?**

Development of WiMAX (non-WiBro) basestation core technology that would lead to the development of a WiMAX basestation baseband modem ASIC for the US market.

10.    **Has InQuadron's business or anticipated business, products or potential products, and/or services or potential services ever been related in any way to the WiMAX or WiBro technology industry?**

WiMax, yes, but not WiBro.

　　　a.    **If yes, describe InQuadron's business or anticipated business from 2006 to the present.**

Development of WiMAX (non-WiBro) basestation core technology that would lead to the development of a WiMAX basestation baseband modem ASIC for the US market.

　　　b.    **Describe InQuadron's business or anticipated business during the next twelve months.**

Development of WiMAX (non-WiBro) basestation core technology that would lead to the development of a WiMAX basestation baseband modem ASIC for the US market.

　　　c.    **Describe InQuadron's products or potential products from 2006 to the present.**

InQuadron has not developed any existing products or potential products to date.

1

     **d.**     **Describe InQuadron's products or potential products during the next**

2

           **twelve months.**

3

Development of WiMAX (non-WiBro) basestation core technology that would lead to the

4

development of a WiMAX basestation baseband modem ASIC for the US market.

5

     **e.**     **Describe InQuadron's services or potential services from 2006 to the**

6

           **present.**

7

InQuadron has not provided any services to date.

8

     **f.**     **Describe InQuadron's services or potential services during the next**

9

           **twelve months.**

10

Development of WiMAX (non-WiBro) basestation core technology that would lead to the

11

development of a WiMAX basestation baseband modem ASIC for the US market.

12

    **11.**     **If applicable, what is the current address of InQuadron's offices or facilities**

13

           **in the United States, Korea or other countries?**

14

U.S.: 2310 Walsh Avenue, Santa Clara, California 95054.

15

Korea: Hyundai Office Building, 12th Floor, Suite 1702, 9-4 Soonae-dong, Seongnam-Si,

16

Bundang-gu, Gyeonggi-dong, 463-825 Korea.

17

     **a.**     **For each address listed above, please provide a description of the**

18

           **activities that take place at each office or facility.**

19

The US office activities include research and development and the corporate headquarters.

20

The Korean office activities include research and development.

21

    **12.**     **Has InQuadron ever had a Research & Development ("R&D") center, lab, or**

22

           **other facility where research and development of WiMAX or WiBro related**

23

           **products or technology occurred?**

24

Yes; for WiMax (non-WiBro) products or technology.

25

     **a.**     **If yes, what is the address of each InQuadron facility where research**

26

           **or development activities took place?**

27

U.S.: 2310 Walsh Avenue, Santa Clara, California 95054.

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA 94304-1043

- 7 -
INQUADRON, INC.'S WRITTEN RESPONSES TO PLAINTIFF'S WRITTEN DEPOSITION QUESTIONS
CASE NO. C 07 2504 RMW (PVT)

1    Korea:  Hyundai Office Building, 12th Floor, Suite 1702, 9-4 Soonae-dong, Seongnam-Si,

2    Bundang-gu, Gyeonggi-dong, 463-825 Korea.

3    **b.    If yes, please describe the type of research or development that has**

4    **taken place at each facility.**

5    InQuadron's activities to date were largely confined to establishing the company,

6    recruiting and hiring personnel and setting up physical offices.  InQuadron did not commence

7    material substantive research and development work in either the U.S. or Korea before PosData's

8    legal demands and ultimately the onset of this litigation prevented such work from moving

9    forward.

10    **c.    If yes, please list the employees at each facility, including their dates of**

11    **employment, their position, their responsibilities, salary, and other**

12    **compensation benefits.**

13    U.S.:

14    • Seyoung Kim, President, April 1, 2007, responsible for overall management of the

15    company, $185,000 per year, apartment, automobile, health, dental and vision

16    coverages, when available.

17    • Kenneth D. Lee, Chief Operating Officer, February 1, 2007, responsible for

18    general management and administration of the company, $125,000 per year,

19    health, dental and vision coverages, when available.

20    Korea:  No current employees.

21    **d.    If yes, please describe all equipment, tools and supplies, including but**

22    **not limited to computers, hardware, software and other materials**

23    **related to the research or development of WiMAX or WiBro**

24    **technology that is located at each facility.**

25    Three Dell desktop computers, four Dell laptops, one Dell LAN server, and one IBM

26    laptop in the U.S.  Various computers and other equipment were located in Korea, but may have

27    been removed by Korean law enforcement officials.

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA 94304-1043

InQuadron, Inc.'s Written Responses To Plaintiff's Written Deposition Questions
Case No. C 07 2504 RMW (PVT)

1            **e.**      **If yes, please describe the research or development that has taken**

2                  **place with respect to InQuadron products or technology.**

3        As previously answered, InQuadron's legal issues arose before InQuadron could conduct

4   material substantive development work. The work performed before legal issues forced a

5   cessation of work was limited to product/technology conceptualization and development

6   planning.

7            **f.**      **If yes, please describe the research or development that has taken**

8                  **place with respect to the Modular Channel Card Assembly ("MCCA")**

9                  **or Turtle Card or Turtle Board?**

10       None.

11           **g.**      **Has InQuadron ever utilized technology related to Posdata's Digital**

12                 **Channel Card Unit ("DCCU") for the Pico RAS base station during its**

13                 **research and development?**

14       No.

15              **(1)**      **If yes, describe how InQuadron utilized the technology?**

16       Not applicable.

17           **h.**      **Has InQuadron ever utilized technology related to Posdata's MAC**

18                 **and PHY source code during its research and development?**

19       No.

20              **(1)**      **If yes, describe how InQuadron utilized the technology?**

21       Not applicable.

22           **i.**      **Has InQuadron ever utilized technology related to Posdata's printed**

23                 **circuit board ("PCB") design and layout during its research and**

24                 **development?**

25       No.

26             **(1)**      **If yes, describe how InQuadron utilized the technology?**

27       Not applicable.

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

      **j.**    Has InQuadron ever utilized technology related to the DCCU or MCCA or Turtle Card or Turtle Board or Pico RAS base stations during its research and development?

No.

    **(1)**    If yes, describe how InQuadron utilized the technology?

Not applicable.

      **k.**    Has InQuadron ever utilized technology related to the "Modular RAS Implementation" file during its research and development?

No.

    **(1)**    If yes, describe how InQuadron utilized the technology?

Not applicable.

      **l.**    Has InQuadron ever utilized technology related to the "Rev. 0.4 DCCU Block Diagram" file during its research and development?

No.

    **(1)**    If yes, describe how InQuadron utilized the technology?

Not applicable.

      **m.**    Has InQuadron ever utilized Posdata's Mobile Plugfest Reports during its research and development?

No.

    **(1)**    If yes, describe how InQuadron utilized the technology?

Not applicable.

      **n.**    Has InQuadron ever utilized the NTT DoCoMo Reports during its research and development?

No.

    **(1)**    If yes, describe how InQuadron utilized the technology?

Not applicable.

      **o.**    Has InQuadron ever utilized Posdata's IOT Reports during its research and development?

SQUIRE, SANDERS &
DEMPSEY L.L.P.
#1 Hanover Way
Palo Alto, CA 94304-1043

1    No.

2           **(1)**        **If yes, describe how InQuadron utilized the technology?**

3    Not applicable.

4       **p.     Has InQuadron ever utilized technology related to Posdata's files or**

5               **diagrams that depict, reveal, or demonstrate how processors and**

6               **components, Posdata's PCB design and layout, and Posdata's software**

7               **and source code create an architecture for interface between hardware**

8               **and software during its research and development?**

9    No.

10          **(1)**        **If yes, describe how InQuadron utilized the technology?**

11   Not applicable.

12      **q.     Has InQuadron ever utilized any other Posdata WiMAX, WiBro or**

13              **FLYVO technology during its research and development?**

14   No.

15          **(1)     If yes, describe how InQuadron utilized the technology?**

16   Not applicable.

17   **13.    Has InQuadron ever outsourced any research or development tasks or**

18          **projects related to InQuadron products or technology?**

19   No.

20      **a.     If yes, please describe each task or project that was outsourced,**

21              **provide the date(s) the outsourcing occurred, the name of the**

22              **individual or company the task or project was outsourced to, their**

23              **compensation, address, and contact information.**

24   Not applicable.

25   **14.    Has InQuadron ever outsourced any research or development tasks or**

26          **projects related to WiMAX or WiBro products or technology?**

27   No.

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
[illegible]
[illegible]

    a.    **If yes, please describe each task or project that was outsourced, provide the date(s) the outsourcing occurred, the name of the individual or company the task or project was outsourced to, their compensation, address, and contact information.**

Not applicable.

15.    **Has InQuadron ever outsourced the manufacturing of InQuadron products or technology?**

No.

    a.    **If yes, please describe each task or project that was outsourced, provide the date(s) the outsourcing occurred, the name of the individual or company the task or project was outsourced to, their compensation, address, and contact information.**

Not applicable.

16.    **Has InQuadron ever outsourced the manufacturing of WiMAX or WiBro products or technology?**

No.

    a.    **If yes, please describe each task or project that was outsourced, provide the date(s) the outsourcing occurred, the name of the individual or company the task or project was outsourced to, their compensation, address, and contact information.**

Not applicable.

17.    **Is Seyoung Kim currently employed by InQuadron?**

Yes.

    a.    **If yes, please state the name of his employer, his employer's address, his work number, the dates of his employment, his position, the responsibilities of his position, salary, and other compensation benefits.**

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA 94304-1043

1      InQuadron, Inc., 2310 Walsh Avenue, Santa Clara, California 95054.  (408) 727-6911,

2  Employed from April 1, 2007 to the present.  Position: President.  See the response to Question 2

3  for a description of Dr. Kim's duties.  Salary and other compensation benefits: Annual salary -

4  $185,000, plus apartment and auto, and health, dental and vision coverage when available.

5      **18.**    **Has Seyoung Kim ever been employed as a consultant?**

6      No.

7          **a.**    **If yes, please state the name of his employer, his employer's address,**

8              **his work number, the dates of his employment, his position, the**

9              **responsibilities of his position, salary, and other compensation**

10              **benefits.**

11      Not applicable.

12      **19.**    **Since October 27, 2006, has Seyoung Kim been employed in any capacity by**

13          **an individual or company other than Posdata Co., Ltd. or InQuadron, Inc.?**

14      InQuadron objects to this question on the ground that it incorrectly assumes facts; namely,

15  that Seyoung Kim was employed by Posdata since October 27, 2006.  Dr. Kim's employment

16  with Posdata was on or before that date.  Subject to and without waiting its objection, InQuadron

17  responds as follows:  no.

18          **a.**    **If yes, please state the name of his employer, their address, their**

19              **contact number, the dates of his employment, his position with each**

20              **employer, the responsibilities of his position, salary, and other**

21              **compensation benefits.**

22      Not applicable.

23      **20.**    **Since October 27, 2006, has Seyoung Kim pursued or inquired about**

24          **employment with any individual or company other than Posdata Co., Ltd. or**

25          **InQuadron, Inc.?**

26      No.

27          **a.**    **If yes, please state the name of the potential employer, their address,**

28              **their contact number, the date(s) of his inquiry, a description of the**

SQUIRE, SANDERS &
DEMPSEY L.L.P.

1    position or capacity he inquired about, the responsibilities of the

2    position, and the outcome of each inquiry.

3    Not applicable.

4    **21.    Does Seyoung Kim have any plans during the next 12 months to work or seek**

5    **employment in any capacity?**

6    Yes.

7    **a.    If yes, please describe what type of work he may pursue, the names of**

8    **potential employers, their address, their contact number, a description**

9    **of the position or capacity he anticipates inquiring about, and the**

10    **anticipated responsibilities of the position.**

11    Seyoung Kim is currently employed by InQuadron and intends to continue employment

12    with InQuadron in the same capacity and position and with the same responsibilities as he

13    currently holds.

14    **22.    Does Seyoung Kim have any plans during the next 12 months to start a**

15    **business, serve as consultant, or obtain employment in any capacity within**

16    **the WiMAX or WiBro technology industry?**

17    No.

18    **a.    If yes, please describe what type of work he may pursue or business he**

19    **may start, the names of potential employers, their address, their**

20    **contact number, a description of the position or capacity he anticipates**

21    **inquiring about, and the anticipated responsibilities of the position or**

22    **nature of the business.**

23    Not applicable.

24    **23.    Does Seyoung Kim have any plans during the next 12 months to start a**

25    **business, serve as consultant, or obtain employment in any capacity by**

26    **utilizing WiMAX, WiBro, or FLYVO technology?**

27    No.

28

INQUADRON, INC.'S WRITTEN RESPONSES TO PLAINTIFF'S WRITTEN DEPOSITION QUESTIONS
CASE NO. C 07 2504 RMW (PVT)

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA 94304-1043

a.  If yes, please describe what type of work he may pursue or business he may start, the names of potential employers, their address, their contact number, a description of the position or capacity he anticipates inquiring about, the WiMAX, WiBro, or FLYVO technology he may utilize, and the anticipated responsibilities of the position or nature of the business.

Not applicable.

24.  Does Seyoung Kim have any plans during the next 12 months to start a business, serve as consultant, or obtain employment in any capacity by utilizing Posdata's WiMAX, WiBro, or FLYVO technology, including but not limited to the Modular Channel Card Assembly ("MCCA") or Turtle Card or Turtle Board, Posdata's Digital Channel Card Unit ("DCCU") for the Pico RAS base station , Posdata's MAC and PHY source code, Posdata's printed circuit board ("PCB") design and layout, the DCCU or MCCA or Turtle Card or Turtle Board or Pico RAS base stations, the "Modular RAS Implementation" file, the "Rev. 0.4 DCCU Block Diagram" file, Posdata's Mobile Plugfest Reports, the NTT DoCoMo Reports, Posdata's IOT Reports, and Posdata's files or diagrams that depict, reveal, or demonstrate how processors and components, Posdata's PCB design and layout, and Posdata's software and source code create an architecture for interface between hardware and software?

No.

a.  If yes, please describe what type of work he may pursue or business he may start, the names of potential employers, their address, their contact number, a description of the position or capacity he anticipates inquiring about, Posdata's WiMAX, WiBro, or FLYVO technology he may utilize, and the anticipated responsibilities of the position or nature of the business.

1    Not applicable.

2    **25.    Describe how InQuadron's workforce was organized by division, unit, team,**

3    **lab, or other organizational structure as of May 1, 2007?**

4    InQuadron has not organized its workforce by division, unit, team, lab, or other

5    organizational structure.

6    **a.    For each grouping, describe the function of each grouping, the**

7    **employees in each grouping, and the location of each grouping?**

8    Not applicable.

9    **26.    Describe how InQuadron's workforce is currently organized by division, unit,**

10    **team, lab, or other organizational structure?**

11    InQuadron has not had the opportunity to organize its workforce. Its current workforce

12    consists of only two employees.

13    **a.    For each grouping, describe the function of each grouping, the**

14    **employees in each grouping, and the location of each grouping?**

15    Not applicable.

16    **27.    Identify each person that has ever been employed by InQuadron, Inc.**

17    InQuadron incorporates its answer to 12(c) here. In addition to the persons listed in 12(c):

18    Hwayong Joung, Seongdong Park, Jong Wook Lee, Jongkwan Choi and Hoon Paek.

19    **a.    For each person identified, please provide the dates of their**

20    **employment, their position, their job responsibilities, salary, and other**

21    **compensation benefits.**

22    In addition to the persons listed in response to 12(c), the following were employed at

23    InQuadron:

24    • Hwayong Joung, April 1, 2007 to September 30, 2007, Principal Engineer, Annual

25    Salary: 93 Million Korean Won; health, dental and vision insurance coverages

26    when available;

27

28

INQUADRON, INC.'S WRITTEN RESPONSES TO PLAINTIFF'S WRITTEN DEPOSITION QUESTIONS
CASE NO. C 07 2504 RMW (PVT)

SQUIRE, SANDERS &
DEMPSEY L.L.P.
Palo Alto CA 94304-1043

- Seongdong Park, April 1, 2007 to September 30, 2007, Senior Staff Engineer; Annual Salary 67 Million Korean Won; health, dental and vision insurance coverages when available;

- Jong Wook Lee, April 1, 2007 to September 30, 2007, Senior Staff Engineer; Annual Salary: 60,450 Million Korean Won; health, dental and vision insurance coverages when available;

- Jongkwan Choi; April 1, 2007 to May 15, 2007; Principal Engineer; Annual Salary $130,000; health, dental and vision insurance coverages when available; and

- Hoon Paek, May 1, 2007 to May 15, 2007, Senior Staff Engineer, Annual Salary: $115,000; options for the purchase of 50,000 shares; health, dental and vision insurance coverages, when available.

    **b.**    **For each person identified, please identify which individuals are still currently employed by InQuadron. Inc.**

Seyoung Kim and Kenneth D. Lee.

    **c.**    **For each current or former InQuadron employee identified, please identify which individuals are current or former employees of Posdata.**

All but Kenneth D. Lee are former employees of PosData.

**28.**    **Identify each person that has ever been employed by InQuadron, Inc. as a consultant or on a temporary basis.**

None.

    **a.**    **For each person identified, please provide the dates of their employment, their position, their job responsibilities, salary, and other compensation benefits.**

Not applicable.

    **b.**    **For each person identified, please identify which individuals are still currently employed by InQuadron. Inc.**

Not applicable.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA 94304-1043

  c.  **For each current or former InQuadron employee identified, please identify which individuals are current or former employees of Posdata.**

Not applicable.

29.  **Identify each person that has ever been employed for InQuadron, Inc.'s benefit as a consultant or on a temporary basis.**

None.

  a.  **For each person identified, please provide the dates of their employment, their position, their job responsibilities, salary, and other compensation benefits.**

Not applicable.

  b.  **For each person identified, please identify which individuals are still currently employed by InQuadron. Inc.**

Not applicable.

  c.  **For each current or former InQuadron employee identified, please identify which individuals are current or former employees of Posdata.**

Not applicable.

30.  **Identify each current or former Posdata employee that has ever been solicited or contacted orally or in writing by Seyoung Kim or InQuadron to work for InQuadron.**

InQuadron incorporates its response to Question 31.a.

  a.  **For each person identified, please provide the dates they were solicited or contacted, the position discussed, the job responsibilities for the position, their proposed salary, and other compensation benefits**

- William Li (4/2007, SW engineer, no salary/other compensation benefits discussed)

- Hwayong Joung (11/2006, Director, $93,000, 330,000 shares stock option)

- Choon Shin, (11/2006, HW engineer, no salary/other compensation benefits discussed)

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Ave.
Palo Alto, CA 94304-1043

1
- Jongkwan Choi (2/2007, HW engineer, $130,000, 330,000 shares stock option)

2
- Hojun Kim (2/2007, HW engineer, $130,000, 330,000 shares stock option)

3
- Seongdong Park (11/2006, SW engineer, $67,000, 330,000 shares stock option)

4
- Woojin Jeon (2/2007, HW engineer, $81,000, 330,000 shares stock option)

5
- Kangmin Lee (2/2007, System Engineer, $70,000, 160,000 shares of stock option)

6
7
- Choon Shin (2/2007, HW engineer, no salary/other compensation benefits discussed)

8
- Younki Hong (3/2007, HW engineer, $105,000, 160,000 shares of stock option)

9
- Jinyoung Park (2/2007, SW engineer, $65,000 , 160,000 shares of stock option)

10
11
- Seungman Lee (12/2006, DSP engineer, no salary/other compensation benefits discussed)

12
- Sejin Lim (3/2007, $65,000, 160,000 shares of stock option)

13
- Yongkeun Pang (3/2007, no salary/other compensation benefits discussed)

14
- Hunseung Oh (3/2007, $65,000, 160,000 shares of stock option)

15
- Jongwook Lee (3/2007, $70,000, 160,000 shares of stock option)

16
- Suckchan Lee (3/2007, $64,000, 160,000 shares of stock option)

17
- Kwangsuk Kim (3/2007, $64,000, 160,000 shares of stock option)

18
19
- Yerang Hur (2/2007, Systems Engineer, no salary/other compensation benefits discussed)

20
21
- Jungnam Yun (2/2007, Systems Engineer,  no salary/other compensation benefits discussed)

22
23
- Hoon Paek (5/2007, Systems Engineer, applied for a job at Inquadron after his termination from Posdata, $115,000, 160,000 shares of stock option)

24
- Bongho Kim (2/2007, applied for a position at InQuadron, decision was on hold)

25
- Sanggeun Hwang (11/2006, no salary/other compensation benefits discussed)

26
    **b.**    **For each person identified, please identify which individuals were**

27
    **offered employment with InQuadron.**

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.

INQUADRON, INC.'S WRITTEN RESPONSES TO PLAINTIFF'S WRITTEN DEPOSITION QUESTIONS
CASE NO. C 07 2504 RMW (PVT)

1    Hwayong Joung, Jongkwan Choi, Hojun Kim, Seongdong Park, Younki Hong, Woojin

2  Jeon, Kangmin Lee, Jinyoung Park, Sejin Lim, Hunseung Oh, Jongwook Lee, Suckchan Lee,

3  Kwangsuk Kim, Hoon Paek.

    c.    **For each person identified, please identify which individuals accepted employment with InQuadron even if they never started working for InQuadron as a result of this lawsuit or other circumstances.**

7    Hwayong Joung, Jongkwan Choi, Hojun Kim, Seongdong Park, Jongwook Lee, Hoon

8  Paek.

9    **31.    Identify each person, excluding current or former Posdata employees, that has ever been solicited or contacted orally or in writing by Seyoung Kim or InQuadron to work for InQuadron.**

12    Joonsug Chung.

    a.    **For each person identified, please provide the dates they were solicited or contacted, the position discussed, the job responsibilities for the position, their proposed salary, and other compensation benefits.**

16    October 2006.  No specific position or salary was discussed.

    b.    **For each person identified, please identify which individuals were offered employment with InQuadron.**

19    Employment was not offered.

    c.    **For each person identified, please identify which individuals accepted employment with InQuadron even if they never started working for InQuadron as a result of this lawsuit or other circumstances.**

23    Not applicable.

    **32.    Identify each person that has provided InQuadron with documents or information related to Posdata's anticipated business, potential products, products, goods/or services, marketing and sales efforts and commercialization efforts.**

28    None.

1        **a.**      For each person listed above, identify the InQuadron employee that

2                received the information and describe the documents or information

3                provided to InQuadron regarding Posdata's anticipated business,

4                potential products, products, goods/or services, marketing and sales

5                efforts and commercialization efforts.

6    Not applicable.

7        **b.**      For each person listed above, provide their employer, their job title

8                and responsibilities, and address.

9    Not applicable.

10       **c.**      For each person listed above, identify any current or former Posdata

11               employees that provided documents or information to InQuadron.

12   Not applicable.

13   **33.**    Identify each person that has provided Seyoung Kim with documents and

14           information related to Posdata's anticipated business, potential products,

15           products, goods/or services, marketing and sales efforts and

16           commercialization efforts.

17   None.

18       **a.**      For each person listed above, describe the documents or information

19               provided to Seyoung Kim related to Posdata's anticipated business,

20               potential products, products, goods/or services, marketing and sales

21               efforts and commercialization efforts.

22   Not applicable.

23       **b.**      For each person listed above, provide their employer, their job title

24               and responsibilities, and address.

25   Not applicable.

26       **c.**      For each person listed above, please identify any current or former

27               Posdata employees that provided documents or information to

28               InQuadron.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA  94304-1043

- 21 -

INQUADRON, INC.'S WRITTEN RESPONSES TO PLAINTIFF'S WRITTEN DEPOSITION QUESTIONS
CASE NO. C 07 2504 RMW (PVT)

1  Not applicable.

2  **34.  Identify each person that has provided InQuadron with documents or**

3  **information related to Posdata's WiMAX, WiBro, or FLYVO technology,**

4  **including but not limited to the Modular Channel Card Assembly ("MCCA")**

5  **or Turtle Card or Turtle Board, Posdata's Digital Channel Card Unit**

6  **("DCCU") for the Pico RAS base station , Posdata's MAC and PHY source**

7  **code, Posdata's printed circuit board ("PCB") design and layout, the DCCU**

8  **or MCCA or Turtle Card or Turtle Board or Pico RAS base stations, the**

9  **"Modular RAS Implementation" file, the "Rev. 0.4 DCCU Block Diagram"**

10  **file, Posdata's Mobile Plugfest Reports, the NTT DoCoMo Reports, Posdata's**

11  **IOT Reports, and Posdata's files or diagrams that depict, reveal, or**

12  **demonstrate how processors and components, Posdata's PCB design and**

13  **layout, and Posdata's software and source code create an architecture for**

14  **interface between hardware and software.**

15  Choon Shin of Posdata gave the Turtle Board to Jongkwan (Jeff) Choi of Posdata, who

16  later became an InQuadron employee.  Choi gave the Turtle Board back to Choon Shin (then an

17  employee at Posdata's San Jose facility) in or about March 2007.

18  Dr. Kim came into possession of three draft technical memos related to WiMAX MIMO

19  technology some time in early 2007.  Dr. Kim does not recall the source of the memos.  The

20  documents were apparently contained in a folder on his Posdata-issued laptop computer.  At the

21  time Dr. Kim returned his laptop to PosData, he copied personal files he wanted to keep from the

22  laptop to portable storage media.  After InQuadron's counsel in this action engaged an electronic

23  discovery forensics consultant to extract all data from InQuadron computers and storage media,

24  Dr. Kim reviewed a listing of files copied from his laptop.  By reviewing that list, Dr. Kim

25  realized that when he copied his personal material from the Posdata-issued laptop, he

26  inadvertently also copied the WiMAX MIMO technology memos.  Dr. Kim was not aware he had

27  the copies until after he reviewed the file listing prepared by the electronic discovery forensic

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA 94304-1043

1  consultant.  InQuadron is providing these memos to Posdata in accordance with its settlement

2  obligations.

3       In an email dated December 9, 2006, Sang Geun Hwang briefly mentioned to Dr. Kim,

4  Jongkwan Choi, Hwayoung Joung, Joonsug Chung, Woojon Jeon, Choon Shin, Seong Deong

5  Park, and Hojun Kim a single test result from the GCT-IOT testing.  InQuadron is providing this

6  document to Posdata in accordance with its settlement obligations.

7       Apart from those persons listed as senders in those certain e-mails already in Posdata's

8  possession and submitted as evidence in support of Posdata's application for a temporary

9  restraining order, InQuadron is not aware of any other person that has provided InQuadron with

10  information or documents related to Posdata's WiMAX, WiBro or FLYVO technology, as these

11  terms are defined in this question.

12       a.      **For each person listed above, identify the InQuadron employee that**

13           **received the information and describe the documents or information**

14           **provided to InQuadron regarding Posdata's anticipated business,**

15           **potential products, products, goods/or services, marketing and sales**

16           **efforts and commercialization efforts.**

17  InQuadron objects to this question on the ground of burden because it duplicates

18  Question 33a.  InQuadron assumes that Question 34.a. was intended to incorporate the body of

19  Question 34.  As so understood, InQuadron responds by incorporating its response to

20  Question 34.

21       b.      **For each person listed above, provide their employer, their job title**

22           **and responsibilities, and address.**

23  InQuadron incorporates its response to Question 34.

24       c.      **For each person listed above, identify any current or former Posdata**

25           **employees that provided documents or information to InQuadron.**

26  InQuadron incorporates its response to Question 34.

27  **35.    Identify each person that has provided Seyoung Kim with documents and**

28      **information after October 27, 2006 related to Posdata's WiMAX, WiBro, or**

1  FLYVO technology, including but not limited to the Modular Channel Card

2  Assembly ("MCCA") or Turtle Card or Turtle Board, Posdata's Digital

3  Channel Card Unit ("DCCU") for the Pico RAS base station , Posdata's MAC

4  and PHY source code, Posdata's printed circuit board ("PCB") design and

5  layout, the DCCU or MCCA or Turtle Card or Turtle Board or Pico RAS

6  base stations, the "Modular RAS Implementation" file, the "Rev. 0.4 DCCU

7  Block Diagram" file, Posdata's Mobile Plugfest Reports, the NTT DoCoMo

8  Reports, Posdata's IOT Reports, and Posdata's files or diagrams that depict,

9  reveal, or demonstrate how processors and components, Posdata's PCB

10  design and layout, and Posdata's software and source code create an

11  architecture for interface between hardware and software.

12  InQuadron incorporates its response to Question 34.

13    a.    For each person listed above, provide their employer, their job title

14        and responsibilities, and address.

15  InQuadron incorporates its response to Question 34.

16    b.    For each person listed above, identify any current or former Posdata

17        employees that provided documents or information to InQuadron.

18  InQuadron incorporates its response to Question 34.

19  36.    Identify each person or entity that has ever been a shareholder in InQuadron,

20        Inc.?

21  InQuadron incorporates its response to Question 36.a.

22    a.    For each shareholder, describe how many shares they received, when

23        they received the shares, how much the shares cost them or how much

24        of an investment was required, and whether there are any special

25        restrictions on trading the shares.

26  • Seyoung Kim:  2,000,000 shares of Common Stock issued on January 23, 2007,

27    for total consideration of $2,000.00.  Shares are subject to the terms and conditions

28    of a Stock Restriction Agreement.

- Kenneth D. Lee: 350,000 shares of Common Stock issued on January 23, 2007, for total consideration of $350.00. Shares are subject to the terms and conditions of a Stock Restriction Agreement.

- Hwayong Chung: 330,000 shares of Common Stock issued on January 23, 2007, for total consideration of $330.00. Shares are subject to the terms and conditions of a Stock Restriction Agreement.

- Joonsug Chung: 330,000 shares of Common Stock issued on January 23, 2007, for total consideration of $330.00. Shares are subject to the terms and conditions of a Stock Restriction Agreement.

- Jongkwan Choi: 330,000 shares of Common Stock issued on January 23, 2007, for total consideration of $330.00. Shares are subject to the terms and conditions of a Stock Restriction Agreement.

- Hojun Kim: 330,000 shares of Common Stock issued on January 23, 2007, for total consideration of $330.00. Shares are subject to the terms and conditions of a Stock Restriction Agreement.

- Seongdong Park: 330,000 shares of Common Stock issued on January 23, 2007, for total consideration of $330.00. Shares are subject to the terms and conditions of a Stock Restriction Agreement.

- Chan Park: 750,000 shares of Series A Preferred Stock issued on February 9, 2007, for total consideration of $750,000.00. The Shares of subject to the usual restrictions of transfer and to the terms and conditions of an Investors' Rights Agreement.

**b.      For each shareholder, have any of them sold their shares?**

No.

**c.      If the answer to the question above is yes, when were the shares sold, for how much, and to whom were the shares sold?**

Not applicable.

SQUIRE, SANDERS &
DEMPSEY L.L.P.

37.    **Identify each person or entity that has been approached or solicited by Seyoung Kim, InQuadron, or anyone acting on their behalf to become an investor in InQuadron.**

Hoon Kim, Yongchoon Kim, Kwangsun Kim, Yongmin Kim, Dukyong Kim, Dongkyu Choi, Chan Park, Tae Min Choi, and Tae Hyun Choi.

a.    **For each person or entity identified, please describe the nature and description of their communications with Seyoung Kim, InQuadron, or anyone acting on Defendants' behalf and when the communications took place.**

Each individual was told that InQuadron was founded to develop a WiMAX (non-WiBro) basestation core technology that would lead to the development of a WiMAX basestation baseband modem ASIC for the US market, and each individual was asked to make an investment. Most, if not all, of these individuals also received a 25-page draft business plan entitled "Mobile Internet Core Technology Business Plan." This draft plan describes the general WiMax market and InQuadron's technology roadmap, and presents information about various players in the market as well as general market trends. InQuadron may also have supplied investors or potential investors with a presentation entitled "Mobile WiMax Base Station and Mobile Station SOC Development for Global Market," a PowerPoint file that describes WiMAX and the business opportunities its adoption would present. The file also describes the technical strengths of the InQuadron team and the company's ultimate business areas and planned products.

b.    **For each person or entity identified, how much capital, if any, have they invested in InQuadron?**

Chan Park invested $750,000. No other person or entity identified has invested money. Dongkyu Choi committed to invest $500,000 and made an installment payment of $100,000 toward his commitment, but upon the public announcement of this lawsuit, he asked for and received the return of his investment and the cancellation of his commitment to invest.

SQUIRE, SANDERS & DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA 94304-1043

       c.      **If the answer to the question above is yes, when did the investor commit to give InQuadron capital and when did InQuadron actually receive the capital.**

InQuadron incorporates its responses to Questions 44 and 47. Apart from the investments listed there, no others have committed to invest or have invested in InQuadron.

**38.    Identify each person or entity that has approached Seyoung Kim, InQuadron, or anyone acting on their behalf to become an investor in InQuadron.**

None.

       a.      **For each person or entity identified, please describe the nature and description of their communications with Seyoung Kim, InQuadron, or anyone acting on Defendants' behalf and when the communications took place.**

Not applicable.

**39.    Identify each person or entity that has been supplied with documents or information relating to InQuadron's anticipated business, potential products, goods and/or services from 2006 to the present.**

InQuadron incorporates its response to Question No. 37.

       a.      **For each person or entity identified, please describe the nature and description of their communications with Seyoung Kim, InQuadron, or anyone acting on Defendants' behalf, and when the communications took place.**

InQuadron incorporates its response to Question No. 37.a.

**40.    Identify each person or entity that has approached Seyoung Kim, InQuadron, or anyone acting on their behalf to become a business partner with InQuadron.**

None.

       a.      **For each person or entity identified, please describe the nature and description of their communications with Seyoung Kim, InQuadron,**

SQUIRE, SANDERS &
DEMPSEY L.L.P.

or anyone acting on Defendants' behalf, and when the communications took place.

Not applicable.

41.    Identify each person or entity that has approached Seyoung Kim, InQuadron, or anyone acting on their behalf to become a business partner of InQuadron.

None.

a.    For each person or entity identified, please describe the nature and description of their communications with Seyoung Kim, InQuadron, or anyone acting on Defendants' behalf and when the communications took place.

Not applicable.

42.    Describe any documents or information relating to InQuadron's anticipated business, potential products, products, goods and/or services that was supplied or communicated to any investor or potential investor from 2006 to the present.

"Mobile Internet Core Technology Business Plan," a 25-page draft business plan that describes the general WiMax market and InQuadron's technology roadmap. It also presents information about various players in the market as well as general market trends. InQuadron may also have supplied investors or potential investors with a presentation entitled "Mobile WiMax Base Station and Mobile Station SOC Development for Global Market," a PowerPoint file that describes WiMAX and the business opportunities its adoption would present. The file also describes the technical strengths of the InQuadron team and the company's ultimate business areas and planned products.

43.    Describe any documents or information relating to Posdata's WiMAX, WiBro, or FLYVO technology, including but not limited to the Modular Channel Card Assembly ("MCCA") or Turtle Card or Turtle Board, Posdata's Digital Channel Card Unit ("DCCU") for the Pico RAS base station, Posdata's MAC and PHY source code, Posdata's printed circuit

1   board ("PCB") design and layout, the DCCU or MCCA or Turtle Card or

2   Turtle Board or Pico RAS base stations, the "Modular RAS Implementation"

3   file, the "Rev. 0.4 DCCU Block Diagram" file, Posdata's Mobile Plugfest

4   Reports, the NTT DoCoMo Reports, Posdata's IOT Reports, and Posdata's

5   files or diagrams that depict, reveal, or demonstrate how processors and

6   components, Posdata's PCB design and layout, and Posdata's software and

7   source code create an architecture for interface between hardware and

8   software, that was supplied or communicated to any investor or potential

9   investor from 2006 to the present.

10  None.

11  **44.**    **Did Seyoung Kim or InQuadron discuss investing in InQuadron, Inc. with**

12  **Chan Park?**

13  Yes.

14          **a.**    **If the response to the question above is yes, please describe their job**

15          **title, job responsibilities and company affiliation if known.**

16      InQuadron objects that this question is vague and ambiguous; it does not make clear

17  whether it seeks information about Dr. Kim or any InQuadron individual, or about Mr. Park.  For

18  purposes of this and each other like question below, InQuadron presumes that Posdata seeks

19  information about the potential investor.  Subject to that understanding, InQuadron responds that

20  Mr. Park is a retired investor.

21          **b.**    **If the response to the question above is yes, please describe in detail the**

22          **nature of these discussions and when they took place.**

23      Dr. Kim held a number of discussions Mr. Park over a period of time from late 2006 to

24  early 2007.  The discussions were of the same nature as that described in response to Question

25  37.a.

26          **c.**    **If the response to the question above is yes, did Chan Park or their**

27          **company promise to invest capital in InQuadron?**

28      Yes.

SQUIRE, SANDERS &
DEMPSEY L.L.P.

1            **d.**    **If the response to the question above is yes, did InQuadron receive**

2                    **capital from Chan Park or their company?**

3    Yes.

4            **e.**    **If the response to the question above is yes, how much capital did**

5                    **InQuadron receive from Chan Park or their company and when did**

6                    **InQuadron receive it?**

7    US$750,000.

8    **45.**    **Did Seyoung Kim or InQuadron discuss investing in InQuadron, Inc. with**

9            **Yong-choon Kim?**

10    Yes.

11            **a.**    **If the response to the question above is yes, please describe their job**

12                    **title, job responsibilities and company affiliation if known.**

13    Country Manager, National Semiconductor Korea.

14            **b.**    **If the response to the question above is yes, please describe in detail the**

15                    **nature of these discussions and when they took place.**

16    These discussions took place in or about March 2007 and were of the same nature as that

17    described in response to Question 37.a.

18            **c.**    **If the response to the question above is yes, did Yong-choon Kim or**

19                    **their company promise to invest capital in InQuadron?**

20    No.

21            **d.**    **If the response to the question above is yes, did InQuadron receive**

22                    **capital from Yong-choon Kim or their company?**

23    Not applicable.

24            **e.**    **If the response to the question above is yes, how much capital did**

25                    **InQuadron receive from Yong-choon Kim or their company and when**

26                    **did InQuadron receive it?**

27    None.

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA 94304-1043

1    **46.**    **Did Seyoung Kim or InQuadron discuss investing in InQuadron, Inc. with**

2    **Tae-ho Park?**

3    No.

4    **a.**    **If the response to the question above is yes, please describe their job**

5    **title, job responsibilities and company affiliation if known.**

6    Not applicable.

7    **b.**    **If the response to the question above is yes, please describe in detail the**

8    **nature of these discussions and when they took place.**

9    Not applicable.

10    **c.**    **If the response to the question above is yes, did Tae-ho Park or their**

11    **company promise to invest capital in InQuadron?**

12    Not applicable.

13    **d.**    **If the response to the question above is yes, did InQuadron receive**

14    **capital from Tae-ho Park or their company?**

15    Not applicable.

16    **e.**    **If the response to the question above is yes, how much capital did**

17    **InQuadron receive from Tae-ho Park or their company and when did**

18    **InQuadron receive it?**

19    Not applicable.

20    **47.**    **Did Seyoung Kim or InQuadron discuss investing in InQuadron, Inc. with**

21    **Dongkyu Choi?**

22    Yes.

23    **a.**    **If the response to the question above is yes, please describe their job**

24    **title, job responsibilities and company affiliation if known.**

25    Individual investor.

26    **b.**    **If the response to the question above is yes, please describe in detail the**

27    **nature of these discussions and when they took place.**

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA 94304-1043

1    These discussions took place in or about April 2007 and were of the same nature as that

2 described in response to Question 37.a.

3            **c.    If the response to the question above is yes, did Dongkyu Choi or their**

4                  **company promise to invest capital in InQuadron?**

5    Yes.

6            **d.    If the response to the question above is yes, did InQuadron receive**

7                  **capital from Dongkyu Choi or their company?**

8    Yes, but the capital was returned after Dongkyu Choi rescinded his agreement to invest.

9            **e.    If the response to the question above is yes, how much capital did**

10                  **InQuadron receive from Dongkyu Choi or their company and when**

11                  **did InQuadron receive it?**

12    Dongkyu Choi paid to InQuadron US$100,000.00 of a US$500,000.00 investment

13 commitment, but his investment commitment was rescinded by mutual agreement after the

14 present lawsuit was filed and served.

15    **48.    Did Seyoung Kim or InQuadron discuss investing in InQuadron, Inc. with**

16          **Kwang-sun Kim?**

17    Yes.

18            **a.    If the response to the question above is yes, please describe their job**

19                  **title, job responsibilities and company affiliation if known.**

20    CEO, D&T Inc.

21            **b.    If the response to the question above is yes, please describe in detail the**

22                  **nature of these discussions and when they took place.**

23    These discussions took place in or about March 2007 and were of the same nature as that

24 described in response to Question 37.a.

25            **c.    If the response to the question above is yes, did Kwang-sun Kim or**

26                  **their company promise to invest capital in InQuadron?**

27    No.

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA 94304-1043

1

2

   d.  If the response to the question above is yes, did InQuadron receive capital from Kwang-sun Kim or their company?

3  Not applicable.

4

5

6

   e.  If the response to the question above is yes, how much capital did InQuadron receive from Kwang-sun Kim or their company and when did InQuadron receive it?

7  Not applicable.

8

9

  49. Did Seyoung Kim or InQuadron discuss investing in InQuadron, Inc. with Young-jo Lee?

10  No.

11

12

   a.  If the response to the question above is yes, please describe their job title, job responsibilities and company affiliation if known.

13  Not applicable.

14

15

   b.  If the response to the question above is yes, please describe in detail the nature of these discussions and when they took place.

16  Not applicable.

17

18

   c.  If the response to the question above is yes, did Young-jo Lee or their company promise to invest capital in InQuadron?

19  Not applicable.

20

21

   d.  If the response to the question above is yes, did InQuadron receive capital from Young-jo Lee or their company?

22  Not applicable.

23

24

25

   e.  If the response to the question above is yes, how much capital did InQuadron receive from Young-jo Lee or their company and when did InQuadron receive it?

26  Not applicable.

27

28

  50. Did Seyoung Kim or InQuadron discuss investing in InQuadron, Inc. with Yong-min Kim?

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA 94304-1043

1    Yes.

2        **a.**    **If the response to the question above is yes, please describe their job**

3            **title, job responsibilities and company affiliation if known.**

4    President, STIC Investment Inc.

5        **b.**    **If the response to the question above is yes, please describe in detail the**

6            **nature of these discussions and when they took place**

7    These discussions took place in or about March 2007 and were of the same nature as that

8    described in response to Question 37.a.

9        **c.**    **If the response to the question above is yes, did Yong-min Kim or their**

10            **company promise to invest capital in InQuadron?**

11    No.

12        **d.**    **If the response to the question above is yes, did InQuadron receive**

13            **capital from Yong-min Kim or their company?**

14    Not applicable.

15        **e.**    **If the response to the question above is yes, how much capital did**

16            **InQuadron receive from Yong-min Kim or their company and when**

17            **did InQuadron receive it?**

18    Not applicable.

19        **51.**    **Did Seyoung Kim or InQuadron discuss investing in InQuadron, Inc. with**

20            **Byung-joon Jeon?**

21    Yes.

22        **a.**    **If the response to the question above is yes, please describe their job**

23            **title, job responsibilities and company affiliation if known.**

24    Director, Strategy, Korea Telecom Data Inc.

25        **b.**    **If the response to the question above is yes, please describe in detail the**

26            **nature of these discussions and when they took place.**

27    These discussions took place in or about December 2006 and were of the same nature as

28    that described in response to Question 37.a.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA 94304-1043

1          **c.**     **If the response to the question above is yes, did Byung-joon Jeon or**

2               **their company promise to invest capital in InQuadron?**

3    No.

4          **d.**     **If the response to the question above is yes, did InQuadron receive**

5               **capital from Byung-joon Jeon or their company?**

6    Not applicable.

7          **e.**     **If the response to the question above is yes, how much capital did**

8               **InQuadron receive from Byung-joon Jeon or their company and when**

9               **did InQuadron receive it?**

10   Not applicable.

11   **52.**    **Did Seyoung Kim or InQuadron discuss investing in InQuadron, Inc. with**

12           **Duk-yong Kim?**

13   Yes.

14         **a.**     **If the response to the question above is yes, please describe their job**

15              **title, job responsibilities and company affiliation if known.**

16   CEO, Korea Microwave Inc.

17         **b.**     **If the response to the question above is yes, please describe in detail the**

18              **nature of these discussions and when they took place.**

19   These discussions took place in or about March 2007 and were of the same nature as that

20 described in response to Question 37.a.

21         **c.**     **If the response to the question above is yes, did Duk-yong Kim or their**

22              **company promise to invest capital in InQuadron?**

23   No.

24         **d.**     **If the response to the question above is yes, did InQuadron receive**

25              **capital from Duk-yong Kim or their company?  N/A.**

26   Not applicable.

27

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA 94304-1043

INQUADRON, INC.'S WRITTEN RESPONSES TO PLAINTIFF'S WRITTEN DEPOSITION QUESTIONS
CASE NO. C 07 2504 RMW (PVT)

1           e.      **If the response to the question above is yes, how much capital did**

2                   **InQuadron receive from Duk-yong Kim or their company and when**

3                   **did InQuadron receive it?**

4    Not applicable.

5    **53.**    **Did Seyoung Kim or InQuadron discuss investing in InQuadron, Inc. with**

6        **Hoon Kim?**

7    Yes.

8           a.      **If the response to the question above is yes, please describe their job**

9                   **title, job responsibilities and company affiliation if known.**

10    VP & CTO, We Corporation Inc.

11           b.      **If the response to the question above is yes, please describe in detail the**

12                   **nature of these discussions and when they took place.**

13    These discussions took place in or about December 2006 and were of the same nature as

14  that described in response to Question 37.a.

15           c.      **If the response to the question above is yes, did Hoon Kim or their**

16                   **company promise to invest capital in InQuadron?**

17    No.

18           d.      **If the response to the question above is yes, did InQuadron receive**

19                   **capital from Hoon Kim or their company?**

20    Not applicable.

21           e.      **If the response to the question above is yes, how much capital did**

22                   **InQuadron receive from Hoon Kim or their company and when did**

23                   **InQuadron receive it?**

24    Not applicable.

25    **54.**    **Did Seyoung Kim or InQuadron discuss investing in InQuadron, Inc. with**

26        **Seongdong Park?**

27    Yes.

28

InQuadron, Inc.'s Written Responses To Plaintiff's Written Deposition Questions
Case No. C 07 2504 RMW (PVT)

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA  94304-1043

1

        **a.**    **If the response to the question above is yes, please describe their job**

2                   **title, job responsibilities and company affiliation if known.**

3        Mr. Park was an employee of Posdata at the time of these discussions; InQuadron's

4 principal's cannot provide Mr. Park's job title and responsibilities at the time without speculating.

5         **b.**    **If the response to the question above is yes, please describe in detail the**

6                   **nature of these discussions and when they took place.**

7        These discussions generally concerned the purpose of InQuadron (i.e., the development a

8 WiMAX (non-WiBro) basestation core technology that would lead to the development of a

9 WiMAX basestation baseband modem ASIC for the US market), InQuadron's formation and

10 investment opportunities. These discussions occurred during the last calendar quarter of 2006

11 and the first month of 2007.

12         **c.**    **If the response to the question above is yes, did Seongdong Park or**

13                   **their company promise to invest capital in InQuadron?**

14     Yes.

15         **d.**    **If the response to the question above is yes, did InQuadron receive**

16                   **capital from Seongdong Park or their company?**

17     Yes.

18         **e.**    **If the response to the question above is yes, how much capital did**

19                   **InQuadron receive from Seongdong Park or their company and when**

20                   **did InQuadron receive it?**

21     Mr. Park contributed US$330.00 in capital to InQuadron or about January 23, 2007.

22     **55.**    **Did Seyoung Kim or InQuadron discuss investing in InQuadron, Inc. with**

23              **Kenneth D. Lee?**

24     Yes.

25         **a.**    **If the response to the question above is yes, please describe their job**

26                   **title, job responsibilities and company affiliation if known.**

27     At the time Mr. Lee was and is a lawyer in private practice.

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA 94304-1043

**b.    If the response to the question above is yes, please describe in detail the nature of these discussions and when they took place.**

These discussions generally concerned the purpose of InQuadron (i.e., the development a WiMAX (non-WiBro) basestation core technology that would lead to the development of a WiMAX basestation baseband modem ASIC for the US market), InQuadron's formation and the possibility of Mr. Lee's employment by InQuadron as its CFO and general counsel.  These discussions occurred during the last quarter of 2006.

**c.    If the response to the question above is yes, did Kenneth D. Lee or their company promise to invest capital in InQuadron?**

Yes.

**d.    If the response to the question above is yes, did InQuadron receive capital from Kenneth D. Lee or their company?**

Yes.

**e.    If the response to the question above is yes, how much capital did InQuadron receive from Kenneth D. Lee or their company and when did InQuadron receive it?**

Mr. Lee contributed US$350.00 in capital to InQuadron in or about January 23, 2007.

**56.    Did Seyoung Kim or InQuadron discuss investing in InQuadron, Inc. with Joonsug Chung?**

Yes.

**a.    If the response to the question above is yes, please describe their job title, job responsibilities and company affiliation if known.**

At the time of the discussions, Joonsug Chung was the Chief Technical Officer of FIH Technology Korea Ltd..

**b.    If the response to the question above is yes, please describe in detail the nature of these discussions and when they took place.**

These discussions generally concerned the purpose of InQuadron (i.e., the development a WiMAX (non-WiBro) basestation core technology that would lead to the development of a

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA 94304-1043

1  WiMAX basestation baseband modem ASIC for the US market), InQuadron's formation and

2  Joonsug Chung's potential role at InQuadron.  These discussions occurred during the last quarter

3  of 2006.

                **c.**      **If the response to the question above is yes, did Joonsug Chung or**

5                           **their company promise to invest capital in InQuadron?**

6      Yes.

7                  **d.**      **If the response to the question above is yes, did InQuadron receive**

8                           **capital from Joonsug Chung or their company?**

9      Yes.

10                  **e.**      **If the response to the question above is yes, how much capital did**

11                           **InQuadron receive from Joonsug Chung or their company and when**

12                           **did InQuadron receive it?**

13  Joonsug Chung invested US$330.00 in capital in InQuadron in or about January 23, 2007.

14  **57.**     **Did Seyoung Kim or InQuadron discuss investing in InQuadron, Inc. with**

15             **Jong Kwan Choi?**

16      Yes.

17                  **a.**      **If the response to the question above is yes, please describe their job**

18                         **title, job responsibilities and company affiliation if known.**

19      At the time of the discussions, Jongkwan Choi was a Posdata employee; InQuadron

20  cannot provide his title and responsibilities at the time without speculating.

21                  **b.**      **If the response to the question above is yes, please describe in detail the**

22                         **nature of these discussions and when they took place.**

23      These discussions generally concerned the purpose of InQuadron (i.e., the development a

24  WiMAX (non-WiBro) basestation core technology that would lead to the development of a

25  WiMAX basestation baseband modem ASIC for the US market), InQuadron's formation and

26  investment opportunities in the company.  These discussions took place at the end of 2006 and the

27  beginning of 2007.

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.

1          **c.**    **If the response to the question above is yes, did Jong Kwan Choi or**

2                 **their company promise to invest capital in InQuadron?**

3  Yes.

4          **d.**    **If the response to the question above is yes, did InQuadron receive**

5                 **capital from Jong Kwan Choi or their company?**

6  Yes.

7          **e.**    **If the response to the question above is yes, how much capital did**

8                 **InQuadron receive from Jong Kwan Choi or their company and when**

9                 **did InQuadron receive it?**

10  Jongkwan Choi invested US$330.00 in capital in InQuadron in or about January 23, 2007.

11  **58.**    **Did Seyoung Kim or InQuadron discuss investing in InQuadron, Inc. with**

12            **Hwayong Joung?**

13  Yes.

14          **a.**    **If the response to the question above is yes, please describe their job**

15                 **title, job responsibilities and company affiliation if known.**

16  At the time of the discussions, Hwayong Joung was either unemployed or employed by

17  Korea Telecom Data, Inc.; InQuadron cannot provide his title and responsibilities at the time

18  without speculating.

19          **b.**    **If the response to the question above is yes, please describe in detail the**

20                 **nature of these discussions and when they took place.**

21  These discussions generally concerned the purpose of InQuadron (i.e., the development a

22  WiMAX (non-WiBro) basestation core technology that would lead to the development of a

23  WiMAX basestation baseband modem ASIC for the US market), InQuadron's formation and

24  investment opportunities in the company. These discussions took place at the end of 2006 and the

25  beginning of 2007.

26          **c.**    **If the response to the question above is yes, did Hwayong Joung or**

27                 **their company promise to invest capital in InQuadron?**

28  Yes.

1

2

       **d.**     **If the response to the question above is yes, did InQuadron receive capital from Hwayong Joung or their company?**

3    Yes.

4

5

6

       **e.**     **If the response to the question above is yes, how much capital did InQuadron receive from Hwayong Joung or their company and when did InQuadron receive it?**

7    Hwayong Joung invested US$330.00 in capital in InQuadron in or about January 23,

8  2007.

9

10

    **59.**    **Did Seyoung Kim or InQuadron discuss investing in InQuadron, Inc. with Tae Min Choi?**

11    Yes.

12

13

       **a.**     **If the response to the question above is yes, please describe their job title, job responsibilities and company affiliation if known.**

14    Tae Min Choi is the President of Genesis Vacuum Technologies, Inc.

15

16

       **b.**     **If the response to the question above is yes, please describe in detail the nature of these discussions and when they took place.**

17    These discussions generally concerned the purpose of InQuadron (i.e., the development a

18  WiMAX (non-WiBro) basestation core technology that would lead to the development of a

19  WiMAX basestation baseband modem ASIC for the US market), InQuadron's formation and

20  investment opportunities in the company.  The discussions were held at the end of March and the

21  beginning of April of 2007.

22

23

       **c.**     **If the response to the question above is yes, did Tae Min Choi or their company promise to invest capital in InQuadron?**

24    No.

25

26

       **d.**     **If the response to the question above is yes, did InQuadron receive capital from Tae Min Choi or their company?**

27    No.

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
000 Hansen Way
Palo Alto, CA 94304-1043

     e.     **If the response to the question above is yes, how much capital did InQuadron receive from Tae Min Choi or their company and when did InQuadron receive it?**

Not applicable.

**60.**     **Did Seyoung Kim or InQuadron discuss investing in InQuadron, Inc. with Tae Hyun Choi?**

Yes.

     a.     **If the response to the question above is yes, please describe their job title, job responsibilities and company affiliation if known.**

Tae Hyun Choi is the President of Taesan LCD Co., Ltd.

     b.     **If the response to the question above is yes, please describe in detail the nature of these discussions and when they took place.**

The discussions were held at the end of March and beginning of April of 2007 and were of the same nature as that described in response to Question 37.a.

     c.     **If the response to the question above is yes, did Tae Hyun Choi or their company promise to invest capital in InQuadron?**

No.

     d.     **If the response to the question above is yes, did InQuadron receive capital from Tae Hyun Choi or their company?**

Not applicable.

     e.     **If the response to the question above is yes, how much capital did InQuadron receive from Tae Hyun Choi or their company and when did InQuadron receive it?**

Not applicable.

**61.**     **Identify each and every place where documents related to InQuadron's anticipated business, potential products, products, goods and/or services are stored or retained in electronic form.**

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA 94304-1043

1    InQuadron documents related to its planned business and/or planned products are located

2 in electronic form in three physical locations:  on two laptop and two desktop computers at

3 InQuadron's office in the U.S.; on computers formerly located at InQuadron's Korea offices

4 (InQuadron is informed that these computers were removed by Korean law enforcement

5 officials); and on storage media maintained in confidence by First Advantage Litigation

6 Consulting, an electronic discovery forensic consulting company engaged by InQuadron's outside

7 counsel in this action.

8    **62.**  **Identify each and every place where documents related to InQuadron's**

9        **anticipated business, potential products, products, goods and/or services are**

10        **stored or retained in any form other than electronic form.**

11    InQuadron documents related to its planned business and/or planned products and in

12 printed or other non-electronic format, to the extent such documents exist are maintained at:

13 InQuadron's U.S. office; possibly at InQuadron's office in Korea (to the extent not removed by

14 Korean law enforcement officials); at the offices of InQuadron's outside counsel in this action;

15 and at the offices of Posdata's outside counsel (as documents produced in this action).

16    **63.**  **Does InQuadron maintain an off-site document storage facility?**

17    No.

18      **a.**  **If yes, what is the location of the facility?**

19    Not applicable.

20      **b.**  **If yes, describe the types of documents stored there.**

21    Not applicable.

22    **64.**  **Have current or former InQuadron employees ever maintained records, files,**

23        **or documents at any other location besides InQuadron's facilities?**

24    Not to InQuadron's knowledge.

25      **a.**  **If yes, what is the location of the facility?**

26    Not applicable.

27      **b.**  **If yes, describe the types of documents stored there.**

28    Not applicable.

- 43 -
INQUADRON, INC.'S WRITTEN RESPONSES TO PLAINTIFF'S WRITTEN DEPOSITION QUESTIONS
CASE NO. C 07 2504 RMW (PVT)

65. **Has Seyoung Kim ever maintained records, files, or documents at any other location besides InQuadron's facilities.**

No.

    a.    **If yes, what is the location of the facility?**

Not applicable.

    b.    **If yes, describe the types of documents stored there.**

Not applicable.

66. **Has InQuadron or its employees ever used a computer system as part of its operations?**

InQuadron objects on the ground that the term "computer system" is vague and ambiguous. As stated in response to prior questions, InQuadron employees had and have laptop or desktop computers. The computers at InQuadron's U.S. office are connected via a local area network (a "LAN") for the purpose of having broadband Internet access. The computers cannot access any networked external storage devices. InQuadron is informed and believes that its Korea office had a like configuration.

    a.    **If yes, describe the network.**

InQuadron incorporates its response to Question 66.

    b.    **If yes, has InQuadron ever maintained backup tapes?**

No.

    c.    **If yes, does InQuadron use hard drives?**

InQuadron has not used hard drives external to the laptop and desktop computers discussed in response to questions above.

        (1)    **What type of hard drives?**

Not applicable.

        (2)    **How many hard drives?**

Not applicable.

        (3)    **Who uses them?**

Not applicable.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA 94304-1043

1                **(4)**     **Where are the hard drives?**

2 Not applicable.

3        **d.**     **If yes, does InQuadron use external hard drives?**

4 Not applicable.

5                **(1)**     **What type of external hard drives?**

6 Not applicable.

7                **(2)**     **How many external hard drives?**

8 Not applicable.

9                **(3)**     **Who uses them?**

10 Not applicable.

11                **(4)**     **Where are the external hard drives located?**

12 Not applicable.

13 **67.**     **Has any current or former InQuadron employee maintained a home**

14            **computer system or laptop upon which InQuadron records are maintained?**

15 Not to InQuadron's knowledge.

16       **a.**     **If yes, identify each employee, their position, the nature of the records**

17              **maintained on their home computer or laptop, and the current status**

18              **and location of their home computer or laptop.**

19 Not applicable.

20 **68.**     **Has Seyoung Kim used any computer program or other software to erase**

21            **partitions and wipe hard drives of any computers owned by or in the**

22            **possession of Seyoung Kim, InQuadron, or their agents, representatives,**

23            **partners, or employees from 2006 to the present.**

24 Yes.

25       **a.**     **If yes, please describe how Seyoung Kim used the software, when he**

26              **used the software, on what computers or hard drives he used the**

27              **software, and what documents or data were erased or destroyed.**

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
[illegible address]
[illegible]
[illegible]

- 45 -

INQUADRON, INC.'S WRITTEN RESPONSES TO PLAINTIFF'S WRITTEN DEPOSITION QUESTIONS
CASE NO. C 07 2504 RMW (PVT)

1  Seyoung Kim used Microsoft Windows (Windows Explorer) to display hard drive folders

2  and to delete certain files on a laptop computer that was issued to him by Posdata and that

3  Posdata allowed him to keep for several months following his termination by the company.  Dr.

4  Kim deleted the files shortly before he returned the laptop computer to Posdata.  The files that Dr.

5  Kim deleted were personal and other non-Posdata files.  He did not keep a log or tally of the files

6  deleted.

7        **69.**     **Has InQuadron, or their agents, representatives, partners, or employees, used**

8                **any computer program or other software to erase partitions and wipe hard**

9                **drives of any computers owned by or in the possession of Seyoung Kim,**

10                **InQuadron, or their agents, representatives, partners, or employees from**

11                **2006 to the present.**

12  Not to InQuadron's knowledge.

13        **a.**     **If yes, please describe how InQuadron, or their agents,**

14                **representatives, partners, or employees, used the software, when they**

15                **used the software, on what computers or hard drives he used the**

16                **software, and what documents or data were erased or destroyed.**

17  Not applicable.

18        **70.**   **What was InQuadron's net worth as of May 1, 2007?**

19  InQuadron objects to this question on the ground that it seeks information that is not

20  relevant to the claim or defense of any party and imposes an undue burden of response.  Subject

21  to and without waiving its objections, InQuadron responds as follows:  approximately

22  US$700,000.

23        **a.**     **What was the value of InQuadron's total assets as of May 1, 2007?**

24  InQuadron objects to this question on the ground that it seeks information that is not

25  relevant to the claim or defense of any party and imposes an undue burden of response.  Subject

26  to and without waiving its objections, InQuadron responds as follows:  approximately

27  US$700,000.

28        **b.**     **What was the value of InQuadron's total liabilities as of May 1, 2007?**

1  InQuadron objects to this question on the ground that it seeks information that is not

2  relevant to the claim or defense of any party and imposes an undue burden of response.  Subject

3  to and without waiving its objections, InQuadron responds as follows:  other than rent and lease

4  obligations and general office expenses (utilities, telephone and internet charges and the like)

5  InQuadron did not have any significant liabilities as of May 1, 2007.

6  **71.    What is InQuadron's current net worth?**

7  InQuadron objects to this question on the ground that it seeks information that is not

8  relevant to the claim or defense of any party and imposes an undue burden of response.  Subject

9  to and without waiving its objections, InQuadron responds as follows:  InQuadron currently has a

10  negative net worth as its current liabilities exceed its assets.

11  **a.    What is the value of InQuadron's current total assets?**

12  InQuadron objects to this question on the ground that it seeks information that is not

13  relevant to the claim or defense of any party and imposes an undue burden of response.  Subject

14  to and without waiving its objections, InQuadron incorporates its response to Questions 73, 73.a.

15  and 73.b.

16  **b.    What is the value of InQuadron's current total liabilities?**

17  InQuadron objects to this question on the ground that it seeks information that is not

18  relevant to the claim or defense of any party and imposes an undue burden of response.  Subject

19  to and without waiving its objections, InQuadron responds as follows:  approximately

20  US$150,000 or more.

21  **72.    Has InQuadron ever owned any real property?**

22  No.

23  **a.    If yes, for each property provide its address, describe the type of**

24  **property it is, the date it purchased it, and how much it purchased the**

25  **property for.**

26  Not applicable.

27  **b.    If yes, has InQuadron sold any real property within the last year?**

28  Not applicable.

c.    If yes, for each property provide its address, describe the type of property it is, the date InQuadron purchased it, how much InQuadron purchased it for, the date InQuadron sold it, how much InQuadron sold it for, and any realized gain or lost from the transaction.

Not applicable.

73.    Identify each and every cash equivalent asset that InQuadron has in its name, including but not limited to cash, checking accounts, savings accounts, money market funds, certificates of deposit, or other cash reserve accounts.

InQuadron incorporates its response to Question 73.a. below.

a.    For each asset, please describe the asset, the cost of acquisition, the date of acquisition, its current value, and any realized gain or loss from holding the asset.

InQuadron maintains two checking accounts (general and payroll) at Bank of America; their current aggregate balance is approximately $10,000.  InQuadron maintains one checking account in Korea with a current balance of about 19 million Korean Won.

b.    For every checking, savings, or investment account solely or jointly in InQuadron's name, please list the institution, account number, and the current asset balance of the account.

| Name of institution | Account No. | Current balance |
|---|---|---|
| Bank of America | 01573-40806 | ~$9,900 |
| Bank of America | 01578-60472 | ~$200 |
| Citibank Korea | 374-00099-240-01 | ~19 million Korean Won |

74.    Identify each and every cash equivalent asset that InQuadron has in its name as of May 1, 2007, including but not limited to cash, checking accounts, savings accounts, money market funds, certificates of deposit, or other cash reserve accounts.

InQuadron incorporates its response to Questions 73, 73.a. and 73.b. above.

1          a.      For each asset, please describe the asset, the cost of acquisition, the

2                 date of acquisition, the date of divestment of the asset if applicable, its

3                 value as of May 1, 2007, and any realized gain or loss from holding the

4                 asset.

5     InQuadron incorporates its response to Questions 73, 73.a. and 73.b. above.

6          b.      For every checking, savings, or investment account solely or jointly in

7                 InQuadron's name, please list the institution, account number, and the

8                 asset balance of the account as of May 1, 2007.

9     InQuadron incorporates its response to Questions 73, 73.a. and 73.b. above.

10    75.     Identify each and every other asset solely or jointly in InQuadron's name,

11            including but not limited to stocks, annuities, limited partnerships, business

12            interests, bonds, trust deeds, or other assets.

13    None.

14          a.      For each asset, please describe the asset, the cost of acquisition, the

15                 date of acquisition, its current value, and any realized gain or loss

16                 from holding the asset.

17    Not applicable.

18    76.     Identify each and every other asset solely or jointly in InQuadron's name as

19            of May 1, 2007, including but not limited to stocks, annuities, limited

20            partnerships, business interests, bonds, trust deeds, or other assets.

21    None.

22          a.      For each asset, please describe the asset, the cost of acquisition, the

23                 date of acquisition, the date of divestment of the asset if applicable, its

24                 value as of May 1, 2007, and any realized gain or loss from holding the

25                 asset.

26    Not applicable.

27    77.     Identify each and every other asset solely or jointly in InQuadron's name not

28            listed above.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA 94304-1043

InQuadron owns several laptop and desktop computers, office furniture, office equipment and supplies.

  **a. For each asset, please describe the asset, the cost of acquisition, the date of acquisition, the date it was sold if applicable, its current value if applicable, and any realized gain or loss from holding or selling the asset.**

InQuadron objects to this question on the ground that it is not relevant to any claim or defense and on the ground that determining the response is unduly burdensome, particularly in light of the absence of relevance. Subject to and without waiving its objections, InQuadron responds that the total acquisition cost of the assets described in response to Question 77 was less than US$50,000.

**78. Identify each and every other asset solely or jointly in InQuadron's name as of May 1, 2007 not listed above.**

None.

  **a. For each asset, please describe the asset, the cost of acquisition, the date of acquisition, the date of divestment of the asset if applicable, its value as of May 1, 2007 if applicable, and any realized gain or loss from holding or selling the asset.**

Not applicable.

**79. Identify each and every other asset solely or jointly in another entity or person's name that is being held for the benefit of InQuadron.**

None.

  **a. For each asset, please describe the asset, the cost of acquisition, the date of acquisition, the date it was sold if applicable, its current value if applicable, and any realized gain or loss from holding or selling the asset.**

Not applicable.

SQUIRE, SANDERS &
DEMPSEY L.L.P.

INQUADRON, INC.'S WRITTEN RESPONSES TO PLAINTIFF'S WRITTEN DEPOSITION QUESTIONS
CASE NO. C 07 2504 RMW (PVT)

80.    **Identify each and every other asset solely or jointly in another entity or person's name that is being held for the benefit of InQuadron.**

None.

    a.    **For each asset, please describe the asset, the cost of acquisition, the date of acquisition, the date of divestment of the asset if applicable, its value as of May 1, 2007 if applicable, and any realized gain or loss from holding or selling the asset.**

Not applicable.

81.    **Identify each and every liability solely or jointly in InQuadron's name, including but not limited to mortgages, loans, debts, or other liabilities.**

InQuadron objects to this question on the ground that it is not relevant to any claim or defense and on the ground that determining the response is unduly burdensome, particularly in light of the absence of relevance.  Subject to and without waiving its objections, InQuadron is liable for several leases (office space, apartment and automobile for Dr. Kim).  Apart from these leases, InQuadron has no liabilities of the type relevant to this question.

    a.    **For each liability, please describe the liability, the date the liability was incurred, the amount of initial liability, the current liability if applicable, and any realized gain or loss incurred as a result of the liability.**

InQuadron objects to this question on the ground that it is not relevant to any claim or defense and on the ground that determining the response is unduly burdensome, particularly in light of the absence of relevance.

82.    **Identify each and every liability solely or jointly in InQuadron's name as of May 1, 2007, including but not limited to mortgages, loans, debts, or other liabilities.**

InQuadron incorporates its objection and response to Question 81.

    a.    **For each liability, please describe the liability, the date the liability was incurred, the amount of initial liability, the liability as of May 1, 2007**

SQUIRE, SANDERS &
DEMPSEY L.L.P.

1    if applicable, and any realized gain or loss incurred as a result of the

2    liability.

3    InQuadron incorporates its objection to Question 81.a.

4    **83.    Has InQuadron incurred any legal expenses, fees, and costs since October 27,**

5    **2006?**

6    Yes.

7       **a.    If yes, list the total expenses, fees, and costs incurred during this time,**

8       **describe the nature of the legal services received by InQuadron, and**

9       **the person or entity that has performed the legal work.**

10   InQuadron objects to this question on the ground that it is not relevant to any claim or

11   defense and on the ground that determining the response is unduly burdensome, particularly in

12   light of the absence of relevance.  Subject to and without waiving its objections, InQuadron states

13   that the total legal fees InQuadron has incurred since October 27, 2006 total approximately

14   $300,000.00.  These fees were incurred in defense of this action, for the defense of InQuadron's

15   Korea-based employees on charges alleging the theft of Posdata trade secrets, and various visa-

16   related work.  Legal services were provided by Squire, Sanders and Dempsey L.L.P. for

17   litigation, Kim, Shin & Yu and J. Lee, Esq. for the Korea matters, and Lee & Kim for visa-related

18   work.

19   **84.    Identify each and every source of income InQuadron has ever received.**

20   None.

21      **a.    For each source of income, describe the nature and source of the**

22      **income, that amount of income received and other benefits received.**

23   Not applicable.

24   **85.    Identify each and every source of capital that InQuadron has ever received.**

25   InQuadron's capital was contributed by its preferred and common stock shareholders.

26      **a.    For each source of capital, describe the nature and source of capital,**

27      **the amount of capital received, the date the capital was received, and**

28      **from whom or what company the capital was received.**

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA 94304-1043

1  InQuadron incorporates its response to Question 36.a.

2  **86.    Have financial statements ever been prepared for InQuadron, including**

3  **income statements, cash flow statements, or balance sheets?**

4  No.

5  **a.    If yes, please describe which financial statements have been prepared,**

6  **when the statements were prepared, for whom the statements were**

7  **prepared, and where copies of the statements can be found.**

8  Not applicable.

9  **87.    What is InQuadron's net revenue since its inception?**

10  Zero.

11  **88.    What is InQuadron's gross revenue since its inception?**

12  Zero.

13  **a.    Identify each and every source of InQuadron's gross revenue since its**

14  **inception.**

15  Not applicable.

16  **b.    For every source listed, provide a description and amount of gross**

17  **revenue.**

18  Not applicable.

19  **89.    What are InQuadron's total expenses since its inception?**

20  InQuadron objects to this question on the ground that it is not relevant to any claim or

21  defense and on the ground that determining the response is unduly burdensome, particularly in

22  light of the absence of relevance.  Subject to and without waiving its objections, InQuadron

23  responds as follows:  over US$750,000.

24  **a.    Identify each and every expense of InQuadron's since its inception.**

25  InQuadron objects to this question on the ground that it is not relevant to any claim or

26  defense and on the ground that determining the response is unduly burdensome, particularly in

27  light of the absence of relevance.  Subject to and without waiving its objections, InQuadron states

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hanson Way
Palo Alto, CA 94304-1043

1  that the vast majority of its expenses have been for, in order of decreasing magnitude, employee

2  compensation, legal fees and office leases.

3          **b.**    **For every expense, provide a description and amount of the expense.**

4  InQuadron incorporates its objections and response to Question 89.a.

5  **90.**    **Identify each person or entity that has been approached by Seyoung Kim,**

6        **InQuadron, or anyone acting on their behalf to become a customer of**

7        **InQuadron.**

8  None.

9          **a.**    **For each person or entity identified, please describe the nature and**

10              **description of their communications with Seyoung Kim, InQuadron,**

11              **or anyone acting on Defendants' behalf, and when the communications**

12              **took place.**

13  Not applicable.

14  **91.**    **Identify each person or entity that has approached Seyoung Kim, InQuadron,**

15        **or anyone acting on their behalf to become a customer of InQuadron.**

16  None.

17          **a.**    **For each person or entity identified, please describe the nature and**

18              **description of their communications with Seyoung Kim, InQuadron,**

19              **or anyone acting on Defendants' behalf, and when the communications**

20              **took place.**

21  Not applicable.

22  **92.**    **Identify each and every product, service, or other good that has ever been**

23        **sold by InQuadron.**

24  None.

25          **a.**    **For each sale, identify the product, service, or other good sold, the date**

26              **of the sale, the quantity sold, the customer, the customer's address and**

27              **contact information, the sale price, the InQuadron employees that**

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA 94304-1043

INQUADRON, INC.'S WRITTEN RESPONSES TO PLAINTIFF'S WRITTEN DEPOSITION QUESTIONS
CASE NO. C 07 2504 RMW (PVT)

1    handled the sale, and the current location and status of the products,

2    service, or goods sold.

3    Not applicable.

4    93.    **Identify each and every product, service, or other good that has ever been**

5    **given by InQuadron to a customer or potential customer.**

6    None.

7    a.    **For each product, service, or other good given away, identify the**

8    **product, service, or other given away, the date of the transaction, the**

9    **quantity given away, the customer or potential customer, the**

10    **customer's address and contact information, the sale price, the**

11    **InQuadron employees that handled the transaction, and the current**

12    **location and status of the product, service, or other good.**

13    Not applicable.

14    94.    **Identify each person or entity that has ever received or been given a Turtle**

15    **Card or "turtle board."**

16    Seyoung Kim, Seongdong Park, Hwayong Joung, Jongkwan (Jeff) Choi and Choon Shin;

17    see also InQuadron's response to Question 34 above.

18    a.    **For each person or entity that has received this item, identify the date**

19    **of the transaction, the quantity received or given away, the person or**

20    **entity's address and contact information, the sale price if applicable,**

21    **the InQuadron employees that handled the transaction, and the**

22    **current location and status of Turtle Card or "turtle board."**

23    InQuadron is aware of only one "Turtle Board." In or about March 2007, Jongkwan (Jeff)

24    Choi provided the Turtle Board to Choon Shin of Posdata. InQuadron is informed and believes

25    that Choon Shin either discarded or destroyed the Turtle Board.

26    b.    **Describe the current status, including but not limited to identifying the**

27    **location, and person or entity in possession, or last in possession of**

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
[illegible]
Palo Alto, CA 94304-1043

- 55 -
INQUADRON, INC.'S WRITTEN RESPONSES TO PLAINTIFF'S WRITTEN DEPOSITION QUESTIONS
CASE NO. C 07 2504 RMW (PVT)

1    each Turtle Card or "turtle board" manufactured or fabricated by

2    Axstone Technology Co. Ltd.

3    The only Turtle Board of which InQuadron is aware of was provided by Jongkwan (Jeff)

4    Choi to Choon Shin of Posdata; InQuadron is informed and believes that Choon Shin either

5    discarded or destroyed the Turtle Board. No other Turtle Boards or Turtle Cards are in the

6    possession of InQuadron or its agents, representatives, partners, or employees.

7    **95.    Is any information or documents related to Posdata's Digital Channel Card**

8    **Unit ("DCCU") for the Pico RAS base station within the possession of**

9    **Defendants Seyoung Kim, InQuadron, Inc., or their agents, representatives,**

10   **partners, or employees.**

11   No.

12   **a.    If yes, please describe the information related to Posdata's DCCU for**

13   **the Pico RAS base station within the possession of Defendants Seyoung**

14   **Kim, InQuadron, Inc., or their agents, representatives, partners, or**

15   **employees.**

16   Not applicable.

17   **b.    If yes, please describe the documents related to Posdata's DCCU for**

18   **the Pico RAS base station within the possession of Defendants Seyoung**

19   **Kim, InQuadron, Inc., or their agents, representatives, partners, or**

20   **employees.**

21   Not applicable.

22   **c.    If yes, please describe how the information or documents related to**

23   **Posdata's DCCU for the Pico RAS base station within the possession of**

24   **Defendants Seyoung Kim, InQuadron, Inc., or their agents,**

25   **representatives, partners, or employees has been utilized by them in**

26   **any manner.**

27   Not applicable.

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA 94304-1043

1

       **d.**     **If yes, please describe how the information or documents related to**

2

             **Posdata's DCCU for the Pico RAS base station has been utilized in the**

3

             **research and development of WiMAX or WiBro technology under**

4

             **development by Defendants Seyoung Kim, InQuadron, Inc., or their**

5

             **agents, representatives, partners, or employees.**

6

Not applicable.

7

       **e.**     **If yes, please describe all persons or companies other than InQuadron,**

8

             **Inc. or its employees that have received information or documents**

9

             **related to Posdata's DCCU for the Pico RAS base station from**

10

             **Defendants Seyoung Kim, InQuadron, Inc., or their agents,**

11

             **representatives, partners, or employees.**

12

Not applicable.

13

       **f.**      **If yes, please describe in detail whether Defendants Seyoung Kim,**

14

             **InQuadron, Inc., or their agents, representatives, partners, or**

15

             **employees have disclosed, transmitted, or copied any information**

16

             **related to Posdata's DCCU for the Pico RAS base station.**

17

Not applicable.

18

       **g.**     **If yes, please describe any instances that this information or**

19

             **documents related to Posdata's DCCU for the Pico RAS base station**

20

             **within the possession of Defendants Seyoung Kim, InQuadron, Inc., or**

21

             **their agents, representatives, partners, or employees has been sold,**

22

             **marketed, or commercialized by them in any manner.**

23

Not applicable.

24

**96.**     **Is any information or documents related to the Modular Channel Card**

25

          **Assembly ("MCCA") or Turtle Card or Turtle Board within the possession of**

26

          **Defendants Seyoung Kim, InQuadron, Inc., or their agents, representatives,**

27

          **partners, or employees.**

28

No.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
*600 Hansen Way*
*Palo Alto, CA  94304-1043*

- 57 -
INQUADRON, INC.'S WRITTEN RESPONSES TO PLAINTIFF'S WRITTEN DEPOSITION QUESTIONS
CASE NO. C 07 2504 RMW (PVT)

1    a.    If yes, please describe the information related to the MCCA or Turtle

2           Card or Turtle Board within the possession of Defendants Seyoung

3           Kim, InQuadron, Inc., or their agents, representatives, partners, or

4           employees.

5    Not applicable.

6    b.    If yes, please describe the documents related to the MCCA or Turtle

7           Card or Turtle Board within the possession of Defendants Seyoung

8           Kim, InQuadron, Inc., or their agents, representatives, partners, or

9           employees.

10   Not applicable.

11   c.    If yes, please describe how the information or documents related to the

12          MCCA or Turtle Card or Turtle Board within the possession of

13          Defendants Seyoung Kim, InQuadron, Inc., or their agents,

14          representatives, partners, or employees has been utilized by them in

15          any manner.

16   Not applicable.

17   d.    If yes, please describe how the information or documents related to the

18          MCCA or Turtle Card or Turtle Board has been utilized in the

19          research and development of WiMAX or WiBro technology under

20          development by Defendants Seyoung Kim, InQuadron, Inc., or their

21          agents, representatives, partners, or employees.

22   Not applicable.

23   e.    If yes, please describe all persons or companies other than InQuadron,

24          Inc. or its employees that have received information or documents

25          related to the MCCA or Turtle Card or Turtle Board from Defendants

26          Seyoung Kim, InQuadron, Inc., or their agents, representatives,

27          partners, or employees.

28   Not applicable.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA 94304-1043

1          **f.**      **If yes, please describe in detail whether Defendants Seyoung Kim,**

2                **InQuadron, Inc., or their agents, representatives, partners, or**

3                **employees have disclosed, transmitted, or copied any information**

4                **related to the MCCA or Turtle Card or Turtle Board.**

5    Not applicable.

6          **g.**      **If yes, please describe any instances that this information or**

7                **documents related to the MCCA or Turtle Card or Turtle Board**

8                **within the possession of Defendants Seyoung Kim, InQuadron, Inc., or**

9                **their agents, representatives, partners, or employees has been sold,**

10               **marketed, or commercialized by them in any manner.**

11   Not applicable.

12   **97.**    **Is any information or documents related to Posdata's MAC and PHY source**

13          **code within the possession of Defendants Seyoung Kim, InQuadron, Inc., or**

14          **their agents, representatives, partners, or employees.**

15   No.

16         **a.**      **If yes, please describe the information related to Posdata's MAC and**

17               **PHY source code within the possession of Defendants Seyoung Kim,**

18               **InQuadron, Inc., or their agents, representatives, partners, or**

19               **employees.**

20   Not applicable.

21         **b.**      **If yes, please describe the documents related to Posdata's MAC and**

22               **PHY source code within the possession of Defendants Seyoung Kim,**

23               **InQuadron, Inc., or their agents, representatives, partners, or**

24               **employees.**

25   Not applicable.

26         **c.**      **If yes, please describe how the information or documents related to**

27               **Posdata's MAC and PHY source code within the possession of**

28               **Defendants Seyoung Kim, InQuadron, Inc., or their agents,**

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA 94304-1043

1    representatives, partners, or employees has been utilized by them in

2    any manner.

3    Not applicable.

4        **d.**    **If yes, please describe how the information or documents related to**

5    **Posdata's MAC and PHY source code has been utilized in the research**

6    **and development of WiMAX or WiBro technology under development**

7    **by Defendants Seyoung Kim, InQuadron, Inc., or their agents,**

8    **representatives, partners, or employees.**

9    Not applicable.

10        **e.**    **If yes, please describe all persons or companies other than InQuadron,**

11    **Inc. or its employees that have received information or documents**

12    **related to Posdata's MAC and PHY source code from Defendants**

13    **Seyoung Kim, InQuadron, Inc., or their agents, representatives,**

14    **partners, or employees.**

15    Not applicable.

16        **f.**    **If yes, please describe in detail whether Defendants Seyoung Kim,**

17    **InQuadron, Inc., or their agents, representatives, partners, or**

18    **employees have disclosed, transmitted, or copied any information**

19    **related to Posdata's MAC and PHY source code.**

20    Not applicable.

21        **g.**    **If yes, please describe any instances that this information or**

22    **documents related to Posdata's MAC and PHY source code within the**

23    **possession of Defendants Seyoung Kim, InQuadron, Inc., or their**

24    **agents, representatives, partners, or employees has been sold,**

25    **marketed, or commercialized by them in any manner.**

26    Not applicable.

27

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA 94304-1043

98.    Is any information or documents related to Posdata's printed circuit board ("PCB") design and layout within the possession of Defendants Seyoung Kim, InQuadron, Inc., or their agents, representatives, partners, or employees.

No.

a.    If yes, please describe the information related to Posdata's printed circuit board ("PCB") design and layout within the possession of Defendants Seyoung Kim, InQuadron, Inc., or their agents, representatives, partners, or employees.

Not applicable.

b.    If yes, please describe the documents related to Posdata's printed circuit board ("PCB") design and layout within the possession of Defendants Seyoung Kim, InQuadron, Inc., or their agents, representatives, partners, or employees.

Not applicable.

c.    If yes, please describe how the information or documents related to Posdata's printed circuit board ("PCB") design and layout within the possession of Defendants Seyoung Kim, InQuadron, Inc., or their agents, representatives, partners, or employees has been utilized by them in any manner.

Not applicable.

d.    If yes, please describe how the information or documents related to Posdata's printed circuit board ("PCB") design and layout has been utilized in the research and development of WiMAX or WiBro technology under development by Defendants Seyoung Kim, InQuadron, Inc., or their agents, representatives, partners, or employees.

Not applicable.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA 94304-1043

1     e.  If yes, please describe all persons or companies other than InQuadron,

2       Inc. or its employees that have received information or documents

3       related to Posdata's printed circuit board ("PCB") design and layout

4       from Defendants Seyoung Kim, InQuadron, Inc., or their agents,

5       representatives, partners, or employees.

6  Not applicable.

7     f.  If yes, please describe in detail whether Defendants Seyoung Kim,

8       InQuadron, Inc., or their agents, representatives, partners, or

9       employees have disclosed, transmitted, or copied any information

10      related to Posdata's printed circuit board ("PCB") design and layout.

11  Not applicable.

12     g.  If yes, please describe any instances that this information or

13       documents related to Posdata's printed circuit board ("PCB") design

14       and layout within the possession of Defendants Seyoung Kim,

15       InQuadron, Inc., or their agents, representatives, partners, or

16       employees has been sold, marketed, or commercialized by them in any

17       manner.

18  Not applicable.

19  99. Is any information or documents related to prototypes of the DCCU or

20    MCCA or Turtle Card or Turtle Board or Pico RAS base stations within the

21    possession of Defendants Seyoung Kim, InQuadron, Inc., or their agents,

22    representatives, partners, or employees.

23  No.

24     a.  If yes, please describe the information related to the DCCU or MCCA

25       or Turtle Card or Turtle Board or Pico RAS base stations within the

26       possession of Defendants Seyoung Kim, InQuadron, Inc., or their

27       agents, representatives, partners, or employees.

28  Not applicable.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA 94304-1043

**b.** If yes, please describe the documents related to the DCCU or MCCA or Turtle Card or Turtle Board or Pico RAS base stations within the possession of Defendants Seyoung Kim, InQuadron, Inc., or their agents, representatives, partners, or employees.

Not applicable.

**c.** If yes, please describe how the information or documents related to the DCCU or MCCA or Turtle Card or Turtle Board or Pico RAS base stations within the possession of Defendants Seyoung Kim, InQuadron, Inc., or their agents, representatives, partners, or employees has been utilized by them in any manner.

Not applicable.

**d.** If yes, please describe how the information or documents related to the DCCU or MCCA or Turtle Card or Turtle Board or Pico RAS base stations has been utilized in the research and development of WiMAX or WiBro technology under development by Defendants Seyoung Kim, InQuadron, Inc., or their agents, representatives, partners, or employees.

Not applicable.

**e.** If yes, please describe all persons or companies other than InQuadron, Inc. or its employees that have received information or documents related to the DCCU or MCCA or Turtle Card or Turtle Board or Pico RAS base stations from Defendants Seyoung Kim, InQuadron, Inc., or their agents, representatives, partners, or employees.

Not applicable.

**f.** If yes, please describe in detail whether Defendants Seyoung Kim, InQuadron, Inc., or their agents, representatives, partners, or employees have disclosed, transmitted, or copied any information

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA 94304-1043

- 63 -
INQUADRON, INC.'S WRITTEN RESPONSES TO PLAINTIFF'S WRITTEN DEPOSITION QUESTIONS
CASE NO. C 07 2504 RMW (PVT)

1    related to the DCCU or MCCA or Turtle Card or Turtle Board or

2    Pico RAS base stations.

3    Not applicable.

4         **g.**    **If yes, please describe any instances that this information or**

5    **documents related to the DCCU or MCCA or Turtle Card or Turtle**

6    **Board or Pico RAS base stations within the possession of Defendants**

7    **Seyoung Kim, InQuadron, Inc., or their agents, representatives,**

8    **partners, or employees has been sold, marketed, or commercialized by**

9    **them in any manner.**

10   Not applicable.

11   **100.**    **Is any information or documents related to the "Modular RAS**

12   **Implementation" file within the possession of Defendants Seyoung Kim,**

13   **InQuadron, Inc., or their agents, representatives, partners, or employees.**

14   No.

15        **a.**    **If yes, please describe the information related to the "Modular RAS**

16   **Implementation" file within the possession of Defendants Seyoung**

17   **Kim, InQuadron, Inc., or their agents, representatives, partners, or**

18   **employees.**

19   Not applicable.

20        **b.**    **If yes, please describe the documents related to the "Modular RAS**

21   **Implementation" file within the possession of Defendants Seyoung**

22   **Kim, InQuadron, Inc., or their agents, representatives, partners, or**

23   **employees.**

24   Not applicable.

25        **c.**    **If yes, please describe how the information or documents related to the**

26   **"Modular RAS Implementation" file within the possession of**

27   **Defendants Seyoung Kim, InQuadron, Inc., or their agents,**

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA 94304-1043

1    representatives, partners, or employees has been utilized by them in

2    any manner.

3    Not applicable.

4        d.    **If yes, please describe how the information or documents related to the**

5        **"Modular RAS Implementation" file has been utilized in the research**

6        **and development of WiMAX or WiBro technology under development**

7        **by Defendants Seyoung Kim, InQuadron, Inc., or their agents,**

8        **representatives, partners, or employees.**

9    Not applicable.

10       e.    **If yes, please describe all persons or companies other than InQuadron,**

11       **Inc. or its employees that have received information or documents**

12       **related to the "Modular RAS Implementation" file from Defendants**

13       **Seyoung Kim, InQuadron, Inc., or their agents, representatives,**

14       **partners, or employees.**

15   Not applicable.

16       f.    **If yes, please describe in detail whether Defendants Seyoung Kim,**

17       **InQuadron, Inc., or their agents, representatives, partners, or**

18       **employees have disclosed, transmitted, or copied any information**

19       **related to the "Modular RAS Implementation" file.**

20   Not applicable.

21       g.    **If yes, please describe any instances that this information or**

22       **documents related to the "Modular RAS Implementation" file within**

23       **the possession of Defendants Seyoung Kim, InQuadron, Inc., or their**

24       **agents, representatives, partners, or employees has been sold,**

25       **marketed, or commercialized by them in any manner.**

26   Not applicable.

27

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA 94304-1043

INQUADRON, INC.'S WRITTEN RESPONSES TO PLAINTIFF'S WRITTEN DEPOSITION QUESTIONS
CASE NO. C 07 2504 RMW (PVT)

101. **Is any information or documents related to the "Rev. 0.4 DCCU Block Diagram" file within the possession of Defendants Seyoung Kim, InQuadron, Inc., or their agents, representatives, partners, or employees.**

No.

    a.     **If yes, please describe the information related to the "Rev. 0.4 DCCU Block Diagram" file within the possession of Defendants Seyoung Kim, InQuadron, Inc., or their agents, representatives, partners, or employees.**

Not applicable.

    b.     **If yes, please describe the documents related to the "Rev. 0.4 DCCU Block Diagram" file within the possession of Defendants Seyoung Kim, InQuadron, Inc., or their agents, representatives, partners, or employees.**

Not applicable.

    c.     **If yes, please describe how the information or documents related to the "Rev. 0.4 DCCU Block Diagram" file within the possession of Defendants Seyoung Kim, InQuadron, Inc., or their agents, representatives, partners, or employees has been utilized by them in any manner.**

Not applicable.

    d.     **If yes, please describe how the information or documents related to the "Rev. 0.4 DCCU Block Diagram" file has been utilized in the research and development of WiMAX or WiBro technology under development by Defendants Seyoung Kim, InQuadron, Inc., or their agents, representatives, partners, or employees.**

Not applicable.

    e.     **If yes, please describe all persons or companies other than InQuadron, Inc. or its employees that have received information or documents**

Squire, Sanders &
Dempsey L.L.P.
600 Hansen Way
Palo Alto, CA 94504-1043

1                         **related to the "Rev. 0.4 DCCU Block Diagram" file from Defendants**

2                         **Seyoung Kim, InQuadron, Inc., or their agents, representatives,**

3                         **partners, or employees.**

4        Not applicable.

5             **f.**        **If yes, please describe in detail whether Defendants Seyoung Kim,**

6                         **InQuadron, Inc., or their agents, representatives, partners, or**

7                         **employees have disclosed, transmitted, or copied any information**

8                         **related to the "Rev. 0.4 DCCU Block Diagram" file.**

9        Not applicable.

10            **g.**        **If yes, please describe any instances that this information or**

11                        **documents related to the "Rev. 0.4 DCCU Block Diagram" file within**

12                        **the possession of Defendants Seyoung Kim, InQuadron, Inc., or their**

13                        **agents, representatives, partners, or employees has been sold,**

14                        **marketed, or commercialized by them in any manner.**

15        Not applicable.

16    **102.**   **Is any information or documents related to Posdata's Mobile Plugfest Reports**

17            **within the possession of Defendants Seyoung Kim, InQuadron, Inc., or their**

18            **agents, representatives, partners, or employees.**

19        Neither InQuadron nor its agents, representatives, partners or employees has any

20  information or documents related to Mobile Plugfest Reports apart from those certain e-mails

21  already in Posdata's possession and submitted as evidence in support of Posdata's motion for a

22  temporary retraining order.

23            **a.**        **If yes, please describe the information related to Posdata's Mobile**

24                        **Plugfest Reports within the possession of Defendants Seyoung Kim,**

25                        **InQuadron, Inc., or their agents, representatives, partners, or**

26                        **employees.**

27        Not applicable.

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
*[illegible]*
Palo Alto, CA 94304-1043

1

**b.    If yes, please describe the documents related to Posdata's Mobile**

2

**Plugfest Reports within the possession of Defendants Seyoung Kim,**

3

**InQuadron, Inc., or their agents, representatives, partners, or**

4

**employees.**

5

Not applicable.

6

**c.    If yes, please describe how the information or documents related to**

7

**Posdata's Mobile Plugfest Reports within the possession of Defendants**

8

**Seyoung Kim, InQuadron, Inc., or their agents, representatives,**

9

**partners, or employees has been utilized by them in any manner.**

10

Not applicable.

11

**d.    If yes, please describe how the information or documents related to**

12

**Posdata's Mobile Plugfest Reports has been utilized in the research**

13

**and development of WiMAX or WiBro technology under development**

14

**by Defendants Seyoung Kim, InQuadron, Inc., or their agents,**

15

**representatives, partners, or employees.**

16

None of the information or documents related to Posdata's Mobile Plugfest Reports that

17

may have come into the possession of InQuadron or its agents, representatives, partners, or

18

employees has been utilized in any manner other than the e-mail from Choon Shin to Dr. Kim

19

dated February 20, 2007 that is attached as Exhibit 11 to the declarations of Ho Tae Tan and

20

Renee Yoon and submitted as evidence in support of Posdata's ex parte application for a

21

temporary restraining order.

22

**e.    If yes, please describe all persons or companies other than InQuadron,**

23

**Inc. or its employees that have received information or documents**

24

**related to Posdata's Mobile Plugfest Reports from Defendants**

25

**Seyoung Kim, InQuadron, Inc., or their agents, representatives,**

26

**partners, or employees.**

27

28

1   None of the information or documents related to Posdata's Mobile Plugfest Reports that

2   may have come into the possession of InQuadron, Dr. Kim or their agents, representatives,

3   partners, or employees has been disclosed by them to any third party.

4       **f.    If yes, please describe in detail whether Defendants Seyoung Kim,**

5       **InQuadron, Inc., or their agents, representatives, partners, or**

6       **employees have disclosed, transmitted, or copied any information**

7       **related to Posdata's Mobile Plugfest Reports.**

8   Neither InQuadron nor its agents, representatives, partners, or employees has disclosed,

9   transmitted or copied any information related to Posdata's Mobile Plugfest Reports in any way

10  other than that represented by the e-mail exchange between Dr. Kim and Choon Shin on February

11  20, 2007, which is attached as Exhibit 11 to the declarations of Ho Tae Tan and Renee Yoon and

12  submitted as evidence in support of Posdata's ex parte application for a temporary restraining

13  order.

14      **g.    If yes, please describe any instances that this information or**

15      **documents related to Posdata's Mobile Plugfest Reports within the**

16      **possession of Defendants Seyoung Kim, InQuadron, Inc., or their**

17      **agents, representatives, partners, or employees has been sold,**

18      **marketed, or commercialized by them in any manner.**

19  None of the information or documents related to Posdata's Mobile Plugfest Reports that

20  may have come into the possession of InQuadron or its agents, representatives, partners, or

21  employees has been sold, marketed or commercialized by them in any manner.

22  **103.   Is any information or documents related to the NTT DoCoMo Reports within**

23      **the possession of Defendants Seyoung Kim, InQuadron, Inc., or their agents,**

24      **representatives, partners, or employees.**

25  Yes.

26      **a.    If yes, please describe the information related to the NTT DoCoMo**

27      **Reports within the possession of Defendants Seyoung Kim,**

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
1801 Embarcadero Way
Palo Alto, CA 94303-1413

INQUADRON, INC.'S WRITTEN RESPONSES TO PLAINTIFF'S WRITTEN DEPOSITION QUESTIONS
CASE NO. C 07 2504 RMW (PVT)

1                     **InQuadron, Inc., or their agents, representatives, partners, or**

2                     **employees.**

3       Apart from those certain e-mails already in Posdata's possession, InQuadron has within its

4 possession a document entitled "DCM Test Results R1.0," dated November 21, 2006. InQuadron

5 is providing this document to Posdata pursuant to the parties' settlement agreement.

6                **b.**       **If yes, please describe the documents related to the NTT DoCoMo**

7                     **Reports within the possession of Defendants Seyoung Kim,**

8                     **InQuadron, Inc., or their agents, representatives, partners, or**

9                     **employees.**

10       Apart from those certain e-mails already in Posdata's possession, InQuadron has within its

11 possession a document entitled "DCM Test Results R1.0," dated November 21, 2006. InQuadron

12 is providing this document to Posdata pursuant to the parties' settlement agreement.

13                **c.**       **If yes, please describe how the information or documents related to the**

14                     **NTT DoCoMo Reports within the possession of Defendants Seyoung**

15                     **Kim, InQuadron, Inc., or their agents, representatives, partners, or**

16                     **employees has been utilized by them in any manner.**

17       None of the information or documents related to the NTT DoCoMo Reports within the

18 possession of InQuadron or its agents, representatives, partners, or employees has been utilized in

19 any manner.

20                **d.**       **If yes, please describe how the information or documents related to the**

21                     **NTT DoCoMo Reports has been utilized in the research and**

22                     **development of WiMAX or WiBro technology under development by**

23                     **Defendants Seyoung Kim, InQuadron, Inc., or their agents,**

24                     **representatives, partners, or employees.**

25       None of the information or documents related to the NTT DoCoMo Reports that has come

26 into the possession of InQuadron or its agents, representatives, partners, or employees has been

27 utilized in any manner.

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA 94304-1043

e.    If yes, please describe all persons or companies other than InQuadron, Inc. or its employees that have received information or documents related to the NTT DoCoMo Reports from Defendants Seyoung Kim, InQuadron, Inc., or their agents, representatives, partners, or employees.

None of the information or documents related to the NTT DoCoMo Reports that has come into the possession of InQuadron or its agents, representatives, partners, or employees has been disclosed by them to any third party.

f.    If yes, please describe in detail whether Defendants Seyoung Kim, InQuadron, Inc., or their agents, representatives, partners, or employees have disclosed, transmitted, or copied any information related to the NTT DoCoMo Reports.

Not applicable.

g.    If yes, please describe any instances that this information or documents related to the NTT DoCoMo Reports within the possession of Defendants Seyoung Kim, InQuadron, Inc., or their agents, representatives, partners, or employees has been sold, marketed, or commercialized by them in any manner.

Not applicable.

104.    Is any information or documents related to Posdata's IOT Reports within the possession of Defendants Seyoung Kim, InQuadron, Inc., or their agents, representatives, partners, or employees.

Yes.

a.    If yes, please describe the information related to Posdata's IOT Reports within the possession of Defendants Seyoung Kim, InQuadron, Inc., or their agents, representatives, partners, or employees.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA 94304-1043

INQUADRON, INC.'S WRITTEN RESPONSES TO PLAINTIFF'S WRITTEN DEPOSITION QUESTIONS
CASE NO. C 07 2504 RMW (PVT)

1    Apart from those certain e-mails already in Posdata's possession, InQuadron has within its

2    possession three documents: (1) one entitled "Posdata-GCT IOT Results Template v.01.1," dated

3    December 2, 2006; (2) one entitled "GCT IOT," dated November 28 through December 1, 2006;

4    and (3) an email from Sang Geun Hwang to Seyoung Kim, Jongkwan Choi, Hwayoung Joung,

5    Joonsug Chung, Woojon Jeon, Choon Shin, Seong Dong Park, and Hojun Kim, dated December

6    9, 2006, and bearing the subject line "Re: Fw: Inquadron, Inc." InQuadron is providing these

7    documents to Posdata pursuant to the parties' settlement agreement.

8    **b.    If yes, please describe the documents related to Posdata's IOT Reports**

9    **within the possession of Defendants Seyoung Kim, InQuadron, Inc., or**

10    **their agents, representatives, partners, or employees.**

11    Apart from those certain e-mails already in Posdata's possession, InQuadron has within its

12    possession three documents: (1) one entitled "Posdata-GCT IOT Results Template v.01.1," dated

13    December 2, 2006; (2) one entitled "GCT IOT," dated November 28 through December 1, 2006;

14    and (3) an email from Sang Geun Hwang to Seyoung Kim, Jongkwan Choi, Hwayoung Joung,

15    Joonsug Chung, Woojon Jeon, Choon Shin, Seong Dong Park, and Hojun Kim dated December

16    9, 2006, and bearing the subject line "Re: Fw: Inquadron, Inc." InQuadron is returning these

17    documents to Posdata in accordance with its settlement obligations.

18    **c.    If yes, please describe how the information or documents related to**

19    **Posdata's IOT Reports within the possession of Defendants Seyoung**

20    **Kim, InQuadron, Inc., or their agents, representatives, partners, or**

21    **employees has been utilized by them in any manner.**

22    Neither InQuadron, Inc. nor its agents, representatives, partners, or employees is aware of

23    any use in any manner of the document entitled "Posdata-GCT IOT Results Template v.0.1,"

24    dated December 2, 2006, or of the document entitled "GCT IOT," dated November 28 through

25    December 1, 2006, or of the email from Sang Geun Hwang to Seyoung Kim, Jongkwan Choi,

26    Hwayoung Joung, Joonsug Chung, Woojon Jeon, Choon Shin, Seong Dong Park, and Hojun

27    Kim, dated December 9, 2006, and bearing the subject line "Re: Fw: Inquadron, Inc."

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA 94504-1043

1    **d.    If yes, please describe how the information or documents related to**

2    **Posdata's IOT Reports has been utilized in the research and**

3    **development of WiMAX or WiBro technology under development by**

4    **Defendants Seyoung Kim, InQuadron, Inc., or their agents,**

5    **representatives, partners, or employees.**

6    Neither InQuadron, Inc. nor its agents, representatives, partners, or employees is aware of

7    any use in any manner of information or documents related to Posdata's IOT Reports.

8    **e.    If yes, please describe all persons or companies other than InQuadron,**

9    **Inc. or its employees that have received information or documents**

10    **related to Posdata's IOT Reports from Defendants Seyoung Kim,**

11    **InQuadron, Inc., or their agents, representatives, partners, or**

12    **employees.**

13    Neither InQuadron, Inc. nor its agents, representatives, partners, or employees is aware of

14    any person or company other than InQuadron, Inc. or its employees that may have received

15    information or documents related to Posdata's IOT Reports from them.

16    **f.    If yes, please describe in detail whether Defendants Seyoung Kim,**

17    **InQuadron, Inc., or their agents, representatives, partners, or**

18    **employees have disclosed, transmitted, or copied any information**

19    **related to Posdata's IOT Reports.**

20    Apart from those certain e-mails already in Posdata's possession, neither InQuadron, Inc.

21    nor its agents, representatives, partners or employees, is aware of any instance in which they have

22    disclosed, transmitted, or copied any information related to Posdata's IOT Reports.

23    **g.    If yes, please describe any instances that this information or**

24    **documents related to Posdata's IOT Reports within the possession of**

25    **Defendants Seyoung Kim, InQuadron, Inc., or their agents,**

26    **representatives, partners, or employees has been sold, marketed, or**

27    **commercialized by them in any manner.**

28    None.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
*600 Hansen Way*
*Palo Alto, CA 94304-1043*

- 73 -
INQUADRON, INC.'S WRITTEN RESPONSES TO PLAINTIFF'S WRITTEN DEPOSITION QUESTIONS
CASE NO. C 07 2504 RMW (PVT)

105.    **Is any information or documents related to Posdata's files or diagrams that depict, reveal, or demonstrate how processors and components, Posdata's PCB design and layout, and Posdata's software and source code create an architecture for interface between hardware and software within the possession of Defendants Seyoung Kim, InQuadron, Inc., or their agents, representatives, partners, or employees.**

No.

a.    **If yes, please describe the information related to Posdata's files or diagrams that depict, reveal, or demonstrate how processors and components, Posdata's PCB design and layout, and Posdata's software and source code create an architecture for interface between hardware and software within the possession of Defendants Seyoung Kim, InQuadron, Inc., or their agents, representatives, partners, or employees.**

Not applicable.

b.    **If yes, please describe the documents related to Posdata's files or diagrams that depict, reveal, or demonstrate how processors and components, Posdata's PCB design and layout, and Posdata's software and source code create an architecture for interface between hardware and software within the possession of Defendants Seyoung Kim, InQuadron, Inc., or their agents, representatives, partners, or employees.**

Not applicable.

c.    **If yes, please describe how the information or documents related to Posdata's files or diagrams that depict, reveal, or demonstrate how processors and components, Posdata's PCB design and layout, and Posdata's software and source code create an architecture for interface between hardware and software within the possession of Defendants**

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA 94304-1043

1    Seyoung Kim, InQuadron, Inc., or their agents, representatives,

2    partners, or employees has been utilized by them in any manner.

3  Not applicable.

4    d.    If yes, please describe how the information or documents related to

5    Posdata's files or diagrams that depict, reveal, or demonstrate how

6    processors and components, Posdata's PCB design and layout, and

7    Posdata's software and source code create an architecture for interface

8    between hardware and software has been utilized in the research and

9    development of WiMAX or WiBro technology under development by

10    Defendants Seyoung Kim, InQuadron, Inc., or their agents,

11    representatives, partners, or employees.

12  Not applicable.

13    e.    If yes, please describe all persons or companies other than InQuadron,

14    Inc. or its employees that have received information or documents

15    related to Posdata's files or diagrams that depict, reveal, or

16    demonstrate how processors and components, Posdata's PCB design

17    and layout, and Posdata's software and source code create an

18    architecture for interface between hardware and software from

19    Defendants Seyoung Kim, InQuadron, Inc., or their agents,

20    representatives, partners, or employees.

21  Not applicable.

22    f.    If yes, please describe in detail whether Defendants Seyoung Kim,

23    InQuadron, Inc., or their agents, representatives, partners, or

24    employees have disclosed, transmitted, or copied any information

25    related to Posdata's files or diagrams that depict, reveal, or

26    demonstrate how processors and components, Posdata's PCB design

27    and layout, and Posdata's software and source code create an

28    architecture for interface between hardware and software.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA 94304-1043

- 75 -
INQUADRON, INC.'S WRITTEN RESPONSES TO PLAINTIFF'S WRITTEN DEPOSITION QUESTIONS
CASE NO. C 07 2504 RMW (PVT)

1    Not applicable.

2      g.    If yes, please describe any instances that this information or

3           documents related to Posdata's files or diagrams that depict, reveal, or

4           demonstrate how processors and components, Posdata's PCB design

5           and layout, and Posdata's software and source code create an

6           architecture for interface between hardware and software within the

7           possession of Defendants Seyoung Kim, InQuadron, Inc., or their

8           agents, representatives, partners, or employees has been sold,

9           marketed, or commercialized by them in any manner.

10   Not applicable.

11   106.   Is any information or documents related to any other Posdata WiMAX,

12         WiBro or FLYVO technology within the possession of Defendants Seyoung

13         Kim, InQuadron, Inc., or their agents, representatives, partners, or

14         employees.

15   No.

16      a.    If yes, please describe the information related to any other Posdata

17           WiMAX, WiBro or FLYVO technology  within the possession of

18           Defendants Seyoung Kim, InQuadron, Inc., or their agents,

19           representatives, partners, or employees.

20   Not applicable.

21      b.    If yes, please describe the documents related to any other Posdata

22           WiMAX, WiBro or FLYVO technology within the possession of

23           Defendants Seyoung Kim, InQuadron, Inc., or their agents,

24           representatives, partners, or employees.

25   Not applicable.

26      c.    If yes, please describe how the information or documents related to

27           any other Posdata WiMAX, WiBro or FLYVO technology within the

28           possession of Defendants Seyoung Kim, InQuadron, Inc., or their

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto CA 94304-1043

1          agents, representatives, partners, or employees has been utilized by

2          them in any manner.

3      Not applicable.

4          d.      If yes, please describe how the information or documents related to

5              any other Posdata WiMAX, WiBro or FLYVO technology has been

6              utilized in the research and development of WiMAX or WiBro

7              technology under development by Defendants Seyoung Kim,

8              InQuadron, Inc., or their agents, representatives, partners, or

9              employees.

10     Not applicable.

11         e.      If yes, please describe all persons or companies other than InQuadron,

12             Inc. or its employees that have received information or documents

13             related to any other Posdata WiMAX, WiBro or FLYVO technology

14             from Defendants Seyoung Kim, InQuadron, Inc., or their agents,

15             representatives, partners, or employees.

16     Not applicable.

17         f.      If yes, please describe in detail whether Defendants Seyoung Kim,

18             InQuadron, Inc., or their agents, representatives, partners, or

19             employees have disclosed, transmitted, or copied any information

20             related to any other Posdata WiMAX, WiBro or FLYVO technology.

21     Not applicable.

22         g.      If yes, please describe any instances that this information or

23             documents related to any other Posdata WiMAX, WiBro or FLYVO

24             technology within the possession of Defendants Seyoung Kim,

25             InQuadron, Inc., or their agents, representatives, partners, or

26             employees has been sold, marketed, or commercialized by them in any

27             manner.

28     Not applicable.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
400 Hamilton Way
Palo Alto, CA 94301-1947

- 77 -
INQUADRON, INC.'S WRITTEN RESPONSES TO PLAINTIFF'S WRITTEN DEPOSITION QUESTIONS
CASE NO. C 07 2504 RMW (PVT)

1    **107.    Is any information or documents related to any other WiMAX, or WiBro**

2    **technology within the possession of Defendants Seyoung Kim, InQuadron,**

3    **Inc., or their agents, representatives, partners, or employees.**

4    InQuadron objects to this question on the ground that the phrase "any other WiMAX, or

5    WiBro technology" is vague and ambiguous.  InQuadron understands the phrase to refer to

6    WiMAX or WiBro technology that is proprietary to Posdata other than the specific files or subject

7    matter addressed in prior questions above.  Subject to and without waiving its objection,

8    InQuadron answers as follows:  no.

9    **a.    If yes, please describe the information related to any other Posdata**

10    **WiMAX, WiBro or FLYVO technology within the possession of**

11    **Defendants Seyoung Kim, InQuadron, Inc., or their agents,**

12    **representatives, partners, or employees.**

13    Not applicable.

14    **b.    If yes, please describe the documents related to any other Posdata**

15    **WiMAX, WiBro or FLYVO technology within the possession of**

16    **Defendants Seyoung Kim, InQuadron, Inc., or their agents,**

17    **representatives, partners, or employees.**

18    Not applicable.

19    **c.    If yes, please describe how the information or documents related to**

20    **any other Posdata WiMAX, WiBro or FLYVO technology within the**

21    **possession of Defendants Seyoung Kim, InQuadron, Inc., or their**

22    **agents, representatives, partners, or employees has been utilized by**

23    **them in any manner.**

24    Not applicable.

25    **d.    If yes, please describe how the information or documents related to**

26    **any other Posdata WiMAX, WiBro or FLYVO technology has been**

27    **utilized in the research and development of WiMAX or WiBro**

28    **technology under development by Defendants Seyoung Kim,**

SQUIRE, SANDERS &
DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA 94304-1043

1    InQuadron, Inc., or their agents, representatives, partners, or

2    employees.

3    Not applicable.

4        **e.**    **If yes, please describe all persons or companies other than InQuadron,**

5    **Inc. or its employees that have received information or documents**

6    **related to any other Posdata WiMAX, WiBro or FLYVO technology**

7    **from Defendants Seyoung Kim, InQuadron, Inc., or their agents,**

8    **representatives, partners, or employees.**

9    Not applicable.

10        **f.**    **If yes, please describe in detail whether Defendants Seyoung Kim,**

11    **InQuadron, Inc., or their agents, representatives, partners, or**

12    **employees have disclosed, transmitted, or copied any information**

13    **related to any other Posdata WiMAX, WiBro or FLYVO technology.**

14    Not applicable.

15        **g.**    **If yes, please describe any instances that this information or**

16    **documents related to any other Posdata WiMAX, WiBro or FLYVO**

17    **technology within the possession of Defendants Seyoung Kim,**

18    **InQuadron, Inc., or their agents, representatives, partners, or**

19    **employees has been sold, marketed, or commercialized by them in any**

20    **manner.**

21    Not applicable.

22    Dated:   October 24, 2007                    SQUIRE, SANDERS & DEMPSEY L.L.P.

23

24

25        By: _____

26        David S. Elkins

27        Attorneys for Defendants

28        SEYOUNG KIM and INQUADRON, INC.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
*600 Hansen Way*
*Palo Alto, CA 94304-1043*

- 79 -
INQUADRON, INC.'S WRITTEN RESPONSES TO PLAINTIFF'S WRITTEN DEPOSITION QUESTIONS
CASE NO. C 07 2504 RMW (PVT)

1

## VERIFICATION

2     I, Kenneth D. Lee, am the Chief Financial Officer and General Counsel of defendant

3 InQuadron, Inc. and am authorized to make this verification on InQuadron's behalf. I have

4 reviewed all of the foregoing questions and answers and am informed and believe that (i) the

5 answers are true and correct and (ii) they reflect the information known or reasonably available to

6 InQuadron.

7     I declare under penalty of perjury that the foregoing is true and correct.

8

9

10 Dated:   October 24, 2007

Kenneth D. Lee

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## PROOF OF SERVICE

I am a citizen of the United States and employed in Santa Clara County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 600 Hansen Way, Palo Alto, California 94304-1043. On October 24, 2007, a true and correct copy of the within document:

**INQUADRON, INC.'S WRITTEN RESPONSES TO PLAINTIFF'S WRITTEN DEPOSITION QUESTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)**

was served on:

**VIA ELECTRONIC MAIL AND U.S. MAIL**

Brendan Dolan, Esq.
bdolan@morganlewis.com
Morgan Lewis & Bockius LLP
One Market Street
Spear Tower
San Francisco, California 94105

Service was accomplished as follows:

☒     **By Electronic Mail:** On the above date, I electronically mailed the above document(s) addressed to the above.

☒     **By US Mail:** I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on October 24, 2007, at Palo Alto, California.

_____
Ralph S. Beck