# EXHIBIT H

**Pitigoi, Allison E.**

**From:** Elkins, David S.
**Sent:** Monday, December 03, 2007 3:09 PM
**To:** bdolan@morganlewis.com; steven.garrett@morganlewis.com
**Cc:** 'jturman@morganlewis.com'; Pitigoi, Allison E.
**Subject:** Posdata v. Kim and InQuadron
**Attachments:** PALOALTO-#108326-v3-consent_decree_-_permanent_injunction_-_Posdata_v__Kim.DOC; PALOALTO-#108327-v3-Settlement_Agreement_and_General_Release.DOC

**CONFIDENTIAL SETTLEMENT COMMUNICATION**
**FED. R. EVID. 408**

Brendan and Steven:

Attached for your comments are our mark ups of the draft consent judgment and draft settlement agreement. All of our changes are reflected by Word's Track Changes tool.

Most of the changes to the consent judgment are to conform it with our understanding of the parties' agreement at the August 3 settlement conference, which in turn led to changes to make the document consistent with the TRO. We also added detail to the neutral expert provision to ensure certainty.

The settlement agreement is basically fine, but we added a paragraph to provide for the agreed statement that we each approved at the settlement conference.

Regards,

David

---

**David S. Elkins** | Squire, Sanders & Dempsey LLP | 600 Hansen Way | Palo Alto, California 94304 | USA | Tel +1.650.843.3378 | Fax +1.650.843.8777 | DElkins@ssd.com

www.ssd.com

This e-mail is confidential and is intended only for the named recipient(s) and may contain information that is privileged, attorney work product or exempt from disclosure under applicable law. If you have received this message in error, or are not the named recipient(s), please immediately notify the sender and delete this e-mail message from your computer. Thank you.

BRENDAN DOLAN, State Bar No. 126732
L. JULIUS M. TURMAN, State Bar. No. 226126
STEVEN J. GARRETT, State Bar No. 221021
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Tel: 415.442.1000
Fax: 415.442.1001
E-mail: bdolan@morganlewis.com

Attorneys for Plaintiff
POSDATA CO., LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

POSDATA CO., LTD., a South Korean corporation,

Plaintiff,

vs.

SEYOUNG KIM, an individual and INQUADRON, INC., a California corporation,

Defendants.

Case No. C 07 2504 RMW

**STIPULATED CONSENT DECREE AND JUDGMENT IN FAVOR OF POSDATA CO., LTD. AND AGAINST SEYOUNG KIM AND INQUADRON, INC.**

WHEREAS, Plaintiff Posdata Co., Ltd. ("Plaintiff" or "Posdata") contends that Defendant Seyoung Kim ("Kim") and other former and current employees of Posdata, acting in concert with or in participation with Defendant Kim for the purpose of creating, forming and operating Defendant InQuadron, Inc. ("InQuadron"), have engaged in unlawful conduct related to Posdata's trade secrets, proprietary information, confidential information, intellectual property, tangible property, and Posdata property;

WHEREAS, Plaintiff on May 10, 2007, filed and served a Complaint for Monetary Damages and Injunctive Relief against Defendants Seyoung Kim ("Kim") and InQuadron, Inc., alleging nine causes of action against Defendants, including: (1) Misappropriation of Trade

Secrets; (2) Interference with Prospective Economic Advantage; (3) Interference with Existing Economic Relations; (4) Breach of Contract; (5) Breach of Duty of Loyalty; (6) Interference with Contract; (7) Unfair Competition, Cal. Bus. & Prof. Code § 17200 and Common Law; (8) Unjust Enrichment; and (9) Constructive Trust;

WHEREAS, Plaintiff filed and served a First Amended Complaint on May 18, 2007, adding a cause of action for Conversion;

WHEREAS, Plaintiff filed an Ex Parte Application for Temporary Restraining Order for Order to Show Cause Why a Preliminary Injunction Should Not Issue and Order permitting Expedited Discovery ("Ex Parte Application for TRO") on June 21, 2007;

WHEREAS, the Honorable Ronald M. Whyte of the United states District Court for the Northern District of California, heard Plaintiff's Ex Parte Application for TRO on June 26, 2007, and granted a temporary restraining order against Defendants Kim and InQuadron on June 27, 2007;

WHEREAS, the Parties attended an Early Settlement Conference with the Honorable Patricia Trumbull of the United States District Court for the Northern District of California on August 3, 2007;

WHEREAS, Plaintiff and Defendants have agreed to a consent decree, including a permanent injunction against Kim and InQuadron and all those acting in concert or participation with any of them and a monetary remedy in the event of a violation of the injunction to alleviate the need for further litigation of this matter; and

WHEREAS, the parties now agree as follows:

1. Defendants Seyoung Kim, InQuadron, Inc., and all those acting in concert or participation with them and having knowledge of this Consent Decree, including but not limited to their agents, representatives, partners, employees and attorneys, are enjoined and restrained from engaging in or performing any of the following acts:

a. Using for any research and development purposes: copies or versions of the Digital Channel Card Unit ("DCCU") for the Pico RAS base station; the Modular Channel Card Assembly ("MCCA") file for the Turtle Card base station; Posdata's MAC and PHY source

Deleted: WHEREAS, the Parties agree that Posdata's trade secrets, proprietary information, confidential information, intellectual property and tangible property include, but are not limited to: Posdata's WiMAX technology, FLYVO system, copies or versions of the Digital Channel Card Unit ("DCCU") for the Pico RAS base station; the Modular Channel Card Assembly ("MCCA") file for the Turtle Card base station; MAC and PHY source code, printed circuit board ("PCB") design and layout, prototypes of the DCCU or MCCA or Turtle Card and/or Pico RAS base stations; the "Modular RAS Implementation" file, the "Rev. O.4 DCCU Block Diagram" file, test methods, comparison data, Plugfest Reports, results of the trial runs from NTT DoCoMo, and interoperability test data on the communication between Posdata's RAS, GCT mobile station chip or any WiMAX technology; notes, files and diagrams that depict, reveal, or demonstrate the processors and components used by Posdata, Posdata's PCB design and layout, and Posdata's source code;¶

Deleted: 1.

Formatted: Bullets and Numbering

Deleted: Kenneth Lee, Joonsug Chung, Hwayong Joung, Seong Dong Park, Jong Wook Lee, Hojun Kim, Jongkwan "Jeffrey" Choi, Ranny Hong, Choon Shin, Woo Jin Jeon, Se Jin Lim, Hung Seung Oh, Kang Min Lee, Yerang Hur, Jungnam Yoon, Kiyoung Kwak, Suck Chan Lee, Jin Young Park, Kwang Seok Kim, Sang Geun Hwang, Seung Man Lee, Ji-Myung Oh, William Li, Hoon Paek, Chan Park, Dongkyu Choi, and Defendants'

Deleted: a.

Formatted: Outline numbered + Level: 2 + Numbering Style: a, b, c, ... + Start at: 1 + Alignment: Left + Aligned at: 1" + Tab after: 1.5" + Indent at: 0"

code, printed circuit board ("PCB") design and layout, prototypes of the DCCU or MCCA or Turtle Card and/or Pico RAS base stations; the "Modular RAS Implementation" file, the "Rev. O.4 DCCU Block Diagram" file, test methods, comparison data, Plugfest Reports, results of the trial runs from NTT DoCoMo, and interoperability test data pertaining to Posdata's RAS, GCT mobile station chip or any WiMAX technology; notes, files and diagrams that depict, reveal, or demonstrate how the processors and components used by Posdata, Posdata's PCB design and layout, and Posdata's software and source code create an architecture for interface between hardware and software that was acquired as a result of Defendant Kim's or any other person's employment or association with Posdata;

b. Using for any research or development purposes or any commercial purposes: any and all notes, files, data, correspondence, reports, designs, diagrams, test results, materials, documents, prototypes of the DCCU, MCCA, Pico RAS or the Turtle Card, and any promotional/development/marketing materials that pertain to the property identified in paragraph 1.a. above; and

c. Disclosing, copying or transmitting any information, documents or other property identified in paragraphs 1.a and 1.b above (collectively, "Protected Property").

d. Directly or indirectly soliciting, orally or in writing, or otherwise encouraging the departure, resignation or other termination of employment, of any of Plaintiff's employees, independent contractors or consultants (collectively, "Solicited Personnel") for the purpose of (i) working for Defendants or any entity that Defendants may own, be involved in, or affiliated with, that is within the WiMAX technology industry, and (ii) having the Solicited Personnel utilize, disclose, or share any of the Protected Property with Defendants or any entity that Defendants may own, be involved in, or affiliated with.

e. Directly or indirectly soliciting, orally or in writing, or otherwise encouraging Solicited Personnel to disclose, copy or transmit any Protected Property.

2. Defendants explicitly agree that within five (5) business days of the approval and entry of this Consent Decree by the Court, Defendants shall deliver to the attorneys of record of Posdata all notes, files, data, correspondence, reports, test results, materials, documents,

Deleted: ; and all information and documents regarding Posdata, its past or current employees, and any technology developed in whole or in part by Posdata,

Deleted: .

Formatted

Deleted: b.

Formatted: Outline numbered + Level: 2 + Numbering Style: a, b, c, ... + Start at: 1 + Alignment: Left + Aligned at: 1" + Tab after: 1.5" + Indent at: 0", No widow/orphan control

Deleted: or

Deleted: thereto.

Deleted: c.

Deleted: d.

Deleted: Plaintiff's

Deleted: ,

Deleted: to

Deleted: for the purpose of

Deleted: Plaintiff's

Deleted: e.

Deleted: Plaintiff's

Deleted: 2.

prototypes, and any promotional, or marketing materials that pertain to or constitute the Protected Property.

3. If within two (2) years following the effective date of this Stipulated Consent Decree, Defendants plan to market, promote, commercialize, manufacture, transfer intellectual property, or sell any products for the WiMax industry ("Inquadron WiMax Product"), PosData shall receive no less than 120 days' faxed and e-mailed written notice thereof to Plaintiff's counsel of record or such other designee as Plaintiff may later designate in writing. At its option and expense, PosData shall be afforded the opportunity to have the Inquadron WiMax Product examined by a neutral forensic expert ("Expert") to determine whether the Inquadron WiMax Product was designed or manufactured in violation of the terms of this Consent Decree.

a. PosData shall exercise the examination option provided by this paragraph 4 in a writing faxed and e-mailed to Defendants' counsel or such other designee as Posdata may later designate in writing.

b. The Expert shall be agreed on by Posdata and Defendants within 15 (fifteen) calendar days of Defendants' receipt of PosData's notice provided under paragraph 4a. In the event that Posdata and Defendants cannot agree on the Expert, Posdata and Defendants shall each nominate a person of sufficient technical ability to perform the examination provided in this paragraph 4, and those persons will select the Expert. The Expert shall agree to be bound by a non-disclosure agreement acceptable to counsel for Defendants (acceptance of which shall not be unreasonably withheld).

c. Defendants shall provide the Expert with prompt access to the Inquadron WiMax product, and will make Defendants' personnel reasonably available to meet with the Expert to answer any questions or to provide information that the Expert reasonably determines would aid his or her examination. In the event that the Expert deems it reasonably necessary, he or she may request that Defendants provide technical plans, drawings, specifications or other information that would tend to establish development of a particular component or system independent of the Posdata Protected Property.

**Deleted:** 3. If within two (2) years following entry of this Consent Decree by the Court, Defendants plan to market, promote, commercialize, manufacture, transfer, or sell any intellectual property or tangible property or products related to the WiMAX industry, Posdata and the attorneys of record of Posdata shall receive no less than 120 days notice in writing and shall be afforded the opportunity for a jointly selected technical expert to thoroughly examine, test, analyze, review, or gather any necessary information from Defendants about products and/or the technology, intellectual property or tangible property to determine whether Defendants' proposed action to market, promote, commercialize, manufacture, transfer or sell such property or products utilized any Posdata technology, including the Protected Property. If the parties cannot agree on a jointly selected technical expert, then Posdata shall have the right to select the technical expert to thoroughly examine, test, analyze, review, or gather any necessary information from Defendants about products and/or the technology, intellectual property or tangible property to determine whether Defendants' proposed action to market, promote, commercialize, manufacture, transfer or sell such property or products utilized any Posdata technology, including the Protected Property.

**Formatted:** Outline numbered + Level: 1 + Numbering Style: 1, 2, 3, ... + Start at: 1 + Alignment: Left + Aligned at: 0.5" + Tab after: 1" + Indent at: 0", No widow/orphan control

**Formatted:** Bullets and Numbering

    d. The Expert shall complete his or her examination within 30 (thirty) calendar days from first access to the Inquadron WiMax Product. (In the event the Expert cannot complete his or her examination within the 30-day period, he or she shall provide written notice to counsel for Plaintiff and Defendants of that fact and set forth the new completion date.) At the end of the examination period, the Expert shall render a written draft report to the parties' counsel or other authorized designees advising whether, in the Expert's opinion, the Inquadron WiMax Product was designed or manufactured in violation of the terms of this Consent Decree.

e. Plaintiff and Defendants may submit written comments in response to the Expert's written draft report within seven calendar days of their receipt of the report.

f. After due consideration of any written comments submitted by the parties as provided in paragraph 4e, the Expert shall then render his or her final report written draft report to the parties' counsel or other authorized designees. The final report shall advise whether, in the Expert's opinion, the Inquadron WiMax Product was designed or manufactured in violation of the terms of this Consent Decree. The Expert's final draft report shall be binding on Plaintiff and Defendants and is not subject to appeal to the Court.

4. This Consent Decree is effective immediately upon the Court's approval and entry, and shall continue in effect permanently, or until such other date as this Court may order in the future.

5. In the event that Defendants Seyoung Kim, InQuadron, Inc., or any person or entity acting in concert or participation with either of them and having knowledge of this Consent Decree or the Confidential Settlement Agreement and General Release executed by the Parties, including but not limited to their agents, representatives, partners, employees and attorneys, breaches paragraph 1, 2, or 3 above, then Plaintiff is entitled to an award of damages, pursuant to this paragraph 6.

a. Plaintiff shall file a regularly noticed motion with this Court to enforce the Consent Decree and/or the General Release and Settlement Agreement.

b. If Plaintiff proves by clear and convincing evidence that Defendant Seyoung Kim, InQuadron, Inc., or those acting in concert or participation with either of them, has

**Deleted:** 4.

**Deleted:** 5.

**Formatted:** Outline numbered + Level: 1 + Numbering Style: 1, 2, 3, ... + Start at: 1 + Alignment: Left + Aligned at: 0.5" + Tab after: 1" + Indent at: 0", No widow/orphan control

**Deleted:** 5

**Deleted:** a.

**Formatted:** Outline numbered + Level: 2 + Numbering Style: a, b, c, ... + Start at: 1 + Alignment: Left + Aligned at: 1" + Tab after: 1.5" + Indent at: 0", No widow/orphan control

**Deleted:** may

**Deleted:** b.

breached paragraph 1, 2, or 3 above, then the Court shall award damages to Plaintiff, and jointly and severally against Defendants, for the total sum of Seven Hundred Fifty Thousand United States Dollars ($750,000.00), plus its reasonable attorneys' fees and costs in connection with the motion, including expert costs. This amount represents a negotiated compromise agreed upon by the parties as part of their overall settlement of the Action, taking into account all the information known to them at the time of execution of the Stipulated Consent Decree.

6. Defendants waive any rights they have for a stay of execution, for requesting or having a new trial or any right they may have to request or to have an appeal from judgment entered as a result of this Consent Decree.

7. Each party is to bear its own costs, expenses and attorneys' fees with respect to this action, except as expressly provided herein or in the Confidential Settlement Agreement and General Release.

8. The United States District Court Northern District of California shall retain jurisdiction over the parties and over the subject matter herein for the purposes of enforcing this Consent Decree and the Confidential Settlement Agreement, including the determination of whether Defendants, or anyone acting with or on their behalf, violated any term of the Consent Decree or the Confidential Settlement Agreement and General Release.

**Deleted:** 6.

**Formatted:** Outline numbered + Level: 1 + Numbering Style: 1, 2, 3, ... + Start at: 1 + Alignment: Left + Aligned at: 0.5" + Tab after: 1" + Indent at: 0", No widow/orphan control

**Deleted:** 7.

**Deleted:** 8.

**Formatted:** Outline numbered + Level: 1 + Numbering Style: 1, 2, 3, ... + Start at: 1 + Alignment: Left + Aligned at: 0.5" + Tab after: 1" + Indent at: 0", No widow/orphan control

Dated: December ___, 2007 MORGAN, LEWIS & BOCKIUS LLP

By ______________________________
Brendan Dolan
Attorneys for Plaintiff POSDATA CO., LTD.

Deleted: November

Dated: December ___, 2007 SQUIRE, SANDERS & DEMPSEY LLP

By ______________________________
David S. Elkins
Attorneys for Defendants SEYOUNG KIM and INQUADRON, INC.

Deleted: November

Formatted: Indent: First line: 0.5"

**PURSUANT TO STIPULATION, IT IS SO ORDERED AND ADJUDGED.**

Date:_______________

______________________________
Hon. RONALD M. WHYTE
United States District Court Judge

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

CONSENT DECREE
(C 07 2504 RMW)

CONFIDENTIAL SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Confidential Settlement Agreement and General Release ("Agreement") is entered into by and between Plaintiff Posdata Co., Ltd. ("Plaintiff" or "Posdata") and Defendants Seyoung Kim ("Kim") and InQuadron, Inc. ("InQuadron") (Kim and InQuadron are collectively referred to as "Defendants"). Posdata, InQuadron and Kim are collectively referred to in this Agreement as "Parties," and each individually may be referred to as a "Party."

RECITALS

WHEREAS, Posdata filed an action against Kim and InQuadron on May 10, 2007, captioned *Posdata Co., Ltd. v. Seyoung Kim and InQuadron, Inc.*, Case No. C 07 2504 RMW (hereafter referred to as the "Action"), now pending in the United States District Court for the Northern District of California (the "Court");

Deleted: en

WHEREAS, Posdata alleged nine causes of action in the original complaint, namely: (1) Misappropriation of Trade Secrets; (2) Interference with Prospective Economic Advantage; (3) Interference with Existing Economic Relations; (4) Breach of Contract; (5) Breach of Duty of Loyalty; (6) Interference with Contract; (7) Unfair Competition, Cal. Bus. & Prof. Code § 17200 and Common Law; (8) Unjust Enrichment; and (9) Constructive Trust, and, by the first amended complaint, Posdata added a cause of action for Conversion;

WHEREAS, Posdata filed an Ex Parte Application for Temporary Restraining Order, for Order to Show Cause Why a Preliminary Injunction Should Not Issue and Order permitting Expedited Discovery ("Ex Parte Application for TRO") on June 21, 2007, and the Court, the Honorable Ronald M. Whyte presiding, granted a temporary restraining order against Kim and InQuadron on June 27, 2007; and

WHEREAS, to avoid the additional expenditure of time, money and resources attendant to resolving this matter by trial and to avoid the uncertainty of litigation, and with no admission or denial of the allegations in the Action by Kim and InQuadron, the Parties desire to compromise and resolve their dispute by agreement, including a Stipulated Consent Decree that provides for a permanent injunction against Kim and InQuadron and a monetary payment in the event of a breach of the injunction.

NOW, THEREFORE, in consideration of the mutual promises, obligations, and covenants set forth herein, and for other valuable consideration, the sufficiency and receipt of which is hereby acknowledged, the parties agree as follows:

1. Mutual General Release. Effective upon entry by the Court of the Stipulated Consent Decree pursuant to paragraph 3 of this Agreement, each of the Parties, on behalf of itself or himself and its or his representatives, attorneys, agents, partners, officers, shareholders, owners, investors, employees, independent contractors, affiliates, predecessors, successors, heirs, executors, beneficiaries and assigns, does hereby release and discharge each other Party, and its or his past and present representatives, attorneys, agents, partners, officers, shareholders, owners, investors, employees, independent contractors, affiliates, predecessors, successors, heirs, executors, beneficiaries and assigns, and each of them, from any and all claims of any kind, and

Deleted: p

Deleted: s

Formatted: Centered

any and all demands, liabilities, statutory violations, actions, causes of action of every nature, character or description whatsoever, whether known or unknown, suspected or claimed. The releases do not extend to any claims that may arise out of the breach of this Agreement or the Stipulated Consent Decree by any Party, nor do they relieve the Parties of their obligations to perform and comply with the terms and conditions of this Agreement or the Stipulated Consent Decree.

2. Waiver. This Agreement is intended to be a full general release and final accord and satisfaction, extending to all claims of any nature that may exist, whether known or unknown, suspected or anticipated, or unsuspected or unanticipated. The Parties hereby expressly, voluntarily, and knowingly, waive, relinquish, and abandon each and every right, protection and benefit to which they would be entitled now or at any time hereafter under section 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

The Parties also mutually and expressly waive all rights under any other statutes, legal decisions or common law principles of similar effect.

3. Stipulated Consent Decree. Concurrent with signing this Agreement, the Parties will execute, the Stipulated Consent Decree, in the form attached to this Agreement as Exhibit A and incorporated herein by reference, providing for permanent injunctive relief and a monetary award in the amount of $750,000 in the event of breach of the injunction. This Agreement is conditioned upon the entry of the Stipulated Consent Decree by the Court. If the Court declines to approve and enter the Stipulated Consent Decree, then this Agreement will be null and void in its entirety.

4. No Admission. This Agreement is a compromise of disputed claims. Nothing contained in this Agreement shall be interpreted or construed to be an admission on the part of, or to the prejudice of any person or any Party.

5. Confidentiality. The terms of this Agreement are confidential, and except with respect to the Agreed Statement set forth below, the Parties agree that they will not reveal, discuss, publish or in any way communicate any of the terms of this Agreement to any person or entity except that each Party: (1) may disclose the terms of this Agreement as necessary, on a "need-to-know" basis only, for accounting, audit, insurance or tax purposes, or to investors or creditors, or for securing legal advice, or to officers, directors or senior management of the Parties on a need-to-know basis, so long as the disclosing Party advises the recipient of the obligation to maintain the information as confidential and the recipient agrees to maintain the information as confidential, or (2) may disclose the Agreement or its terms if required to do so pursuant to a subpoena, court order or order of any governmental agency, or by law, so long as the disclosing Party takes reasonable measures to maintain the information as confidential and

**Formatted:** Centered

provides all other Parties prompt notice, to the extent reasonably possible, prior to disclosure so that the other Parties, at their expense, may seek legal remedies to maintain the confidentiality of the information.

6. Agreed Statement. The only statement that a Party may make about the Action's resolution is that the Parties settled the Action on a mutually agreeable, confidential basis.

7. No Disparagement. For a period of four years, the Parties agree not to disparage each other, or Posdata's or InQuadron's past and present officers, directors or employees.

8. No Assignment. Each Party each represents and warrants that it or he has not heretofore assigned, transferred or hypothecated or purported to have assigned, transferred or hypothecated or will not in the future assign, transfer or hypothecate any debt, judgment, claim, liability, demand, action, cause of action, or any interest therein, based upon, or arising out of, or pertaining to, or concerning, or connected with any matter, facts, events, circumstances or things released herein.

9. Binding Effect. The provisions of this Agreement will be binding upon and inure to the benefit of the heirs, executors, beneficiaries, successors and assigns of each of the Parties. The person signing this Agreement on behalf of each Party has the full authority to enter into this Agreement and to bind the Party to this Agreement.

10. Representation. Each Party represents and acknowledges that it or he conferred with, and has been represented by counsel of its or his own selection with respect to this Agreement, and all matters covered by or related to its subject. Each Party represents that it or he has read this Agreement, or has had it read or explained to it or him by counsel, has been fully advised with respect to all rights which are affected by this Agreement, and is voluntarily entering into this Agreement.

11. Attorneys' Fees. Each Party shall pay its or his own attorneys' fees, costs, and other expenses arising out of the Action and the settlement thereof, except as expressly provided herein.

12. Continuing Jurisdiction. Pursuant to the Stipulated Consent Decree to be approved and entered by the Court pursuant to paragraph 3, above, the Parties agree that the Court shall retain jurisdiction over the Parties and over the subject matter herein for the purposes of enforcing this Agreement and the Stipulated Consent Decree, and all claims arising out of or any motion to enforce this Agreement or the Stipulated Consent Decree shall be brought in the Court and each Party consents to ongoing personal jurisdiction with respect to such matters.

13. No Waiver. The waiver of any breach of this Agreement or of the Stipulated Consent Decree by any Party will not be a waiver of any other subsequent breach.

14. Entire Agreement / No Modification. This Agreement is the final written expression and the complete and exclusive statement of all the agreements, conditions, promises and covenants between and among the Parties with respect to the subject matter hereof. This Agreement may not be altered, amended, or modified in any respect except by writing duly executed by all of the Parties, and specifically referring to this Agreement. This Agreement shall

Formatted: Underline

Formatted: Underline

Formatted: Underline

Formatted: Bullets and Numbering

Deleted: <#>Representations. Kim and InQuadron represent and warrant that the written answers they provided in response to written deposition questions, served on September 21 and November 21, 2007, are true and correct, and they acknowledge that Posdata relied on the information provided in those answers in determining whether and on what terms to settle its claims in the Action and enter into this Agreement. In the event of this representation and warranty is untrue, then Posdata's release of claims provided in paragraph 1 above, shall have no force and effect, and Kim and InQuadron shall waive any statute of limitations defense as to any such claims. ¶

Formatted: Centered

supersede and render null and void any and all prior agreements, implied, oral, or written, between the Parties.

15. Mutual Drafting / Construction. The terms of this Agreement have been freely negotiated by the Parties, and this Agreement shall not be construed against the drafter. Any presumption that uncertainties in a contract are interpreted against the party causing the uncertainty to exist is hereby waived by all Parties. The headings are inserted for convenience only and do not define, describe or limit the scope or intent of this Agreement of any of its terms.

Deleted: ,

16. Recitals and Exhibit. The recitals and exhibit to this Agreement are incorporated as if fully set forth herein in this Agreement.

17. California Law. This Agreement is governed by the laws of the State of California, without regard or effect given to choice of law principles.

18. Counterparts / Facsimile Signatures. This document may be executed in counterparts which shall together constitute the agreement of the Parties. Signature pages transmitted via facsimile shall have the same force and effect as original signatures transmitted through the mail.

Dated: _______________, 2007 POSDATA CO., LTD.

Formatted: Line spacing: single

By: ________________________________

Print Name: ___________________________

Title: ________________________________

Formatted: Line spacing: single

Formatted: Line spacing: single

Dated: _________________, 2007 INQUADRON, INC.

By: ________________________________

Print Name: ___________________________

Title: ________________________________

Formatted: Centered

Dated: ________________, 2007 SEYOUNG KIM

Formatted: Line spacing: single

______________________________

Formatted: Centered