# EXHIBIT R

Morgan, Lewis & Bockius LLP
One Market, Spear Street Tower
San Francisco, CA 94105
Tel: 415.442.1000
Fax: 415.442.1001
www.morganlewis.com

# Morgan Lewis
### COUNSELORS AT LAW

**Brendan G. Dolan**
Partner
415.442.1687
bdolan@morganlewis.com

January 4, 2008

## VIA FACSIMILE

The Honorable Patricia V. Trumbull
Magistrate Judge of the United States District Court
San Jose Division
280 South 1st Street
San Jose, California 95113

Re:     ***Posdata Co., Ltd. v. Kim***
        <u>U.S.D.C. No. C 07 2504 RMW</u>

Dear Judge Trumbull:

We are writing in anticipation of the conference on January 7, 2008. The purpose of this letter is to explain Plaintiff's position on the current status of the settlement.

The parties reached a "tentative" settlement on August 3, 2007 under the pretense that Defendants were insolvent. Accordingly, although Posdata has incurred hundreds of thousands of dollars in expenses arising from the misappropriation of its trade secrets, a tentative settlement was reached under which the defendants were to make no monetary payment to Posdata. Several contingencies were interposed to assure that all of Defendants' improper conduct would be disclosed to Posdata. The parties explicitly agreed at the August 3, 2007 settlement conference to a contingency that required Defendants to be forthright in providing complete and meaningful responses to Posdata's Rule 30(b)(6) written deposition questions so that Posdata would be able to proceed with a settlement without deposing Defendants. Defendants failed to honor this commitment as evidenced by their evasive responses served on October 24, 2007.

As an alternative to efforts to obtain complete responses to the written deposition questions, Defendants agreed to provide financial statements under oath. However, the statements reveal, at least as to Mr. Kim, that he is not insolvent as claimed.

Posdata is unwilling to complete any settlement while Defendants maintain evasive written deposition responses and make inaccurate representations regarding their financial status.

1-SF/7649757.1

Morgan Lewis
COUNSELORS AT LAW

The Honorable Patricia V. Trumbull
January 4, 2008
Page 2

There is no doubt that Posdata has genuine claims against Defendants as evidenced by the Court's June 27, 2007, restraining order virtually halting InQuadron's business activity and the minimal bond requirement imposed on Plaintiff. There is an abundance of incontrovertible evidence that Defendant Dr. Seyoung Kim and other former and current employees of Posdata formed Defendant InQuadron, Inc., while still employed by Posdata, to create their own company in the mobile WiMAX technology industry. Indeed, four of Kim's Korean associates have been **convicted** in Korea in connection with a criminal investigation, and other associates have confessed to stealing Posdata technology for Kim and InQuadron. One of Kim's associates will serve a **three-year prison sentence** for his involvement in Defendants' scheme. Moreover, the Seoul Korea Central District Prosecutors' Office has previously confirmed that Kim, and two other associates in the United States are wanted as the principals in the scheme to steal Posdata's proprietary technology for InQuadron's benefit.

During the settlement negotiations, Posdata relied in good-faith on Defendants' representations that they were financially insolvent. As Your Honor may recall, Defendants stated very early in the settlement discussions that they would declare bankruptcy if Posdata sought a monetary payment as part of any settlement because neither InQuadron nor Dr. Kim had the financial resources to make payments to Posdata. A review of Defendants' December 1, 2007 financial statements paints a different picture as they show that InQuadron has $30,689.05 in assets and that Dr. Kim has a net worth of $740,418. Defendants' collective assets of over three-quarters of a million dollars is a far cry from the "bankruptcy" they claimed at the settlement conference. Dr. Kim's financial statement lists a new luxury 2007 car valued at $28,000, $2,700 in cash, and $150,000 of mutual funds. In addition, the veracity of Dr. Kim's statement is doubtful as he does not even list his 2,000,000 shares of InQuadron common stock. Despite obvious omissions from Dr. Kim's financial statement and Defendants' initial misrepresentations regarding their financial status, Posdata has only requested a $150,000 payment from Dr. Kim (which represents his disposable liquid assets) as part of the settlement to help offset its costs in investigating and litigating this matter.

The parties agreed at the conference that the purpose of the written deposition questions was to enable Posdata to be satisfied that it had uncovered all of the improper conduct of Kim and InQuadron so that Posdata could move forward with the settlement with knowledge of the full extent of the damage to it. We spent a substantial amount of time after the initial settlement conference consulting with our client regarding various drafts of the Settlement Agreement and General Release, Consent Decree, and proposed Written Deposition Questions to InQuadron Pursuant to Federal Rule of Civil Procedure 30(b)(6). Apparently, much of that time was spent in vain because Defendants have not even allowed the parties to move past step one – which was to provide frank candid responses regarding their activities. InQuadron's responses to Plaintiff's written deposition questions are inadequate, incomplete, insufficient in detail, and contradict evidence within Posdata's possession. Defendants spent 34 days contemplating their answers and did not serve their responses until October 24, 2007. Although Defendants claimed they were overwhelmed by the number of questions posed, they simply responded "no" or "not

**Morgan Lewis**
COUNSELORS AT LAW

The Honorable Patricia V. Trumbull
January 4, 2008
Page 3

applicable" to many of the questions. Defendants' written responses are alarming because some of them are irreconcilable with evidence attached to Posdata's moving papers. The lack of depth and truthfulness provided by _many_ responses raises doubts as to whether Defendants are genuinely disclosing all information within their possession or knowledge. A brief review of only a portion of Defendants' responses will expose their inadequacy and untruthfulness.

For example, InQuadron states in response to **Question 10c** that it "has not developed any existing products or potential products to date." InQuadron also responds to **Question 12b** that it "did not commence material substantive research and development work in either the U.S. or Korea before PosData's legal demands and ultimately the onset of this litigation prevented such work from moving forward." Similarly, InQuadron responds to **Question 12e** by stating "[t]he work performed before legal issues forced a cessation of work was limited to product/technology conceptualization and development planning" and to **Question 12f** by denying any "research or development to Posdata's Digital Channel Card Unit ("DCCU") for the Pico RAS base station during its research and development" has taken place. These statements are simply not true based on the evidence within our possession. Although InQuadron claims that it did not develop products or commence material substantive research before this lawsuit was filed in May 10, 2007, correspondence between Seyoung Kim and InQuadron Chief Operating Officer Kenneth Lee dated March 18 and 19, 2007 definitively shows that InQuadron was developing and manufacturing a product they referred to in the correspondence as "a first prototype," "test board," "working demo board," and the "new Channel Card PCB." _See_ Exhibit 6 to the Supplemental Declaration of Ho Tae Han in Support of Posdata's Ex Parte Application. Among other things, the e-mail correspondence states:

> The channel card we sent to KR [Korea] is the first prototype with a couple of problems that needed to be fixed through new PCB. The new version is already in the fabrication stage in KR [Korea] by the help of a [Axstone] company.

This correspondence between two InQuadron officers discussing InQuadron "milestones" and other InQuadron matters clearly contradicts their verified responses to Posdata's written deposition questions.

In response to **Questions 12g through 12q**, Defendants also deny utilizing any Posdata technologies specified in the questions despite Kim and Lee's correspondence discussing the "first prototype," "test board," "working demo board," and the "new Channel Card PCB." Moreover, other Posdata documents attached to its moving papers clearly show that Defendants have some of these items within their possession. For instance, Kim received two emails with attached files named "MCCA PCB fab. Gerber data" and "MCCA REV>C GERBER DATA" from Choon Shin on February 20 and March 2, 2007 which contains information regarding Posdata's printed circuit board ("PCB") design and layout. _See_ Exhibit 11 to Mr. Han's Declaration. This Gerber data is exactly the type of information that InQuadron would need to fabricate and develop the "first prototype," "test board," "working demo board," and the "new

**Morgan Lewis**
COUNSELORS AT LAW

The Honorable Patricia V. Trumbull
January 4, 2008
Page 4

Channel Card PCB" referred to by Kim and Lee in their March 18 and 19, 2007 correspondence. *See* Exhibit 6 to Mr. Han's Supplemental Declaration.

In short, InQuadron denies developing products, denies commencing material research, and denies utilizing Posdata technology although evidence clearly shows they have Posdata trade secrets and technology in their possession and that they were in the process of developing and manufacturing a product they referred to in the correspondence as "a first prototype," "test board," "working demo board," and the "new Channel Card PCB." These inherent conflicts cause Posdata great concern because InQuadron has failed to reconcile these statements in light of the evidence within Posdata's possession. Defendants have failed to clarify whether the "board" referenced in the March 18 and 19, 2007 correspondence between Kim and Lee was in fact an InQuadron product or if the "board" was indeed Posdata property that was being misappropriated for the benefit of InQuadron. *Regardless of the answer, Defendants current verified responses are not responsive, not truthful, and fail to explain why two InQuadron officers are discussing "boards" even though Defendants deny developing products, commencing material research, or utilizing Posdata technology.*

InQuadron has also been less than forthcoming in many of their other responses as well. In response to **Questions 14 through 16**, InQuadron denies outsourcing "any research or development tasks or projects" or "manufacturing related to "WiMAX or WiBro products or technology," and denies outsourcing "the manufacturing if InQuadron products or technology." These denials ring hollow because evidence shows that Kim and InQuadron outsourced the manufacturing and research and development of WiMAX and/or WiBro technology. *See* Exhibits 11 and 23 of Mr. Han's Declaration and Exhibits 2 through 6 of Mr. Han's Supplemental Declaration.

Defendants' motives for rushing to conclude settlement without giving substantively sufficient answers raises red flags that may point to more sinister motives. In response to **Questions 22 through 24**, Kim indicates he does not plan to operate within the WiMAX or WiBro industry. However, in response to **Question 21** Kim states he intends "to continue employment with InQuadron in the same capacity and position with the same responsibilities," and during our November 6th conference call with Defense counsel he indicated that Kim and InQuadron may reenter the WiMAX industry in the very near future despite being "bankrupt." Defendants have not offered any further explanation for these contradictory statements or how Kim and InQuadron could reenter the WiMAX industry without utilizing Posdata technology.

A simple example of Defendants' non-cooperation can be found in their response to **Questions 25 and 26** in which InQuadron claims it has not organized its workforce. This is not true as Posdata has recovered organization charts from Kim's computer. *See* Exhibits 13 and 14 to Mr. Han's Declaration.

Plaintiff requested Defendants supplement their initial written responses and respond to additional written questions designed to give Defendants an opportunity to provide a frank

**Morgan Lewis**
C O U N S E L O R S  A T  L A W

The Honorable Patricia V. Trumbull
January 4, 2008
Page 5

candid responses to Posdata's inquiries without engaging in semantics or giving brief and vague answers. We also reminded Defendants that Plaintiff reserved the right to modify or change the language or terms in the Settlement Agreement and General Release or the Consent Decree based upon the truthfulness and substance of the responses subsequently received. Defendants refused to supplement their responses and subsequently agreed to provide Posdata with sworn financial statements to confirm their financial status. Contrary to Defendants' representations at the settlement conference, Defendants' combined net worth was greater than $750,000 as discussed above. Plaintiff cannot finalize the tentative settlement at this time because Defendants have failed to provide truthful responses to Posdata's written deposition questions and refuse to make a monetary payment to Posdata as part of any settlement.

Sincerely,

Brendan Dolan (sq)

Brendan Dolan

BGD/sg

cc: David Elkins, Esq. (via facsimile)