1  BRENDAN DOLAN, State Bar No. 126732
   L. JULIUS M. TURMAN, State Bar No. 226126
2  STEVEN J. GARRETT, State Bar No. 221021
   MORGAN, LEWIS & BOCKIUS LLP
3  One Market, Spear Street Tower
   San Francisco, CA  94105-1126
4  Tel:   415.442.1000
   Fax:   415.442.1001
5
   Attorneys for Plaintiff
6  POSDATA CO., LTD.

7

8                  UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10                    SAN JOSE DIVISION

11

12  POSDATA CO., LTD., a South Korean        Case No. C 07 2504 RMW
    corporation,
13                                           **PLAINTIFF POSDATA, INC.'S**
                    Plaintiff,               **OPPOSITION TO DEFENDANTS**
14                                           **SEYOUNG KIM'S AND INQUADRON,**
               vs.                           **INC.'S MOTION TO ENFORCE**
15                                           **SETTLEMENT**
    SEYOUNG KIM, an individual, and
16  INQUADRON, INC., a California            Date:  January 14, 2008
    corporation,                             Time:  3:00 p.m.
17
                    Defendants.
18

19

20      **I.      INTRODUCTION**

21          An unfortunate pattern has emerged in which Defendants Dr. Seyoung Kim ("Kim") and

22  InQuadron, Inc. ("InQuadron") continue to engage in deceptive behavior for their own benefit

23  and to the detriment of Plaintiff Posdata Co., Ltd.

24          The initial dispute between Plaintiff Posdata and Defendants Kim and InQuadron arose

25  from the misappropriation and theft of Posdata trade secrets, proprietary information and

26  technology by Defendants.  This Court entered a Temporary Restraining Order ("TRO") on June

27  27, 2007 against Defendant InQuadron based on the strong evidence Posdata had against

28  Defendants that: (1) Kim actively engaged in a separate business venture while employed by

MORGAN, LEWIS &
  BOCKIUS LLP
 ATTORNEYS AT LAW
  SAN FRANCISCO

1   Posdata; (2) Kim and others working with him in the United States and Korea utilized and

2   misappropriated Posdata trade secrets, property and proprietary information to work on

3   InQuadron products; and (3) Kim and InQuadron were actively preparing to enter a business

4   competitive with Posdata that utilized Posdata's trade secrets, property and proprietary

5   information.

6         At the request of Defendants, the parties were ordered to an Early Settlement Conference

7   before Magistrate Judge Patricia Trumbull on August 3, 2007.  After dropping a bombshell at the

8   settlement conference that Defendants were near bankruptcy and unable to pay any money

9   towards a settlement, the parties discussed the parameters of a tentative settlement.  Posdata made

10  it clear that any settlement with Defendants was conditioned on taking the depositions of Seyoung

11  Kim and others so that Posdata would be satisfied that it had uncovered all of the improper

12  conduct of Kim and InQuadron, could verify Defendants' financial status, and thus ultimately

13  move forward with a settlement with knowledge of the full extent of the damage caused by

14  Defendants' actions.  Defendants proposed that Posdata propound written deposition questions to

15  which Defendant InQuadron would be obligated to respond.  Posdata expressly reserved the right

16  not to move forward with the settlement based on the information provided by Defendants in

17  response to the questions.  At the end of the day, Judge Trumbull wanted to preserve the

18  momentum of the proceedings by reciting some of the parameters of the, as she referred to it on

19  the record, "tentative settlement."  There were several contingencies identified by the parties.

20        Following the settlement conference, Posdata's counsel propounded a set of written

21  deposition questions pursuant to Federal Rule of Civil Procedure 30(b)(6) that Defendants'

22  eventually provided responses that were evasive, non-responsive, internally inconsistent,

23  contradicted indisputable evidence, and clearly left open the possibility of the Defendants

24  continuing, immediately upon conclusion of the settlement, in the same business in which they

25  had been involved before.  Despite Plaintiff's meet and confer efforts, Defendants refused to

26  provide frank and candid responses as contemplated by the parties at the settlement conference.

27  Since it appeared attempting to obtain further responses would be fruitless, Posdata proposed that

28  Defendants Kim and InQuadron provide financial statements as an alternative to obtaining

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7652288.1                        2                      MPAS IN SUPPORT OF OPPOSITION
                                                            (C 07 2504 RMW)

1    information responsive to the written deposition questions.

2        Defendants dropped another bombshell via their financial statements which revealed they

3    had a combined net worth of over $750,000. Thus, Posdata had reluctantly engaged in tentative

4    settlement discussions with Defendants and agreed to a tentative settlement under the false

5    pretense that Defendants were nearly bankrupt. After Posdata demanded Defendants contribute

6    $150,000 towards settlement, Defendants brought this motion to enforce the "tentative

7    agreement" reached at the Early Settlement Conference.

8        Not only did the parties fail to reach a binding agreement at the conference, but

9    Defendants have made several hollow promises which they have not lived up to since the

10    conference. Essentially, Defendants want to force Plaintiff into a "binding" settlement despite the

11    clear evidence that the parties only reached a "tentative settlement" with several conditions that

12    Defendants never satisfied. Defendants attempt to divert the Court's condition to Posdata despite

13    Defendants own of bad-faith conduct as evidenced by their: (1) covertly engaging in the

14    misappropriation and theft of Posdata trade secrets, proprietary information and technology; (2)

15    falsely claiming to be near bankruptcy at the Early Settlement Conference; (3) failing to provide

16    frank and candid responses to Posdata's written deposition questions; and (3) failing to provide

17    financial statements without obvious omissions.

18    **II.    ARGUMENT**

19        Contrary to Defendants' claims, the parties did not agree to a final settlement to resolve

20    this action at the Early Settlement Conference. As discussed in greater detail below, Posdata

21    neither intended to, nor ever, bound itself to a final agreement. The parties discussed multiple

22    conditions as a prerequisite to finalizing any settlement, including but not limited to Posdata's

23    desire to engage in discovery to learn about the extent of Defendants' misappropriation and theft

24    of Posdata's trade secrets, proprietary information and technology. Second, Posdata, as well as

25    Magistrate Judge Trumbull, characterized the parties' settlement as "tentative." Third, the parties

26    never reached an agreement on several material terms as they were not concretely expressed at

27    the settlement conference. Rather, the parties acknowledged these terms would be negotiated

28    before becoming part of any proposed Consent Decree or General Release and Settlement

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7652288.1                                         3                    MPAS IN SUPPORT OF OPPOSITION
                                                                            (C 07 2504 RMW)

Agreement. In addition, Posdata reluctantly engaged in tentative settlement discussions under the false pretense that Defendants were financially insolvent. Finally, Defendants have failed to meet the first condition of any settlement from Posdata's perspective- providing frank responses regarding Defendants' illicit activities.

### A.    Posdata Reluctantly Participated in the Settlement Conference in Light of Defendants' Claims of Insolvency

Posdata participated in the August 3, 2007 Settlement Conference knowing it had already received a restraining order against InQuadron based on Posdata's strong evidence against Defendants. Posdata had clear evidence against Defendants that: (1) Kim actively engaged in a separate business venture while employed by Posdata; (2) Kim and others working with him in the United States and Korea utilized and misappropriated Posdata trade secrets, property and proprietary information to work on InQuadron products; and (3) Kim and InQuadron were actively preparing to enter a business competitive with Posdata that utilized Posdata's trade secrets, property and proprietary information. *See* Declaration of Ho Tae Han in Support of Opposition to Defendants Seyoung Kim's and InQuadron's, Inc.'s Motion to Enforce Settlement ("Han Opp. Decl.") ¶, 2. Posdata's initial suspicions were confirmed as four of Kim's Korean associates have been **convicted** in a Korean court and face prison sentences in connection with a criminal investigation related to Defendants' illicit activities. Moreover, the Seoul Korea Central District Prosecutors' Office has previously confirmed that Kim, and two other associates in the United States are wanted as the principals in the scheme to steal Posdata's proprietary technology for InQuadron's benefit.

Posdata has spent hundreds of thousands of dollars investigating, litigating and dealing with criminal and civil legal matters in the United States and Korea concerning the misappropriation of trade secrets by Kim and InQuadron and those working in concert with them in the United States and Korea. *See* Han Opp. Decl., ¶2. Posdata has retained forensic experts to assist in the data investigation and other matters to learn about the extent of Defendants' misconduct and has engaged attorneys to prosecute the misappropriation claims. *See id.* Because of the extraordinary expense to which Posdata has been required to go to protect its rights, it did

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7652288.1                                          4                    MPAS IN SUPPORT OF OPPOSITION
(C 07 2504 RMW)

1  not intend to settle the case without obtaining some compensation for the costs that it had

2  incurred. *See* Han Opp. Decl., ¶ 3.

3          At the beginning of the August 3, 2007 settlement conference, Defendants stated they

4  would not be able to make any monetary payments as part of <u>any</u> settlement because neither

5  InQuadron nor Dr. Kim had the financial resources to make payments to Posdata. *See* Han Opp.

6  Decl., ¶ 3; Declaration of Brendan Dolan in Support of Opposition to Defendants Seyoung Kim's

7  and InQuadron's, Inc.'s Motion to Enforce Settlement ("Dolan Decl."), ¶ 4. Defendants claimed

8  that they were financially insolvent and that both Kim and InQuadron were bankrupt or near

9  bankruptcy. *See* Han Opp. Decl., ¶ 3. A review of Defendants' financial statements in recent

10 months as discussed below, however, revealed that Defendants, particularly Defendant Kim, were

11 not nearly as insolvent as they claimed to be on August 3, 2007 when the parties discussed

12 settlement.

13         **B.      Posdata Placed Several Conditions on the Tentative Agreement**

14         Posdata made it clear that the "tentative" settlement with Defendants was pre-conditioned

15 on taking the depositions of Seyoung Kim and others so that Posdata would be satisfied that it

16 had uncovered all of the improper conduct of Kim and InQuadron, could verify Defendants'

17 financial status, and thus ultimately move forward with a settlement with knowledge of the full

18 extent of the damage caused by Defendants' actions. *See* Dolan Decl., ¶ 6. This information was

19 very important to Posdata since Kim and InQuadron were not going to be making a financial

20 payment due to their purported insolvency and because the case was settling before discovery,

21 such as depositions of Kim and InQuadron and others had taken place. *See* Han Opp. Decl., ¶ 4.

22 In part to address the fact that discovery had not yet taken place, Posdata sought Defendants'

23 agreement to produce Dr. Kim and others for oral deposition prior to moving forward with any

24 settlement. *See* Dolan Decl., ¶ 6. After Defendants refused to submit to oral depositions,

25 Defendants proposed that Posdata propound written deposition questions pursuant to Federal Rule

26 of Civil Procedure 30(b)(6) to which Defendant InQuadron would be obligated to respond. *See*

27 Dolan Decl., ¶6.    Posdata required that Defendants be examined so that it had a precise

28 understanding of: the extent to which Defendants still possessed Posdata trade secrets, property,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7652288.1                          5                  MPAS IN SUPPORT OF OPPOSITION
                                                                (C 07 2504 RMW)

1  proprietary information and technology; the disposition of these matters that Posdata conclusively

2  knew that Defendants had possessed; the identities of persons, entities and other businesses who

3  were involved in their activities, and related matters. *See* Han Opp. Decl., ¶ 4.    Posdata made it

4  clear that obtaining this information was a precondition going forward with the settlement and

5  that if it obtained information in this process that was materially different than what Posdata

6  believed to be the facts in the case, Posdata would not be willing to go forward with a settlement.

7  *See id.* Posdata's counsel also understood that if the responses revealed that the Defendants had

8  engaged in other illicit conduct not known, or if Defendants engaged in an even more serious or

9  significant nature than was already known to Posdata, Posdata could decline to go forward with

10  the settlement. *See* Dolan Decl., ¶ 6.    As discussed in greater detail below, Defendants

11  ultimately provided incomplete and evasive responses to the questions and have refused to

12  supplement their answers to address obvious internally inconsistent answers that contradict

13  indisputable evidence.

14      The parties also discussed several other aspects of the tentative agreement and agreed to

15  recite the framework of the tentative settlement agreement on the record, although the specific

16  terms of the Consent Decree and General Release and Settlement Agreement still needed to be

17  negotiated.  The following material terms of the settlement were identified as subjects that would

18  be addressed in an agreement, but the actual terms were not agreed to.

19      • "Some form of forensic review" of future InQuandron products was identified as a

20          subject that would need to be addressed in the agreement; however, the precise

21          form of such review was not agreed to.

22      • The parties agreed that the only public statements that could be made about the

23          settlement would be an "AGREED STATEMENT".  The terms of an AGREED

24          STATEMENT were never finalized or negotiated over.[1]

---

[1] The apparent intention of the Defendants is to use a settlement as some kind of leverage in the criminal proceedings in Korea.  This is direct evidence of Defendants' apparent anticipatory intention to violate the terms of the agreement. There has been no "AGREED STATEMENT" agreed to within the parties; and, in particular there has been no agreed statement by which the Defendants would be privileged to make any statement in any criminal proceeding in Korea.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7652288.1                                                6                          MPAS IN SUPPORT OF OPPOSITION
                                                                                          (C 07 2504 RMW)

- The Defendants were to respond to written deposition questions. Defendants' counsel expressly said, "The answers would be sworn by every person and any answers will, of course, InQuandron comply with all of its obligations and fulfillments for the 30(b)(6) in answering its questions." *See* Dolan Decl. ¶ 9, Ex. A.

Conspicuously absent from Defendants' moving papers is any reference to another contingency requested by Defendants' – that Posdata not interfere with Defendants' efforts to have criminal charges in Korea dismissed against Kim and Jeffrey Choi ***if*** the ongoing criminal prosecutions in Korea resulted in an acquittal, or a judgment that a minor crime or misdemeanor was committed. *See* Dolan Decl. ¶ 9, Ex. A. The parties agreed that Mr. Han was going to have to consult with his superiors after the conference to determine if that term was acceptable to Posdata. *Id.* As a result of the convictions and prison sentences handed down to Kim's associates in Korea, Defendants never raised this issue again and it was dropped from all of the proposed settlement documents.

### C.    The Recitation of Settlement Show That It Was "Tentative" In Nature

Defense counsel's claim that the parties intended the settlement to be binding and in fact recited this in front of Judge Trumbull before the recording machine was turned on is not an accurate an account of events. (*See* Defendants' Motion at 2:3-11). At the end of the day, the parties merely memorialized the framework of a settlement that was discussed under the pretense that Defendants were insolvent and that any settlement was subject to several contingencies that were interposed to assure that all of Defendants' improper conduct would be disclosed to Posdata. *See* Dolan Decl., ¶ 6. Even Judge Trumbull characterizes the parties' understanding as "… the settlement or proposed settlement, it's not yet finalized on the record …" *see* Dolan Decl. ¶ 9, Ex. A. Judge Trumbull indicated that she would issue "… a Minute Order that we had a settlement conference and I will put in the Minute Order that, how should I phrase it, **tentative settlement in the works and he usually picks up on that pretty fast. And, so that he will know that it looks like it is settling.**" *See id* (emphasis added). During the hearing, Plaintiff's

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7652288.1                    7                    MPAS IN SUPPORT OF OPPOSITION
(C 07 2504 RMW)

counsel noted on the record the tentative nature of the agreement and several contingencies by stating:

> … The know provision, the parties have agreed that Posdata may propound, take a deposition, a 30(b)(6) deposition by written questions, of InQuadron and that's one of the two contingencies to completion, that is one of the two contingencies on the finalization of the settlement, two or three contingencies. Parties have also agreed they enter, in addition to a consent judgment, a written settlement agreement. There were contingencies appropriate release claims. The, one of the contingencies that was, has been identified is that in the event that the criminal prosecutions in Korea result in an acquittal, or a judgment that a minor crime or misdemeanor has been committed and in the event thereafter that Mr., or Dr. Kim and Mr. Troy [sic] seek to have the charges against them dismissed in Korea, they will, Posdata will not object of their effort to do so. This is a contingency upon which Mr. Han is going to have to consult with his principals to determine if that term is acceptable to them.

*See* Dolan Decl. ¶ 9, Ex. A.

Absent from the transcript is any mention that the agreement is final and binding. The existence of material terms yet to be negotiated and contingencies that were never satisfied, precludes such a finding.

### D.     Defendants Provide Evasive and Untruthful Responses to Plaintiff's Questions

Following the settlement conference, Posdata's counsel, working together with Posdata and its forensic consultants, developed a set of written deposition questions pursuant to Federal Rule of Civil Procedure 30(b)(6). *See* Dolan Decl., ¶ 10. The process took somewhat longer than anticipated, because the questions had to be developed carefully to ensure that all the appropriate areas were being covered. Preparation of the written deposition questions was delayed for the additional reason that exactly what the deposition questions said would depend in part upon the result of the criminal trials which were in process in Korea. It was anticipated that these results would become known some time in September. *See* Dolan Decl., ¶ 9.

PosData served the written deposition questions on the Defendants on September 21, 2007. *See* Dolan Decl., ¶ 10. It was absolutely clear, as far as Posdata was concerned, that settlement documents could not and would not be finalized until receipt of satisfactory responses, meaning complete and non-evasive responses, to the written deposition questions. *See* Dolan

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7652288.1                    8                    MPAS IN SUPPORT OF OPPOSITION
                                                      (C 07 2504 RMW)

1    Decl., ¶ 6.

2    On or about October 24, 2007, PosData received the Defendants' responses to written

3    deposition questions after Defendants spent 34 days contemplating their answers. *See* Dolan

4    Decl., ¶ 11. Rather than being forthcoming, complete, and non-evasive, the responses were

5    internally inconsistent, contradicted indisputable evidence, and clearly left open the possibility of

6    the Defendants continuing, immediately upon conclusion of the settlement, in the same business

7    in which they had been involved before. *See* Dolan Decl., ¶ 11, Ex. B. A brief review of only a

8    portion of Defendants' responses will expose their inadequacy, untruthfulness, and illustrate the

9    overall evasiveness of Defendants' responses.

10    **1)    Defendants Have a "Product" Despite Denying Commencing Research or Development or Utilizing Posdata's Technology**

11    Remarkably, Defendants deny developing products, deny commencing material research,

12    and deny utilizing Posdata technology *despite* clear evidence that shows Defendants have Posdata

13    trade secrets and technology in their possession and that Defendants were in the process of

14    developing and manufacturing a product described as "a first prototype," "test board," "working

15    demo board," and the "new Channel Card PCB." Although InQuadron claims that it did not

16    develop products or commence material substantive research before this lawsuit was filed in May

17    10, 2007 in response to Posdata's written questions, correspondence between Seyoung Kim and

18    InQuadron Chief Operating Officer Kenneth Lee dated March 18 and 19, 2007 definitively shows

19    that InQuadron was developing and manufacturing a product they referred to in the

20    correspondence as "a first prototype," "test board," "working demo board," and the "new Channel

21    Card PCB." *See* Exhibit 6 to the Supplemental Declaration of Ho Tae Han in Support of

22    Posdata's Ex Parte Application. The email mentions "a first prototype," "test board," "working

23    demo board," and the "new Channel Card PCB" before stating:

24    The channel card we sent to KR [Korea] is the first prototype with a couple of
25    problems that needed to be fixed through new PCB. The new version is already in
       the fabrication stage in KR [Korea] by the help of a [Axstone] company.
26
27    *See id.* This correspondence between two InQuadron officers discusses InQuadron "milestones"

       and business strategy with regards to the research, development, and manufacture of "a first

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7652288.1                9                MPAS IN SUPPORT OF OPPOSITION
                                               (C 07 2504 RMW)

1    prototype," "test board," "working demo board," and the "new Channel Card PCB". *See id.*

2    Defendants, however, issued blanket denials in their responses to Posdata's deposition

3    questions inquiring whether Defendants developed products or commenced material research.

4    For example, in its written response to **Question 10c** Defendants claim that it "has not developed

5    any existing products or potential products to date." *See* Dolan Decl., ¶ 11, Ex. B at 6:25-27.

6    InQuadron also responds to **Question 12b** that it "did not commence material substantive

7    research and development work in either the U.S. or Korea before PosData's legal demands and

8    ultimately the onset of this litigation prevented such work from moving forward." *See* Dolan

9    Decl., ¶ 11, Ex. B at 8:3-9.  Similarly, InQuadron responds to **Question 12e** by stating "[t]he

10    work performed before legal issues forced a cessation of work was limited to product/technology

11    conceptualization and development planning" and to **Question 12f** by denying any "research or

12    development to Posdata's Digital Channel Card Unit ("DCCU") for the Pico RAS base station

13    during its research and development" has taken place. *See* Dolan Decl., ¶ 11, Ex. B at 9:1-10.

14    These denials are evasive and not truthful.

15    In response to **Questions 12g through 12q**, Defendants also deny utilizing any Posdata

16    technologies specified in the questions despite Kim and Lee's correspondence discussing the

17    "first prototype," "test board," "working demo board," and the "new Channel Card PCB." *See*

18    Dolan Decl., ¶ 11, Ex. B at 9:11 – 11:16.  Moreover, other Posdata documents attached to its

19    moving papers clearly show that Defendants have Posdata trade secrets and proprietary

20    information within their possession. For instance, Kim received two emails with attached files

21    named "MCCA PCB fab. Gerber data" and "MCCA REV>C GERBER DATA" from Choon Shin

22    on February 20 and March 2, 2007 which contains information regarding Posdata's printed circuit

23    board ("PCB") design and layout. *See* Exhibit 11 to Mr. Han's Declaration.  This Gerber data is

24    exactly the type of information that InQuadron would need to fabricate and develop the "first

25    prototype," "test board," "working demo board," and the "new Channel Card PCB" referred to by

26    Kim and Lee in their March 18 and 19, 2007 correspondence. *See* Exhibit 6 to Mr. Han's

27    Supplemental Declaration.

28    Defendants' responses caused Posdata great concern because the verified responses are

1  not responsive, not truthful, and fail to explain why two InQuadron officers are discussing

2  "boards" even though Defendants deny developing products, commencing material research, or

3  utilizing Posdata technology.  Defendants refuse to clarify whether the "board" referenced in the

4  March 18 and 19, 2007 correspondence between Kim and Lee was in fact an InQuadron product

5  or if the "board" was indeed Posdata property that was being misappropriated for the benefit of

6  InQuadron.  Regardless of the answer, Defendants' initial responses demonstrate no intent to

7  provide frank and candid responses as promised to Posdata at the settlement conference.

8

9          **2)**       **Defendants Deny Outsourcing the Manufacture of Any Products Despite Evidence Showing They Sent a "Product" to a Manufacturer**

10        In response to **Questions 14 through 16**, InQuadron denies outsourcing "any research or

11  development tasks or projects" or "manufacturing related to "WiMAX or WiBro products or

12  technology," and denies outsourcing "the manufacturing of InQuadron products or technology."

13  *See* Dolan Decl., ¶ 11, Ex. B at 11:25 – 12:21.  As previously discussed, Kim states in his email

14  correspondence to Lee that "… [t]he new version is already in the fabrication stage in KR

15  [Korea] by the help of a [Axstone] company."  *See* Exhibit 6 to Mr. Han's Supplemental

16  Declaration; *see also* Exhibits 11 and 23 of Mr. Han's Declaration and Exhibits 2 through 5 of

17  Mr. Han's Supplemental Declaration.

18

19          **3)**       **Defendants Provide Evasive and Contradictory Responses Regarding Other Subjects Such as Kim's Future Employment**

20        In response to **Questions 22 through 24**, Kim indicates he does not plan to operate within

21  the WiMAX or WiBro industry.  *See* Dolan Decl., ¶ 11, Ex. B at 14:14 – 16:1.  However, in

22  response to **Question 21** Kim states he intends "to continue employment with InQuadron in the

23  same capacity and position with the same responsibilities."  *See* Dolan Decl., ¶ 11, Ex. B at 14:4-

24  13.  Defendants responses leave open the possibility InQuadron and Kim will be in the same

25  business in which they had been involved before.  *See* Dolan Decl., ¶ 11.  Defendants have not

26  offered any further explanation for these contradictory statements or how Kim and InQuadron

27  could reenter the WiMAX industry without utilizing Posdata technology.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7652288.1                11                MPAS IN SUPPORT OF OPPOSITION
(C 07 2504 RMW)

1

2

### 4)    Defendants Provide Non-Responsive and Untruthful Responses to Even Simple Questions

3    A simple example of Defendants' non-cooperation can be found in their response to

4    **Questions 25 and 26** in which InQuadron claims it has not organized its workforce. *See* Dolan

5    Decl., ¶ 11, Ex. B at 16:2-15. This is not true as Posdata has recovered organization charts from

6    Kim's computer. *See* Exhibits 13 and 14 to Mr. Han's Declaration.

7    In addition to evasive responses described above, Defendants also responded to many

8    questions with a simple "no" or "not applicable." Soon after receiving the written deposition

9    responses, Posdata contacted Defendants' counsel, told them that the responses were inadequate,

10    and engaged in an effort to meet and confer to obtain more complete responses. *See* Dolan Decl.,

11    ¶ 12. Posdata was unwilling to proceed with a settlement, given the Defendants failure to have

12    complied with the express condition of providing responses to the written deposition questions.

13    *See id.* In addition, the Defendants were unwilling to provide supplemental responses to the

14    written deposition questions. *See* Dolan Decl., ¶ 15.

15

16    ### E.    Plaintiff's Attempts to Avoid an Impasse Regarding Defendants' Written Responses Results In Defendants Disclosing The True Nature of Their Financial Status

17

18    Posdata was eager to obtain a settlement, but it was believed that attempting to obtain

19    further responses to its written deposition questions would be an extremely costly and lengthy

20    process. *See* Dolan Decl., ¶ 16. Accordingly, Posdata in conjunction with its counsel developed

21    an alternative approach in an attempt to move past the impasse created by Defendants' failure to

22    provide complete and forthright responses to Posdata's written deposition questions. *See id.*

23    Posdata was skeptical of Defendants' contention that they had no money to contribute toward a

24    settlement and also concerned about whether Defendants actually had the resources to move

25    forward with development of technology based on the assets Defendants had stolen from Posdata.

26    *See* Dolan Decl., ¶ 16. Accordingly, as an alternative to obtaining information responsive to the

27    written deposition questions, Posdata proposed that Defendants Kim and InQuadron provide

28    financial statements. *See id.* Defendants agreed to do so, and provided the financial statements to

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    Posdata's counsel on December 1, 2007. *See id.*

2         Although Defendants claimed to be financially insolvent at the settlement conference, a

3    review of Defendants' financial statements paints a different picture as they show that InQuadron

4    has $30,689.05 in assets and that Dr. Kim has a net worth of $740,418. *See id.* In addition, the

5    veracity of Dr. Kim's statement was doubtful it contained at least one significant omission –

6    although he was a founder, director, officer and shareholder of InQuadron, his interest in

7    InQuadron, including his 2,000,000 shares of InQuadron common stock, was not indicated

8    anywhere on the financial statement. *See id.* These circumstances led Posdata to believe that he

9    should, in fact, be contributing toward the settlement, and Posdata made a demand for a $150,000

10   contribution from Kim toward the settlement on or about December 19, 2007. *See id.*

11

12   **III.    CONCLUSION**

13        For the foregoing reasons, Plaintiff requests this Court deny Defendants Motion to

14   Enforce Settlement.

15

16   Dated: January 11, 2008                    MORGAN, LEWIS & BOCKIUS LLP

17

18                                  By _____

19                                    Steven Garrett
                                      Attorneys for Plaintiff

20                                    POSDATA CO., LTD., a South Korean
                                      Corporation

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7652288.1                            13                    MPAS IN SUPPORT OF OPPOSITION
                                                              (C 07 2504 RMW)