**E-FILED on** __1/14/08__

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| POSDATA CO. LTD., <br><br> Plaintiff, <br><br> v. <br><br> SEYOUNG KIM AND INQUADRON, INC., <br><br> Defendants. | No. C-07-02504 RMW <br><br> ORDER DENYING DEFENDANTS' MOTION TO ENFORCE SETTLEMENT <br><br> **[Re Docket No. 44]** |

On August 3, 2007, plaintiff Posdata Co. Ltd. ("Posdata") and defendants Dr. Seyoung Kim ("Kim") and InQuadron, Inc. ("InQuadron") participated in a settlement conference with Magistrate Judge Patricia Trumbull. Defendants assert that the parties agreed to final settlement terms but that Posdata has subsequently sought to add further conditions to the previously-agreed upon terms. Defendants now move on shortened time to enforce the settlement they claim the parties reached on August 3, 2007. For the reasons set forth below, the court denies defendants' motion to enforce the settlement.

## I. BACKGROUND

### A. The Underlying Action

On May 10, 2007, Posdata filed a complaint against former employee Dr. Kim and his company, InQuadron alleging, among other things, theft of its trade secrets, conversion, and unfair

ORDER DENYING DEFENDANTS' MOTION TO ENFORCE SETTLEMENT—No. C-07-02504 RMW
MAG

competition. On May 18, 2007, Posdata amended its complaint and then on June 21, 2007, filed an *ex parte* request for a temporary restraining order ("TRO"). Defendants opposed Posdata's application on June 22, 2007. The court heard oral argument on the matter on June 26, 2007 and granted Posdata's application for a TRO on June 27, 2007. The parties subsequently agreed to continue the terms of the TRO pending resolution of Posdata's preliminary injunction hearing, the briefing and hearing on which the parties have stipulated to continue.

### B.   The Settlement Conference

The court ordered the parties to participate in a settlement conference before Judge Trumbull.[1] On August 3, 2007, the parties appeared for the settlement conference. Present for Posdata were its counsel Brendan Dolan and Steven Garrett, and Mr. Ho. Tae Han of Posdata; present for defendants were their counsel, David Elkins, as well as Dr. Kim and Ken Lee, InQuadron's general counsel and CFO. At that conference, after a long day of discussions, the parties put the following on the record:[2]

> [Plaintiff's counsel]: And technically you can be able to do whatever _____ for the purposes of getting discussion 1 ___ and ____ A-C _____.
>
> [Defendants' counsel]: I don't think that will be any problem.
>
> Judge: So let's reiterate that we are now putting the settlement or proposed settlement, it's not yet finalized on the record, and the first three points are taken from Judge Whyte's injunction order . . .
>
> [Plaintiff's counsel]: Yes, Your Honor.

Elkins Decl. Supp Mot. Enf. Settlement ("Elkins Decl."), Ex. B. The transcript continues with the parties discussing the terms of their agreement on the record, after which the parties discuss how to inform the undersigned of their progress:

> [Plaintiff's counsel]: Regarding Judge Whyte what I propose we can do is unless . . .
>
> Judge: Well I do, I do a Minute Order that we had a settlement conference and I will put in the Minute Order that, how should I phrase it, tentative settlement in the works

---

[1] Posdata states in its opposition that it was reluctant to participate in a settlement conference, but that the court ordered it to do so based upon defendants' request.

[2] As discussed in further detail below, defendants' counsel contends that prior to the terms being put on the record, the parties agreed that the settlement would be binding. Elkins Decl. Supp Mot. Enf. Settlement ("Elkins Decl.") ¶ 4.

ORDER DENYING DEFENDANTS' MOTION TO ENFORCE SETTLEMENT—No. C-07-02504 RMW
MAG                                              2

> and he usually picks up on that pretty fast. And, so that he will know that it looks like it is settling.
>
> [Plaintiff's counsel]: We submitted a stipulation for a continuance, there is some . . .
>
> Judge: I am sure you will have no problem with that.
>
> [Plaintiff's counsel]: Good enough, thank you.
>
> Judge: Anything?
>
> [Plaintiff's/Defendants' counsel]: That's it.

*Id.* On the record, Posdata's counsel stated that there would be some contingencies to settlement, one of which was that Posdata was to take a 30(b)(6) deposition of InQuadron by written questions. *Id.* ([Plaintiff's counsel]: ". . . The known provision, the parties have agreed that PosData may propound, take a deposition, a 30(b)(6) deposition by written questions, of InQuadron and that's one of the two contingencies to completion, that is one of the two of the contingencies on the finalization of the settlement, two or three contingencies."). The record also indicates that Mr. Han, present at the settlement conference on behalf of Posdata, would have to consult with his principals at Posdata regarding another term pertaining to prosecutions of InQuadron employees in Korea. *Id.*

Following the settlement conference, Judge Trumbull's clerk entered a form minute order on August 6, 2007 indicating that the case had settled. *See* Docket No. 33.

### C.     Post-Settlement Developments

Although the settlement conference transcript indicates that the parties agreed to get the permanent injunction and settlement agreement done by September 30, 2007, the parties were unable to finalize the settlement papers by that date. Defendants characterize this as foot-dragging in light of a final settlement between the parties; Posdata asserts that it was attempting to complete its investigation so that it could finalize the settlement.

As agreed, but after a seven-week delay, Posdata propounded questions upon InQuadron following the settlement conference on September 21, 2007. Elkins Decl. ¶ 8; Decl. Brendan Dolan Opp. Mot. Enf. Settlement ("Dolan Decl.") ¶ 10. Defendants responded to the questions on October 24, 2007. Elkins Decl. ¶ 9, Ex. E; Dolan Decl. ¶ 11. Posdata found that the responses "were internally inconsistent, contradicted indisputable evidence, and clearly left open the possibility of the Defendants continuing, immediately upon conclusion of the settlement, in the same business in

which they had been involved before." Dolan Decl. ¶ 11. In a letter dated November 21, 2007, Posdata expressed general concerns about the contents of the responses and requested specific clarifications. *Id.* ¶ 13, Ex. C. The letter also stated,

> We do not believe that we can go forward with the settlement without this information. However, for the purpose of keeping things moving at this time, we are enclosing a draft of the Settlement Agreement and General Release and the Consent Decree. We retain the right, however, to modify or change the language in the Settlement Agreement and General Release or the Consent Decree based upon the truthfulness and substance of the responses we receive from your clients.

*Id.*, Ex. C. Eventually, as a compromise to requiring defendants to respond to additional questions, Posdata subsequently requested financial statements for Kim and InQuadron. *Id.* ¶ 16.

Posdata asserts that the receipt of the requested financial statements gave it significant pause. During the settlement discussions, defendants had represented that continued litigation would force Dr. Kim and InQuadron into bankruptcy and that they had no money to contribute toward settlement. Dolan Decl. ¶¶ 4, 16. Accordingly, the settlement terms the parties agreed to on August 3, 2007 did not include any monetary payments to Posdata by defendants. The financial statements, however, indicated to Posdata that Dr. Kim had assets of approximately $750,000. *Id.* ¶ 16. On December 19, 2007, Posdata's counsel contacted defendants' counsel, leaving a message that his clients wanted to to include a payment of $150,000 in the terms of the settlement agreement. *Id.*; *see also* Elkins Decl. ¶ 23, Ex. N. The parties discussed the matter, and had a further settlement conference with Judge Trumbull on December 21, 2007. Elkins Decl. ¶ 26. At that conference, the parties agreed to provide Posdata an additional two weeks to reflect on its position and consider the best way to proceed. *Id.* A further settlement conference was scheduled for January 2008.

Prior to the settlement conference set for January 7, 2008, Posdata submitted a letter to Judge Trumbull stating that it was unwilling to finalize the settlement with the defendants because post-settlement discovery indicated inconsistencies with defendants' representation at the settlement conference that Posdata considered to be material. *See* Elkins Decl., Ex. R at 5 (January 7, 2008 letter to Judge Trumbull summarizing reasons for plaintiff's unwillingness to finalize the settlement). Judge Trumbull's clerk entered a minute order on January 7, 2008 stating that the case was not settled and that "[p]ost conference correspondence indicates a breakdown in settlement process."

ORDER DENYING DEFENDANTS' MOTION TO ENFORCE SETTLEMENT—No. C-07-02504 RMW
MAG                                                 4

1  *See* Docket No. 43.  On January 9, 2008, defendants moved on shortened time to enforce the
2  settlement.  The court shortened time, and the motion was heard on January 14, 2008.

## II.  ANALYSIS

Defendants ask the court to enforce the settlement agreement with Posdata on the basis that it has already agreed to the terms of the settlement on the record.  Courts have inherent power to enforce settlement agreements between the parties in pending cases.  *See Metronet Services Corp. v. U.S. West Communications*, 329 F.3d 986, 1013-1014 (9th Cir.2003) *cert. granted and judgment vacated on other grounds by Quest Corp. v. Metronet Services Corp.*, 124 S.Ct. 1144 (2004). Specifically, an oral agreement made in open court on the record as to the material terms is a binding agreement.  *See Doi v. Halekulani Corp.*, 276 F.3d 1131, 1134 (9th Cir. 2002).  "An agreement announced on the record becomes binding even if a party has a change of heart after he agreed to its terms but before the terms are reduced to writing."  *Id.* at 1138 (citation omitted).  As defendants acknowledge, an enforceable settlement requires that the parties intended to bind themselves and reached agreement on material terms.  *Callie v. Near*, 829 F.2d 888, 891 (9th Cir. 1987) ("In addition to the intent of the parties to bind themselves, the formation of a settlement contract requires agreement on its material terms.").

For example, in *Doi v. Halekulani Corp.*, the parties had negotiated a settlement that was placed on the record before the district court.  276 F.3d at 1134.  The parties agreed that they would sign a written agreement memorializing the settlement, as well as a stipulation dismissing the action. *Id.* at 1135.  The plaintiff subsequently declined to sign the agreement or stipulation, seeking instead to renegotiate the terms of the settlement.  *Id.*  Thereafter, the district court granted the defendant's motion to enforce the settlement agreement and awarded sanctions against plaintiff.  *Id.* at 1136. The Ninth Circuit affirmed the ruling, holding that the district court had not abused its discretion in enforcing the settlement agreement because parties clearly entered into a binding agreement in open court. The Ninth Circuit agreed with the district court that the terms and existence of the agreement were on the record and that the parties' written agreement accurately reflected the terms of the agreement on the record.  *Id.* at 1139-40.

1    Here, by contrast, the record is by no means clear that there was a final settlement agreement
2 between the parties. In support of their contention that the parties had entered into a binding
3 agreement, defendants' counsel states by declaration:

> Because the magistrate judge courtrooms use recordings instead of court reporters, counsel's recitation of the terms was recorded. Unfortunately, the recording machine was not turned on until after the recitation that the settlement was intended to be binding had been spoken. The remaining recitation, however, along with the fact that the settlement was put on the record at all, confirm its binding nature.

7 Elkins Decl. ¶ 4.

8    Far from confirming that the settlement was binding, the court finds that the record confirms
9 that the settlement was neither final nor binding. As set forth above, on the record, Judge Trumbull
10 twice indicated that the settlement was not final, referring to the settlement once as "proposed" and
11 again as "tentative." She, in fact, explicitly stated that the settlement "[is] not yet finalized on the
12 record." Elkins Decl., Ex. B. Also on the record, the plaintiff's counsel references at least two
13 contingencies to final settlement: (1) the deposition of InQuadron by written questions; and (2) Mr.
14 Han's consultation with Posdata principals to determine if a term relating to prosecutions in Korea
15 was acceptable. *Id.* The statement of these contingencies, unopposed by defendants' counsel on the
16 record, evidences that the parties did not intend the settlement to be final or binding. Further, when
17 the parties were discussing a date by which the settlement documents would be completed, plaintiff's
18 counsel again referred to the settlement as a "proposed settlement." *Id.* ("We have agreed that as a
19 part of this whole settlement in terms of the dates, we have agreed on the, on the probing or
20 injunction motion and that the terms of the settlement, make that the proposed settlement may
21 actually be completed by, I don't think we agreed to a specific date, I want to say September 30th, is
22 that okay?").

23    Defendants advance further arguments why the parties intended to be binding: (1) that the
24 mere fact that the terms of the settlement were discussed on the record indicates that the parties
25 meant the terms to be binding; (2) that the level of detail recited on the record indicated the
26 settlement was meant to be binding; (3) that each party's representative's "affirmative expressions of
27 understanding" and the "pleasantries and relief expressed by all" after the settlement conference had
28 concluded demonstrated that the parties were aware that the settlement was completed; and (4) that

the post-settlement communications between the parties did not indicate the terms of the settlement would vary until Posdata made its demand to add a monetary component.

Based on the record alone, the court is convinced that the terms of the settlement between the parties were not intended to be final or binding. As evidenced by the repeated reference by the court and plaintiff's counsel to the "proposed" or "tentative" settlement and the contingencies to final settlement, the parties did not place a final agreement on the record. Defendants' additional arguments regarding the parties' intention for the settlement to be binding are without merit. The record strongly suggests that the settlement was not intended to be final and the additional evidence to which defendants cite regarding the implications of putting the settlement on the record and the parties' behavior does not alter that suggestion. Further, the court does not find that the parties' post-settlement communications evidence that the settlement terms had been finalized. Even though Posdata's additional demand for monetary damages from defendants came in December, at a minimum, Posdata's November 21, 2007 letter concerning defendants' responses to the 30(b)(6) questions states that the terms of the settlement were subject to change.[3] Dolan Decl., Ex. C ("We retain the right, however, to modify or change the language in the Settlement Agreement and General Release or the Consent Decree based upon the truthfulness and substance of the responses we receive from your clients.").

The court just concludes that the parties did not enter into a final settlement agreement. Without a final settlement agreement, there is no basis for the court to enforce a settlement.

### III.  ORDER

For the foregoing reasons, defendants' motion to enforce the settlement is denied. The parties shall appear on February 15, 2008 for a further case management conference. The parties shall submit a joint case management statement by February 8, 2008.

DATED:     1/14/08

*Ronald M Whyte*
RONALD M. WHYTE
United States District Judge

---

[3] This is particularly true when considering Posdata's reservation of its right to change the language in the settlement documents in light of plaintiff's counsel's statement on the record that conducting a 30(b)(6) examination was a contingency to finalizing the settlement.

ORDER DENYING DEFENDANTS' MOTION TO ENFORCE SETTLEMENT—No. C-07-02504 RMW
MAG                                                                 7

1  **Notice of this document has been electronically sent to:**

2  **Counsel for Plaintiff:**

3  Brendan Dolan           bdolan@morganlewis.com
   Steven John Garrett     steven.garrett@morganlewis.com
4  L. Julius M. Turman     jturman@morganlewis.com

5  **Counsel for Defendants:**

6  David S. Elkins              delkins@ssd.com
   Nathan Lane , III            nlane@ssd.com
7  Allison Elizabeth Pitigoi    apitigoi@ssd.com,krose@ssd.com

8  Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**    1/14/08                        /s/ MAG
                                                     **Chambers of Judge Whyte**

**United States District Court**
For the Northern District of California

ORDER DENYING DEFENDANTS' MOTION TO ENFORCE SETTLEMENT—No. C-07-02504 RMW
MAG          8