MORGAN, LEWIS & BOCKIUS LLP
BRENDAN G. DOLAN, State Bar No. 126732
L. JULIUS M. TURMAN, State Bar No. 226126
STEVEN J. GARRETT, State Bar No. 221021
One Market, Spear Street Tower
San Francisco, CA  94105-1126
Tel:    415.442.1000
Fax:   415.442.1001

Attorneys for Plaintiff
POSDATA CO., LTD.


SQUIRE, SANDERS & DEMPSEY L.L.P.
DAVID S. ELKINS (State Bar # 148077)
ALLISON E. PITIGOI (State Bar # 242211)
600 Hansen Way
Palo Alto, CA  94304-1043
Tel:    650.856.6500
Fax:   650.843.8777

Attorneys for Defendants
SEYOUNG KIM and INQUADRON, INC.,

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| POSDATA CO., LTD., a South Korean corporation,<br><br>               Plaintiff,<br><br>      vs.<br><br>SEYOUNG KIM, an individual, and INQUADRON, INC., a California corporation,<br><br>               Defendants. | Case No. C 07 2504 RMW<br><br>**JOINT CASE MANAGEMENT CONFERENCE STATEMENT**<br><br>Date:    February 15, 2008<br>Time:   10:30 a.m.<br>Judge:  Hon. Ronald M. Whyte<br>Ctrm.:   6 |

Plaintiff PosData Co., Ltd. ("Plaintiff" or "PosData") and defendants Dr. Seyoung Kim ("Dr. Kim") and Inquadron, Inc. ("InQuadron") (collectively "Defendants") (together hereinafter as the "Parties") timely submit this Joint Case Management Conference Statement in connection with the Initial Case Management Conference scheduled for February 15, 2008 at 10:30 a.m. in Courtroom 6 of this Court.

## I. JURISDICTION & SERVICE

The parties do not dispute that this Court has subject matter jurisdiction through diversity of citizenship and may exercise personal jurisdiction over Defendants. Venue is proper in this District and intradistrict venue is proper in the San Jose Division as at least some of the conduct allegedly giving rise to Posdata's claims took place in Santa Clara County.

No parties remain to be served.

## II. FACTS

Due the technological complexities involved in this case, Posdata has included an extended recitation of its contentions of fact for the Court's benefit. Defendants disagree with Posdata's statement and thus follow with a short statement of their own.

*Plaintiff's Statement of the Facts*:

Posdata has been a leader in the development of mobile Worldwide Interoperability for Microwave Access, ("WiMAX") technology since 2004. Mobile WiMAX is a next-generation wireless telecommunications technology which enables users to have access to broadband wireless Internet while traveling at high speeds across large geographic areas, seamlessly receiving data and multimedia services. Posdata's substantial work in developing WiMAX technology is principally manifested by its FLYVO which is Posdata's mobile WiMAX technology product line. FLYVO is a complete end-to-end system providing base stations, control servers, network and customer management systems, chipsets, and end user mobile devices.

Defendant Kim was first hired by Posdata as Director for the America R&D Center in San Jose in 2004. From February 2005 to June 2006, Kim was Posdata's Director for R&D Lab 1, the "core technology development team" which later became the System Engineering Lab in July 2006. During early 2006, Kim had pressed the company to let his team develop a small base station. Posdata, however, instructed Kim and his team to dedicate their resources to enhancing the core technology itself. Development of the small base station was the responsibility of the team that was then known as R&D Lab 2. Despite instructions to the contrary, Defendant Kim and other Posdata employees, unbeknownst to Posdata and without authorization, used Posdata's

1  resources and concentrated their efforts on developing the smaller base station and what they
2  referred to as the Modular Channel Card Assembly ("MCCA) for the base station, which they
3  also called the "Turtle Card."

4  Kim and Posdata entered into an employment and separation agreement on October 27,
5  2006. The agreement provided that: (1) Kim would remain an employee through June 17, 2007
6  even though he would no longer be working on any Posdata projects; (2) the company would
7  provide him with an apartment and automobile for that period of time; and (3) that Kim would
8  protect and not disclose the company's trade secrets. Although Kim was to remain an employee
9  through June 17, 2007, Kim was not to work on any Posdata projects as of October 27, 2006, and
10 was to refrain from any contact with Posdata's San Jose facility.

11 Because of increasingly uncooperative and hostile behavior by Kim and his team, Posdata
12 grew suspicious of them. It engaged the services of Kroll, Inc., to conduct a forensic computer
13 and data investigation in February/March 2007. The Kroll investigation revealed that Dr. Kim's
14 team constructed a design for its MCCA/Turtle Card by utilizing Posdata's PCB design and
15 layout, MAC and PHY source code and proprietary architecture for interface between hardware
16 and software. Kim took Posdata's DCCU core technology for use in the smaller base station and
17 created an almost identical version of the DCCU- the MCCA/Turtle Card. Dr. Kim's team also
18 took Posdata's test methods, comparison data, results of the trial runs from NTT DoCoMo, and
19 interoperability test data on the communication between Posdata's RAS and GCT mobile station
20 chip, to gain information about how its knock-off MCCA/Turtle Card, which was essentially the
21 same as the Pico RAS, would perform.

22 Kim and associate Kenneth D. Lee started a new business venture to compete against
23 Posdata in the WiMAX industry on December 4, 2006, even though Kim was still an employee of
24 Posdata. While employed by Posdata, Kim and other individuals actively solicited current and
25 former Posdata employees to work for Inquadron. The Kroll investigation uncovered Inquadron's
26 "2007 Expense Plan" that listed the salaries that Inquadron would pay to 24 individuals, including
27 22 current and former Posdata employees, for the time period of March through December 2007.
28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7664309.1                                3                         CASE NO. C 07 2504 RMW
                                                                        JOINT CMC STATEMENT

       Inquadron also formed a business partnership with Axstone Technology Co., Ltd. in Korea to manufacture the Printed Circuit Board ("PCB") for the MCCA/Turtle Card. The correspondence showed that both companies planned to develop the product and share profits.

       Kim, while still employed by Posdata, misappropriated the company's intellectual property, trade secrets and confidential proprietary information by unlawfully soliciting Posdata employees to steal trade secrets and confidential information from Posdata. The May 18, 2007, Seoul Central District Prosecutors' Office confirmed in a news release of its investigation that Kim and his associates attempted to leak the WiBro (mobile WiMAX) Core Technology. The release names seven principal offenders, including Dr. Seyoung Kim, Choon Shin, Jong Kwan "Jeffrey" Choi, Hwayong Joung, Seongdong Park, Jongwook Lee, and Sang Geun Hwang. *Id.* Joung, Park, Lee, and Hwang were arrested by the Korean police and indicted for trade secret misappropriation. Currently, the Korean authorities are seeking to bring Kim, Shin, and Choi back to Korea to face criminal charges. The release stated Joung stole proprietary and confidential documents from Posdata, including: (1) technical memoranda about its technology; (2) design documents reflecting the system interface architecture of how to implement certain hardware and software; and (3) performance documents including test data. (*Id.*) According to the release, Park and Lee stole MAC source code for use in developing Inquadron's mobile WiMAX system. The release also notes Hwang stole Posdata's interoperability test results, which provided technical feedback regarding the performance of Posdata's base station and its components. Although not all of the relevant facts have been uncovered, these investigations have revealed substantial evidence of a blatant pattern of wrongdoing by Kim and his associates. Four of Kim's Korean associates have been convicted in a Korean court and face prison sentences in connection with a criminal investigation related to Defendants' illicit activities.

    *Defendants' Statement of the Facts*:

       Posdata accuses defendants Dr. Kim and InQuadron ― the company Dr. Kim recently founded ― of taking Posdata's purported trade secrets and other "proprietary" information in an attempt to compete with and/or usurp Posdata's alleged future wireless communications business. That business is creating hardware for a system, branded "FLYVO," for providing wireless

broadband connectivity over long distances compliant with the Korean mobile wireless standard, called "WiBro" (for *w*ireless broadband).

Defendants vehemently deny the charges. Dr. Kim and other former Posdata employees left that company to start fresh in a new business — InQuadron — that was founded to compete in a similar (though broader) area of wireless communications. Their departures were fueled by a shared belief that Posdata's business was being managed in an increasingly irrational manner. But Dr. Kim and InQuadron did not want and did not need anything from Posdata. Indeed, they *expected* scrutiny from Posdata given that Kim and most of InQuadron's new employers had worked together there. The business plan for InQuadron was to design and build from scratch a new modem for WiMax wireless communication base stations made by third parties. Ultimately, InQuadron's founders hoped to expand the business by creating a WiMax "channel card" (analogous to a PC motherboard), but to miniaturize it into a system on a chip (an "SoC"). InQuadron envisioned becoming a WiMax chipset supplier for basestation and mobile device manufacturers (perhaps even Posdata) — something wholly different from FLYVO or anything Posdata planned.

Despite admonitions by InQuadron's founders not to take anything with them from Posdata or any other prior employer, Posdata's evidence appears to show that Kim and/or other InQuadron personnel were sent or came into possession of some Posdata materials. In addition, InQuadron briefly found itself in possession of a Posdata test board, called a "turtle card," which InQuadron returned. Posdata seeks to buttress its charges with news of prosecutions in Korea of InQuadron employees for their alleged theft of Posdata trade secrets.

Posdata's evidence, when taken as a whole, gives the superficial appearance that someone did something wrong. That effect is amplified somewhat by e-mails or other communications to and from Dr. Kim or other Korean-born InQuadron personnel, whose English is often imprecise and can be argued in different ways. The Court's entry of a TRO —though a much narrower one than Posdata sought — on the basis of such evidence is understandable, given both the superficial appeal of Posdata's evidence and the 23 hours that defendants had to oppose Posdata's motion.

In reality, however, Posdata faces several insurmountable hurdles in the long run of this action. First, the purported trade secrets at issue are not trade secrets at all. Second, even if it could show trade secrets were at stake, Posdata cannot show either (1) intent (which is required for misappropriation) or (2) actual use. While trade secret misappropriation can occur without actual use, a plaintiff cannot show damages if not deprived of its own use of the trade secret and if the defendants did not use it. Third, any damages are speculative in the extreme. Posdata alleges that defendants stole trade secrets pertaining to the design of Posdata's WiBro basestation channel card, related source code and the like. But Posdata has not alleged that defendants somehow impeded Posdata's development of its FLYVO basestation. Nor has Posdata alleged that defendants have done anything to impede Posdata's sales of FLYVO systems — which are apparently limited to one or two prototypes never used in an actual WiBro or WiMax network.

<u>Principal Factual Issues in Dispute</u>:

- The Parties disagree as to whether Inquadron was created to directly compete against Posdata.
- The Parties also disagree as to whether Defendants, including their agents and employees, misappropriated any of Posdata's intellectual property, trade secrets and confidential proprietary information.
- Although the Parties agree that some Posdata property was found to be within Defendants' possession, the Parties disagree as to which Posdata property was taken by Defendants and whether any property was taken or used for illicit purposes.

**III.   LEGAL ISSUES**

Among the key legal issues in the case are the following:

- Whether Defendants' alleged trade secrets qualify as trade secrets under the California Uniform Trade Secret Act (Cal. Civ. Code §3426 *et seq.*) (in other words, did they have independent value from not being generally known, and did Posdata take reasonable measures under the circumstances to maintain its alleged trade secrets as confidential?)

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7664309.1                                  6                       CASE NO. C 07 2504 RMW
                                                                        JOINT CMC STATEMENT

1  - Assuming *arguendo* Defendants were in possession of Posdata's protected trade
2    secrets or confidential proprietary information, to what extent, if any, did
3    Defendants make use of it?
4  - Whether Defendants' conduct constitutes misappropriation of Plaintiff's trade
5    secrets and confidential proprietary information pursuant to the Uniform Trade
6    Secrets Act found at California Civil Code §§ 3426.1, *et seq*.
7  - Whether Defendants' alleged conduct constitutes other torts, including common
8    law unfair competition, statutory unfair competition (under Cal. Bus. & Prof. Code
9    §17200 *et seq.*), interference with Posdata's prospective economic advantage
10   and/or contractual relations and conversion.
11 - Whether Dr. Kim's terminated employment agreement with Posdata was or is
12   governed by California law, and whether he breached that agreement.
13 - Whether Dr. Kim breached his implied duty of loyalty to Posdata.
14 - Whether Defendants by virtue of their alleged conduct have been unjustly enriched
15   by retaining Plaintiff's profits, gains, and/or advantages.
16 - Whether Defendants' alleged conduct justifies a determination that they be
17   deemed constructive trustees for the benefit of Plaintiffs pursuant to California
18   Civil Code Section 2224.
19 - Whether Defendants have been damaged by Defendants' alleged conduct and, if
20   so, whether such damages can be calculated with required certainty.
21 - To the extent that Defendants are held liable for any of the torts alleged by
22   Posdata, whether Posdata can establish the elements necessary for an award of
23   punitive damages.

### IV.  MOTIONS

On June 27, 2007, the Court granted, in part, Plaintiff's Application for Temporary Restraining Order against Inquadron. The Court enjoined and restrained Kim and Inquadron from engaging in or performing any of the following acts: 1) using Plaintiff's trade secrets or proprietary information for any research and development purposes; 2) using Plaintiff's trade

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7664309.1                             7                    CASE NO. C 07 2504 RMW
                                                                JOINT CMC STATEMENT

1  secrets or proprietary information for any commercial purposes; or 3) disclosing, copying or
2  transmitting Plaintiff's trade secrets or proprietary information.
3        On January 9, 2008, Defendants filed a Motion to Enforce Settlement and a Motion for
4  Order Shortening Time for Hearing Regarding Defendants' Motion to Enforce Settlement.  On
5  January 10, 2008, the Court granted Defendants Motion to Shorten Time and set the hearing for
6  January 14, 2008.  Following the hearing, the Court issued an order on January 14, 2008 denying
7  Defendants' Motion to Enforce Settlement.
8        The hearing on Plaintiff's Motion for Preliminary Injunction was continued to February
9  15, 2008 following the early settlement conference.  However, the Court has ordered that the
10 initial case management conference be held on February 15, 2008 and thus the preliminary
11 injunction hearing was vacated.  The Parties expect the Court will set a new date at the case
12 management conference for hearing Plaintiff's Motion for Preliminary Injunction.  Because they
13 do not need, want or use any of the information or property covered by the TRO, Defendants
14 would stipulate to a preliminary injunction in the form of the Court's TRO.

15 **V.    AMENDMENT OF PLEADINGS**
16       The Parties do not currently anticipate any amendment of the pleadings.

17 **VI.   EVIDENCE PRESERVATION**
18       Plaintiff has taken appropriate steps to preserve evidence relevant to the issues reasonably
19 evident in this action, including the retention of relevant information related to the allegations in
20 its amended complaint as well as the forensic examination of the computers of Kim, Jeffrey Choi,
21 and other former Posdata employees.  Immediately on being served with process, Defendants
22 engaged a computer forensics company to image and preserve all of their computer systems and
23 Dr. Kim's private email account.

24 **VII.  INITIAL DISCLOSURES**
25       The Parties have timely met and conferred pursuant to Rule 26 of the Federal Rules of
26 Civil Procedure.  The parties did not exchange initial disclosures following the early settlement
27 conference based on their tentative settlement.  Because initial disclosures have not occurred as of
28

the filing of this Joint Statement, the Parties have not included a description of such disclosures herein.

## VIII. DISCOVERY

The parties exchanged written discovery requests, including interrogatories and requests for production, prior to the August 3, 2007 early settlement conference. Following the settlement conference, Posdata's counsel propounded a set of written deposition questions pursuant to Federal Rule of Civil Procedure 30(b)(6). The Parties met and conferred regarding Defendants' written responses to the Rule 30(b)(6) deposition questions because Plaintiff found the responses to be evasive, non-responsive, internally inconsistent, contradictive of indisputable evidence, and clearly left open the possibility of the Defendants continuing, immediately upon conclusion of a settlement, in the same business in which they had been involved before. Since the Parties disagreed whether Defendants should supplement their responses, Defendants provided financial statements as an alternative to providing further information.

Plaintiff anticipates that it will engage in further written discovery and seek to depose Defendants, Kenneth Lee, and other Inquadron employees.

Defendants' ability to maintain their defense of this action is in question because of financial constraints. But for those constraints, Defendants would focus their discovery on whether Posdata took proper steps to protect its confidential information; the value, if any, of the information allegedly taken; and the damages, if any, Posdata claims to have suffered.

## IX. CLASS ACTIONS

This matter is not a class action.

## X. RELATED CASES

The parties are currently unaware of any related cases.

## XI. RELIEF SOUGHT

Plaintiff alleged the following causes of actions in its First Amended Complaint filed May 18, 2007: (1) Misappropriation of Trade Secrets; (2) Interference with Prospective Economic Advantage; (3) Interference with Existing Economic Relations; (4) Breach of Contract; (5) Breach of Duty of Loyalty; (6) Interference with Contract; (7) Conversion; (8) Unfair

1  Competition, Cal. Bus. & Prof. Code § 17200 and Common Law; (9) Unjust Enrichment; and
2  (10) Constructive Trust. Plaintiff seeks relief based on its alleged causes of action in the form of:
3  (1) Compensatory damages; (2) Consequential damages; (3) Statutory damages; (4) Punitive
4  damages; (5) An accounting of all revenues and profits received by Defendants as a result of his
5  misconduct; (6) Costs; (7) Interest at the legal rate; (8) Attorney's fees; (9) Preliminary and
6  permanent injunctive relief enjoining Defendants from disclosing or using Posdata's trade secrets
7  or confidential and proprietary information or further breaching their legal obligation to plaintiff;
8  and (10) All other relief as the Court may deem just and proper.
9  Defendants seek a judgment in their favor.

## XII. SETTLEMENT AND ADR

At the request of Defendants and agreement of Posdata, the Parties were ordered to an Early Settlement Conference before Magistrate Judge Patricia Trumbull on August 3, 2007. The Parties participated in the settlement conference and reached a "tentative settlement" subject to several contingencies identified by the Parties. At the end of the day, Judge Trumbull wanted to preserve the momentum of the proceedings by reciting some of the parameters of the, as she referred to it on the record, "tentative settlement."

Following the conference, the Parties continued to negotiate but the tentative settlement agreement ultimately fell part. Defendants sought to enforce the settlement on January 9, 2008 by filing a Motion to Enforce Settlement. The Court denied the motion.

## XIII. CONSENT TO A MAGISTRATE JUDGE FOR ALL PURPOSES

The parties did not consent to proceed before a Magistrate Judge.

## XIV. OTHER REFERENCES

The case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

## XV. NARROWING OF ISSUES

At present, the Parties do not have any proposal for narrowing of issues in this case.

## XVI. EXPEDITED SCHEDULE

This case is not appropriate for an expedited schedule.

## XVII. SCHEDULING

Proposed Schedule:

| | |
|---|---|
| Deadline for Plaintiff to File any Supplemental Moving Papers in Support of Preliminary Injunction Motion | N/A |
| Deadline for Defendants to File any Opposition Papers to Preliminary Injunction Motion | N/A |
| Deadline for Plaintiff to File a Reply in Support of Preliminary Injunction Motion | N/A |
| Hearing on Plaintiff's Preliminary Injunction Motion | N/A |
| Designation of Experts | July 1, 2008 |
| Deadline for Hearing Dispositive Motions | August 1, 2008 |
| Initial Discovery Cut-Off | August 1, 2008 |
| Expert Discovery Cut-Off | August 1, 2008 |
| Pretrial Conference | August 15, 2008 |
| Trial Date | September 2, 2008 |

## XVIII. TRIAL ESTIMATE

Plaintiff has demanded a jury trial. Although it is difficult at this stage of litigation to estimate the time required for trial, the Parties estimate the trial will take ten days.

## XIV. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

Plaintiff will file its Certification of Interested Entities or Persons with the Court before

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7664309.1

11

CASE NO. C 07 2504 RMW
JOINT CMC STATEMENT

1  the case management conference.  Counsel for Defendants certifies that, other than the named
2  Defendants, they have no interests to report.
3
4  Dated: February 8, 2008                    MORGAN, LEWIS & BOCKIUS LLP
5
6                                             By           /s/
7                                                Brendan G. Dolan
                                                 Attorneys for Plaintiff
8                                                POSDATA CO., LTD.

9  Dated: February 8, 2008                    SQUIRE SANDERS & DEMPSEY LLP
10
11                                            By           /s/
12                                               Allison E. Pitigoi
                                                 Attorneys for Defendants
13                                               SEYOUNG KIM and INQUADRON, INC

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7664309.1                          12                    CASE NO. C 07 2504 RMW
                                                              JOINT CMC STATEMENT